IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 1:22-cr-00015-APM |
| | ) |
| KELLY MEGGS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION REGARDING
ANTICIPATED TRIAL EVIDENCE RE: ZELLO COMMUNICATIONS**

Defendant Kelly Meggs, and Defendants Harrelson and Watkins, jointly by and through the undersigned counsel, hereby files this Joint Reply Memorandum to the Government's submission at ECF 292, in further support of Mr. Meggs' and co-defendants' Joint Motion in Limine [ECF 280], to bar the Government's intent to introduce Zello Communications identified by the Government, because the evidence at issue is hearsay and highly prejudicial while not genuinely probative.

1. Defendant Meggs, jointly, with Defendants, Rhodes, Watkins and Harrelson, Moved in limine to bar Anticipated Trial Evidence, specifically Zello Communications Identified by the Government on August 28, 2022. (ECF 280).

2. The Government filed its Opposition on September 6, 2022, in which it argues that "Defendant Watkins' voice is audible on the recording of the Zello channel, discussing her group's approach to the Capitol, her group's "plan," and her observations once inside the Capitol."

3. The allegation in the government's Opposition, for the first time, newly added, is that "OhioRegularsActual-Oathkeepers" is Jessica Watkins profile on Zello.  In the

government's Stipulation sent to Defendants on the Defendants' "monikers' or Profile Names, Jessica Watkins is only identified as "Jessica Watkins." At no time prior to this filed Opposition, has Defendant Watkins been identified with "OhioRegularsActual-Oathkeepers." The government further admits that not only does this Zello transcript not contain her phone number, but also that "*The FBI did not locate any relevant Zello audio files on Defendant Watkins' phone.*" (ECF 292, p. 3). Instead for the first time, the government lays out a complicated multi layered basis for now submitting this Profile as that of Jessica Watkins.

4. Further, by the government's own explanation the evidence is obtained through public reporting and is not complete because the video containing most of the audio is not a clear disclosure. It is not clear to the undersigned counsel, which was produced, the video or the 2hr 22 minute long audio in support of the Opposition filed.

> On January 15, 2021, New York Public Radio's On the Media published **a podcast** and accompanying article about the recording, titled "The Zello Tapes: The Walkie-Talkie ) App Used During The Insurrection."5 The article linked to a "high-fidelity" recording posted on SoundCloud containing the **2-hour-and-22-minute long audio.** According to the SoundCloud description accompanying the audio file, (which in turn is from another source) "[t]his audio was first discovered by Micah Loewinger and Hampton Stall, who detailed their findings in the Guardian and on On the Media…
>
> On SoundCloud, the authors provided a link to YouTube7 and wrote that the video in the link contained "[a] partial screen capture video of this tape." While Google has since removed the video for violating YouTube's community guidelines, and thus it is no longer publicly accessible, the government preserved a copy (Government Exhibit 1073).
>
> The video, which **is 1-hour-and-46-minutes long**, **contains most of the audio** recording published to SoundCloud along with a synchronized view of the visual depiction of the channel's chat log, on January 6, 2021, between 1:48 p.m. and 5:07 p.m.
>
> (ECF 292, p. 4).

5. As of August 22, 2022, the government only disclosed to Defendants "…you asked us to provide the true identities of three individuals who can be heard on the Zello

2

recording: 1% Watchdog, General Mark Davis CFA, and iWatchDirectorLaureen. We are not able to confirm these individuals' true identities for you. (email correspondence of Monday, August 22, 2022 9:51 PM from Mr. Jeffrey Nestler, emphasis added).

6.  Now the government continues to concede that "The government does not intend to argue that user 1%Watchdog is a named defendant. (ECF 292, p. 3, f.n. 2). Nor does the government identify 1%Watchdog at least to these Defendants, but as the government argues, it is 1%Watchdog's communications, among other outsiders, that it is seeking to admit in addition to statements it alleges were made by Ms. Watkins newly found profile. The statements made by outsiders continue to constitute hearsay and are highly prejudicial but the government argues:

> In addition to Defendant Watkins' own statements, several statements from users 1%Watchdog (the creator of the channel), FreedomD0z3r91 (Person 32, Watkins' known associate), and others **are relevant evidence of defendant Watkins' intent,** because the statements provide context to Defendant Watkins' own communications and/or the statements are directives to Defendant Watkins.

(ECF 292 at p.5).

7.  First, if the government is correct about Ms. Watkins' identity as "OhioRegularsActual-Oathkeepers," which we would submit is a trial issue, as it is a fact to prove.

8.  Specific Statements by "OhioRegularsActual-Oathkeepers" are in large part updates on what is happening at the Capitol, as "OhioRegularsActual-Oathkeepers" states in that transcript:

At 1:49 p.m. (1:30 on the counter): "We're boots on the ground here. We're moving on the Capitol now. **I'll give you a boots-on-the-ground update here in a few**. We have a good group. We have about 30, 40 of us. We're sticking together and sticking to the plan."

After user "Airborne America" said, "We'll see you soon, Jess," she responded

"Roger that, brother. Godspeed and fair winds to us."

• At 1:58 p.m. (4:01 on the counter): "It has spread like wildfire that Pence has betrayed us and everybody's marching on the Capitol. All million of us. It's insane. We are about two blocks away from it now, and police are doing nothing. They're not even trying to stop us at this point."

• At 1:59 p.m. (5:09 on the counter): "Trump's been trying to drain the swamp with a straw. We just brought a Shop-Vac."

• At 2:00 p.m. (5:25 on the counter): "Y'all, we're one block away from the Capitol now. I am probably going to go silent once I get there because I am going to be a little busy."

• At 2:31 p.m. (18:30 on counter): "We are on the rear mezzanine, behind the dome. I'll send a picture here in a bit. There is reports that Antifa was the ones who busted out the windows. It was not actual patriots. The police confronted them when they were smashing out the windows. They said, Fuck Trump; we don't care about this. And they're just out there smashing windows. So, I feel like it's kind of a setup, really. They have the riot cops out now."

• At 2:44 p.m. (27:19 on the counter): "We are in the mezzanine. We are in the main dome right now. We are rocking it. They are throwing grenades, they are fricking shooting people with paint balls. But we are in here."

(ECF 292, p.5).

9. It is the responses from these others who are not identified as Co-Conspirators that remains as hearsay and are prejudicial, highlighted by curse words and inflammatory rhetoric used primarily by 1% Watchdog.

10. For example, the government also argues that '"Watkins' communications with user "FreedomD0z3r91" are particularly relevant, due to their connection to each other. The true identity of FreedomD0z3r91 is Person 32, an unindicted coconspirator. While Person 32's changeable display name on January 6, 2021, was FreedomD0z3r91, his immutable username was kamden11414.' (ECF 292 at p. 9). This is a confusing argument because the potential relationship between Jessica Watkins and Person 32, is not at issue in this Zello Recording. Neither User name for Person 32 appears in the Zello Recording with the Transcript. Instead, it seems the government argues that the relationship corroborates the statements that Watkins

allegedly made with a general reference to "training" because they have trained together[1]. As anyone who goes to the gym knows, training is a broadly used word. But shows that the intent is to use the communications for the truth of the matter, so the question becomes whether they are otherwise admissible.

11. As an initial matter, the government recognizes it cannot show that Ms. Watkins, assumed to be Ms. Watkins, was listening to the chat: 'And she was logged into the Zello app as of around 1:00 p.m. on January 6, 2021, meaning that Watkins **was likely listening** to the "Stop the Steal J6" channel even before the moderator "opened" the channel at 1:48 p.m., as Watkins was on her way—with several of her coconspirators—from the Ellipse to the Capitol.' (ECF 292 p. 7). This is a dubious assertion.[2]

12. The government further explains in footnote 11:

> According to a representative, Zello tracks a user's logging into (but not out of) the app. The Zello records show that on January 6, 2021, Watkins logged into the app at 5:33 a.m., 12:58 p.m., 12:59 p.m., 1:01 p.m., and 5:43 p.m**. The three successive midday logins suggest network congestion**, as Watkins was at the Ellipse. But the lack of a login between 1:01 p.m. and 2:44 p.m. (when she was in the Rotunda speaking to the "Stop the Steal J6" channel) means that Watkins had not logged out of the app during this critical time period.

(ECF 292 at p. 7, f.n. 11).

13. The entire argument relies on an assumption that Watkins (assuming its Watkins) was listening to statements by outsiders while at the Rotunda, that the communication was constant and that she paid attention, and in turn, that she accepted those comments as her belief

---

[1] **It should be noted that Watkins was extensively trained in field medicine and first aid and carried a heavy back pack, not containing weapons, but stuffed with emergency medical supplies.**

[2] It has been extensively reported that there was little or no phone coverage in and around the ellipse and the Capitol. https://www.pcmag.com/opinions/why-cell-networks-cut-out-at-the-us-capitol-riot

or adopted them, for it to relate to her intent. This is where the government conflates the arguments, assuming her identity is provable as the government now contends, then hose portions that are self-inculpatory statements would come in.

14. The distinction lies with the overbroad application of "self-inculpatory" to all the statements alleged to be adopted by Ms. Watkins, and in addition to the commentary under the argument that listening goes to her state of mind; from the other listeners on a public channel when we know that "the moderator "**opened**" the channel at 1:48 p.m." (ECF 292 at p. 7). And the government explained that "[t]he article stated that the authors (Micah Loewinger and Hampton Stall) had reviewed audio and chat logs from a "**public**" Zello channel called "Stop the Steal J6." (ECF 292 at p. 3). In other words, this Zello communication is a public channel open to anyone and full of commentary the government wants to attribute in whole to Ms. Watkins.

15. As the government in its filing, acknowledged, "[a] statement may be admitted under Rule 804(b)(3)'s hearsay exception for statements against interest if a reasonable person in the declarant's shoes would perceive the statement as detrimental to her own penal interest. *See Williamson v. United States*, 512 U.S. 594, 599-603 (1994) (holding that a court may admit those portions of a declarant's statement under this rule if those statements are truly self-inculpatory). Accordingly, if the fact finding is made as to Ms. Watkins' identity and if the court were to deem statements cited herein on page 3-4, allegedly by Ms. Watkins are deemed self-inculpatory, then that the court may admit those portions of the declarant's statement. That, however, is not similarly applicable to the commentary otherwise on this public chat by persons who are not co-conspirators and in large part remain unidentified.

16. Instead, the government submits,

> Some of the statements of the other individuals on Government Exhibit 1073.1 are admissible against all five defendants because Watkins manifested an intent to adopt them. See Fed. R. Evid. 801(d)(2)(B).
>
> The remainder of the other declarants' statements are admissible against Watkins (but not the other defendants) because the statements are non-hearsay being admitted for their effect on the listener (Watkins), rather than for the truth of the matter asserted. See Fed. R. Evid. 801(c)(2) (defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement").
>
> For those statements admitted only for their effect on Watkins and/or only against Watkins, the government is amenable to a limiting instruction pursuant to Federal Rule of Evidence 105.

(ECF 292 at p.16).

17. The government, recognizes that, '[f]or a defendant to adopt the statement of another, such that the statement is admissible against the defendant, the defendant "must have understood and unambiguously assented to [the statement], but his understanding and assent may be established through conduct as well as through words." *United States v. Beckham*, 968 F.2d 47, 52 (D.C. Cir. 1992) (alterations, quotation marks, and citations omitted). The defendant must have "manifested an adoption or belief in its truth." *Id*. (quoting Fed. R. Evid. 801(d)(2)(B)).' A "yeah…" is not a necessarily a full manifestation or adoption in the truth of the commentary, it depends on the context, because if she responds with what she is saying rather than a reaffirmation of what is said above, it is not a full manifestation. Where it says "*Roger that*," yes that would reflect acceptance of the full statement preceding it. Moreover, the argument fails to support the remainder of the statements, where the government argues that "*The remainder of the other declarants' statements are admissible against Watkins (but not the other defendants) because the statements are non-hearsay being admitted for their effect on the listener (Watkins), rather than for the truth of the matter asserted.* See Fed. R. Evid. 801(c)(2) (defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement").

7

18.     As undersigned counsel argued, this District Court clearly explained what constitutes hearsay within hearsay *when there is no statement* from the declarant as to fact remembered or believed.

> "At first glance, such evidence of belief might be properly admissible pursuant to Rule 803(3), which permits introduction of hearsay evidence demonstrating the declarant's then-existing mental condition. Fed. R. Evid. 803(3)1. However, as the entire purpose of Mr. Richards' line of testimony is to As a result, the Court concludes that the email consists primarily of hearsay within hearsay for which Plaintiffs have not offered an applicable exception.
> *New York v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 7683, *12-13, *18 (D.D.C. 2002). The ultimate purpose for which Pinnacle Systems' belief is being offered, is to establish the truth of that belief. As a result, Rule 803(3) does not render the statement admissible. See Fed. R. Evid. 803(3) advisory committee's note ("The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.").

*New York v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 7683, *12-13, *18 (D.D.C. 2002).

19.     Rather than strictly focusing on those portions of the transcript in which Ms. Watkins alleged statements are adopted and focusing on the portions of those statements that are self-inculpatory, the government goes much further in seeking to have whole public open chat admitted to establish the truth of that belief, which is the very definition of hearsay, all argued to be based on a theory that she was listening. The government's argument would lead to abolishment of the hearsay rule.

20.     The government argues, "Some of the other declarants' statements are admissible only against Watkins (rather than all defendants), as they provide context for Watkins' own statements and/or elucidate her state of mind. *See United States v. Williams*, 358 F.3d 956, 963 (D.C. Cir. 2004) (statement is admissible to "elucidat[e] . . . a listener's state of mind"). (ECF 292 at 18). But in that case, the court made clear that, "[a]s with all evidence, such a statement,

8

when offered for a permissible non-hearsay purpose, must be relevant to a "fact … of consequence" in the case. FED. R. EVID. 401; *see also Sesay*, 313 F.3d at 599-600; *United States v. Evans*, 342 U.S. App. D.C. 189, 216 F.3d 80, 87 (D.C. Cir. 2000) *cert. denied*, 531 U.S. 971, 148 L. Ed. 2d 317, 121 S. Ct. 411 (2000). Moreover, such a statement may be excluded, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice. *Id*. at 963-964 (*citing* FED. R. EVID. 403; *see also U.S. v. Evans*, 216 F.3d at 87-89).

21.     The Court in *Williams* further explained, "The *Evans* court rejected the argument that the testimony could be admitted to provide "background" information, because whatever minimal value the testimony had for that purpose was outweighed by the danger that the jury would consider the evidence for its hearsay purpose. *See id*. at 87-89; *see also Sesay*, 313 F.3d at 599 (excluding testimony regarding an out-of-court statement because its only relevance was for its truth and because any value it may have had as background was substantially outweighed by the danger of prejudice). *Id*. at 964.

22.     The government next cites *United States v. Stover*, 329 F.3d 859, 870 (D.C. 2003), in further support of its argument that the outsiders' running commentary on this public channel can be admitted under an effect on the state of mind of the listener, Jessica Watkins, but in *Stover,* the court explained that "[a]s to using the recordings to establish context, the Government seems to be saying that all out-of-court statements offered for context do not constitute hearsay. However, that a statement provides context to other evidence does not mean that the statement is not hearsay. All relevant evidence provides context to the events underlying the charged crime. *See United States v. Bowie*, 344 U.S. App. D.C. 34, 232 F.3d 923, 928-29 (D.C. Cir. 2000). The question is whether the statement is offered for its truth." The court found the recording statement as inadmissible hearsay where it went to the truth of

9

the issue before the court, finding that 'the jury, using the statement, could infer that the defendant and his co-conspirators referred to "drugs as clothes" only from the fact that Defendant and his co-Conspirator referred to drugs as clothes - that is, through the statement's content.' *Cf. United States v. Sesay*, 354 U.S. App. D.C. 141, 313 F.3d 591, 599-600 (D.C. Cir. 2002). 'The statement thus was hearsay, and its admission was erroneous.' *United States v. Stover*, 329 F.3d 859, 870 (D.C. 2003) (*citing See* FED. R. EVID. 802, FED. R. EVID. 801(c); *United States v. Jordan*, 258 U.S. App. D.C. 143, 810 F.2d 262, 264 (D.C. Cir. 1987).

23.     However the government's argument that Defendant Watkins "adoption" of any these statements are in turn admissible against her alleged co-conspirators is predicated on the following:

> "For hearsay purposes, an adopted statement pursuant to Rule 801(d)(2)(B) functions as if the declarant uttered the statement herself. *See Poole v. Perini*, 659 F.2d 730, 733 (6th Cir. 1981) ("[T]he words of the hearsay become the words of the defendant. If the defendant accepts the out-of-court statement as his own, cross-examination of the declarant of the hearsay becomes unnecessary and irrelevant. The out-of-court statement is no more damaging than the defendant's own."). Therefore, [the government argues] the other declarants' statements that Watkins adopted on the Zello recording are admissible against the other defendants so long as they fall within at least one of the other hearsay exceptions described above (e.g., preset-sense impression, statement of future intent, statement against interest, and/or statement in furtherance of the conspiracy)."

(ECF 292 at p. 17).

But the Court of Appeals in that case did not take an adoptive admission to be used against co-conspirators, and that is a jump without predicate. *See Id.* Instead, the Sixth Circuit explained that, "A defendant cannot adopt an out-of-court statement as his own without some affirmative action on his part. Merely remaining silent while confessions of others are made is not enough to adopt the others' as his own. *See Glinsey v. Parker*, 491 F.2d 337, 342 (6th Cir.), cert. denied, 417 U.S. 921, 94 S. Ct. 2630, 41 L. Ed. 2d 227 (1974). Similarly, if the defendant

had never heard the statements of the others, he could not have adopted them. *Id.* at 733.

24. Further, under the argument, *Other Declarants Statements*, the government contradicts its earlier statement that cites one case from the 10th Circuit to say that "*Indeed, because Watkins often adopted the others' statements in furtherance of the conspiracy, the others' statements are admissible against both Watkins and the other coconspirators*. The government is again bootstrapping because the case it cites for this proposition, *United States v. Wolf*, 839 F.2d 1387, 1395 (10th Cir. 1988), which the government argues cites in support of its argument that "a non-conspirator declarant made a statement to coconspirator *A*, which *A* adopted by *A*'s actions." (ECF 292 at p. 18). *United States v. Wolf,* however, addressed a statement made by a witness at trial speaking about the behavior of the mother in a case of child neglect and conspiracy to commit murder with the father, and the mother's actions described by a witness on the stand were viewed as part of the conspiracy. *Id.* Moreover, in that case, the court found that the statement, "She said Roy [the husband] *hit [the child] in the stomach*... inadmissible against Roy under the coconspirator exception because it is a *mere narrative* and does not further the conspiratorial objectives of abusing the child or covering-up the abuse." *Id*. (*citing United States v. Posner*, 764 F.2d at 1538).

25. Similarly much of the commentary on the Zello chat is a mere narrative.

26. Further, Defendants submit that the statements not expressly adopted by Ms. Watkins, and not self-inculpatory; the remaining statements on the recording, all the running commentary, are asserted for the truth of the matter therein… as argued by the government:

> Notably, 1%Watchdog told Watkins and others to perform a "citizen's arrest" of congresspeople for "treason." He also told Watkins and others that, even though rioters had made it "in the front door" of the Capitol building, the House of Representatives was continuing its session. The implication of this statement was that someone

11

(Watkins) needed to do something (like physically detaining congresspeople) to actually stop the House from proceeding any further.

At 2:17 p.m. and 2:18 p.m., 1%Watchdog told the channel about Vice President Pence's and Speaker Nancy Pelosi's movements:

```
13      (2:17 p.m.) 1%Watchdog: Okay. We've got reports that
14  Pence is hightailing it underground. They're trying to move
15  him out of the building. I don't know how, probably
16  underground. Yeah. You can run, but you can't hide.

19      (2:18 p.m.) 1%Watchdog: Pence has been ushered out of
20  the building. The Senate is sheltering in place.
21      (2:18 p.m.) Bonvon: Not just Pence; Pelosi as well has
22  been taken into custody. From what I'm understanding it,
23  she's being brought out -- trying to be brought out through
24  protected exits.
```

Another user then told the "boots on the ground" to find out which tunnels the protectees were using for their escape and "block them":

```
4      (2:18 p.m.) SGT E: Find out where the tunnels exit and
5  block them too.
```

A minute later, at 2:19 p.m., user FreedomD0z3r91 (Person 32) reported to the channel that rioters had breached the Capitol building and were "fighting the police" inside. He asked someone (presumably Watkins) to "confirm" what was occurring inside the Capitol:…

(ECF 292, at p. 27)

These statements are all those of outsider's statements, offered for the truth of the matter. Further evidence of the fact that these are hearsay statements by outsiders, without any adoption from Ms. Watkins, are asserted for the truth of the matter stated, the government argues:

12

"During this time, according to surveillance video, Defendant Watkins and certain other members of the conspiracy, including notably Kelly Meggs and Kenneth Harrelson, entered the Capitol building and penetrated into the Rotunda." (ECF 292 at p. 32).

```
17      (2:39 p.m.) 1%Watchdog:  Capitol Police can't do shit.
18   Marines are coming to the White House for the President.
19   They're not sending them to the Capitol.  That's Trump.
20   Trump's security guards.
21      (2:39 p.m.) FreedomD0z3r91:  Yeah.  Don't worry about
22   the Marines.  They're not leaving the White House's grounds.
```

```
7       (2:42 p.m.) Jim Fitzgerald:  CNN just said that they
8    evacuated all members of Congress into a safety room.
9       (2:42 p.m.) 1%Watchdog:  There's no safe place in the
10   United States for any of these motherfuckers right now.  Let
11   me tell you.
12      (2:43 p.m.) Gnomie:  I hope they understand that we are
13   not joking around.
14      (2:43 p.m.) 1%Watchdog:  Military principle 105,
15   military principle 105, cave means grave.
16      (2:43 p.m.) Jim Fitzgerald:  Trump just tweeted, Please
17   support our Capitol Police, they are on our side, do not
18   harm them.
19      (2:43 p.m.) 1%Watchdog:  That's saying a lot by what he
20   didn't say.  He didn't say not to do anything to the
21   Congressmen.
```

(ECF 292 at p. 32).

The filing is replete with examples of how the government intends to use the statements to prove the truth of the matter therein. The jury, using these statements, could infer that the defendant Watkins and her alleged co-conspirators "intended to overthrow the Capitol" only from the statements from these outsiders. *United States v. Stover*, 329 F.3d 859, 870 (D.C. 2003) (*citing* See FED. R. EVID. 802, FED. R. EVID. 801(c); United States v. Jordan, 258 U.S. App. D.C. 143, 810 F.2d 262, 264 (D.C. Cir. 1987). Moreover, the probative value of statements,

13

everything outside of one "Roger that" as fully adopted are substantially outweighed by the danger of unfair prejudice. *Id*. at 963-964 (*citing* FED. R. EVID. 403; *see also U.S. v. Evans*, 216 F.3d at 87-89).

WHEREFORE, Defendant Kelly Meggs respectfully reframes the relief requested based on the new facts set forth and disclosed for the first time in the government's opposition, that the Court grant this Motion in Limine to 1) limit the admission of statements to self-inculpatory statements by Ms. Watkins, if her identity is proven; 2) bar any outsider statements not expressly adopted by Ms. Watkins as hearsay; 3) issue a limiting jury instruction as to any statement deemed adopted by Ms. Watkins, (unless the government has specific evidence that she communicated those statements to her co-conspirators).

Dated: September 9, 2022                               Respectfully submitted,


                                                       /s/ *Juli Zsuzsa. Haller*
                                                       Juli Zsuzsa Haller, (DC 466921)
                                                       The Law Offices of Julia Haller
                                                       601 Pennsylvania Avenue, N.W., Suite 900
                                                       Washington, DC 20004
                                                       Telephone: (202) 729-2201
                                                       HallerJulia@outlook.com


                                                       /s/ *Stanley Woodward*
                                                       Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                                       Brand Woodward, Attorneys at Law
                                                       1808 Park Road NW
                                                       Washington, DC  20010
                                                       202-996-7447 (telephone)
                                                       202-996-0113 (facsimile)
                                                       Stanley@BrandWoodwardLaw.com

                                                       *Counsel for Defendant Kelly Meggs*


**Certificate of Electronic Service**

I hereby certify that on September 9, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

                                       /s/ *Juli Z. Haller*
                                       Juli Zsuzsa Haller, (DC 466921)
                                       The Law Offices of Julia Haller
                                       601 Pennsylvania Avenue, N.W., Suite 900
                                       Washington, DC 20004
                                       Telephone: (202) 729-2201
                                       HallerJulia@outlook.com