```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )    Criminal Action
                                        )     No. 22-00015
 4                   Plaintiff,         )
                                        )
 5        vs.                           )    AFTERNOON SESSION
                                        )
 6     ELMER STEWART RHODES, III,       )    Washington, D.C.
       et al.,                          )    September 28, 2022
 7                   Defendants.        )    2:04 p.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9

10              TRANSCRIPT OF JURY TRIAL - DAY 1
             BEFORE THE HONORABLE AMIT P. MEHTA,
11                 UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:      KATHRYN L. RAKOCZY, ESQ.
                                TROY A. EDWARDS, JR., ESQ.
15                              JEFFREY S. NESTLER, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE
16                                FOR THE DISTRICT OF COLUMBIA
                                601 D Street, Northwest
17                              Washington, D.C. 20579

18                              ALEXANDRA S. HUGHES, ESQ.
                                JUSTIN T. SHER, ESQ.
19                              U.S. DEPARTMENT OF JUSTICE
                                950 Pennsylvania Avenue, Northwest
20                              Washington, D.C. 20530

21
       FOR THE DEFENDANT        PHILLIP A. LINDER, ESQ.
22             RHODES:          JAMES L. BRIGHT, ESQ.
                                EDWARD L. TARPLEY, JR., ESQ.
23                              BARRETT BRIGHT LASSITER LINDER
                                3300 Oak Lawn Avenue
24                              Suite 700
                                Dallas, Texas 75219
25
```

1       <u>APPEARANCES, CONT'D:</u>

2       FOR THE DEFENDANT          STANLEY E. WOODWARD, JR., ESQ.
                 MEGGS:            BRAND WOODWARD LAW
3                                  1808 Park Road, Northwest
                                   Washington, D.C. 20010
4

5       FOR THE DEFENDANT          BRADFORD L. GEYER, ESQ.
              HARRELSON:           FORMERFEDSGROUP.COM, LLC
6                                  141 I Route 130 South
                                   Suite 303
7                                  Cinnaminson, New Jersey 08077

8

9       FOR THE DEFENDANT          JONATHAN W. CRISP, ESQ.
               WATKINS:            CRISP AND ASSOCIATES, LLC
                                   4031 North Front Street
10                                 Harrisburg, Pennsylvania 17110

11

12      FOR THE DEFENDANT          DAVID W. FISCHER, SR., ESQ.
              CALDWELL:            FISCHER & PUTZI, P.A.
                                   7310 Governor Ritchie Highway
13                                 Glen Burnie, Maryland 21061

14

15      REPORTED BY:              LISA EDWARDS, RDR, CRR
                                  Official Court Reporter
16                                United States District Court for the
                                     District of Columbia
17                                333 Constitution Avenue, Northwest
                                  Room 6706
18                                Washington, D.C. 20001
                                  (202) 354-3269

19

20

21

22

23

24

25

<u>I N D E X</u>

Voir Dire                                                        Page 563

```
1                    THE COURT:  Please be seated, everyone.

2                    You're calling in 833, right?

3                    THE COURTROOM DEPUTY:  Yes.

4                    THE COURT:  Just as a reminder, we're going to

5        start with 833 first.

6                    MR. LINDER:  What placement number are they?

7                    THE COURT:  Line 71.

8                    MR. LINDER:  71, thank you.

9                    (Thereupon, Prospective Juror No. 0833 entered the

10       courtroom and the following proceedings were had:)

11                   THE COURTROOM DEPUTY:  Please have a seat right

12       here.

13                   THE COURT:  Ma'am, how are you?

14                   PROSPECTIVE JUROR:  Good.  How are you?

15                   THE COURT:  Good.

16                   You are juror 0833?

17                   PROSPECTIVE JUROR:  Yes.

18                   THE COURT:  Feel free to remove your mask if you

19       wish.  And you should have your juror questionnaire there in

20       front of you.

21                   So I understand that you have a flight this

22       evening that is scheduled not to return until Tuesday.  Is

23       that right?

24                   PROSPECTIVE JUROR:  That is correct.

25                   Not a flight; a train.
```

1          THE COURT:  I'm sorry?

2          PROSPECTIVE JUROR:  A train, not a flight.

3          THE COURT:  A train.  Okay.  And when did you make

4     those arrangements?

5          PROSPECTIVE JUROR:  September 10th.

6          THE COURT:  Okay.  So that would have been before

7     you completed the questionnaire?

8          PROSPECTIVE JUROR:  Correct.

9          THE COURT:  But after you received your summons?

10          PROSPECTIVE JUROR:  Correct.

11          THE COURT:  And can you tell me what the --

12     whether it's a personal trip or a business trip?  What's the

13     nature?

14          PROSPECTIVE JUROR:  It's a personal trip.

15          THE COURT:  Okay.  And is it the kind of trip that

16     you could postpone or does it involve visiting, for example,

17     a sick family member?

18          PROSPECTIVE JUROR:  It is a personal trip, taking

19     care of my nephew while his parents are away on a trip for

20     work.

21          THE COURT:  Oh, okay.  And so if you were not to

22     go on this trip, then there would be nobody to care for a

23     minor child?

24          PROSPECTIVE JUROR:  Correct.

25          THE COURT:  Would your sibling be able to find

1    somebody who could care for the child if you were asked to

2    return -- well, let me put it this way:  At this hour -- or

3    at this time, would your sibling be able to find somebody to

4    care for the child other than you?

5            PROSPECTIVE JUROR:  To be honest with you, I will

6    have to check.  I have had them start making arrangements in

7    the case that I had to return on Monday.

8            THE COURT:  Okay.  Well, it may not even be

9    Monday.  It may be as soon as Friday.

10           PROSPECTIVE JUROR:  I'd have to, honestly, check.

11           THE COURT:  Okay.  Why don't we turn to your

12   questionnaire.  You answered some of your questions -- we'll

13   see some of your answers to questions.  Question 68 asks:

14   Is there anything beyond the points covered in the

15   questionnaire -- this is on Page 13; excuse me -- that

16   creates a question in your mind as to whether you could be a

17   fair, objective and impartial juror in the case?

18           You answered, with the Defendants -- I think

19   that's what DEF means -- being police officers and my -- is

20   that --

21           PROSPECTIVE JUROR:  Significant other.

22           THE COURT:  Oh, significant other, sorry -- being

23   one at the time of the events, I believe this would be a

24   conflict.

25           So it is not my understanding that any of the

1    Defendants is employed as a police officer.

2              PROSPECTIVE JUROR:  Maybe I had misread the

3    previous questions asked.  But it had mentioned law

4    enforcement personnel would be involved.

5              THE COURT:  Right.  Well, we would expect law

6    enforcement to be witnesses in this case, not that they are

7    Defendants in this case.  And can I ask, your significant

8    other who was a police officer at the time, where was your

9    significant other a police officer?

10             PROSPECTIVE JUROR:  Baltimore City.

11             THE COURT:  And was your significant other called

12   to Washington, D.C., on January the 6th?

13             PROSPECTIVE JUROR:  He was not.

14             THE COURT:  Did he have any involvement in the

15   events of that day?

16             PROSPECTIVE JUROR:  He did not.  I believe he

17   knows people in other counties and departments who attended.

18             THE COURT:  Okay.  But other than the fact that

19   he's a police officer, he had no -- well, other than the

20   fact -- let me put it this way:  He had no other connection

21   to January 6th other than perhaps knowing people?

22             PROSPECTIVE JUROR:  Right.

23             THE COURT:  You indicated in Question 53, if you

24   would turn to Page 11 -- it is a regular instruction in all

25   criminal cases that just because somebody is a law

1    enforcement officer, you are not to give that person any

2    greater or lesser weight just because the person is a law

3    enforcement officer.

4            And you were asked whether you would have any

5    difficulty following that instruction, and you said yes.

6            Can you tell us why you would have difficulty

7    following that instruction?

8            PROSPECTIVE JUROR:  Sorry.  I'm just reading the

9    question.

10           THE COURT:  That's okay.

11           PROSPECTIVE JUROR:  To be honest with you, I don't

12   think I fully understood the question when answering the

13   questionnaire.

14           THE COURT:  Okay.  So let me ask you now.  It is a

15   common instruction that jurors are instructed -- they are

16   told that they cannot give greater or lesser weight to a law

17   enforcement witness just because the person is a member of

18   law enforcement.  And so the question was whether you would

19   have any difficulty following that instruction.  In other

20   words, would you give any greater or lesser weight to a

21   witness just because that person is employed by law

22   enforcement?

23           PROSPECTIVE JUROR:  Understood.  And the question

24   would be answered no in that case.

25           THE COURT:  Okay.  And so even though your

1    significant other, at least at the time, was a police

2    officer, if a police officer came into court and you did not

3    find that person to be credible based on the evidence, you

4    would be able to discredit or not discredit that officer's

5    testimony.  Is that right?

6              PROSPECTIVE JUROR:  Correct.

7              MS. HALLER:  Excuse me, your Honor.  Would it be

8    okay if we just ask the court reporter to move over a little

9    bit.

10             THE COURT REPORTER:  Sure.

11             THE COURT:  So just on the topic of your

12   significant other who was a police officer, that person,

13   your significant other, is he -- he's no longer a police

14   officer.  Is that right?

15             PROSPECTIVE JUROR:  He has changed his employment.

16             THE COURT:  Okay.  And you've said here on

17   Question 15 he currently is a dispatcher for Baltimore City.

18   Is that right?

19             PROSPECTIVE JUROR:  That is correct.

20             THE COURT:  All right.  So Question 14 on Page 6

21   asked:  Have you or a close friend or family member ever

22   been employed by the Federal Government?  Can you share with

23   us --

24             PROSPECTIVE JUROR:  Sure.

25             THE COURT:  -- the reason for that, that you

1    answered yes for that question?

2              PROSPECTIVE JUROR:  I have a very close friend

3    whose father was previously a federal agent.

4              THE COURT:  Okay.  And with which agency?

5              PROSPECTIVE JUROR:  The FBI.

6              THE COURT:  And did you know your friend's father

7    personally?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And is he still with the FBI?

10             PROSPECTIVE JUROR:  He is retired.

11             THE COURT:  And is there anything about your

12   relationship with your friend's father that would cause you

13   to think that you might favor one side or the other in this

14   case?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Because there is likely to be, as I

17   said earlier, law enforcement agent testimony, including

18   possibly from the Federal Bureau of Investigation.  And you

19   think just because of your relationship with him that you

20   would favor law enforcement testimony in this case over

21   non-law enforcement testimony?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  And if you were convinced in this case

24   that the evidence -- well, that the Government had not met

25   its burden of proof, would you have any trouble voting to

1    acquit because your father-in-law is an FBI agent?

2                PROSPECTIVE JUROR:  Friend's father.

3                THE COURT:  Your friend's father.  Excuse me.

4                PROSPECTIVE JUROR:  But no.

5                THE COURT:  Thank you.

6                Question 22 asks whether you had a concern for the

7    safety of yourself or a close friend or family member on

8    January 6th.  You answered yes.  Can you tell us why you

9    answered the question yes?

10                PROSPECTIVE JUROR:  Yes.  At the time, I was a

11    property manager of a community over at the Wharf managing a

12    team of about twenty.  And I was the leader of the team, in

13    close proximity with road closures as well.

14                THE COURT:  Okay.  So with the days -- the events

15    of that day, sort of in the now one and a half-plus years

16    removed, does the day still leave you with an impression

17    about the events of that day that might affect your ability

18    to be fair and impartial?

19                PROSPECTIVE JUROR:  It does not.

20                THE COURT:  And we'll turn to Page 10, please,

21    questions 39 through 41.  Those questions were designed to

22    sort of elicit how much media coverage and videos you've

23    been exposed to about the events of January 6th.  Would you

24    say you're somebody who has actively sought out news and

25    information about the 6th?  Or would you say you're somebody

1    who has sort of seen it as it may come across in a news feed

2    or in a newspaper?

3            PROSPECTIVE JUROR:  I've seen it as it's come

4    across.

5            THE COURT:  All right.  And as a juror, you would

6    be required to put aside what you have learned through the

7    media or other sources.  Do you think you could do that if

8    you were selected as a juror in this case?

9            PROSPECTIVE JUROR:  I don't believe so.

10           THE COURT:  Okay.  And help me understand why you

11   say that.

12           PROSPECTIVE JUROR:  I think I've heard a lot of

13   opinions and I've seen a lot of firsthand things through

14   social media and the news that would be hard to put aside at

15   this point.

16           THE COURT:  Okay.  So we don't expect jurors to

17   come into a courtroom not having read or seen or even formed

18   opinions about the events of January the 6th.  What we ask

19   you to do is to set all that aside and keep an open mind and

20   be willing to consider the evidence and weigh that evidence

21   and only consider the case based on the evidence.

22           Do you think you would have difficulty doing that?

23           PROSPECTIVE JUROR:  No.

24           THE COURT:  So do you have any doubt in your mind?

25   Is there any -- for example -- well, not for example.  But

1    again, you've been exposed to media, et cetera.  But could

2    you put that to the side and only focus on the evidence as

3    it's presented in this case?

4              PROSPECTIVE JUROR:  Yes.  I believe so.

5              THE COURT:  All right.  And if you -- I asked a

6    variant of this question earlier.  But if you were convinced

7    that the Government hadn't met its burden of proof in this

8    case, would you have any reluctance or difficulty in voting

9    to acquit?

10             PROSPECTIVE JUROR:  I don't believe so.

11             THE COURT:  All right.  Do you have any reason --

12    what reason might you have for not being certain about that?

13             PROSPECTIVE JUROR:  I think there's just

14    uncertainty in general with the matter, this topic.  But I

15    don't think I would have any issues.

16             THE COURT:  Okay.  All right.  Is there any

17    objection from either side?

18             MR. LINDER:  No, sir.

19             MR. NESTLER:  Yes.  I believe -- yes.

20             THE COURT:  You can ask whatever questions you

21    want, Mr. Nestler.

22             MR. NESTLER:  Sure.  Sorry.  I believe one of

23    your -- good afternoon.

24             PROSPECTIVE JUROR:  Hi.

25             MR. NESTLER:  Hi.  I believe the judge asked you

1    if you thought that you would have any issues with deciding

2    this case based on the evidence you heard here in court.

3    What was your answer to that question?

4            PROSPECTIVE JUROR:  If I would have any issues?

5            MR. NESTLER:  Right.

6            PROSPECTIVE JUROR:  It was I don't believe I would

7    have any issues.

8            MR. NESTLER:  Right.  So the job of the juror is

9    to listen to all the evidence in court.  You're going to see

10   pictures and photographs and hear from witnesses who are

11   testifying --

12           PROSPECTIVE JUROR:  Right.

13           MR. NESTLER:  -- and be asked to decide this case

14   based on what you hear in court, not on what you may have

15   heard or seen in the news previously.  Do you think you're

16   able to do that?

17           PROSPECTIVE JUROR:  I think so.

18           MR. NESTLER:  Okay.  Thank you.

19           THE COURT:  Ma'am, thank you very much for your

20   time and your testimony today.

21           Mr. Douyon will show you out of the courtroom and

22   provide you with some additional instructions.

23           (Thereupon, Prospective Juror No. 0833 retired

24   from the courtroom and the following proceedings were had:)

25           THE COURT:  So I'm going to strike 0833 for cause,

1  not only because of the uncertainty that she expressed in

2  answering the question of whether she could be fair and

3  impartial because of media, but frankly, I don't just trust

4  that she's going to demonstrate the commitment that a juror

5  should for the length of this trial.  The fact that she

6  already had planned to be away during the course of jury

7  selection and did not raise that with us until just now is

8  problematic.  And when asked about hardships, she said there

9  would be a hardship due to professional obligations.

10           And while that ordinarily would not be

11  justification, in my view, for a cause strike, all of those

12  factors taken together justify the cause strike.  Okay?

13           MR. BRIGHT:  May I presume, then, your Honor,

14  that's the reason that you spoke as you did regarding being

15  back as early as Friday, since you clearly have given us

16  indication we won't be working this Friday?

17           THE COURT:  Well, what I said this morning -- I

18  don't know if you were in the courtroom --

19           MR. BRIGHT:  I must not have heard, sir.  I

20  apologize.

21           THE COURT:  Talk to your colleagues about that,

22  about what I said about Friday.

23           (Thereupon, Prospective Juror No. 1591 entered the

24  courtroom and the following proceedings were had:)

25           THE COURTROOM DEPUTY:  Juror No. 1591.

```
 1                THE COURT:  Or maybe I said it yesterday.  I can't
 2      remember whether it was this morning or yesterday when I
 3      said what I said about Friday.  And if you all missed it,
 4      I'm happy to reiterate it on a break.
 5                MR. BRIGHT:  I understand.  I'm sorry.  The
 6      context, I guess.
 7                THE COURT:  All right.  Ma'am, how are you?
 8                PROSPECTIVE JUROR:  I'm fine.  How are you?
 9                THE COURT:  Good.  Thank you.
10                You are Juror 1591?
11                PROSPECTIVE JUROR:  Yes, sir.
12                THE COURT:  Welcome.  And thank you for your
13      service in completing our questionnaire.  Feel free to
14      remove your mask if you are comfortable doing so.
15                PROSPECTIVE JUROR:  Thank you.
16                THE COURT:  Your juror questionnaire is in front
17      of you, so feel free to consult that if it is helpful to do
18      so.
19                Let me ask you sort of right off the bat --
20      Question 1 was a question about hardship.  And you indicated
21      that you were the principal of a D.C. public elementary
22      school and being removed from school for that long would be
23      difficult.
24                PROSPECTIVE JUROR:  Yes.
25                THE COURT:  You added that "I am curious about
```

 1    possibly serving on this trial, though."

 2            The first question is:  If you were to serve, what

 3    arrangements or what would the circumstances then be at the

 4    school in your absence?

 5            PROSPECTIVE JUROR:  Yeah.  Well, I have an

 6    assistant principal and a director of operations who would

 7    have to take on my responsibilities in my absence.

 8            THE COURT:  Okay.  And to your knowledge, is there

 9    any restriction, prohibition or what have you, or

10    limitation, on a public school principal in the District of

11    Columbia from serving on a jury even for an extended period

12    of time?

13            PROSPECTIVE JUROR:  Not to my knowledge, no.  Not

14    to my knowledge.

15            THE COURT:  And then you added that "I am curious

16    about possibly serving on this trial, though."

17            Can you tell us what you meant by that?

18            PROSPECTIVE JUROR:  Well, I mean, it's a

19    potential -- you know, it's a big trial, you know.  And I

20    consider it, I guess, a privilege and a duty to live in

21    Washington, D.C. and being, you know, considered for a jury

22    on this kind of trial.  So I'm curious.

23            But like I said, it would be a pretty big hardship

24    for my school community for me to be gone for that long.  I

25    had a baby last year.  I was on maternity leave for the

 1    entire fall and, you know, things were challenging when I

 2    got back.  And I would hate to leave my team in that

 3    position for a month or more.

 4              THE COURT:  Okay.  And just to circle back to

 5    service, is it that -- is it the concept of jury service

 6    generally that you are -- find -- and it's my word, not

 7    yours -- intriguing or is it particularly serving as a juror

 8    in this case that you find intriguing?

 9              PROSPECTIVE JUROR:  I think it's both.  I have

10    served on a jury -- I was selected for a jury three years

11    ago.  It was my first time serving, being selected.  And I

12    found it a really interesting process, surprisingly

13    pleasant, I guess, in the sense of, you know, people coming

14    together and figuring things out.  So I thought that was

15    interesting.

16              And I think this particular trial is interesting

17    as well because of its significance.

18              THE COURT:  When you say it's interesting, do you

19    have any preconceived notions, opinions or views about the

20    Defendants in this case or what they are charged with?

21              PROSPECTIVE JUROR:  I don't have any individual

22    knowledge of the Defendants.  But I was living and working

23    here in D.C. on that day and have, like, pretty vivid

24    memories of my feelings on that day.  And so -- you know, as

25    a school principal, as an educator, I consider myself to be

1    pretty good at looking at facts and being, you know,

2    impartial and having a clear mind when posed with

3    challenging questions.  So in that sense, I think I'm a

4    pretty good, impartial person.

5            But, you know, I definitely experienced that day

6    from the perspective of a D.C. citizen and as a friend of

7    someone who works on the Hill.

8            THE COURT:  Okay.  So let's talk about that for a

9    moment, what you have said, that you do have a close friend

10   or family member who was on the Hill or works on the Hill.

11   Was that person there on January the 6th?

12           PROSPECTIVE JUROR:  She was not.  She was working

13   remotely that day, but I didn't know that.  And so I -- when

14   I heard what was going on, I texted her right away to see if

15   she was okay, and she told me she was working remotely, so

16   she was not physically in any danger that day.

17           But I should say that a close friend of hers was a

18   Capitol Police officer who died by suicide just a few days

19   after that day.

20           THE COURT:  And how did -- let me ask you this:

21   So we're now a year and a half removed, plus, from the

22   events of that day.

23           PROSPECTIVE JUROR:  Yeah.

24           THE COURT:  Do you think that that time has -- the

25   passage of time would allow you to serve fairly and

1    impartially as a juror in this case, notwithstanding how you

2    felt on that day and perhaps in the immediate aftermath of

3    that day?

4            PROSPECTIVE JUROR:  I think I could.

5            THE COURT:  And importantly, the question for any

6    juror is:  Has the Government met its burden of proof?  And

7    if you thought the Government had not met its burden of

8    proof, do you think you could vote to acquit these

9    Defendants?

10           PROSPECTIVE JUROR:  I guess it -- yeah.  That

11   might be harder, honestly, based on my, you know, just, I

12   guess, preconceived understanding of that day.  But not

13   having seen the facts or anything like that, it's hard for

14   me to say.

15           THE COURT:  Okay.  So let me just make sure I

16   understand.  Everybody who is a resident of this city and

17   who's been called for jury service for this case, the

18   expectation is not that you would come into court and not

19   have feelings or opinions about the events of that day.

20           PROSPECTIVE JUROR:  Right.

21           THE COURT:  The question, however, is:  Could you

22   set those feelings and opinions aside and be fair and honest

23   to these Defendants and only consider the evidence that's

24   presented in court?

25           PROSPECTIVE JUROR:  I could.  Yes.

1           THE COURT:  Do you have any doubt in your mind or

2      any concerns in your mind that you would be able to be fair

3      to both sides?

4           PROSPECTIVE JUROR:  I don't think so.

5           THE COURT:  Would you keep an open mind to the

6      possibility that the Government could not meet its burden of

7      proof in this case and, therefore, you would be required to

8      actually vote to acquit the Defendants?

9           PROSPECTIVE JUROR:  Yes.

10          THE COURT:  You would be open to that?

11          PROSPECTIVE JUROR:  I am.

12          THE COURT:  I'll ask you to turn to Page 11 of

13     your questionnaire and Question 46.  That asks whether you

14     have read, seen, or heard anything about the Oath Keepers

15     organization.  You checked yes and no, and then wrote, "Very

16     little."

17          Can you tell us what very little you believe you

18     have read, seen or heard?

19          PROSPECTIVE JUROR:  I mean, I think I checked no

20     at first, and then I said:  Wait.  I think I have heard of

21     that in just, like, news headlines, basically.  I have not

22     read deeply about the group or what they espouse to believe

23     or anything.  So I just know, you know, roughly, that they

24     are, like, allied with former President Trump, and I don't

25     know in what ways, honestly, besides just being kind of

1    right-wing, like, extreme thinkers.

2         THE COURT:  Okay.

3         PROSPECTIVE JUROR:  But I don't know anything more

4    than, that really.

5         THE COURT:  So you've described them as right wing

6    and extreme.  Let me ask you this, which is:  You at the

7    same time have said that you don't think that those views

8    would affect your ability to be fair and impartial.  How do

9    you reconcile those two --

10        PROSPECTIVE JUROR:  Good question.

11             Again, I just -- the only thing I know about the

12   term "Oath Keeper" is from what I've seen in media

13   headlines.  So I don't have -- I haven't done my own

14   research.  I don't know the actual facts of the

15   organization, what they do, what they believe.

16             I've heard them described and seen them, you know,

17   kind of -- headlines with some of that same -- like,

18   characterized as right-wing extremism.  So that's all.  But

19   I'm open to learning about it.

20        THE COURT:  So that was my next question, which

21   is:  If the evidence in this case were to be different than

22   your views, the views that you currently have, or your

23   understanding currently, would you be able to accept that

24   evidence and come to a different view than what your current

25   understanding is?

```
 1                PROSPECTIVE JUROR:  Yes.  I could.

 2                THE COURT:  Let me ask you to turn, if you would,

 3      to Question 13 on Page 6, which asks:  Have you or a close

 4      friend or family member ever been employed at the U.S.

 5      Capitol in any capacity?  And I think you told us you had a

 6      friend who was either -- or who was a Hill staffer at the

 7      time.

 8                PROSPECTIVE JUROR:  Uh-huh.  Yes.

 9                THE COURT:  Is that person still a Hill staffer?

10                PROSPECTIVE JUROR:  She is.  Yes.

11                THE COURT:  And so the Defendants in this case are

12      accused of participating in the events of January 6th.

13                PROSPECTIVE JUROR:  Right.

14                THE COURT:  Do you think it would influence your

15      thinking about the case if -- well, let me put it

16      differently, which is:  Do you think that your friendship

17      with somebody who worked on the Hill on that day and --

18                Does she still work there?

19                PROSPECTIVE JUROR:  Yes, she does.

20                THE COURT:  -- and who still works there, do you

21      think that would affect your ability to be fair and

22      impartial as a juror in this case?

23                PROSPECTIVE JUROR:  No.

24                THE COURT:  And if you were convinced that the

25      Government had not met its burden, do you foresee having any
```

1    difficulty going back to your friend and saying:  You know,

2    I voted to acquit?

3              PROSPECTIVE JUROR:  Uh-huh.  No.  It would be a

4    difficult conversation, potentially, or, you know, a

5    challenging one.  But I think she's pretty reasonable, too,

6    so...

7              THE COURT:  All right.  You've indicated that a

8    close friend or family member has been employed by the

9    Federal Government.  Is this the same person?

10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Is there anyone else in addition to

12    that?

13              PROSPECTIVE JUROR:  I have other friends that are,

14    like, employed by the State Department or by the White

15    House.  But no one, like, as close, I guess, as this

16    particular person that I'm --

17              THE COURT:  Are any of those friends in law

18    enforcement?

19              PROSPECTIVE JUROR:  No.

20              THE COURT:  Question 18 is -- and your friend who

21    is at -- is this person currently at the White House?

22              PROSPECTIVE JUROR:  She is -- the person that

23    we've been talking about?  She works for the --

24              THE COURT:  You had mentioned that you had a

25    friend who works at the White House.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Is that person currently working --

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And -- let me ask you the next

5    question, and then I'll double back to what I was going to

6    ask you, which is Question 18 asks whether you have

7    participated -- or close friends or family -- in any rally,

8    protest or demonstration in the last five years.  Can you

9    tell us about that?

10          PROSPECTIVE JUROR:  Yes.  Let's see.  It would

11   have been the Women's March.  I'm trying to remember what

12   year it was.  I think it was 2015 or '16.  I participated in

13   that.

14          And I attended the inaugurations of previous

15   presidents.

16          THE COURT:  Okay.  So if you were to come to the

17   conclusion in this case that the Defendants have different

18   political views than you do, how do you think that would

19   affect, if at all, your ability to be fair and impartial?

20          PROSPECTIVE JUROR:  It wouldn't affect my ability

21   to be impartial knowing that they have different political

22   views.  As a person who really values education and values

23   civics in general, you know, I think if there's evidence

24   that goes in the front of, like, civics, I guess, that might

25   make it difficult.

1          THE COURT:  Can you just tell me what you mean by

2     that?

3          PROSPECTIVE JUROR:  I just mean like respect for

4     law, respect for the order of the way that the government

5     works, you know, and sort of respecting the ways in which

6     our Constitution lays out that it's appropriate to

7     demonstrate or, you know, use your First Amendment rights.

8          THE COURT:  So the allegation -- or one of the

9     allegations in this case is that these Defendants attempted

10    to prevent the transition of power from President Trump to

11    President Biden.

12         PROSPECTIVE JUROR:  Uh-huh.

13         THE COURT:  There's also an allegation that they

14    attempted to disrupt or interfere with Congress's act of

15    certifying the Electoral College vote.

16         Does the mere fact that they have been accused of

17    those crimes give you any pause, in your view, that you

18    could be fair to them?

19         PROSPECTIVE JUROR:  Can you rephrase that?

20         THE COURT:  Sure.

21         As I said, you had mentioned respect for civics,

22    et cetera.  And as I said -- my question was:  There is an

23    allegation in this case that these Defendants both attempted

24    to interfere with the transition of power and also attempted

25    to interfere with what Congress was doing on January the

1    6th.  Does the fact that they have been charged with those

2    kind of offenses -- how would that affect your ability to

3    view them fairly and honestly and impartially, if at all?

4            PROSPECTIVE JUROR:  I think the fact that they

5    have been charged doesn't really matter to me.  I think it

6    would depend on, again, the facts and sort of what, if any,

7    actual rules were broken, laws were broken.

8            THE COURT:  So is it fair to say that you would

9    not simply presume that they had committed offenses and

10   broken the law just because, for example, they were --

11   participated in the events of January the 6th?

12           PROSPECTIVE JUROR:  That's correct.

13           THE COURT:  You answered Questions 19, 21, 22.

14   And you've told us about your friend at the Capitol, or who

15   works at the Capitol.  Is there anyone else or any other

16   reason you were concerned for your safety or safety of

17   another?

18           PROSPECTIVE JUROR:  Is there any other reason why

19   I was concerned for their safety?

20           THE COURT:  Right.

21           PROSPECTIVE JUROR:  I was working at my school

22   that day, which is just not -- you know, not terribly far

23   away.  Everything is pretty close in D.C.  So I know my

24   parents were texting that day to check on my safety, and

25   that kind of got my adrenaline going even though I wasn't,

 1    like, in any immediate danger at the moment.  It was unclear

 2    what it might spill over -- you know, what might happen

 3    later, so...

 4            THE COURT:  Okay.  And do you have any doubt that

 5    you could put sort of that sentiment behind you and be fair

 6    and --

 7            PROSPECTIVE JUROR:  No.  I don't have a doubt

 8    about that.

 9            THE COURT:  Okay.  Question 24 asks whether you

10    could -- whether -- about prior jury service.  You've

11    indicated you served previously on a criminal jury before.

12            PROSPECTIVE JUROR:  Uh-huh.

13            THE COURT:  Could you set aside anything you may

14    have learned about the criminal justice system and that

15    process and follow my instructions in this case?

16            PROSPECTIVE JUROR:  Yes.

17            THE COURT:  So on Page 9 -- at the bottom of Page

18    9, Question 35, you have written -- and you actually crossed

19    out "yes" next to Mr. Caldwell.  The question asked whether

20    you had had any personal, social, or professional contact

21    with any of these individuals.  And then you checked "no,"

22    and then you said, "No contact.  Just hearing his name."

23            So can you tell us what you have heard about

24    Mr. Caldwell?

25            PROSPECTIVE JUROR:  I -- the name is familiar.

1    And again, I've taken the Court's instructions seriously, so

2    I haven't done any research since I filled out this

3    questionnaire.  So I'll tell you what went through my mind

4    when I saw the name, was I recall images from January 6th of

5    someone wearing, like, a hat with horns.  And I associated

6    that name with that image.  I don't know if that's him or

7    not, but --

8            THE COURT:  I can tell you it is not him.

9            PROSPECTIVE JUROR:  Okay.  My apologies.

10            THE COURT:  And that person is not on trial in

11    this case.

12            PROSPECTIVE JUROR:  Okay.  So then I don't know

13    who that is.

14            THE COURT:  Okay.

15            PROSPECTIVE JUROR:  You can see my indecisiveness

16    in these questions.

17            THE COURT:  No.  That's okay.

18            On Page 10, you were asked about people whose

19    names you recognized.  There's Alex Jones.  You listed him.

20    I don't expect him to either testify or likely to be

21    mentioned in this case.  You then identified Chief Contee.

22    I don't know whether he will testify or not, but he may.

23            Do you have views about his reputation as a police

24    chief?

25            PROSPECTIVE JUROR:  No.  I don't have any opinions

1    about him at all.

2         THE COURT:  And if he were to come in and testify

3    in this case, could you consider his evidence -- consider

4    his testimony just as you would any other witness?

5         PROSPECTIVE JUROR:  Yes.

6         THE COURT:  Questions 39 through 41 asked about

7    your exposure to media coverage and videos you've seen.

8    Would you consider yourself somebody who actively seeks out

9    information about the events of January the 6th or you'll

10   review it and see it and read it if it happens or if

11   something happens to come across your screen or your news

12   feed?

13        PROSPECTIVE JUROR:  More the latter.  When the

14   congressional hearings were happening I think earlier this

15   summer, I read one or two articles at the time out of

16   curiosity, but I wasn't, like, deep into it.

17        THE COURT:  Okay.  And do you think you could put

18   whatever you've read or seen aside and focus on the facts in

19   this case and view them objectively?

20        PROSPECTIVE JUROR:  Yes.

21        THE COURT:  You indicated that you have seen some

22   portion of the January 6th hearings.  Can you tell us the

23   extent to which you have watched those hearings?

24        PROSPECTIVE JUROR:  Very little.  It truly was

25   maybe one day in the summer where I had some spare time to

1    look at that.  And it was, like, one of the days where a

2    former aide to the former president came forward to share

3    some of the, you know, discussions and directions that Trump

4    was giving her and the staff that day.  So...

5              THE COURT:  And do you recall anything from either

6    that hearing or any other that you may have read about that

7    there were any comments or testimony given about Oath

8    Keepers?

9              PROSPECTIVE JUROR:  I don't recall.  No.

10             THE COURT:  Question 50 asks whether you have a

11   close friend or family member who's ever worked in the legal

12   field.  Can you tell us about that?

13             PROSPECTIVE JUROR:  Yeah.  My dad is a lawyer in

14   Tennessee.  So I grew up, you know, hearing about his life

15   as a lawyer.

16             THE COURT:  Right.  Can you tell us what kind of

17   law he practices?

18             PROSPECTIVE JUROR:  He's retired now, but he

19   did -- not criminal.  What's it called?  The other kind?

20             THE COURT:  Civil?

21             PROSPECTIVE JUROR:  Civil.  Yeah.  He was a trial

22   defense attorney in civil.

23             THE COURT:  Do you know what type of clients he

24   represented?

25             PROSPECTIVE JUROR:  A lot of insurance companies

 1   and, you know, individuals that had been sued for accidents

 2   and things like that.

 3              THE COURT:  Okay.  Anything about your

 4   relationship with your father that would cause you to think

 5   you might have difficulty being fair and impartial?

 6              PROSPECTIVE JUROR:  No.

 7              THE COURT:  Mr. Linder?  Mr. Fischer?

 8              MR. FISCHER:  Good afternoon, ma'am.

 9              PROSPECTIVE JUROR:  Hi.

10              MR. FISCHER:  Thank you for filling the form out

11   and thank you for being here today.

12              Just to ask a few questions -- first of all, I

13   know you were told, I believe, at the beginning of this

14   process that the trial is probably going to last about a

15   month.  But there is a possibility it may extend as long as

16   six weeks.  Does that make the hardship on your employment

17   more difficult?

18              PROSPECTIVE JUROR:  Yes.

19              MR. FISCHER:  Yeah.

20              PROSPECTIVE JUROR:  Any length of time, you know,

21   that it gets extended would make it harder.

22              MR. FISCHER:  Understood.

23              And I believe you had indicated -- I think you

24   made the statement, in response to one of the Court's

25   questions, about it was going to perhaps be harder to acquit

1    the Defendants knowing what you know.  Could you sort of

2    explain that a little more?

3              PROSPECTIVE JUROR:  I think I said that I would

4    not have a problem acquitting, although I think I hesitated

5    to answer that question, just trying to sift through what I

6    think I know about what happened and, you know, knowing

7    that, in this situation, I would be expected to just listen

8    to the facts presented and look at the law.  So -- yeah.

9              MR. FISCHER:  Sure.  And I believe you

10   indicated -- and I apologize; it's a little difficult for us

11   to hear in the back of the courtroom.  But I understand

12   there was somebody you knew that committed suicide who was a

13   police officer?

14             PROSPECTIVE JUROR:  Yeah.  A friend of a close

15   friend of mine.  Yes.

16             MR. FISCHER:  Okay.  And can you tell us a little

17   bit -- of course, we're not familiar with that; the

18   attorneys are not familiar with the facts of that situation.

19   But could you tell us sort of the general situation

20   regarding that unfortunate event?

21             PROSPECTIVE JUROR:  Yeah.  He was working the day

22   of January 6th, and I know that -- I think it was, like, two

23   days later he killed himself.  And it was -- you know,

24   according to my friend, the events of January 6th were

25   extremely heavy for him, and that was a direct reason for

 1    his suicide, from what I understand.

 2              MR. FISCHER:  Do you know if he was injured at the

 3    Capitol?

 4              PROSPECTIVE JUROR:  I don't know.

 5              MR. FISCHER:  And you understand in this case --

 6    there's been a reference here about the Oath Keepers.

 7              PROSPECTIVE JUROR:  Uh-huh.

 8              MR. FISCHER:  And I know what you indicated, I

 9    believe, is basically you've just heard some things through

10    the media --

11              PROSPECTIVE JUROR:  Right.

12              MR. FISCHER:  -- about the Oath Keepers.  Is that

13    correct?

14              PROSPECTIVE JUROR:  That's right.

15              MR. FISCHER:  Okay.  But if I were to ask you --

16    let's say somebody came from a foreign country.  They came

17    to the United States.  They knew nothing about this country.

18    And they saw something.  They might want to join the Oath

19    Keepers.  What would you tell them?  If you had a few words

20    to give them regarding the Oath Keepers, what would you tell

21    them?

22              PROSPECTIVE JUROR:  I would say I don't know

23    anything about that organization in particular and you

24    should look it up and see if it aligns with your values.

25              MR. FISCHER:  Understood.

1           Ma'am, you indicated your father was an attorney

2    from Tennessee.  Is that correct?

3           PROSPECTIVE JUROR:  That's right.

4           MR. FISCHER:  Is that where you're from,

5    Tennessee?

6           PROSPECTIVE JUROR:  I am, yes.

7           MR. FISCHER:  And I guess I have to ask.  In this

8    case, there's likely to be evidence presented that one or

9    more of these Defendants were very avid Trump supporters.

10   They supported Donald Trump fervently.  Would that affect

11   your ability to be fair and impartial?

12          PROSPECTIVE JUROR:  No.

13          MR. FISCHER:  And could you tell the Court, what's

14   your general opinion about people who support Donald Trump?

15          PROSPECTIVE JUROR:  Well, some of my cousins and

16   aunts and uncles support Trump.  And I think that -- you

17   know, I never supported Trump, and do not.  And I have very,

18   you know, opposite feelings to -- to those folks.  I don't

19   understand the allegiance to him, I guess, from, like, a

20   personal values stake.  I understand it from an emotional

21   place, you know, where people feel drawn to him for these

22   different reasons.

23          But no.  I don't -- I don't know.

24          MR. FISCHER:  Well, trust me, you're not alone.

25          So, ma'am, is there any reason, based on some of

1    the questions -- because there seems to have been some

2    hesitancy during some of the questions.  I guess I have to

3    ask your final answer.  I know you will try to be fair and

4    impartial.  I think everybody will try to be fair and

5    impartial.  But do you honestly in your heart of hearts

6    believe that you can render a completely unbiased verdict in

7    this case, considering who the Defendants are?

8            PROSPECTIVE JUROR:  Well, I don't think any of us

9    is unbiased.  I don't think any of us could truly be

10   unbiased in a case like this, honestly.

11           I know that, for myself, I consider myself a very

12   fair and, you know, pragmatic person.  So I would do my

13   best.

14           MR. FISCHER:  Okay.  Thank you.

15           Thank you, your Honor.  I have nothing further.

16           THE COURT:  Thank you, Mr. Fischer.

17           Mr. Nestler, any followup questions?

18           MR. NESTLER:  No questions.  Thank you, your

19   Honor.

20           THE COURT:  Ma'am, thank you very much.

21   Mr. Douyon will show you out of the courtroom.

22           PROSPECTIVE JUROR:  Okay.

23           THE COURT:  And he'll provide you some additional

24   instructions.

25           PROSPECTIVE JUROR:  All right.  Thank you.

1          (Thereupon, Prospective Juror No. 1591 retired

2     from the courtroom and the following proceedings were had:)

3          MR. FISCHER:  Your Honor, we do move for cause to

4     strike that particular juror.  I think there was a great

5     amount of hesitancy practically every time she was asked

6     about whether she could be fair and impartial.

7          I know she -- her last comment was she would try

8     her best.  But she really hesitated.  Trying your best, I

9     don't think, cuts it in a case of this significance.

10          There was also -- I believe she made an earlier

11     statement it would be harder for her to acquit.  And then

12     she has a close friend whose, I guess, husband or

13     significant other was a Capitol Police officer who died from

14     suicide.

15          So I think -- I think she also made a statement,

16     quote, "It might make it difficult for her to have a fair

17     and impartial decision."

18          So for all those reasons, we move for cause to

19     strike.

20          THE COURT:  Just so the record is clear, it wasn't

21     a close personal friend's spouse; it was a friend of a

22     friend, so once removed.  Just to be clear.

23          I think, ultimately, I'm not going to strike.  Not

24     ultimately -- I'm not going to strike her for cause,

25     ultimately.  I think her -- what you perceived as hesitancy,

1   in my view, was rather somebody who was trying to be

2   thoughtful about the answers she was giving.  And when

3   ultimately she was asked and pushed about -- not pushed, but

4   asked whether she could vote to acquit, she said she would

5   be able to do so.  I didn't detect any hesitancy in her

6   ability to do that.

7           I will say the following, which is that -- I'm

8   prepared to qualify her today.  But let's see where we are

9   at the end of this.  And because of the hardship it would

10  create, not just for her, but for the children that she

11  serves and the school, let's see where we are at the end of

12  this.  And if we've got enough qualified folks, I'd consider

13  sort of putting her to the side.  Okay?

14          MR. FISCHER:  Understood.  Thank you, your Honor.

15          (Thereupon, Prospective Juror No. 0925 entered the

16  courtroom and the following proceedings were had:)

17          THE COURTROOM DEPUTY:  Your Honor, this is Juror

18  No. 0925.

19          THE COURT:  Ma'am, how are you?

20          PROSPECTIVE JUROR:  I'm good.  Thank you.

21          THE COURT:  Thank you for being here.  Thank you

22  for your service.  Thank you for completing the

23  questionnaire.  If you want to remove your mask, feel free

24  to do so.

25          PROSPECTIVE JUROR:  Okay.

```
1              THE COURT:  You are Juror 0925?

2              PROSPECTIVE JUROR:  Yes, sir.

3              THE COURT:  And your questionnaire should be there

4    right in front of you.

5              PROSPECTIVE JUROR:  Uh-huh.

6              THE COURT:  Let me begin at the start with

7    Question 14.  You've indicated that you have a close -- you

8    or a close friend or family member has been employed with

9    the Federal Government.  You've indicated here that your

10   husband is a veteran.

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And if you were to hear that there are

13   witnesses and Defendants in this case who are veterans, how

14   would that fact, if at all, affect your ability to be fair

15   and impartial in this case?

16             PROSPECTIVE JUROR:  I don't think it would affect

17   anything.  I have to look at the facts and what's presented

18   in front of me.

19             THE COURT:  Okay.  If you would please turn to

20   Page 10, Questions 39, 40 and 41.  Those are questions

21   designed to try and figure out how much exposure you've had

22   to news media and videos of the events of January the 6th.

23             Can I ask you, do you consider yourself somebody

24   who sort of actively seeks out news about January the 6th or

25   someone who, when the news happens to come across your
```

```
 1    eyeballs or your ears, you'll read or hear it?

 2              PROSPECTIVE JUROR:  No.  I have a one-year-old.

 3    We only watch Cocomelon.

 4              THE COURT:  You have a one-year-old?

 5              PROSPECTIVE JUROR:  Yes.  So we watch --

 6              THE COURT:  You've got your hands full.

 7              PROSPECTIVE JUROR:  Cocomelon, the kids' show.  I

 8    can't change the channel.

 9              THE COURT:  You're watching different programming,

10    if you have a one-year-old.

11              PROSPECTIVE JUROR:  Yeah.  That's all we watch.

12              THE COURT:  Okay.  If you would turn to just

13    Page 11.  Let me just ask.  Question 46 asked whether you

14    had read, seen or heard anything about the Oath Keepers

15    organization.  You answered that question no.  I just want

16    to confirm that -- is that an organization you have ever

17    heard of, the Oath Keepers?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  You have no impression of who they are

20    or what they --

21              PROSPECTIVE JUROR:  Never heard of it.

22              THE COURT:  -- what they stand for?

23              PROSPECTIVE JUROR:  No.

24              THE COURT:  Okay.  Have you heard anything about

25    the connection of that organization to the events of January
```

1        the 6th?

2                    PROSPECTIVE JUROR:  No.  I've never heard of Oath

3        Keepers.  I don't know what that is.

4                    THE COURT:  Is there anything about the events of

5        January the 6th that you think might cause you -- affect

6        your ability to be fair and impartial about this case?

7                    PROSPECTIVE JUROR:  No.  I really don't know

8        anything about -- I just heard the Capitol Hill, whatever,

9        was attacked.  And that's about it.

10                   THE COURT:  Okay.  Were you in Washington at the

11       time, ma'am?

12                   PROSPECTIVE JUROR:  Yeah.  I live here.

13                   THE COURT:  Okay.  And have you followed those

14       stories or those events since then?

15                   PROSPECTIVE JUROR:  No.

16                   THE COURT:  Question 57 asks whether you or a

17       close friend or family member have ever been arrested,

18       charged or prosecuted or convicted of a crime.  Can you tell

19       us about that?

20                   PROSPECTIVE JUROR:  My husband, before we got

21       married, he was -- he had issues with his ex-wife.

22                   THE COURT:  Okay.

23                   PROSPECTIVE JUROR:  That was before we got

24       together.

25                   THE COURT:  And was that here in Washington, D.C.,

1     or elsewhere?

2              PROSPECTIVE JUROR:  No.  Virginia.

3              THE COURT:  All right.  And is there anything

4     about your husband's experience that you think might prevent

5     you from being fair here?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Anything about his experience that

8     might make you either favor or disfavor the Government in

9     this case?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Is there anything, ma'am, that you

12    want to share with us that might affect your ability to be a

13    fair juror in this case?

14             PROSPECTIVE JUROR:  No.  I just -- I mean, I'm a

15    risk analyst, so I base -- I like facts.

16             THE COURT:  Okay.

17             PROSPECTIVE JUROR:  That's what I do for a living.

18    I'm a risk analyst.

19             THE COURT:  Terrific.  Then you're exactly the

20    kind of juror we would need.

21             All right.  Any questions from the defense?

22             MR. FISCHER:  Good afternoon, ma'am.

23             PROSPECTIVE JUROR:  Hi.

24             MR. FISCHER:  First of all, thank you for filling

25    the form out and coming down here today.  We --

```
1              PROSPECTIVE JUROR:  You're welcome.

2              MR. FISCHER:  -- appreciate your time.

3              I'll just ask you a couple of questions.

4              Can you think of any reason whatsoever why you

5      couldn't be fair and unbiased to the Defendants in this

6      case?

7              PROSPECTIVE JUROR:  No.  Like I stated earlier,

8      facts is facts.

9              MR. FISCHER:  Sure.  Okay.

10             And just to let you know -- I'm not sure if you're

11     aware of this, but the evidence in this case when it goes to

12     trial and you're sitting on the jury, the evidence is likely

13     to show that one or more of these Defendants is a fervent

14     support of the former President Donald Trump.  Were you

15     aware of that?

16             PROSPECTIVE JUROR:  I don't know anything about

17     anyone who committed anything.  I don't know.

18             MR. FISCHER:  Okay.  So that would not affect your

19     ability to be fair and impartial?

20             PROSPECTIVE JUROR:  No.

21             MR. FISCHER:  Okay.  I have nothing else, your

22     Honor.

23             Thank you, ma'am.

24             THE COURT:  Thank you, Mr. Fischer.

25             Mr. Nestler?
```

 1                 MR. NESTLER:  I have no questions, your Honor.

 2    Thank you very much.

 3                 THE COURT:  Ma'am, thank you very much for your

 4    time and your service.  Mr. Douyon will escort you out of

 5    the courtroom and provide you with additional instructions.

 6                 PROSPECTIVE JUROR:  All right.  Thank you.

 7                 THE COURT:  Thank you.

 8                 (Thereupon, Prospective Juror No. 0925 retired

 9    from the courtroom and the following proceedings were had:)

10                 (Thereupon, Prospective Juror No. 0576 entered the

11    courtroom and the following proceedings were had:)

12                 THE COURTROOM DEPUTY:  Your Honor, this is Juror

13    No. 0576.

14                 THE COURT:  Hi, ma'am.  How are you?

15                 PROSPECTIVE JUROR:  Good.  Thank you.

16                 THE COURT:  Welcome.  And thank you for being here

17    today and thank you for completing your questionnaire.

18                 Feel free to remove your mask if you are

19    comfortable doing so.

20                 Your questionnaire is in front of you.  And if you

21    need to refer to it, by all means do so.  I'll actually ask

22    you to turn to Page 11 of your questionnaire.  We'll start

23    with Question 46.

24                 PROSPECTIVE JUROR:  Okay.

25                 THE COURT:  Question 46 asks whether you have

1    read, seen or heard anything about the Oath Keepers

2    organization.  Can you tell us what you have read, seen or

3    heard?

4                PROSPECTIVE JUROR:  I can't give you specifics.

5    Just some things that I ran through on YouTube.

6                THE COURT:  Okay.

7                PROSPECTIVE JUROR:  I wouldn't even be able to

8    quote.

9                THE COURT:  I'm sorry?

10                PROSPECTIVE JUROR:  I could not quote anything

11    that I've heard.  Just something that I've heard -- I've

12    heard that term before.

13                THE COURT:  Okay.  And can you tell us what, if

14    anything, you recall about the term and what you may have

15    heard about the organization?

16                PROSPECTIVE JUROR:  Not specifically.  Just that

17    it was a group of people and they called themselves Oath

18    Keepers and that -- perhaps that they were supporters of

19    Trump and that they were coming up for the 6th, January 6th

20    hearings -- not January 6th hearings.  January 6th for the

21    rally.

22                THE COURT:  Okay.  And you said that you

23    understand that the group, and perhaps even members of the

24    group, were coming to January 6th and -- presumably to

25    support the president, the former president.

```
 1              Does that fact, the fact that members of that
 2    group -- and you may hear the Defendants here were the
 3    supporters of the former president -- does that give you any
 4    pause in your ability to be a fair and impartial juror in
 5    this case?
 6              PROSPECTIVE JUROR:  Because they were supporters
 7    of Trump?
 8              THE COURT:  Correct.
 9              PROSPECTIVE JUROR:  No.
10              THE COURT:  And is there anything about the
11    organization that you've heard of, even their involvement --
12    alleged involvement in January 6th, does that give you any
13    reason to think you couldn't be fair and impartial in this
14    case?
15              PROSPECTIVE JUROR:  The only possibility is
16    because I was actually down near the Capitol on January 6th.
17    I was riding down the street.  And I remember being in Union
18    Station and I kept getting calls from family members that
19    told me to not go down there, but I had to drop off a car I
20    rented.
21              And when I was there, I remember being
22    uncomfortable.  And I was planning on riding around the
23    Capitol just to be nosy, but I ended up just leaving because
24    I didn't feel comfortable at the time.  So...
25              THE COURT:  Okay.  So let me ask you this:  What
```

1  you've described, that discomfort that you experienced on

2  the 6th, we've now -- you know, we're a year and a half

3  removed from that.  How, if at all, do you think that

4  discomfort that you experienced on that day would affect you

5  as a juror in this case if you were to serve?

6          PROSPECTIVE JUROR:  It could affect me because I

7  am usually not triggered or bothered, and I planned to ride

8  around.  I couldn't even ride around, what I was planning to

9  do.  I wasn't going to participate in that, but I was at

10  least going to ride down the street.

11          But I remember someone was -- this guy was pushing

12  this humongous speaker that belonged at a concert, but he

13  had it in the middle of the street.  And it was very loud.

14  And I remember I just turned and left and went home.

15  Normally, I would have --

16          THE COURT:  Do you think -- say, for instance,

17  there was -- if you were a juror and video of that day

18  played, as I expect will be the case.  There will be video

19  evidence in this case of the events of that day.

20          How do you think it would affect you and,

21  importantly, affect your view of these Defendants?

22          PROSPECTIVE JUROR:  I think it would bring back

23  what I saw when I went to Union Station.  And it was chaotic

24  at that point.  There was a lot of police around.  There

25  were people jumping around and screaming.  And I think I

1    would think about that.  And I will specifically remember

2    that guy pushing this huge speaker down.  I don't remember

3    what the speaker was saying, but it wasn't something good.

4                THE COURT:  Do you think you could put those

5    images and sounds out of your mind if you were selected?

6                PROSPECTIVE JUROR:  Probably not.  I have

7    tinnitus, and I -- that -- yeah.  I don't think so.  I --

8    because I was down there and I remember how I felt being

9    down there.

10                THE COURT:  Okay.  All right.  Any objection,

11    counsel?

12                MR. LINDER:  No objection.

13                MR. NESTLER:  No, your Honor.

14                THE COURT:  All right.  Ma'am, thank you very much

15    for your time and your service.

16                Mr. Douyon will walk you out of the courtroom and

17    provide you with additional instructions.

18                PROSPECTIVE JUROR:  Thank you.

19                (Thereupon, Prospective Juror No. 0576 retired

20    from the courtroom and the following proceedings were had:)

21                (Thereupon, Prospective Juror No. 1515 entered the

22    courtroom and the following proceedings were had:)

23                THE COURTROOM DEPUTY:  Your Honor, this is Juror

24    No. 1515.

25                THE COURT:  Ma'am, how are you?

```
 1                    PROSPECTIVE JUROR:  Hi.

 2                    THE COURT:  You're Juror 1515?

 3                    PROSPECTIVE JUROR:  I am.

 4                    THE COURT:  Feel free to remove your mask if you

 5      feel comfortable doing so.  Thank you for being here.  Thank

 6      you for completing your questionnaire.  It is in front of

 7      you.  I'm going to ask you some followup questions based on

 8      your answers to the questionnaire.

 9                    Can I ask you first to turn to Page 7,

10      Question 15.

11                    PROSPECTIVE JUROR:  Sure.  Yes.

12                    THE COURT:  You indicated there that your fiancé

13      is a fact check reporter for the Daily Caller.

14                    PROSPECTIVE JUROR:  He is.

15                    THE COURT:  Can you tell me whether your fiancé,

16      as part of his job, covers the events of January the 6th?

17                    PROSPECTIVE JUROR:  I couldn't really speak to it

18      in particular.  I don't -- we don't really speak about

19      either of our jobs.  If I had to guess, I would assume he

20      probably would, but I don't know in detail.

21                    THE COURT:  So you're guessing, but you don't

22      know?

23                    PROSPECTIVE JUROR:  Yes.  Correct.

24                    THE COURT:  And if you were seated as a juror, you

25      would be sworn not to discuss the facts of the case with
```

1    anyone, including your fellow jurors, let alone your fiancé.

2    Is that something you would have any trouble doing?

3              PROSPECTIVE JUROR:  No, sir.

4              THE COURT:  And do you know whether he has been

5    tasked -- regardless of what he's done in the past, do you

6    know whether he's been tasked to do any fact checking or

7    reporting about this case?

8              PROSPECTIVE JUROR:  I don't believe so.

9              THE COURT:  All right.  Do you have any reason to

10   think that he might have been?

11             PROSPECTIVE JUROR:  No, sir.

12             THE COURT:  All right.  Question 18 asks whether

13   you or a close friend or family member in the last five

14   years has attended a rally, protest, demonstration or march

15   of any type.  Can you tell us about that?

16             PROSPECTIVE JUROR:  Sure.  I've attended the March

17   for Life annually several years.  I also attended a march

18   two years ago for -- as part of the George Floyd protests.

19             THE COURT:  Okay.  So if you were to learn, as

20   part of this trial, that individuals here had different

21   political views than you, how do you think that would affect

22   your ability to be fair and impartial?

23             PROSPECTIVE JUROR:  I don't think so.  I encounter

24   people who have different views than me every day.

25             THE COURT:  Okay.  And if you were to come to the

1    conclusion that they actually had fairly strong views in

2    support of former President Trump, how would that affect

3    your ability to be fair and impartial?

4         PROSPECTIVE JUROR:  It wouldn't.

5         THE COURT:  You've indicated that you -- in

6    Question 20 that you or a close friend or family member was

7    living in Capitol Hill on January the 6th.  Can you tell us

8    about that?

9         PROSPECTIVE JUROR:  Yes.  So I lived on Capitol

10   Hill for several years, left in 2020, so -- moved to Navy

11   Yard.  But most of my friends still remained on the Hill.

12   So I have -- I don't know -- maybe ten or so close friends

13   living on the Hill.

14        THE COURT:  Okay.  And did you have concern for

15   their safety or well-being on January the 6th?

16        PROSPECTIVE JUROR:  I wouldn't say concern.  It

17   was more, I think, concern for their, like, emotional

18   welfare.  I knew they were physically safe.  But I think on

19   an emotional level -- I checked in with them to make sure

20   they were doing okay.

21        THE COURT:  Okay.  And have you spoken -- did you

22   speak to them after the 6th about the events of that day?

23        PROSPECTIVE JUROR:  Yes.

24        THE COURT:  And has it left any -- what, if any,

25   impact or impression have those conversations left on you?

1          PROSPECTIVE JUROR:  Just describing the impact in

2    general?  Yeah, I think, in general, living on the Hill and

3    having people who -- I think, in particular, especially for

4    myself, having -- I lived about a block from the Capitol

5    Building when I did live on the Hill.  And I think that

6    impression on me was -- just seeing something occur in my

7    neighborhood was very impactful on an emotional level.

8          THE COURT:  And were you living on the Hill at the

9    time or had you moved by that point?

10         PROSPECTIVE JUROR:  I had moved out six months

11   earlier.

12         THE COURT:  That's right.  You said in 2020.

13         PROSPECTIVE JUROR:  Yeah.

14         THE COURT:  Okay.  So let me ask you this.  So

15   there are going to be -- you know, obviously, the events --

16   this case concerns, in part, the events of January 6th.

17   There will be imagery shown and evidence about January 6th.

18   Do you think the fact that you lived on the Hill, your

19   friends lived on the Hill and -- so you have some

20   impressions of that day.  How do you think that would impact

21   your ability to be fair and impartial?

22         PROSPECTIVE JUROR:  I don't think it would impact

23   my ability to -- obviously, like, on an emotional level,

24   there is some impact.  But I don't think that would sway my

25   ability to judge based off of the facts of the case.

1           THE COURT:  Okay.  And so -- you know, these

2     Defendants are presumed to be innocent.  The Government's

3     job is to prove them -- the Government can prove their guilt

4     only if they meet a standard of proof beyond a reasonable

5     doubt.  If you were convinced that the Government had fallen

6     short of that standard, do you have any question in your

7     mind that you would be able to vote to acquit?

8           PROSPECTIVE JUROR:  No, sir.

9           THE COURT:  So I may not have asked -- I did not

10    ask you this.  If you would turn, please, to Page 11,

11    Question 46.

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  That question asks:  Have you read,

14    seen or heard anything about the Oath Keepers organization?

15    Can you tell us what you have read, seen or heard?

16          PROSPECTIVE JUROR:  Sure.  I haven't read in depth

17    about them, but I think in terms of just casual news kind of

18    perusal, the extent of my knowledge is basically what's --

19    to quote from a headline.

20          THE COURT:  Okay.  And what would you -- how would

21    you describe that?  If you could give us some content of --

22          PROSPECTIVE JUROR:  Okay.

23          THE COURT:  -- what knowledge you've retained.

24          PROSPECTIVE JUROR:  Sure.  I would just say, like,

25    a right-wing organization that was somehow involved during

1    the protests on January 6th.

2        THE COURT:  Okay.  And do you have any further

3    knowledge of to what extent they were involved in the

4    protests?

5        PROSPECTIVE JUROR:  I've read and heard that they

6    were somehow involved, like -- I don't -- I don't quite know

7    how to phrase it.  I read somehow that they were, like,

8    involved to a degree in kind of gathering people.  But other

9    than that, like, nothing further.

10       THE COURT:  Okay.  So you've said you had -- from

11   what you've read, you got this impression that they are,

12   quote-unquote, "right wing."  How would that affect your

13   ability to judge these Defendants, if at all, based on the

14   evidence that's presented?

15       PROSPECTIVE JUROR:  Based on the evidence

16   presented, not at all.

17       THE COURT:  And if the evidence was shown that was

18   different than what you have -- the impressions you've been

19   left with in the media, would you be open to hearing that

20   evidence and evaluating that evidence and sort of putting to

21   the side what you've learned previously?

22       PROSPECTIVE JUROR:  Yes.

23       THE COURT:  And if that evidence contradicted what

24   you have read previously, would you accept that evidence

25   over what you read previously?

1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Question 50 asks whether you have any

3      close -- well, before I get there, the prior -- Question 44

4      asks whether you had watched a portion of the congressional

5      hearings on January 6th.  Can you just tell us how much of

6      those hearings you followed?

7              PROSPECTIVE JUROR:  Sure.  I think I watched the

8      first one that was televised maybe in June.  And then I kind

9      of lost interest.  I didn't follow it afterwards.

10             THE COURT:  And do you recall -- based upon what

11     you saw or perhaps what you've read about other hearings, do

12     you recall any commentary or testimony about Oath Keepers?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Further up we asked you questions

15     about people whose names might come up as potential

16     witnesses.  You identified Alex Jones and Enrique Tarrio.

17     I'm certain that neither of them will be testifying.

18             You could hear Mr. Tarrio's name.  I don't know

19     whether it will come up or not.  I would expect that you

20     would -- Mr. Stone's name would actually come up.  So let me

21     just first ask, in terms of Mr. Stone, do you -- if the

22     evidence were to be that a Defendant had some association

23     with Mr. Stone, how would that -- what impression of that

24     Defendant would you have as a result of that association, if

25     any?

1          PROSPECTIVE JUROR:  My understanding is that

2    Mr. Stone is affiliated -- has been affiliated with

3    President Trump.  And to the extent that an association with

4    him means anything, I wouldn't know anything further.

5          THE COURT:  Okay.  And just to be clear, it's not

6    his association with President Trump; it's the association

7    with the Defendant in this case.

8          PROSPECTIVE JUROR:  Yeah.  I wouldn't know.

9          THE COURT:  You wouldn't draw any conclusions one

10   way or another based on that association alone?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  And Mr. Tarrio, if his name were

13   mentioned in this trial, do you think you would -- what

14   impression would you be left with if his name were mentioned

15   during the trial?

16         PROSPECTIVE JUROR:  I've heard his name.  I'm not

17   very familiar with him.  I've heard his name kind of in a

18   negative -- probably in a negative light in various news

19   coverage over the last year.

20         But again, I think I would be able to, as you

21   said, like, distinguish between what's presented at the

22   trial versus...

23         THE COURT:  Okay.  Questions 39 through 41 asked

24   you about news coverage.  You indicated that you've read or

25   seen a lot of news coverage.

```
1            Have you -- would you describe yourself as someone

2    who's been actively looking for stories and information

3    about January 6th?  Or you are just --

4            PROSPECTIVE JUROR:  No.  I'm mostly following

5    international news, actually.  But I think I answered -- I

6    was working from home that day and watched the live news

7    coverage.  So -- and then in proceeding months, you know, I

8    would watch it when it was on.  But nothing like...

9            THE COURT:  Okay.  And -- so your job as a juror

10   would be to put aside whatever you've seen or read in the

11   media.  Would you be able to do that in this case?

12           PROSPECTIVE JUROR:  Yes.

13           THE COURT:  Question 50 asked about your

14   connection with people who are in the legal field.  Can you

15   tell us about that?

16           PROSPECTIVE JUROR:  Sure.  I have an uncle who's

17   my godfather.  He's a defense attorney in Nashville,

18   Tennessee.

19           THE COURT:  Okay.  A criminal defense attorney

20   or --

21           PROSPECTIVE JUROR:  Criminal.

22           THE COURT:  And is there anything about your

23   relationship with him that would make you think you'd be

24   predisposed to defendants, for example?

25           PROSPECTIVE JUROR:  No.
```

```
 1                   THE COURT:  Or that would make you think you would
 2       be sort of prejudiced against the Government?
 3                   PROSPECTIVE JUROR:  No.
 4                   THE COURT:  Okay.  All right.  Mr. Linder?
 5                   MR. LINDER:  Good afternoon.  How are you?
 6                   PROSPECTIVE JUROR:  Hi.
 7                   MR. LINDER:  Thanks for coming down and spending
 8       your day with us --
 9                   PROSPECTIVE JUROR:  Thank you.
10                   MR. LINDER:  -- in this riveting environment.  And
11       thank you for filling out the form.
12                   You mentioned that you had seen some news
13       headlines about the Oath Keepers.
14                   PROSPECTIVE JUROR:  Uh-huh.
15                   MR. LINDER:  Was that -- and you said it was --
16       they were coming to D.C., or what you thought you saw, was
17       pre-January 6th.
18                   PROSPECTIVE JUROR:  Yes.
19                   MR. LINDER:  Do you remember anything other than
20       they were coming to participate in a rally or anything like
21       that?
22                   PROSPECTIVE JUROR:  No.
23                   MR. LINDER:  Okay.  Do you have any preconceived
24       ideas or notions about what their involvement was on
25       January 6th?
```

```
 1              PROSPECTIVE JUROR:  From the press coverage that
 2    I've seen, I have some -- like, I have some -- I associate
 3    them with January 6th.  But I wouldn't say I know anything,
 4    like, further than --
 5              MR. LINDER:  Okay.
 6              PROSPECTIVE JUROR:  -- they were somehow
 7    associated with it.
 8              MR. LINDER:  So you don't have any beliefs that
 9    they instigated it or did anything like that?
10              PROSPECTIVE JUROR:  No.
11              MR. LINDER:  Okay.  And you'd be open to hear
12    whatever evidence was presented --
13              PROSPECTIVE JUROR:  Yes.
14              MR. LINDER:  -- regarding the Oath Keepers?
15              PROSPECTIVE JUROR:  Yes.
16              MR. LINDER:  Thank you very much.
17              THE COURT:  Mr. Nestler?
18              MR. NESTLER:  Good afternoon, ma'am.
19              Have you thought about how you'd feel about
20    sitting in judgment of somebody else if you were a juror in
21    this case?
22              PROSPECTIVE JUROR:  Somewhat, yes.
23              MR. NESTLER:  How would you feel about that?
24              PROSPECTIVE JUROR:  I'm comfortable with it.  I
25    respect the judicial system and, you know, I believe it's my
```

 1   civic duty to judge people.

 2           MR. NESTLER:  And so if you sat as a juror and you

 3   found that the Government had met its burden to prove beyond

 4   a reasonable doubt one of the charges, you could feel

 5   comfortable finding somebody guilty?

 6           PROSPECTIVE JUROR:  Yes, sir.

 7           MR. NESTLER:  And the judge asked you earlier

 8   about your fiancé -- I think he works at something called

 9   the Daily Caller.

10           PROSPECTIVE JUROR:  Yes, sir.

11           MR. NESTLER:  What is that?

12           PROSPECTIVE JUROR:  So I believe it's a -- I mean,

13   we don't really talk about work, which sounds weird.  But I

14   believe -- I don't frequent their website, but I believe

15   it's a news media organization.  He actually works for a

16   subsidiary of it.

17           MR. NESTLER:  And I know you've now said twice you

18   think it's a little weird that you and your fiancé don't

19   talk about work.

20           PROSPECTIVE JUROR:  Yes.

21           MR. NESTLER:  Can you please explain what you mean

22   by that?

23           PROSPECTIVE JUROR:  Yeah.  Sure.  He sees his

24   responsibility as a journalist to kind of keep -- I don't

25   know -- we don't really talk about -- like, he takes it

1    seriously.  And we don't really talk about our roles.

2              MR. NESTLER:  Okay.  And so you haven't gone on

3    his company -- or this website where he works?

4              PROSPECTIVE JUROR:  No.  I don't frequent it at

5    all.

6              MR. NESTLER:  Okay.  What about, like, his

7    colleagues, go to work events --

8              PROSPECTIVE JUROR:  I don't -- no, sir.  I don't

9    know any of them.

10             MR. NESTLER:  Okay.  Thank you.

11             THE COURT:  All right, ma'am.  Thank you for your

12   time.

13             PROSPECTIVE JUROR:  Thank you.

14             THE COURT:  Mr. Douyon will walk you out of the

15   courtroom and provide you additional instructions.

16             PROSPECTIVE JUROR:  Thank you.

17             THE COURT:  Thank you, ma'am.

18             PROSPECTIVE JUROR:  Thank you.

19             (Thereupon, Prospective Juror No. 1515 retired

20   from the courtroom and the following proceedings were had:)

21             (Thereupon, Prospective Juror No. 0090 entered the

22   courtroom and the following proceedings were had:)

23             THE COURTROOM DEPUTY:  Your Honor, this is Juror

24   No. 0090.

25             THE COURT:  Hi, ma'am.  How are you?

```
 1                PROSPECTIVE JUROR:  I'm well.  How are you?
 2                THE COURT:  Good.  Thank you.
 3                You are Juror 0090.
 4                PROSPECTIVE JUROR:  Correct.
 5                THE COURT:  Please feel free to remove your mask.
 6    Thank you for being here and thank you for completing your
 7    questionnaire.  Your questionnaire should be there in front
 8    of you.
 9                PROSPECTIVE JUROR:  Yes.
10                THE COURT:  If I could please ask you first to
11    turn to Page 10, Question 37.
12                PROSPECTIVE JUROR:  Yes.
13                THE COURT:  We had asked you to identify any
14    people that you either know or recognize -- whose names you
15    might recognize as -- you know, these are folks who might be
16    witnesses or names you might hear.  And you identified
17    Officer Harry Dunn of the U.S. Capitol Police.
18                PROSPECTIVE JUROR:  Correct.
19                THE COURT:  Do you know Officer Dunn personally?
20                PROSPECTIVE JUROR:  I do.
21                THE COURT:  Okay.  And how well do you know him?
22                PROSPECTIVE JUROR:  We are in a few Facebook
23    groups together.  So we have, like, similar friends and we
24    are friends on Facebook.  But outside of that, not much more
25    personal than that.
```

1          THE COURT:  Okay.  And have you met him personally

2     or just through Facebook?

3          PROSPECTIVE JUROR:  I've seen him at group events.

4     I say hi.  But that's the extent.  Like, a hi, bye.  We're

5     cordial.

6          THE COURT:  Okay.  So I don't know whether Officer

7     Dunn is going to be called as a witness in this case or not.

8     He may be.

9          But if he were to be called as a witness in this

10    case, do you think you could view his testimony as you would

11    any other witness?

12         PROSPECTIVE JUROR:  I'm sorry.  Can you repeat

13    that?

14         THE COURT:  Do you think you could evaluate his

15    testimony as you would any other witness?

16         PROSPECTIVE JUROR:  I do believe I can do that,

17    sir.

18         THE COURT:  And so do you think the fact that you

19    know him primarily through a Facebook group, do you think

20    that would cause you to give his testimony more credibility

21    than perhaps some other witness?

22         PROSPECTIVE JUROR:  I do not believe that.

23         THE COURT:  And if, for example, there was

24    testimony or evidence that you thought contradicted what he

25    said on the witness stand, do you think you could find him

1   not to be a credible testifier?

2          PROSPECTIVE JUROR:  Where would that information

3   be coming from?

4          THE COURT:  Well, let me ask the question

5   differently.

6          So the question is this:  Say, hypothetically --

7   and I don't know if this would happen or not.  But say,

8   hypothetically, there was evidence in the case that

9   contradicted his testimony.

10          PROSPECTIVE JUROR:  Okay.

11          THE COURT:  Could you consider that evidence as --

12   in considering his credibility and his ability to testify

13   truthfully?  Do you have any preconceptions or notions of

14   him as a truthful person?

15          PROSPECTIVE JUROR:  I mean, I don't think my

16   interaction with him has been that extensive to be able to

17   say that.

18          THE COURT:  And can you just tell us what the

19   nature of the Facebook group is that you are in with him?

20          PROSPECTIVE JUROR:  There are a few.  It's mostly

21   young black professionals in this area.

22          THE COURT:  Sorry.  Young...

23          PROSPECTIVE JUROR:  Black professionals in this

24   area.

25          THE COURT:  Okay.  And do you have a sense of how

1      many people are in these groups that you are a part of?

2                  PROSPECTIVE JUROR:  A couple hundred.

3                  THE COURT:  A couple hundred?

4                  PROSPECTIVE JUROR:  Uh-huh.

5                  THE COURT:  And in order to be a member of the

6      group, do you have to be invited?  Can anyone who's

7      interested sign up?

8                  PROSPECTIVE JUROR:  That's a good question.  I'm

9      actually not sure.  I've been in them for a few years now.

10     So I don't even remember the -- like, the criteria for

11     joining.

12                 THE COURT:  Okay.  And do you remember how long --

13     was Officer Dunn already a member of these Facebook groups

14     when you joined?  Or did he join after you?

15                 PROSPECTIVE JUROR:  I'm not sure.

16                 THE COURT:  Not sure?  Okay.

17                 While we're on the page, Questions 39, 40 and

18     41 -- one more question:  Are you aware that Officer Dunn

19     was on -- was at -- was on Capitol Hill and at the Capitol

20     on January the 6th?

21                 PROSPECTIVE JUROR:  I am aware of that.

22                 THE COURT:  And the fact that he was there and the

23     fact that you know him, would that affect your ability to be

24     fair and impartial to these Defendants in this case?

25                 PROSPECTIVE JUROR:  I do not think it will affect

```
 1        my impartiality.

 2               THE COURT:  All right.  Question 39, 40, 41

 3        concern news coverage to which you've been exposed.  Let me

 4        ask you, are you someone who has sort of actively sought out

 5        information about the events of January the 6th or would you

 6        say it's the kind of thing that you have read or seen if it

 7        happened -- you happened to come across it?

 8               PROSPECTIVE JUROR:  I have not sought any

 9        information out.  It's just kind of, if you're watching the

10        news, it's on there.

11               THE COURT:  Okay.

12               PROSPECTIVE JUROR:  So that's how I've received

13        information, as well as through social media.

14               THE COURT:  Okay.  And so do you primarily get

15        your news, it sounds like, from television or social media?

16               PROSPECTIVE JUROR:  Correct.

17               THE COURT:  And Question 42 asks whether you're

18        following anybody on a social media platform who regularly

19        posts or comments about January 6th.  Can you tell us who

20        that person is?

21               PROSPECTIVE JUROR:  That would be Officer Harry

22        Dunn.

23               THE COURT:  I'm sorry?

24               PROSPECTIVE JUROR:  That would be Officer Dunn.

25               THE COURT:  Oh, it would be Officer Dunn.
```

1          PROSPECTIVE JUROR:  Yes.  We're in the groups

2     together and we are Facebook friends.

3          THE COURT:  Okay.  And does he regularly post on

4     Facebook about the events of that day?

5          PROSPECTIVE JUROR:  Not regularly.  But he has.

6          THE COURT:  Okay.  And you've read those posts?

7          PROSPECTIVE JUROR:  I've seen them previously.

8          THE COURT:  And how -- what impact, if any, have

9     those posts had on you?

10          PROSPECTIVE JUROR:  Not much impact, I would say.

11     I mean, I'm pretty much a scroller.  Social media is a part

12     of my job, so I'm on social media all the time.

13          THE COURT:  Okay.

14          PROSPECTIVE JUROR:  But not much extent past that.

15          THE COURT:  Okay.  Question 44 asks whether you

16     attended, viewed or listened to any portion of any

17     congressional hearing or event -- excuse me -- any portion

18     of the congressional hearing.

19          Can you just tell us the extent to which you have

20     followed those hearings?

21          PROSPECTIVE JUROR:  I came home one night after an

22     event and it was on the news and so -- it was pretty much

23     the only thing on TV that night.  And so --

24          THE COURT:  Other than that one episode, have you

25     followed it in any other way?

1            PROSPECTIVE JUROR:  No.

2            THE COURT:  To the extent that you have any

3  recollection of this, do you remember any coverage or

4  anything that you learned or heard about from those hearings

5  concerning Oath Keepers either being testified about or

6  commented on?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  Page 7:  Question 19 asks whether

9  you've ever been on the Capitol grounds or inside the

10  Capitol Building.  Can you tell us in what way you have --

11  how you were on the Capitol grounds or Capitol Building and

12  when?

13            PROSPECTIVE JUROR:  Sure.  I've lived in D.C. for

14  few years.  I've done a tour of it.  I also was a safety

15  patrol in middle school and came to D.C., like most safety

16  patrols did back in the day, and had a tour of the Capitol.

17            THE COURT:  Okay.  One more -- is your

18  relationship with Officer Dunn such that if he were to come

19  in and testify in this case, would he recognize you?

20            PROSPECTIVE JUROR:  I believe he would recognize

21  me, sir.

22            THE COURT:  Okay.  And just -- again, if he were

23  to testify, are there any doubts in your mind or do you have

24  any reservations about assessing his credibility in the same

25  way that you would assess the credibility of any other

```
 1    witness called in the case?

 2             PROSPECTIVE JUROR:  I have no reservations about

 3    it.

 4             THE COURT:  No reservations at all?

 5             PROSPECTIVE JUROR:  No.

 6             THE COURT:  All right.  Any questions from the

 7    defense?

 8             MR. FISCHER:  Good afternoon, ma'am.

 9             PROSPECTIVE JUROR:  Good afternoon.

10             MR. FISCHER:  First of all, thank you for being

11    here and filling out the forms and spending your afternoon

12    with us.  I guess all day with us.

13             PROSPECTIVE JUROR:  Yes.

14             MR. FISCHER:  So just some questions.

15             In this particular case, you're probably aware

16    that the general allegation that's being made against the

17    Defendants is that by force they tried to stop Joe Biden

18    from becoming the president of the United States.  Are you

19    aware of that?

20             PROSPECTIVE JUROR:  I am aware of that.

21             MR. FISCHER:  Knowing that, knowing that that is

22    the allegation, is that going to make it difficult for you

23    to be fair and impartial?

24             PROSPECTIVE JUROR:  I don't think that will make

25    it difficult for me to be fair and impartial.
```

1          MR. FISCHER:  And along those lines, you can

2     probably imagine that there's going to be evidence that one

3     or more of the Defendants were avid supporters of former

4     President Donald Trump.  Can I ask you, what is your general

5     opinion of people who support Donald Trump?

6          PROSPECTIVE JUROR:  I think, first of all, when it

7     comes to political beliefs, that people are entitled to

8     believe what they believe.  So I have strong beliefs about

9     what I believe and I respect people and their beliefs -- and

10     what they believe.

11          MR. FISCHER:  Okay.

12          PROSPECTIVE JUROR:  That doesn't affect my

13     personal life.

14          MR. FISCHER:  Sure.

15          But do you have anything -- any specific

16     impressions?  I mean, I'll just put it this way:  If

17     somebody came from a foreign country and knew nothing about

18     the United States and they came up to you and said:  Hey,

19     you know, these Donald Trump supporters, can you tell me

20     about them?  Should I hang out with them?  What would you --

21     what would you say about them?

22          PROSPECTIVE JUROR:  I probably would just not

23     answer their question and walk away.  But I would say, I

24     think it's best for you to do your own research and form

25     your own opinion about it.

1          MR. FISCHER:  Fair enough.

2          And Officer Harry Dunn -- so if I were to tell you

3    in this case that there could be evidence that -- basically,

4    that there could be a dispute between testimony given by

5    Officer Dunn and testimony given by -- or -- by or on behalf

6    of one or more of the Defendants, would you have perhaps a

7    little bit of a bias towards Officer Dunn, being that you're

8    Facebook friends with him?

9          PROSPECTIVE JUROR:  I do not believe that I will

10   have a bias towards Officer Dunn.  I believe that I can

11   evaluate everything impartially.

12         MR. FISCHER:  Okay.  And the things he's posting,

13   is -- Officer Dunn, is he posting political-type stuff on

14   the Facebook page?

15         PROSPECTIVE JUROR:  No.  He's had some press

16   opportunities since the events of January 11th [sic], so

17   that's usually what he's posting about.

18         MR. FISCHER:  Okay.  Ma'am, how long have you

19   lived in the District for?

20         PROSPECTIVE JUROR:  I've lived in the District of

21   Columbia for a total of 12 years, but consecutively for the

22   past eight years.  I went to college here, left and then

23   came back.

24         THE COURT:  Okay.  And where are you originally

25   from?

```
 1                 PROSPECTIVE JUROR:  I'm from Atlanta, Georgia.

 2                 MR. FISCHER:  Okay.  Great.  So ma'am, you have to

 3      understand, none of the attorneys here -- we don't know you.

 4      So can you give us your word, both sides, that you will do

 5      your best if you're picked as a juror to be fair and

 6      impartial?

 7                 PROSPECTIVE JUROR:  Uh-huh.

 8                 THE COURT REPORTER:  I'm sorry.  Could you answer

 9      for me audibly?

10                 PROSPECTIVE JUROR:  Oh, yes.  Sorry about that.

11                 MR. FISCHER:  Thank you, ma'am.  I appreciate it.

12                 THE COURT:  Thank you, Mr. Fischer.

13                 Mr. Nestler, any -- hang on.

14                 Mr. Geyer?

15                 MR. GEYER:  Good afternoon.  Thank you for filling

16      out the questionnaire and spending your day with us in this

17      majestic courtroom, ceremonial courtroom.  I wanted to ask

18      you few questions, if I could --

19                 PROSPECTIVE JUROR:  Sure.

20                 MR. GEYER:  -- about your experience on Facebook

21      and your relationship with a police officer that I believe

22      you identified as Police Officer Dunn.

23                 PROSPECTIVE JUROR:  Correct.

24                 MR. GEYER:  How long have you been on Facebook?

25                 THE COURT:  You don't have to answer that.
```

1          PROSPECTIVE JUROR:  It's been a while.

2          MR. GEYER:  A while.  A long time.

3          When did you become friends with -- when did you

4     befriend Officer Dunn?

5          PROSPECTIVE JUROR:  I honestly don't recall.  I

6     would think maybe around 2017, '18, but I honestly don't

7     know.

8          MR. GEYER:  So some years before January 6th?

9          PROSPECTIVE JUROR:  Correct.

10          MR. GEYER:  And you mentioned that you were on --

11     was it two news groups with him?

12          PROSPECTIVE JUROR:  We're in, like, social groups

13     together.

14          MR. GEYER:  What are the names of the news groups,

15     if you don't mind me asking?

16          THE COURT:  Just to be clear, Mr. Geyer, it's not

17     news groups; they're social groups.

18          MR. GEYER:  Social groups.

19          PROSPECTIVE JUROR:  Yes.

20          MR. GEYER:  Thank you, your Honor.

21          PROSPECTIVE JUROR:  So a lot of the groups have,

22     like, evolved and broken off into other groups.  So off the

23     top of my hand, one is called Wyldfyre, W-Y-L-D -- I think

24     fyre is also spelled with a Y.  Another one was called

25     Southern Vibes in the DMV.  It was for southerners who have

633

```
 1    moved to this area.

 2              MR. GEYER:  Of the DMV?

 3              PROSPECTIVE JUROR:  Uh-huh.

 4              MR. GEYER:  Delta, Mary, Victor?

 5              PROSPECTIVE JUROR:  D.C., Maryland, Virginia.

 6              MR. GEYER:  Oh, okay.  It's been a while since

 7    I've --

 8              PROSPECTIVE JUROR:  Yeah.  There's another one --

 9    a few other ones, DMV Social and DMV Gov.

10              MR. GEYER:  Okay.  Professional organizations?

11              PROSPECTIVE JUROR:  They're made up of

12    professional people, but there are social and professional

13    opportunities and discussions that happen in the groups.

14              MR. GEYER:  And when January 6th happened, was he

15    or others posting about the day on any of those news groups

16    that you recall?

17              PROSPECTIVE JUROR:  I honestly don't recall on the

18    actual day.  I was in the office working on a project, and

19    so I was pretty -- I had, like, tunnel vision.  I was in the

20    zone working.  And so I wasn't on social media that day.

21              MR. GEYER:  Okay.  Within the scope of your

22    relationship, to the extent, you know, you have a

23    relationship on Facebook, do you communicate with him

24    directly by Messenger?

25              PROSPECTIVE JUROR:  I feel like maybe once we've
```

```
1    DM'd each other.  But not anything regular, not anything

2    recent.

3              MR. GEYER:  Okay.  Have you ever met him in

4    person?

5              PROSPECTIVE JUROR:  I have met him in person.

6              MR. GEYER:  Where did you meet him in person?

7              PROSPECTIVE JUROR:  These groups host events for

8    people to meet.  And so we showed up at events.

9              MR. GEYER:  And did those meetings, those personal

10   one-on-one meetings, occur prior -- did they begin prior to

11   January 6th?

12             PROSPECTIVE JUROR:  Yes.  And they are not

13   personal one-on-one meetings.  They were group events.

14             MR. GEYER:  Well, within a group?

15             PROSPECTIVE JUROR:  Yeah.  So there would be

16   anywhere from 20 to 50 to 100 people, depending on what the

17   event was.

18             MR. GEYER:  Okay.  And I guess since -- I mean,

19   his account was well-documented in the media, I would say.

20   And he's probably recognized, I would think, as somebody who

21   acted commendably on January 6th.

22             Is it fair to say that during these meetings in

23   mixed company that this would be a topic of conversation?

24             PROSPECTIVE JUROR:  It might be.  But as I

25   previously stated to the judge, we're just cordial.  We're
```

1    on a hi/bye basis.  I'm not sitting down having deep

2    conversations with him.

3              MR. GEYER:  I'm actually going to use that

4    expression.  Thank you for that, ma'am.

5              No more questions, your Honor.  Thank you.

6              THE COURT:  Hi and bye, Mr. Geyer.  Hi and bye.

7              Mr. Nestler, any questions?

8              MR. NESTLER:  Just very briefly.

9              What do you do for a living again, ma'am?

10             PROSPECTIVE JUROR:  I am in marketing

11   communications and I work at an independent school in the

12   city.

13             MR. NESTLER:  We talked a lot about your Facebook

14   habits.  If you were seated as a juror in this case, would

15   you be able to modify your habits such that you weren't

16   coming across Officer Dunn or anyone else on Facebook, like,

17   blocking certain people or not being part of certain groups?

18             PROSPECTIVE JUROR:  Absolutely.  Most of my time

19   spent on social media is during business hours, because it's

20   a part of my job as a marketing and communications

21   professional.  But if I'm here in the juror -- as a juror, I

22   wouldn't be on Facebook all day.

23             MR. NESTLER:  All day long.

24             Thank you, ma'am.

25             PROSPECTIVE JUROR:  You're welcome.

1    THE COURT:  To that point, ma'am, if you were

2    instructed either to temporarily withdraw from the group if

3    you were selected, or not participate in the group -- that

4    is, not even view what was happening in the group -- would

5    that be an instruction you could follow?

6    PROSPECTIVE JUROR:  Absolutely.  I would say my

7    activity in the group is pretty minimum since COVID has

8    happened anyway.  I don't really go to events anymore.

9    THE COURT:  And so not being active in a group or

10   monitoring a group would not affect you personally or

11   professionally?

12   PROSPECTIVE JUROR:  It would not affect me

13   personally or professionally.

14   THE COURT:  Thank you very much, ma'am.

15   PROSPECTIVE JUROR:  Thank you.

16   THE COURT:  Mr. Douyon will show you out of the

17   courtroom and provide you additional instructions.

18   (Thereupon, Prospective Juror No. 0090 retired

19   from the courtroom and the following proceedings were had:)

20   THE COURT:  Okay.  It is now 3:25.  Let's take

21   about 15 minutes.  Let's come back -- I'm sorry -- 3:35.

22   Let's come back a little after 3:50 and we'll get started

23   and go to the end of the day.

24   Just to tally up where we are, we're actually at a

25   bit of a milestone.  We've gone through our first 50

 1    selected jurors.  Combined with the strikes that we already

 2    had -- combined with the jurors we had already stricken

 3    prior to voir dire, plus those that we have stricken in the

 4    course of the past day and three-quarters, I have 29

 5    qualified.  So we're batting about .600.  It's not bad.

 6              MR. LINDER:  This is a scheduling event.

 7              THE COURT:  Oh, scheduling.  Okay.  Thank you,

 8    everybody.

 9              (Thereupon a recess was taken, after which the

10    following proceedings were had:)

11              THE COURT:  Please be seated.

12              THE COURTROOM DEPUTY:  Please be seated, everyone.

13              THE COURT:  Mr. Crisp.

14              MR. CRISP:  Before we brought in another juror, I

15    wanted to raise an objection as to the prior one, so I

16    figured I would save time here.

17              THE COURT:  I think Mr. Geyer did as well.  You

18    mean the prior juror?

19              MR. CRISP:  Yes, your Honor.

20              THE COURT:  Okay.

21              MR. CRISP:  The prospective.  Yes.  I don't want

22    to get ahead of ourselves.

23              THE COURT:  Okay.

24              MR. CRISP:  The challenge is going to be based on

25    the idea -- so the Court may not be aware that Officer Harry

1    Dunn -- I didn't want to get into this too far.  Officer

2    Dunn -- in speaking with the Government -- and the

3    Government can certainly correct any misstatement.  But

4    there's still a good likelihood he may be, you know, be a

5    witness either as -- from a Government or a defense

6    perspective.

7            But Officer Dunn's role at one point was alleged

8    to have been involved in a weapons-related incident in the

9    Capitol.  There was an allegation that he had drawn on

10   protesters at one point and that members of the Oath Keepers

11   were involved in talking him down, so to speak.  There was

12   an interview in which Officer Dunn denied that recitation of

13   events.

14           But certainly it was and has been a discussion of

15   a significant portion of the role that some of the members

16   of the Oath Keepers played.

17           So obviously, it may become relevant and there may

18   be questions about that attacking his credibility.

19           So the fact that she -- you know, while she noted

20   that she didn't read what was posted, she's certainly aware

21   that he's posting about it, so she read enough of his posts

22   to be aware that he was involved and that he was talking

23   about it.

24           So I think, from an objective assessment of her

25   ability to be fair and impartial with an officer who may

1    have a significant role in this process, I would move to

2    strike her for cause.

3            THE COURT:  Mr. Geyer, do you want to add anything

4    more?

5            MR. GEYER:  I think I can just join, your Honor.

6    Thank you very much.

7            THE COURT:  Thank you, Mr. Geyer.

8            Look, you know, it is not disqualifying that

9    somebody merely knows a witness.  You know, it's a matter of

10    degree, it seems to me, importantly, what the person's

11    actual relationship is.  All of us asked her in some great

12    detail what the nature of their relationship was.  And she

13    effectively said that they were Facebook friends, that they

14    were part of a large group of people who -- of urban

15    professionals -- or professionals in the D.C. area, I should

16    say -- who were part of these Facebook groups in which there

17    were, I think she said, 100 to 200 people.

18            You know, she was repeatedly asked how many times

19    she had met him, and she said she had met him, but only as

20    part of a large group.  And importantly, you know, when

21    asked, I think in multiple different ways, whether she could

22    impartially assess his testimony, I think she was quite

23    clear and firm -- you know, I didn't detect any waver or

24    hesitation in her tone, or doubt, that she could view his

25    testimony just in the same way she would anybody else's

1    testimony.

2            So, you know, if I had any hint that their

3    relationship was anything more than, you know, Facebook

4    friends or that she would have some difficulty assessing his

5    credibility if he's called to testify, I would have very

6    quickly sought to excuse her.  But I just didn't detect any

7    of that.

8            And, you know, in this era of social media, it's

9    hardly surprising that people have at least sort of online

10   relationships that are relationships, but not terribly close

11   ones.  And I think that's what she described.

12           So I'll deny the strike for cause.

13           Let's bring in -- quickly -- we're going to bring

14   in 1443 and then 1034.

15           And then, JC, who are we bringing in after that?

16           THE COURTROOM DEPUTY:  After that, we're calling

17   in Juror No. 1051.

18           THE COURT:  Okay.  So Line 68 -- 69 will be the

19   third person we call in.  That person has a scheduling

20   issue, and so we're just bringing her in out of turn.

21           (Thereupon, Prospective Juror No. 1443 entered the

22   courtroom and the following proceedings were had:)

23           THE COURTROOM DEPUTY:  Your Honor, this is Juror

24   No. 1443.

25           THE COURT:  Ma'am, how are you?

1          PROSPECTIVE JUROR:  Good.

2          THE COURT:  Thank you for your patience today.  I

3   know it's been a long day.  Thank you for your service and

4   for completing your questionnaire.

5          If you're comfortable removing your mask, feel

6   free to do so.  Your questionnaire should be in front of

7   you.

8          If you would please turn to Page 11 of the

9   questionnaire and turn to Question 46 in particular.

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  So that question asked:  Have you

12   read, seen or heard anything about the Oath Keepers

13   organization?

14          So can you tell us what you have read, seen or

15   heard about the organization?

16          PROSPECTIVE JUROR:  Okay.  I'll try, with the

17   disclaimer that you'll have to forgive me if I'm not

18   focusing specifically on something; I don't always recall

19   the exact details.  But I know that I've heard about them

20   for some time, like, they've been around.  It's not just,

21   like, a Trump MAGA thing.  I think they're what would be

22   called constitutional conservative and maybe a militia.

23   Maybe Christian.  Probably Christian.

24          I think the most extensive thing I've read -- it

25   wasn't too long ago, and it was about the gentleman with the

```
 1    patch.  I remember his -- it was, like, a tweet thread or

 2    something about he sounded like a -- what's it called?  Like

 3    he had a bunker in his backyard and he was stockpiling food.

 4    Doomsday --

 5                 MR. FISCHER:  Prepper.

 6                 PROSPECTIVE JUROR:  -- prepper, yes.  That's what

 7    I remember.

 8                 THE COURT:  So let's stick with the organization

 9    first and foremost.  So other than these general notions

10    of -- I think you said the word "militia" -- do you know

11    anything more specific about the group or do you believe you

12    know anything more specific about the group, including sort

13    of its mission, in particular, its role on January the 6th?

14                 PROSPECTIVE JUROR:  You know what?  I just

15    remembered.  I actually do know on January 6th they're the

16    ones in the -- I think they're the ones in the picture in

17    the line in the uniforms going up the stairs.  That's what I

18    know.

19                 THE COURT:  Okay.

20                 PROSPECTIVE JUROR:  And I know they've been

21    charged with seditious conspiracy, but I'm not exactly sure

22    what, you know, underlies that.

23                 THE COURT:  So having read what you read and

24    the -- whatever impression it has left upon you, we don't

25    expect jurors to come in and not have read anything about a
```

 1    case.  But what we ask jurors is that they are able to put

 2    that aside and indicate they are -- they could view the

 3    evidence in this case fairly and impartially.

 4         Do you think you would be able to do that?

 5         PROSPECTIVE JUROR:  Uh-huh.  Yes.

 6         THE COURT:  And importantly, would you be able to

 7    set aside these things that you have read about the

 8    organization and consider the evidence as it's been

 9    presented in this case?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  The organization itself is not on

12    trial.  However, these Defendants are alleged to either be

13    part of or affiliated with the organization.  Would you have

14    any trouble --

15         MR. FISCHER:  (Indicating.)

16         THE COURT:  What?

17         MR. NESTLER:  The parties have no objection if

18    your Honor would like --

19         THE COURT:  Okay.

20         THE COURT REPORTER:  I'm sorry.  I didn't hear

21    that.

22         MR. NESTLER:  I said the parties have no

23    objection, if your Honor would like.

24         THE COURT:  Okay.  Fine.

25         Would you have any trouble in the ability to be

1    fair and impartial?

2           PROSPECTIVE JUROR:  Would I have any trouble with

3    that?  No.

4           THE COURT:  Can I just ask you all to come up

5    quickly for a moment.

6           Ma'am, can I just ask you to step down for one

7    moment.

8           THE COURT REPORTER:  Judge, the headphones aren't

9    working.

10           THE COURT:  This doesn't have to be on the record.

11           (Discussion had off the record between the Court

12    and counsel.)

13           THE COURT:  Ma'am, why don't you come on back.

14           PROSPECTIVE JUROR:  (Complies.)

15           THE COURT:  So we are going to dismiss you for the

16    day.

17           PROSPECTIVE JUROR:  Okay.

18           THE COURT:  And Mr. Douyon will show you out of

19    the courtroom and provide you with further instructions.

20    Thank you very much.

21           PROSPECTIVE JUROR:  Do I leave this here?

22           THE COURT:  Yes.  Please leave your questionnaire

23    there.

24           (Thereupon, Prospective Juror No. 1443 retired

25    from the courtroom and the following proceedings were had:)

```
 1              (Thereupon, Prospective Juror No. 1034 entered the
 2     courtroom and the following proceedings were had:)
 3              THE COURTROOM DEPUTY:  Your Honor, this is Juror
 4     No. 1034.
 5              THE COURT:  Ma'am, good afternoon.
 6              PROSPECTIVE JUROR:  Thank you.
 7              THE COURT:  How are you?
 8              PROSPECTIVE JUROR:  Good.  How are you?
 9              THE COURT:  Good.  Thank you first for your
10     patience.  I know it's been a long day.  I appreciate it.
11     Thank you for your service today and for completing the
12     questionnaire.
13              If you are comfortable removing your mask, feel
14     free to do so.
15              You are Juror 1034.  Is that right?
16              PROSPECTIVE JUROR:  Yes.
17              THE COURT:  Can we start -- the questionnaire is
18     before you.  If you wish to open it up to Page 6,
19     Question 14, that question asks whether you or a close
20     family friend -- close friend or family member have ever
21     been employed by the Federal Government.
22              Can you tell us about that?
23              PROSPECTIVE JUROR:  I have a few friends that work
24     for the Federal Government.  One works for NAVSEA, which
25     buys submarines for the Navy.  And another works for HUD.
```

1              THE COURT:  So am I correct in assuming that none

2    of your close friends or family members who work for the

3    Federal Government are associated with law enforcement?

4              PROSPECTIVE JUROR:  Correct.

5              THE COURT:  Question 18 asks whether you, a close

6    friend or family member have attended a rally, protest,

7    demonstration or march in the last five years.  Could you

8    tell us about that?

9              PROSPECTIVE JUROR:  Sure.  I have a number of

10   close friends that have attended women's marches.

11             THE COURT:  Okay.  And have you attended any of

12   those marches yourself?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  And so if you were to learn in this

15   case that the Defendants might have political views

16   different than maybe you and maybe your friends, how do you

17   think that would affect your ability to be a fair and

18   impartial juror?

19             PROSPECTIVE JUROR:  I don't think it would affect

20   my ability.

21             THE COURT:  And so if you were to learn, even more

22   precisely, that the Defendants in this case were supporters

23   of the former president, would you still be able to be fair

24   and impartial to these Defendants?

25             PROSPECTIVE JUROR:  Yes.

1        THE COURT:  You've indicated in Question 19 you've

2    been on the Capitol grounds or inside the Capitol Building.

3    Can you tell us when you've been inside the Capitol Building

4    or on the grounds?

5        PROSPECTIVE JUROR:  I did a tour of the Capitol

6    Building with my grandparents and parents.  That's it.

7        THE COURT:  And so if you were selected as a juror

8    in this case, I would expect that, you know, there will be

9    evidence about the Capitol grounds, inside of the Capitol

10   Building.  Would you be able to set aside what you recall

11   from your tour and focus only on the evidence in the case?

12       PROSPECTIVE JUROR:  Yes.

13       THE COURT:  Question -- Page 10 asks a series of

14   questions that was designed to understand how much news and

15   how much video you've digested about the events of January

16   the 6th.

17       You indicated some videos and some news coverage.

18   Can I ask you, to the extent that you've seen news coverage

19   and videos of the events of that day, is it something that

20   you have actively sought out to read and understand or

21   something that, if it comes across your screen, that you'd

22   read?

23       PROSPECTIVE JUROR:  I would say more so if it

24   comes across my screen.  You know, I think I put in here

25   that I listen to The Daily, and there was a podcast on The

1    Daily.  So I tend to listen to all of those.

2            THE COURT:  And do you recall whether The Daily

3    has had any podcasts about the Oath Keeper group?

4            PROSPECTIVE JUROR:  I do not recall.

5            THE COURT:  And do you have any -- we had asked

6    this question, whether you had read, seen or heard anything

7    about the Oath Keepers organization.  Let me just ask that

8    once more.  Have you heard in any respect about an

9    organization known as Oath Keepers?

10           PROSPECTIVE JUROR:  I don't believe so.

11           THE COURT:  With respect to the media question

12   again, your job as a juror would be to -- we would ask you

13   to put aside anything that you've read or seen about the

14   events of January the 6th.  Would you be able to set aside

15   what you've seen and read and evaluate the evidence as it's

16   presented only in this case?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  And if the evidence was contrary to

19   what you'd read or seen, would you have an open enough mind

20   to come to a different conclusion?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Question 50 asks whether you have

23   close friends, family members or you yourself are in the

24   legal field.  Can you tell us about that?

25           PROSPECTIVE JUROR:  I have a number of friends

1    that are lawyers.  I also work for lawyers.  So I checked

2    "yes."

3                THE COURT:  And do any of those lawyers do

4    criminal work, either as prosecutors or defense lawyers?

5                PROSPECTIVE JUROR:  No.

6                THE COURT:  And are you yourself a lawyer, ma'am?

7                PROSPECTIVE JUROR:  I am not.

8                THE COURT:  All right.  Question 54 asks whether

9    you or a close friend or family member has ever been the

10   victim of a crime.  And if your answer is one that is

11   personal, we can take it in a more private setting.

12               PROSPECTIVE JUROR:  I was probably very literal

13   with this question.  I was in a hit-and-run.  That's it.

14               THE COURT:  Okay.  That's fine.

15               And is that something that happened in the

16   District of Columbia or elsewhere?

17               PROSPECTIVE JUROR:  It was in the District of

18   Columbia.

19               THE COURT:  And did you report that to the police?

20               PROSPECTIVE JUROR:  I did.

21               THE COURT:  Did anybody -- was anybody arrested as

22   a result of that?

23               PROSPECTIVE JUROR:  No.

24               THE COURT:  Is there anything about your

25   interaction with the Metropolitan Police Department, either

1    positive or negative, that might affect your ability as a

2    juror in this case?

3                  PROSPECTIVE JUROR:  No.

4                  THE COURT:  And you will be instructed as a juror

5    that the testimony of a law enforcement officer should be

6    given the same weight -- sorry.  The testimony of a law

7    enforcement officer should be given no greater or lesser

8    weight than that of any other witness.  Could you follow

9    that instruction?

10                  PROSPECTIVE JUROR:  Yes.

11                  THE COURT:  And I know you've indicated on your

12   questionnaire that, because of your work, it would present

13   somewhat of a hardship.  You'll forgive me and understand

14   that a lot of people come in and have professional

15   obligations.

16                  PROSPECTIVE JUROR:  I understand.

17                  THE COURT:  And absent extraordinary

18   circumstances, I really don't release people for that

19   reason.

20                  PROSPECTIVE JUROR:  I understand.

21                  THE COURT:  So I appreciate you letting us know,

22   but unfortunately, it won't relieve you from potential jury

23   duty.  Okay?

24                  PROSPECTIVE JUROR:  Okay.

25                  THE COURT:  Any followup?

```
 1                    MR. FISCHER:  Just briefly.
 2                    Ma'am, first of all, thanks for being here this --
 3          all day, I should say, not this afternoon -- all day, and
 4          filling out the forms.
 5                    Can I ask you, without telling me who your
 6          employer is, but what type of -- specific type of work do
 7          you do?
 8                    PROSPECTIVE JUROR:  I do litigation consulting for
 9          large banks.  Any large banks that are sued, they may call
10          us and we'll do the data analytics for those cases.
11                    MR. FISCHER:  And about how long have you held
12          that job for?
13                    PROSPECTIVE JUROR:  Since 2008.  So 12 years --
14          14.
15                    MR. FISCHER:  Are you from the District of
16          Columbia?
17                    PROSPECTIVE JUROR:  I am not.
18                    MR. FISCHER:  How long have you lived here for?
19                    PROSPECTIVE JUROR:  14 years.
20                    MR. FISCHER:  Okay.  Where are you originally
21          from?
22                    PROSPECTIVE JUROR:  North Carolina.
23                    MR FISCHER:  Okay.  Can you think of any reason
24          why you couldn't be fair and impartial to the Defendants in
25          this case?
```

```
 1              PROSPECTIVE JUROR:  No.

 2              MR. FISCHER:  All right.  I have nothing else,

 3    your Honor.

 4              Thank you, ma'am.

 5              THE COURT:  Thank you, Mr. Fischer.

 6              Mr. Nestler?

 7              MR. NESTLER:  I have no questions, your Honor.

 8    Thank you.

 9              THE COURT:  Ma'am, thank you very much for your

10    time today.  Mr. Douyon will show you out the courtroom and

11    provide additional instructions.

12              PROSPECTIVE JUROR:  Thank you.

13              THE COURT:  Thank you, ma'am.

14              PROSPECTIVE JUROR:  Thank you.

15              (Thereupon, Prospective Juror No. 1034 retired

16    from the courtroom and the following proceedings were had:)

17              (Thereupon, Prospective Juror No. 1052 entered the

18    courtroom and the following proceedings were had:)

19              THE COURTROOM DEPUTY:  Your Honor, this is Juror

20    No. 1051.

21              THE COURT:  Hello.  How are you?

22              PROSPECTIVE JUROR:  Good to see you.

23              THE COURT:  Likewise.

24              PROSPECTIVE JUROR:  Do I keep my mask on?

25              THE COURTROOM DEPUTY:  No.  You can take it off.
```

```
 1                  (The Court confers with the courtroom deputy

 2      privately.)

 3                  THE COURT:  Sorry, ma'am.  If you would just bear

 4      with me for a moment.

 5                  You're Juror 1051?

 6                  PROSPECTIVE JUROR:  Yes.  That's correct.

 7                  THE COURT:  All right.  So --

 8                  PROSPECTIVE JUROR:  Sorry I have to go out of

 9      order.  I appreciate your --

10                  THE COURT:  That's okay.  It's all right.

11                  Let's start -- first of all, thank you for waiting

12      the full day.  Thank you for completing your questionnaire

13      and your service.

14                  Your juror questionnaire should be in front of

15      you.  Could I ask you to please turn to Page 11 and Question

16      46.

17                  PROSPECTIVE JUROR:  Okay.

18                  THE COURT:  So Question 46 asks whether you'd

19      read, seen or heard anything about the Oath Keepers

20      organization.

21                  And you answered yes.  Can you tell us what you

22      have read, seen or heard?

23                  PROSPECTIVE JUROR:  Oh, I wouldn't be able to

24      remember anything specific.  But I'm sure -- you know, I've

25      heard of it.  I've seen pictures and -- in the paper.  But
```

 1   nothing till the last few years.

 2           THE COURT:  Okay.  And can you tell us, based upon

 3   what, for example, you've read, what you think you know and

 4   understand about the group?

 5           PROSPECTIVE JUROR:  I understand it's a group that

 6   is all men and formed with a view of protecting something.

 7           THE COURT:  Okay.  And do you have a sense of what

 8   they are protecting or what their mission is to protect?

 9           PROSPECTIVE JUROR:  I -- I think it's some --

10   something not defined --

11           THE COURT:  Okay.

12           PROSPECTIVE JUROR:  -- well.  That's all I know.

13           THE COURT:  To the extent you have a sense, do you

14   have a sense, based on what you've read, sort of where on

15   the political spectrum the group may be?

16           PROSPECTIVE JUROR:  Well, definitely they're

17   conservative.  They're trying to protect something, you

18   know, as opposed to, you know, progressing, to use

19   old-fashioned words.

20           THE COURT:  You also mentioned photographs that

21   you think you've seen.  Can you tell us what types of

22   photographs you remember of the group?

23           PROSPECTIVE JUROR:  I remember in the paper

24   probably about two years ago some article about concerns

25   that they were in the Midwest, I believe.  It was something

655

 1   coming out of the Midwest.

 2          THE COURT:  Do you have any more specific

 3   recollection than that?

 4          PROSPECTIVE JUROR:  No.  Yeah, it was all

 5   middle-aged men and I didn't think much of it.

 6          THE COURT:  And any of the images that you may

 7   have in your head, do you know -- do you believe any of them

 8   are associated with January the 6th here in Washington,

 9   D.C.?

10          PROSPECTIVE JUROR:  Yes.  Yeah.  I think they

11   were -- I definitely saw images of them associated with

12   January 6th.  Definitely.

13          THE COURT:  And can you tell us what images you

14   recall seeing of them associated with January the 6th?

15          PROSPECTIVE JUROR:  I think walking through the

16   crowd.  I don't think they were the ones with their hands on

17   each other's shoulders, but similar.

18          THE COURT:  Okay.  And do you recall -- just from

19   what you recall of those images, do you have a sense of what

20   they were wearing, what they were doing?

21          PROSPECTIVE JUROR:  I think they all had on the

22   protective shields, you know, military-type clothing.  I

23   don't know if they were in camouflage or not.  And they were

24   trying to get into the Capitol.

25          THE COURT:  Okay.  And so given those images in

1    your head, what impressions do you have, based on those

2    images of the group, and what they're alleged to have done

3    on January 6th?

4              PROSPECTIVE JUROR:  My impressions are that they

5    were trying to do something illegal.

6              THE COURT:  Okay.  And do you have a sense -- when

7    you say "illegal," do you have a firm sense in your mind of

8    what that might be?

9              PROSPECTIVE JUROR:  Well, I should say using a

10   term like "illegal" is funny in this setting.  I'm not a

11   lawyer; I don't know anything technical.  But my feeling was

12   that they were upset and making bad choices --

13             THE COURT:  Okay.

14             PROSPECTIVE JUROR:  -- to use teacher language.

15             THE COURT:  And so given those impressions that

16   you've been left with based upon what you've read and the

17   images that you recall, do you think you would be able to

18   set those aside and judge these Defendants based upon the

19   evidence that's been presented in this case, or would be

20   presented in this case?

21             PROSPECTIVE JUROR:  The evidence -- you know, with

22   direction, with good legal direction, yes.  Yes, I think I

23   could.

24             THE COURT:  What I mean specifically -- even more

25   specifically is, you've articulated that you think that

 1    perhaps on January the 6th they may not have been doing

 2    something right.  Let's just put it that way.  And they

 3    are -- five of them who are alleged to be either members or

 4    associated with the group are on trial here and they are

 5    charged with offenses.

 6            Would you be open-minded to receiving and hearing

 7    evidence that would be contrary to your impression of what

 8    they were doing on January the 6th?

 9            PROSPECTIVE JUROR:  Oh, sure.  Yeah.

10            THE COURT:  And would you be open-minded enough to

11    come to a different conclusion if you thought the evidence

12    warranted that?

13            PROSPECTIVE JUROR:  If it's all clearly explained,

14    yes.

15            THE COURT:  Okay.  And so in a criminal trial, the

16    Defendants are presumed innocent.  And it is the

17    Government's obligation to prove their guilt beyond a

18    reasonable doubt.  If they -- if the Government doesn't meet

19    its burden, would you have any difficulty in voting to

20    acquit?

21            PROSPECTIVE JUROR:  If the Government didn't meet

22    its requirement to present the evidence that they were

23    guilty?

24            THE COURT:  Correct.

25            PROSPECTIVE JUROR:  No.  I wouldn't have a problem

1    acquitting them.

2             THE COURT:  All right.  Counsel, any objections?

3             MR. NESTLER:  No, your Honor.

4             MR. LINDER:  No, sir.

5             THE COURT:  Ma'am, thank you very much for your

6    time.  And I appreciate your patience.

7             Mr. Douyon will show you out and provide you

8    additional directions.

9             PROSPECTIVE JUROR:  Should I take this?

10            THE COURT:  No.  Please hand that back to him.

11            (Thereupon, Prospective Juror No. 1052 retired

12    from the courtroom and the following proceedings were had:)

13            (Thereupon, Prospective Juror No. 0980 entered the

14    courtroom and the following proceedings were had:)

15            THE COURTROOM DEPUTY:  Your Honor, this is Juror

16    No. 0980.

17            THE COURT:  Ma'am, how are you?

18            PROSPECTIVE JUROR:  I'm good.

19            THE COURT:  Thank you for your patience today.  I

20    know it's been a long day.  I appreciate your service and

21    also that you've completed your questionnaire and come back

22    for your service here today.

23            Feel free to remove your mask if you feel

24    comfortable doing so.

25            And your juror questionnaire is in front of you.

1    So if I could ask you to just turn to it and turn to Page 6

2    of the questionnaire and turn to Question 13.

3                 PROSPECTIVE JUROR:  I have it.

4                 THE COURT:  That question asks whether you or a

5    close friend or family member has ever been employed at the

6    U.S. Capitol in any capacity.  Can you tell us about that?

7                 PROSPECTIVE JUROR:  My little sister worked in the

8    cafeteria.

9                 THE COURT:  In the cafeteria?

10                PROSPECTIVE JUROR:  Yes.

11                THE COURT:  And does she currently work there?

12                PROSPECTIVE JUROR:  No.

13                THE COURT:  And did she work there on January

14    the 6th?

15                PROSPECTIVE JUROR:  No.

16                THE COURT:  All right.  And can you tell us how

17    long ago she worked there, ma'am?

18                PROSPECTIVE JUROR:  I can't tell you the exact

19    date.  Since COVID started, she hasn't been there.  It's

20    been very seldomly.

21                THE COURT:  Okay.  So she was employed pre-COVID?

22                PROSPECTIVE JUROR:  Pre-COVID.

23                THE COURT:  But after January 6th?

24                PROSPECTIVE JUROR:  Correct.

25                THE COURT:  Okay.  Question 14 asks whether you

1    have a close friend or family member who's ever been

2    employed by the Federal Government.  Can you tell us about

3    that?  Is that someone other than your sister?

4              PROSPECTIVE JUROR:  I have a few family members on

5    my mom's side that's employed by the government.  But I

6    don't speak to them since my mom passed.

7              THE COURT:  Okay.  And can you tell us in what

8    capacity -- do you know where they're employed in the

9    Federal Government?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  If you could turn, please, to Page 10.

12   You were asked questions in Questions 39, 40 and 41 about

13   how much news and video you've seen and consumed about

14   January the 6th.

15             Let me ask you this:  You've indicated you haven't

16   seen any videos or any news coverage of those events.  Is

17   that correct, ma'am?

18             PROSPECTIVE JUROR:  That's correct.

19             THE COURT:  All right.  And have you deliberately

20   avoided seeing news or videos of that day?

21             PROSPECTIVE JUROR:  I don't keep up with current

22   events or I don't watch the news at all.

23             THE COURT:  Okay.  And Question 46 -- I think I

24   understand what your answer is going to be -- asks whether

25   you've read, seen or heard anything about the group known as

1      the Oath Keepers.

2                  PROSPECTIVE JUROR:  No.  I don't even know who

3      that is.

4                  THE COURT:  Okay.  And if you were to learn during

5      the course of this trial that the Oath Keepers and members

6      of that organization, the Defendants here, are either

7      charged with -- alleged to be either members or associated

8      with them, if you were to learn that they were supporters of

9      the former President Donald Trump, how would that affect

10     your views of the organization and these Defendants, if at

11     all?

12                 PROSPECTIVE JUROR:  It wouldn't affect me at all.

13                 THE COURT:  Okay.  And you would be able to judge

14     them just based on the evidence.  Is that correct?

15                 PROSPECTIVE JUROR:  That's correct.

16                 THE COURT:  Question 54 asks whether you, a close

17     friend or family member has ever been the victim of a crime.

18     And if your answer to that is something that's personal, we

19     can take that in a more private setting.  But can you tell

20     us why you checked "yes" for that?

21                 PROSPECTIVE JUROR:  It's personal, but I can

22     explain it if you want me to.

23                 THE COURT:  All right.

24                 PROSPECTIVE JUROR:  I was in a domestic violation

25     situation in 2019.

1          THE COURT:  All right.  And was that here in the

2     District of Columbia?

3          PROSPECTIVE JUROR:  No.  It was in Prince George's

4     County.

5          THE COURT:  All right.  And did you involve law

6     enforcement in that --

7          PROSPECTIVE JUROR:  Yes.  I got a restraining

8     order.  And the last date for the court was March of this

9     year, so we still have the restraining order.

10          THE COURT:  You still have the restraining order?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And was there anything about that

13     experience, ma'am, that would cause you to think you could

14     not be fair to both sides in this case?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Anything about the way law enforcement

17     treated you in that case that might cause you to think that

18     you couldn't be fair to the Government in this case?

19          PROSPECTIVE JUROR:  No.  Honestly, it was an easy

20     process.

21          THE COURT:  Okay.  And you'll be instructed -- I'm

22     expecting a lot of law enforcement -- some number of law

23     enforcement witnesses in this case.  You will be instructed

24     that the testimony of a law enforcement officer should not

25     be given any greater or lesser weight just because they are

1    a law enforcement officer.

2            Would you be able to follow that instruction?

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Question 57 asks whether you or a

5    close friend or family member has ever been arrested,

6    charged or prosecuted or convicted of a crime.  Can you tell

7    us about that?

8            PROSPECTIVE JUROR:  I had cousins that were

9    convicted of, like, drug charges.

10           THE COURT:  Okay.  Is that here in the District of

11   Columbia or elsewhere?

12           PROSPECTIVE JUROR:  I think it's in Maryland and

13   Virginia.

14           THE COURT:  All right.  And anything about their

15   experiences that you think might cause you not to be fair

16   and impartial in this case?

17           PROSPECTIVE JUROR:  No.  They're way older than

18   me.

19           THE COURT:  Okay.  And anything about their

20   experiences that might cause you to think that you couldn't

21   be fair to the Government's case?

22           PROSPECTIVE JUROR:  No.

23           THE COURT:  All right.  Is there anything, ma'am,

24   that you can think of that would lead you to think you would

25   have difficulty being fair and impartial if selected as a

1    juror in this case?

2              PROSPECTIVE JUROR:  No, sir.

3              THE COURT:  Thank you, ma'am.

4              Any questions from the defense?

5              MR. FISCHER:  Good afternoon, ma'am.

6              PROSPECTIVE JUROR:  Hi.

7              MR. FISCHER:  Thank you for spending your day with

8    us.  We appreciate your service.  I have just a few

9    questions.

10             Are you originally from the District of Columbia?

11             PROSPECTIVE JUROR:  Yes.

12             MR. FISCHER:  And can I ask you, in this case,

13   there will be -- and there is the Defendants who are on

14   trial.  There's going to be some evidence that many of the

15   Defendants were members of a group called the Oath Keepers.

16   Okay?

17             So based on anything you've heard -- I know you

18   didn't seem to hear a lot about them -- is there anything

19   that you heard about them that would affect your ability to

20   be fair and impartial?

21             PROSPECTIVE JUROR:  No.

22             MR. FISCHER:  Okay.  And if I were to ask you --

23   say somebody came here from a foreign country.  They knew

24   nothing about the United States.  And they went to you and

25   they asked you to tell them something about the Oath

1     Keepers.  How would you describe the organization?

2          PROSPECTIVE JUROR:  I wouldn't be able to, because

3     I don't know anything about them.  Today was my first time

4     actually hearing it again because, when I read the paper

5     last time when we filled them out, I didn't remember

6     anything, not even half of the questions that were asked.

7     So I wouldn't be able to tell nobody anything about the Oath

8     Keepers.

9          MR. FISCHER:  Fair enough.

10          And do you have an opinion about those who support

11     the former president, Donald Trump?  Do you have any type of

12     opinion?

13          PROSPECTIVE JUROR:  No.

14          MR. FISCHER:  Fair enough.  Ma'am, I assume if you

15     certainly -- you have to understand, ma'am.  The lawyers

16     don't --

17          PROSPECTIVE JUROR:  No.  You're fine.

18          MR. FISCHER:  Obviously, you don't know us.  We

19     don't know you.  But you can give us your word to all the

20     attorneys that you'd be fair and impartial and follow the

21     law.  Is that correct?

22          PROSPECTIVE JUROR:  Yes, sir.

23          MR. FISCHER:  Thank you very much, ma'am.  I

24     appreciate it.

25          PROSPECTIVE JUROR:  You're welcome.

```
 1                    THE COURT:  Mr. Nestler?

 2                    MR. NESTLER:  Good afternoon, ma'am.

 3                    PROSPECTIVE JUROR:  Hello.

 4                    MR. NESTLER:  What do you do for a living?

 5                    PROSPECTIVE JUROR:  I am a supervisor with INOVA

 6        for the cardiology department.

 7                    MR. NESTLER:  How long have you been doing that?

 8                    PROSPECTIVE JUROR:  I have been with INOVA for

 9        seven years and I've been in the cardiology department for

10        the last four.

11                    MR. NESTLER:  Great.

12                    And you indicated you do not follow any news at

13        all.  Is that correct?

14                    PROSPECTIVE JUROR:  Correct.  I don't like the

15        news.  It's boring.  And I think it's for old people.

16                    (Laughter.)

17                    MR. NESTLER:  Okay.  Thank you.

18                    THE COURT:  I really don't think you offended

19        anyone in this room.

20                    PROSPECTIVE JUROR:  I don't watch it.  I'm sorry.

21                    THE COURT:  Ma'am, thank you very much for your

22        time.  Mr. Douyon will provide you with some additional

23        instructions as you leave the courtroom.  Okay?

24                    PROSPECTIVE JUROR:  Okay.  Thank you.

25                    THE COURT:  Thank you.
```

1          (Thereupon, Prospective Juror No. 0980 retired

2     from the courtroom and the following proceedings were had:)

3          (Thereupon, Prospective Juror No. 1542 entered the

4     courtroom and the following proceedings were had:)

5          THE COURTROOM DEPUTY:  Your Honor, this is Juror

6     No. 1542.

7          THE COURT:  Ma'am, good afternoon.

8          PROSPECTIVE JUROR:  Hi.

9          THE COURT:  Thank you for your patience today.  I

10    know it's been a long day.  I appreciate it.

11         Feel free to remove your mask if you are

12    comfortable doing so.  Your juror questionnaire should be

13    there in front of you.

14         Let me ask you if you would please turn to Page 7

15    of the questionnaire.  Question 19.  That question asked

16    whether you'd ever been on the Capitol grounds or inside the

17    Capitol Building.  Can you tell us about that?

18         PROSPECTIVE JUROR:  Yeah.  I've walked there with

19    my son at Christmastime and -- just kind of doing the whole

20    Mall tour.  So I've been on the grounds.

21         THE COURT:  Just mainly as a tourist, then?

22         PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Okay.  And if you were selected as a

24    juror in this case, there will be evidence about the Capitol

25    grounds, the interior of the Capitol Building.  Could you

1    sort of put to the side everything that you have experienced

2    there and focus only on the evidence that's presented?

3         PROSPECTIVE JUROR:  Yes, sir.

4         THE COURT:  If you could turn, please, to Page 10.

5    Question 37 asks whether you recognize any people on the

6    list of potential witnesses or people who might be

7    mentioned.  You've identified the name Alex Jones.  I have

8    no reason to believe he will actually be testifying in this

9    case, and I think it's unlikely his name will be mentioned.

10        Questions 39, 40 and 41 were sort of designed to

11   try and get a sense of how much news and media you have

12   consumed about the events of January the 6th.  So let me

13   ask:  If -- would you consider yourself to be someone who --

14   are you an active reader or somebody actively seeking out

15   news about January the 6th?  Or to the extent it comes

16   across your eyeballs or ears, you may then read it or hear

17   it?

18        PROSPECTIVE JUROR:  The latter.

19        THE COURT:  The latter?

20        PROSPECTIVE JUROR:  Uh-huh.

21        THE COURT:  Okay.  And as a juror, you would be

22   asked to -- and, in fact, instructed -- to sort of set aside

23   anything that you might have learned about the events of

24   that day and focus only on the evidence that's presented in

25   this case.  Could you do that?

1           PROSPECTIVE JUROR:  Yes, sir.

2           THE COURT:  And could you evaluate that evidence

3     impartially; that is, fairly and honestly, relative to these

4     Defendants?

5           PROSPECTIVE JUROR:  Yes, sir.

6           THE COURT:  And we asked you in Question 46

7     whether you've read, seen or heard anything about a group

8     called the Oath Keepers.  Let me just confirm that you've

9     not heard anything about such group, whether it be in the

10    media, conversations you've had with friends and family,

11    whatever the case may be, any source.

12          PROSPECTIVE JUROR:  Not about that group

13    specifically, no.

14          THE COURT:  Okay.  Any group that may be related

15    to that group that you may be thinking about?

16          PROSPECTIVE JUROR:  The only thing I understood

17    was that there were groups involved in January 6th, but I

18    didn't really pay attention to names or specifics.

19          THE COURT:  Okay.  And to the extent that you have

20    some belief or understanding of what those groups did, can

21    you tell us what that is?

22          PROSPECTIVE JUROR:  That they were involved in

23    kind of going up and breaking into the Capitol Building.

24          THE COURT:  Okay.  So you've used the words

25    "breaking in."  These Defendants are charged with

1   participating in the events of January the 6th.  And they

2   are presumed innocent.  And they -- you may hear evidence in

3   this case that is different than the notion that they,

4   quote-unquote, "broke in."

5          Do you believe you have an open mind to the idea

6   that you may be wrong about the fact that they broke in?

7          PROSPECTIVE JUROR:  Yes, sir.

8          THE COURT:  And if there was evidence that you --

9   was presented you that was inconsistent with the idea that

10  they broke in, would you be able to reach the conclusion

11  that they did not break in?

12         PROSPECTIVE JUROR:  Yes, sir.

13         THE COURT:  And, you know, the question for every

14  juror ultimately is, as I think I said, these Defendants are

15  presumed innocent.  It is the Government's burden to prove

16  their guilt beyond a reasonable doubt.  If you come to the

17  conclusion that the Government has fallen short of its

18  burden, would you have any difficulty in voting to acquit?

19         PROSPECTIVE JUROR:  No, sir.

20         THE COURT:  Any additional questions?

21         MR. FISCHER:  Good afternoon, ma'am.

22         PROSPECTIVE JUROR:  Hi.  Let me just put on my

23  glasses.

24         MR. FISCHER:  First of all, thanks for spending

25  the whole day with us.  I guess just a few questions.

```
1              Can you tell us -- you don't have to tell me where
2      you work, but what's your occupation?
3              PROSPECTIVE JUROR:  I work in education in a
4      nonprofit organization here in D.C.
5              MR. FISCHER:  Okay.  And how long have you held
6      that position for?
7              PROSPECTIVE JUROR:  At that particular
8      organization, six years, just about.
9              MR. FISCHER:  Okay.  And are you originally from
10     the District?
11             PROSPECTIVE JUROR:  No, sir.
12             MR. FISCHER:  Where are you originally from?
13             PROSPECTIVE JUROR:  It's a complicated question.
14     I've moved around a lot.  I went to high school in Atlanta,
15     Georgia.  I've lived in probably five or six other states.
16             MR. FISCHER:  Is there a reason why you moved
17     around?
18             PROSPECTIVE JUROR:  As a child, my dad was
19     transferred quite a bit for his job.  And then college and
20     grad school.
21             MR. FISCHER:  Sure.
22             So I presume, ma'am -- you have to understand, you
23     obviously don't know myself or the attorneys, and we don't
24     know you.
25             PROSPECTIVE JUROR:  Uh-huh.
```

1          MR. FISCHER:  So if you were called to be a juror,

2     you can give both sides your word that you would be fair and

3     impartial and do the best you could to reach a decision

4     based on the facts and the law?

5          PROSPECTIVE JUROR:  Yes, sir.

6          MR. FISCHER:  Okay.  And you have no hesitation

7     about that whatsoever?

8          PROSPECTIVE JUROR:  I don't.

9          MR. FISCHER:  Thank you, ma'am.  I appreciate

10    that.

11         PROSPECTIVE JUROR:  Sure.

12         MR. FISCHER:  Nothing else, your Honor.

13         THE COURT:  Mr. Nestler, any questions?

14         MR. NESTLER:  No questions, your Honor.  Thank you

15    very much.

16         THE COURT:  Thank you, ma'am, for your time today.

17    Mr. Douyon will escort you out of the courtroom and provide

18    you with additional instructions.

19         PROSPECTIVE JUROR:  Thanks.

20         THE COURT:  Thank you.

21         (Thereupon, Prospective Juror No. 1542 retired

22    from the courtroom and the following proceedings were had:)

23         (Thereupon, Prospective Juror No. 1295 entered the

24    courtroom and the following proceedings were had:)

25         THE COURTROOM DEPUTY:  Have a seat in the witness

 1    box, please.

 2                Your Honor, this is Juror No. 1295.

 3                THE COURT:  Sir, how are you this afternoon?

 4                PROSPECTIVE JUROR:  Good.  How are you?

 5                THE COURT:  Good.  Thank you.

 6                Thank you for your patience and staying with us

 7    all day.  I appreciate it.  And thank you for completing the

 8    questionnaire and your service.  If you are comfortable

 9    removing your mask, you are free to do so.

10                You are Juror 1295?

11                PROSPECTIVE JUROR:  Yes.

12                THE COURT:  And if I could ask you to take a look

13    at your juror questionnaire which is in front of you there.

14    Could you turn to Page 11 and direct your attention to

15    Question 46?

16                PROSPECTIVE JUROR:  Yes.

17                THE COURT:  And that question asks whether you

18    have read, seen or heard anything about the Oath Keepers

19    organization.

20                Can you tell us what you have read, seen or heard

21    about that organization?

22                PROSPECTIVE JUROR:  I have read or seen that it's

23    a far-right militia group that refused to accept the results

24    of the election and helped to organize the riots against the

25    Capitol.

1          THE COURT:  Okay.  And are you aware of any

2     specific acts that the group is alleged to have undertaken

3     on January the 6th?

4          PROSPECTIVE JUROR:  To have purchased firearms to

5     be used at the Capitol on January 6th.

6          THE COURT:  And anything else that you have -- in

7     terms of your general awareness about the group and what

8     they are accused of doing?

9          PROSPECTIVE JUROR:  I don't think so.

10          THE COURT:  Nothing else?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  So let me ask you this:  Given what

13     you have read and what you think you -- what you've heard

14     about the organization, what impression has it left on you

15     about the organization and its potential members and people

16     like these Defendants who are accused of being part of that

17     group or associated with the group?

18          PROSPECTIVE JUROR:  My impression of the members

19     of the group?

20          THE COURT:  Correct.

21          PROSPECTIVE JUROR:  Antidemocratic, generally not

22     good people, violent, don't respect the law.

23          THE COURT:  And so we all -- nobody expects a

24     juror to have not consumed news or formed opinions about the

25     events of January the 6th.  The question for you, sir, is

1    whether you think you could put those impressions aside and

2    evaluate the evidence in this case fairly and honestly

3    and -- fairly and honestly.

4            PROSPECTIVE JUROR:  I mean, I think I could

5    definitely look at evidence and evaluate that fairly.  I

6    don't know how any evidence would change my opinion of the

7    group, I guess.  Is that --

8            THE COURT:  So that's my question, is whether you

9    think -- well, do you believe you would be open-minded

10   enough, if selected as a juror, to essentially change your

11   mind about some of the impressions that you have and be open

12   to hearing evidence that you think -- well, if you heard

13   evidence to the contrary, would you be open to hearing that

14   evidence and potentially changing your mind?

15           PROSPECTIVE JUROR:  Honestly?  Probably not.

16           THE COURT:  Okay.  We're here for honest answers.

17           So any objection?

18           MR. NESTLER:  Yes.

19           THE COURT:  Okay.  Go ahead, Mr. Nestler.

20           MR. NESTLER:  Why is that, that you're not open to

21   changing your mind?

22           PROSPECTIVE JUROR:  It's my understanding that the

23   evidence against these Defendants is pretty solid.  And so I

24   don't know -- I mean, as someone who lives -- I live not far

25   from the Capitol.  I saw everything that happened that day.

1    You know, I lived in the aftermath of that in D.C.  And so,

2    to me, I know what happened.  It's pretty cut and dried, I

3    mean.

4              MR. NESTLER:  Based on more than what you've just

5    seen in the media?

6              PROSPECTIVE JUROR:  On what happened that day?

7              MR. NESTLER:  Yes.

8              PROSPECTIVE JUROR:  Yes.  I mean, based on my own

9    experience.  I watched it all basically from my window.

10              MR. NESTLER:  Understood.

11              Okay.  Thank you.

12              THE COURT:  Any objection, Mr. Nestler?

13              MR. NESTLER:  No, your Honor.

14              THE COURT:  Sir, thank you very much for your time

15    and your service.

16              Mr. Douyon will escort you out of the courtroom

17    and provide you additional instructions.

18              PROSPECTIVE JUROR:  Should I just leave this here?

19              THE COURT:  Yes, please.  Leave your questionnaire

20    there.

21              (Thereupon, Prospective Juror No. 1295 retired

22    from the courtroom and the following proceedings were had:)

23              THE COURT:  Counsel, do you have 0708 stricken for

24    cause already?

25              MS. RAKOCZY:  Yes.

677

```
1              MR. NESTLER:  No.

2              THE COURT:  No?

3              MR. NESTLER:  One second, your Honor.

4              (Counsel confer privately off the record.)

5              MR. NESTLER:  Sorry.  Yes.

6              THE COURT:  Okay.

7              (Thereupon, Prospective Juror No. 0903 entered the

8    courtroom and the following proceedings were had:)

9              THE COURTROOM DEPUTY:  Please speak into the

10   microphone.

11             Your Honor, this is Juror No. 0903.

12             THE COURT:  Sir, thank you and welcome.  We are

13   grateful for your patience.  Thank you for sticking with us

14   through the course of the day and thank you for coming in a

15   few weeks ago to complete your questionnaire.

16             It is in front of you.  And feel free to remove

17   your mask if you are comfortable doing so.

18             So if I could ask you to please turn first to

19   Page 11 and take a look at Question 46.  That question asks:

20   Have you read, seen or heard anything about the Oath Keepers

21   organization?

22             So can you tell us what you have read, seen or

23   heard about the organization?

24             PROSPECTIVE JUROR:  I haven't, like, read anything

25   specific about it.  But I've heard them mentioned often, you
```

 1    know, related to January 6th.

 2         THE COURT:  And so to the extent that you've heard

 3    them mentioned, what do you think you have -- can you tell

 4    us what you've taken away from those mentions?

 5         PROSPECTIVE JUROR:  I mean, I just know that they

 6    are -- I believe they were one of the groups that were

 7    involved in January 6th, like, organizing and, you know,

 8    coming to the Capitol.

 9         THE COURT:  Okay.  Anything beyond that?  Perhaps

10    any specific conduct that you have heard about on January

11    the 6th?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  And do you have any impressions of the

14    group, favorable, unfavorable?

15         PROSPECTIVE JUROR:  I mean, that's kind of a hard

16    one to answer, because it's, like, I don't understand why,

17    you know, people did what they did on January 6th.  So, you

18    know, again, I am not living in their shoes so I don't -- I

19    don't understand, you know, where they're coming from.

20         THE COURT:  Sure.

21         PROSPECTIVE JUROR:  That doesn't necessarily mean

22    I'm right and they're wrong or vice versa.

23         THE COURT:  And that's fair.  And it's not

24    surprising that jurors would come into the courtroom -- and

25    it's not our expectations that you would be completely

1    without opinions.

2            But the question as a juror is:  Could you --

3    whatever you've seen in the outside world and whatever

4    impressions you may have formed, could you set all that

5    aside and evaluate the evidence in this case that's been --

6    that's presented in this case and be fair and impartial to

7    these Defendants?

8            PROSPECTIVE JUROR:  Yeah.  I believe I could.  I

9    mean, it should be -- it should really come down to the law

10   and the evidence.  Right?

11           THE COURT:  That's the question.

12           PROSPECTIVE JUROR:  Yeah.

13           THE COURT:  Ultimately, your task as a juror would

14   be to listen to the evidence, set aside whatever things you

15   may have learned or heard about outside the courtroom and

16   apply the law as I instruct you.  Is that something you

17   think you could do?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Is there any question in your mind

20   that you could treat these Defendants fairly, just as you

21   would any other defendant in a criminal trial?

22           PROSPECTIVE JUROR:  Yeah.  I -- I believe I could

23   treat fairly.  Yeah.

24           THE COURT:  Let me ask you if you would, please,

25   to turn to Page 7 of your questionnaire and specifically

1    Question 18.  That question asks whether you or a close

2    friend or family member in the last five years have attended

3    a rally, protest or demonstration or a march.  Can you tell

4    us a little bit about that?

5             PROSPECTIVE JUROR:  Yeah.  My daughter, when she

6    was in town -- I think it was a couple of years ago -- we

7    did a Women's March.

8             THE COURT:  Did you say "we"?

9             PROSPECTIVE JUROR:  Yeah.  Her and I.

10             THE COURT:  So you attended the march?

11             PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  Any other marches or rallies that

13    you've personally attended?

14             PROSPECTIVE JUROR:  Like, during the Black Lives

15    Matter, I did walk around, you know, the city -- you know,

16    the area, because I live close by, so I just kind of walked

17    around to see what was going on.

18             THE COURT:  Okay.  So let me ask you this:  If you

19    were to discern, figure out, come to understand in this case

20    that the Defendants here might have political views that are

21    different than yours, would you have trouble being fair and

22    impartial toward them?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  And if you were to learn that the

25    Defendants were supporters of former President Trump, would

1    you have any difficulty being fair and impartial?

2         PROSPECTIVE JUROR:  I have some really good

3    friends that are supporters of Trump so -- and I treat them

4    pretty fairly.

5         THE COURT:  Okay.  Question 18 asks whether you've

6    been inside the Capitol grounds or on the Capitol grounds or

7    inside the Capitol Building.  Can you tell us about that?

8         PROSPECTIVE JUROR:  Yeah.  I've been in -- I think

9    I was in there right -- with my daughter.  We toured it.  We

10   toured inside it.  I think that was before -- yeah, it was

11   before -- it was like -- it must have been a year before

12   this.

13        THE COURT:  And so if you're selected as a juror

14   in this case, you will hear evidence about the grounds, the

15   interior of the building.  Could you set aside what your

16   recollections are from that tour and focus on the evidence

17   only in this case?

18        PROSPECTIVE JUROR:  Yes.

19        THE COURT:  And if you would turn, please, to

20   Page 10.  Question 37 asks whether you recognized any of the

21   people on the list of names that we gave you.  And you

22   identified Alex Jones.  It's not my understanding that

23   Mr. Jones will be testifying in this case, or not even

24   likely to have his name mentioned in this case.

25        Questions 39 through 41 were designed to try and

 1    get a sense of how much news and media you have consumed

 2    about the events of January the 6th.  So let me ask you

 3    this:  Do you consider yourself somebody who is sort of

 4    actively seeking out news about the events of that day?

 5              PROSPECTIVE JUROR:  I wouldn't say actively seek

 6    it out, but I try to keep up with what's going on in the

 7    world.

 8              THE COURT:  Okay.  And that's, you know, what we

 9    hope our citizens do.

10              That said, as a juror, it would be your task to

11    set aside what you have read or viewed about those events

12    and focus only on the evidence.  Do you think you could do

13    that?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Is there any -- do you have any reason

16    to question your ability to set aside any media that you may

17    have seen about this case and focus only on the evidence?

18              PROSPECTIVE JUROR:  No.  There's no question.

19              THE COURT:  You have said -- you've told us that

20    you have viewed some portion of the congressional hearings

21    regarding January the 6th.  Can you tell us how much of that

22    you have watched or heard about?

23              PROSPECTIVE JUROR:  I think one -- maybe one or

24    maybe two -- I can't remember -- of the prime-time

25    presentation I did watch.

1          THE COURT:  And based upon what you recall

2     watching, do you recall any testimony or commentary from

3     those hearings about Oath Keepers?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  And would you -- just in the same way

6     I've asked whether you could set aside what you've learned

7     or read about in the media, would you be able to set aside

8     what you've learned or read about about the congressional

9     hearings in evaluating fairness -- excuse me -- in being

10    fair and impartial to these Defendants?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Question 50 asks whether you, close

13    friends or family members have worked in the legal field.

14    Can you tell us about that?

15         PROSPECTIVE JUROR:  Which page is this?

16         THE COURT:  Page 11, Question 50.

17         PROSPECTIVE JUROR:  Yeah.  My brother-in-law is a

18    lawyer.

19         THE COURT:  Your brother-in-law is a lawyer?

20         PROSPECTIVE JUROR:  Yeah.

21         THE COURT:  Can you tell us, if he practices, what

22    area of the law he practices in?

23         PROSPECTIVE JUROR:  Yeah.  Workers' comp.

24         THE COURT:  And Question 54 asks you whether you,

25    a close friend or family member has ever been the victim of

1    a crime.  And if the response to that question is a personal

2    one, I'm happy to find a private setting for you to answer

3    that question.

4         PROSPECTIVE JUROR:  Yeah.  I mean, I've had my car

5    broken into.  I've had somebody break into my house.  My

6    daughter has had, you know, her car broken into.

7         THE COURT:  Okay.  Has that happened in the

8    District of Columbia?

9         PROSPECTIVE JUROR:  No.

10        THE COURT:  None of that happened in the District

11   of Columbia?

12        PROSPECTIVE JUROR:  No.

13        THE COURT:  Okay.  Have you had any contact with

14   the Metropolitan Police Department in D.C.?

15        PROSPECTIVE JUROR:  No.

16        THE COURT:  Your experiences, having been the

17   victim of a crime, does that predispose you to one side or

18   the other in a criminal case?

19        PROSPECTIVE JUROR:  No.

20        THE COURT:  And do you have any impressions of law

21   enforcement from those experiences that you think might

22   affect your ability to evaluate the testimony of law

23   enforcement?

24        PROSPECTIVE JUROR:  No.

25        THE COURT:  Any additional questions, Mr. Linder?

1          MR. LINDER:  Believe it or not, no, we have no

2     questions.

3          THE COURT:  Mr. Nestler?

4          MR. NESTLER:  Just briefly.

5          Good afternoon, sir.

6          PROSPECTIVE JUROR:  Hi.

7          MR. NESTLER:  What do you do for a living?

8          PROSPECTIVE JUROR:  I'm a consultant in

9     healthcare.

10          MR. NESTLER:  Thank you very much.  Have a great

11     day.

12          THE COURT:  Sir, thank you very much for your time

13     and your patience today.  Mr. Douyon will escort you out of

14     the courtroom and provide you some additional instructions.

15          PROSPECTIVE JUROR:  Okay.

16          (Thereupon, Prospective Juror No. 0903 retired

17     from the courtroom and the following proceedings were had:)

18          (Thereupon, Prospective Juror No. 1204 entered the

19     courtroom and the following proceedings were had:)

20          THE COURTROOM DEPUTY:  Your Honor, this is Juror

21     No. 1204.

22          THE COURT:  How are you?

23          PROSPECTIVE JUROR:  Very well.  Can I take my mask

24     off?

25          THE COURT:  You can.  You beat me to the punch.

```
 1        You're Juror 1204?

 2              PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  Thank you, first and foremost, for

 4    your patience today.  I know it's been a long day.  And

 5    thank you for completing your questionnaire.  Your

 6    questionnaire should be there in front of you there.

 7              PROSPECTIVE JUROR:  Yes.

 8              THE COURT:  And I'll ask you to pick that up and

 9    turn to Page 11 and, in particular, to Questions 46 and 48.

10              PROSPECTIVE JUROR:  Okay.

11              THE COURT:  Question 46 asks you whether you had

12    read, seen or heard anything about the Oath Keepers

13    organization.  Can you tell us what you may have read, seen

14    or heard about the organization?

15              PROSPECTIVE JUROR:  I've heard of them, or I saw

16    them in the January 6th hearings.

17              THE COURT:  Okay.  And can you tell us what you

18    saw about them in the January 6th hearings?

19              PROSPECTIVE JUROR:  I think I remember that there

20    was some parking garage conversation or something.  I think

21    that was Oath Keepers.

22              THE COURT:  Okay.

23              PROSPECTIVE JUROR:  So I remember that.

24              I've just seen things on the news, like, headlines

25    or whatever, that the group was formed, like, maybe 15 years
```

1    ago, 15, 20 years ago.  I don't know many details, but I

2    have definitely heard of them.  Yeah.

3              THE COURT:  Okay.  And let me ask you, other than

4    your recollection about a -- a potential parking lot

5    meeting, do you recall any other commentary or testimony

6    about the Oath Keepers at the January 6th hearings?

7              PROSPECTIVE JUROR:  Just, like, references to

8    being a militia.  Yeah.

9              THE COURT:  Okay.  Anything more than that?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  And in terms of just your general

12   acquisition of information, and not limited just to the

13   January 6th committee, you've said you think of them as a

14   militia.  What other impressions of the group do you have

15   based upon what you've learned?

16             PROSPECTIVE JUROR:  That they're very passionate.

17   I think, also in the January 6th hearing, that they had

18   weapons in hotels.  So I have seen that.

19             THE COURT:  Okay.

20             PROSPECTIVE JUROR:  Yeah.

21             THE COURT:  Anything else?  Any other details that

22   you think you can recall?

23             PROSPECTIVE JUROR:  Oh.  I've heard that Stewart

24   Rhodes went to Yale Law School.  I can't think of anything

25   specific, anything else.

1          THE COURT:  All right.  You also answered

2    Question 48.  That was a question that was more specific to

3    the Defendants in this case.  And you were asked whether you

4    had read, seen or heard about the allegations regarding the

5    Defendants.

6          Can you tell us what, if anything, you have read,

7    seen or heard about these specific Defendants?  You've told

8    us, you know, you've heard Mr. Rhodes went to Yale.  But in

9    addition to that, anything else?

10         PROSPECTIVE JUROR:  So I've never heard of any of

11   the other names there.  So I've only heard about Stewart

12   Rhodes.

13         THE COURT:  Is there anything you can recall about

14   him other than where he attended law school?

15         PROSPECTIVE JUROR:  That he's the head of the Oath

16   Keepers.  I think he's divorced.  I think I read that at one

17   point.  Yeah.  I don't know much.

18         THE COURT:  So are you left with an impression of

19   Mr. Rhodes favorably, unfavorably, neutral?  How would you

20   describe your impression of Mr. Rhodes?

21         PROSPECTIVE JUROR:  I mean, I would guess, like,

22   maybe a little bit negative just because of the violence.

23         THE COURT:  Okay.

24         PROSPECTIVE JUROR:  Yeah.

25         THE COURT:  And when you say the violence, do you

1    mean you believe there's violence specific to him and the

2    Oath Keepers organization?  Or you're just talking about

3    violence on January 6th?

4                PROSPECTIVE JUROR:  Just violence on January 6th

5    in general.

6                THE COURT:  Let me ask you this:  As a juror, you

7    would be required to set aside whatever you have learned and

8    whatever impressions you've formed --

9                PROSPECTIVE JUROR:  Yeah.

10               THE COURT:  -- and evaluate the evidence that's

11   presented in the case.

12               Do you think you would have an open mind to having

13   your impressions corrected or changed?

14               PROSPECTIVE JUROR:  Yes.

15               THE COURT:  And if there was evidence that was to

16   the contrary of what you have learned and what your

17   impressions are, do you think you could reach conclusions

18   different than those impressions?

19               PROSPECTIVE JUROR:  Yes.  I've been on juries

20   before, and I know that the only thing that matters is the

21   evidence and the facts before the jury.

22               THE COURT:  Okay.

23               PROSPECTIVE JUROR:  Yeah.

24               THE COURT:  And is there any -- do you have any

25   concerns or doubts about your ability to be fair and

1      impartial to these Defendants?

2                  PROSPECTIVE JUROR:  No.

3                  THE COURT:  I'll ask you, please, to turn to

4      Page 6 and Question 14.  That question asks whether you, a

5      close friend or family member has ever been employed by the

6      Federal Government.

7                  And you answered that yes.  Can you tell us about

8      that?

9                  PROSPECTIVE JUROR:  Yes.  I am a current Federal

10     Government employee.  I work for USAID, the U.S. Agency for

11     International Development.

12                 THE COURT:  Okay.  So you do development work?

13                 PROSPECTIVE JUROR:  Yes.

14                 THE COURT:  Do you know others in -- other than

15     your colleagues who work in the Federal Government and, if

16     so, are any of them working in any kind of law enforcement

17     capacity?

18                 PROSPECTIVE JUROR:  Most of my friends work at AID

19     or State Department, because we're all international people.

20                 THE COURT:  Right.  Okay.  And in that capacity,

21     have you had reason to work with sort of diplomatic security

22     or any --

23                 PROSPECTIVE JUROR:  No.

24                 THE COURT:  -- sort of law enforcement arms of the

25     State Department?

1      PROSPECTIVE JUROR:  No, nothing.

2      THE COURT:  Question 18 asks about your

3   participation or the participation of close friends and

4   family members in rallies, protests or demonstrations within

5   the last five years.

6      PROSPECTIVE JUROR:  Yes.

7      THE COURT:  Can you tell us about that?

8      PROSPECTIVE JUROR:  Yes.  I've been to the Women's

9   March -- two women's marches, I think.  I've been to a

10  couple of George Floyd marches, things like that.  Yeah.

11     THE COURT:  So if you were to learn in this

12  case -- or it would -- if you were to infer in this case

13  that the Defendants in this case hold political views that

14  are different than yours, how would that affect your

15  ability, if at all, to be fair and impartial?

16     PROSPECTIVE JUROR:  Everyone has a right to their

17  political views.

18     THE COURT:  Okay.  And if you were to learn or

19  come to believe that these Defendants were staunch

20  supporters of former President Trump, how would that affect

21  your views of them as Defendants?

22     PROSPECTIVE JUROR:  They have a right to support

23  ex-President Trump.

24     THE COURT:  And do you think the fact -- mere fact

25  that they supported him would make it more difficult for you

1        to be fair and impartial to them?

2                PROSPECTIVE JUROR:  No.  I have friends that

3        support Trump.  Everyone has a right to support who they

4        support.

5                THE COURT:  Question 19 asks about being at the

6        Capitol grounds or the Capitol Building.  Can you tell us

7        about that?

8                PROSPECTIVE JUROR:  Yeah.  I did a tour of the

9        Capitol Building.  What year was it?  It was probably -- it

10       was before COVID, so probably 2018.

11               THE COURT:  Okay.  And would you be able to set

12       aside whatever your recollections are of that tour and only

13       focus on the evidence in this case?

14               PROSPECTIVE JUROR:  Oh, yes.

15               THE COURT:  Question 24 asks about prior jury

16       service.  You have served on three prior jury trials.

17               PROSPECTIVE JUROR:  Yes.

18               THE COURT:  Criminal jury trials.

19               Would you be able to set aside whatever you've

20       learned about the criminal justice process and any

21       instructions that you may recall and follow the instructions

22       that I give you in this case?

23               PROSPECTIVE JUROR:  Yes.  Only your instructions

24       would be in force.

25               THE COURT:  Okay.  Page 10.  You were asked to

1    identify people whose names you recognize who might be

2    potential witnesses or individuals who would testify.  You

3    identified John Eastman, Alex Jones, Peter Navarro.  I have

4    no reason to believe that those three gentlemen will either

5    be witnesses in this case or will be referred to.

6            I do not believe that Mr. Tarrio will be a

7    witness, but it is possible he could be mentioned.

8            And Harry Dunn.  He's -- how do you know Harry

9    Dunn?

10           PROSPECTIVE JUROR:  Just from the January 6th

11   hearings that he's -- he was always sitting in the audience.

12   Yeah.

13           THE COURT:  Okay.  So you know him to be a law

14   enforcement officer?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  And have you been left with any

17   impressions about Mr. Dunn based upon what you've seen and

18   heard about him?

19           PROSPECTIVE JUROR:  I have seen, like, you know,

20   news interviews when he's on news shows.

21           THE COURT:  Okay.

22           PROSPECTIVE JUROR:  And he seems well-spoken and,

23   you know, compelling.

24           THE COURT:  Okay.

25           PROSPECTIVE JUROR:  Yeah.

 1          THE COURT:  So if Mr. Dunn were to be called as a

 2    witness in this case, do you think you could evaluate his

 3    testimony notwithstanding the fact that you've seen him in

 4    the media?

 5          PROSPECTIVE JUROR:  Yeah.  I can definitely

 6    separate, you know, things from the past -- like, you have

 7    to focus on what's in the trial.  You can't focus on other

 8    things.

 9          THE COURT:  And if you came to the conclusion

10    that -- well, if there was evidence presented in the case

11    that might contradict Officer Dunn's testimony or call his

12    testimony into question, would you be able to consider that

13    testimony?

14          PROSPECTIVE JUROR:  Whatever the evidence is in

15    front of us.  Yes.

16          THE COURT:  You've indicated that you've seen a

17    lot of videos and watched a lot of news coverage, and I

18    think I know the answer, but let me just confirm.  Do you

19    think you could set aside what you have read about and what

20    you've seen and only focus on the evidence that's presented

21    here?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Question 50 asks whether you, close

24    friends or family members are in the legal profession.  Can

25    you tell us about that?

1          PROSPECTIVE JUROR:  I have a number of friends who
2     went to law school.  A lot of them now work in international
3     development, so they're not practicing lawyers.  But they
4     are, you know, officially lawyers.
5          THE COURT:  Okay.
6          PROSPECTIVE JUROR:  Either in AID or State
7     Department.
8          THE COURT:  Questions 54 and 55 ask about close
9     friends or family members or yourself being victims of
10    crimes or witnesses of a crime.
11         PROSPECTIVE JUROR:  Yes.
12         THE COURT:  Can you tell us about that?
13         PROSPECTIVE JUROR:  I was mugged in 19 -- it was a
14    long time ago -- 1989 in Chicago.
15         THE COURT:  In Chicago?
16         PROSPECTIVE JUROR:  Yes.
17         THE COURT:  Anything about that experience that
18    might cause you to believe that you would be partial to one
19    side or the other?
20         PROSPECTIVE JUROR:  No.
21         THE COURT:  Anything about that experience that
22    would cause you to think you would hold police officers more
23    or less favorably because of that experience?
24         PROSPECTIVE JUROR:  No.
25         THE COURT:  Any questions, Mr. Linder?

```
1              MR. LINDER:  Mr. Fischer.

2              MR. FISCHER:  Good afternoon, ma'am.

3              PROSPECTIVE JUROR:  Good afternoon.

4              MR. FISCHER:  Thank you for spending the day with

5    us and filling the forms out.  I know it's a long day.

6              PROSPECTIVE JUROR:  Sure.

7              MR. FISCHER:  Just a few questions, ma'am.

8              I know you indicated that everybody is entitled to

9    their political opinion.  But do you have an opinion just on

10   Trump supporters in general?  In your own words, if you have

11   an opinion.

12             PROSPECTIVE JUROR:  An opinion of them?  I mean, I

13   don't hold the same views as they do.

14             MR. FISCHER:  So respectful disagreement?  Would

15   that be fair to characterize -- or is it something more?

16             PROSPECTIVE JUROR:  I would say, for many of them,

17   it's respectful disagreement.  When I hear things like if

18   people say that people worship Satan and they're pedophiles,

19   then that's more than respectful disagreement.  Like, I have

20   a problem with that.  But that's not necessarily Trump

21   supporters.  But, you know, when I hear things like that,

22   it's disturbing to me.

23             MR. FISCHER:  Understood.

24             Ma'am, are you a native D.C.?

25             PROSPECTIVE JUROR:  No.  I'm from Chicago, but
```

1    I've lived in D.C. many years.

2            MR. FISCHER:  And this case -- the evidence in

3    this case is -- there is going to be evidence that some of

4    the Defendants were in possession of guns, firearms, on

5    January 6th, but they -- the firearms were never brought

6    into the District of Columbia.

7            Just the fact that they possessed firearms, even

8    firearms that are fairly lethal, would that give you pause

9    to be fair and unbiased?

10           PROSPECTIVE JUROR:  I would have to see the

11   evidence.  I mean, I'm only going to consider what's

12   presented and what the evidence is.

13           MR. FISCHER:  But do firearms themselves, just the

14   fact that folks possess firearms and they had them right --

15   in the state of Virginia -- the evidence will be that they

16   were in the state of Virginia, but just outside of the

17   District of Columbia.  Would that cause you to maybe be

18   anything less than fair and impartial?

19           PROSPECTIVE JUROR:  No, because they weren't in

20   D.C. and they would be illegal having them in D.C.  So if

21   they were in Virginia and it's legal in Virginia -- I don't

22   know what the laws are in Virginia, but I'm assuming it was

23   legal in Virginia.

24           MR. FISCHER:  Understood.

25           PROSPECTIVE JUROR:  Yeah.

```
 1                    MR. FISCHER:  Ma'am, you understand we ask these

 2      questions --

 3                    PROSPECTIVE JUROR:  Yeah.

 4                    MR. FISCHER:  -- because we don't know you --

 5                    PROSPECTIVE JUROR:  Yeah.

 6                    MR. FISCHER:  -- and you don't know us.

 7                    PROSPECTIVE JUROR:  Yeah.

 8                    MR. FISCHER:  So -- and just to be clear, you can

 9      give us your word that if you're seated on this jury, you

10      can be fair to both sides and you'll be fair and impartial?

11                    PROSPECTIVE JUROR:  Definitely.

12                    MR. FISCHER:  Great.  Thank you, ma'am.  I

13      appreciate it.

14                    PROSPECTIVE JUROR:  You're welcome.

15                    THE COURT:  Mr. Nestler, any questions?

16                    MR. NESTLER:  No, your Honor.  Thank you.

17                    THE COURT:  Thank you.

18                    Ma'am, thank you very much for your time today.

19                    PROSPECTIVE JUROR:  Thank you.

20                    THE COURT:  Mr. Douyon will show out of the

21      courtroom and provide you with additional instructions.

22                    PROSPECTIVE JUROR:  Thank you.  I leave the

23      questionnaire here?

24                    THE COURT:  Yes, please.

25                    PROSPECTIVE JUROR:  Okay.
```

```
 1                   (Thereupon, Prospective Juror No. 1204 retired

 2        from the courtroom and the following proceedings were had:)

 3                   (Thereupon, Prospective Juror No. 1537 entered the

 4        courtroom and the following proceedings were had:)

 5                   THE COURTROOM DEPUTY:  Your Honor, this is Juror

 6        No. 1537.

 7                   THE COURT:  Ma'am, good afternoon.

 8                   First of all --

 9                   PROSPECTIVE JUROR:  Good evening.

10                   THE COURT:  Good evening, yes.  Thank you for the

11        correction.  It's been a long day.  And thank you, first and

12        foremost, for your time and patience today.  Feel free to

13        remove your mask.

14                   Your juror questionnaire should be there in front

15        of you.  So let's start on Page 5 of the juror

16        questionnaire.  The question was about hardship.  And you

17        answered -- sort of checked yes and no.  And you said, "If

18        they accept my daughter in aftercare for the duration of the

19        trial, yes, or if a family member can pick her up, I can

20        serve."

21                   As you sit here today, if you were called upon to

22        be here from, say, 8:30 to 5:00, Monday through Thursday,

23        and then 8:30 to 12:30 on Fridays, would that present a

24        hardship for you in terms of dropoff and pickup of your

25        child?
```

```
 1              PROSPECTIVE JUROR:  So it's not dropoff; it's
 2     pickup.
 3              THE COURT:  It's pickup?  Okay.
 4              PROSPECTIVE JUROR:  Yeah.  She gets out at 3:30.
 5              THE COURT:  What time?
 6              PROSPECTIVE JUROR:  3:30.
 7              THE COURT:  Okay.
 8              PROSPECTIVE JUROR:  So I will have to pick her up
 9     from school.
10              THE COURT:  All right.
11              PROSPECTIVE JUROR:  She's only 10.  She can't go
12     home by herself.
13              THE COURT:  I couldn't understand that.
14              THE COURT REPORTER:  She's only 10, you said,
15     ma'am?
16              PROSPECTIVE JUROR:  Only 10.
17              THE COURT:  So you've indicated that perhaps she
18     could do aftercare or a family member could pick her up.  Is
19     that something you would have to ask at this point if --
20              PROSPECTIVE JUROR:  Yes.
21              THE COURT:  And aftercare, is that something --
22     and I don't know whether you're paying for daycare or not,
23     but if it was aftercare, would that be an additional cost to
24     you?
25              PROSPECTIVE JUROR:  Absolutely.
```

1          THE COURT:  And do you have family members who

2     would be available for four days a week, either singly or in

3     combination, to do a pickup?

4          PROSPECTIVE JUROR:  I can ask.

5          THE COURT:  You can ask.  And as you sit here

6     today, do you have any sense of whether they would be able

7     to do it or not?

8          PROSPECTIVE JUROR:  Yes and no.

9          THE COURT:  Yes and no?

10         PROSPECTIVE JUROR:  I mean, I don't know

11    everyone's schedule.  So I would have to make sure that

12    their schedule will be able to permit them to pick her up at

13    that time.

14         THE COURT:  Well, let me ask a different question,

15    which is:  How would you feel about being here -- this case

16    is expected to last anywhere from four to six weeks.  How

17    would you feel about that length of time and having to count

18    on other people to pick up your daughter?

19         PROSPECTIVE JUROR:  I mean, you know, we all need

20    help.  So if someone can help, then I wouldn't mind.

21    Aftercare doesn't have any slots right now, because I

22    inquired on the 13th when we came initially.

23         THE COURT:  Okay.  So it would be just family

24    members or --

25         PROSPECTIVE JUROR:  Or friends.

1            THE COURT:  -- or friends.

2            PROSPECTIVE JUROR:  She went to a new school, so I

3    would have to put feelers out there and inquire.

4            THE COURT:  Okay.  If you would turn to Page 6.

5    You indicated in response to Question 9 that you may have

6    some vision conditions.  Is that right?

7            PROSPECTIVE JUROR:  I wear glasses.  Yes.  I can

8    see with my glasses.  Yes.

9            THE COURT:  Okay.  And that's the only issue?

10           PROSPECTIVE JUROR:  Yes.  I can see with my

11    glasses.  Yes.

12           THE COURT:  Question 23, where you were asked

13    whether you had ever served on a grand jury.

14           PROSPECTIVE JUROR:  Yes.

15           THE COURT:  And was that a federal grand jury or a

16    Superior Court grand jury or in a different jurisdictional

17    altogether?

18           PROSPECTIVE JUROR:  Superior.  That's over there.

19    Right?

20           THE COURT:  Correct.

21           And so let me ask you, a grand juror, the task is

22    different.  You are evaluating evidence to determine whether

23    somebody should be charged.

24           At trial, the standard is much higher.  It's

25    beyond a reasonable doubt.  And I want to just confirm that

1    you understand that there's a difference between making a

2    probable cause determination and a beyond-a-reasonable-doubt

3    standard.

4              PROSPECTIVE JUROR:  I understand.

5              THE COURT:  If you would turn to Page 10, please.

6    Questions 39 through 41 asked about your exposure to news

7    coverage about the events of January 6th.  Could you tell us

8    whether you're somebody who actively seeks out news about

9    the events of that day or somebody who sort of catches it if

10   it happens to be in front of them?

11             PROSPECTIVE JUROR:  Definitely if it happens to be

12   in front of me.  It's nothing that I seek out.

13             THE COURT:  And if you were to serve as a juror,

14   you would be asked to put aside anything you may have read

15   or seen.  Is that something you think you could do?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  And focus just on the evidence in this

18   case?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Do you think you could be fair and

21   impartial to these Defendants?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Now, we asked you, in Question 46,

24   whether you had heard, seen or read anything about an

25   organization called the Oath Keepers.

1          Just to follow up on that and confirm, from any

2     source, whether it be the media, conversations, social media

3     that you've heard about this organization?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Question 57 asks whether any close

6     friend or family member has ever been arrested, charged or

7     prosecuted or convicted of a crime.  Can you tell us about

8     that?

9          PROSPECTIVE JUROR:  Can you elaborate?

10          THE COURT:  So I guess the question is:  Can you

11     share with us whether you or a close friend or family member

12     has ever been arrested, charged, prosecuted or convicted of

13     a crime?

14          PROSPECTIVE JUROR:  So it was not me.  But it has

15     been friends and family.  Yes.

16          THE COURT:  Friends and family?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  And I don't mean to pry, but can you

19     tell us how close these family members are to you?

20          PROSPECTIVE JUROR:  Brothers.  My brothers.

21          THE COURT:  Your brothers?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  And close friends?

24          PROSPECTIVE JUROR:  Just from, like, maybe junior

25     high, high school.

```
 1                    THE COURT:  And --
 2                    PROSPECTIVE JUROR:  No one that I'm in contact
 3          with right now.
 4                    THE COURT:  Your brothers, to the extent they've
 5          been convicted, is that in the District of Columbia or
 6          elsewhere?
 7                    PROSPECTIVE JUROR:  Yes.
 8                    THE COURT:  And do you have any feelings about the
 9          criminal justice process in the District of Columbia as a
10          result of their having been through the system?
11                    PROSPECTIVE JUROR:  No.
12                    THE COURT:  And do you have any -- harbor any
13          views about the Government which prosecuted your brothers in
14          those cases?
15                    PROSPECTIVE JUROR:  I'm sorry.  Can you repeat
16          that?
17                    THE COURT:  Do you have any particular views,
18          favorable or unfavorable, about the Government which
19          prosecuted your brothers?
20                    PROSPECTIVE JUROR:  No, sir.
21                    THE COURT:  And do you think they were treated
22          fairly?
23                    PROSPECTIVE JUROR:  Yes.
24                    THE COURT:  Just one last question about your
25          hardship, ma'am.
```

1          If you were called upon to serve, when would you

2     be able to tell us that you would have somebody who could

3     cover to pick up your daughter Monday through Thursday the

4     following four to six weeks?

5          PROSPECTIVE JUROR:  Well, once I leave here today,

6     I can ask around.

7          THE COURT:  Okay.

8          PROSPECTIVE JUROR:  One question.  So when will

9     the trial be set to start?

10         THE COURT:  We're likely to begin next Monday.

11         PROSPECTIVE JUROR:  Okay.

12         THE COURT:  And as I said, we'd go for some number

13    of weeks after that.

14         PROSPECTIVE JUROR:  Okay.

15         THE COURT:  So any followup questions?

16         MR. LINDER:  No, sir.

17         MR. WOODWARD:  I want to ask a followup question

18    about the hardship.

19         THE COURT REPORTER:  I'm sorry.  Can you

20    identify --

21         MR. WOODWARD:  This is Mr. Woodward.

22         There's also several -- is your child in a D.C.

23    public school or charter school?

24         PROSPECTIVE JUROR:  She is in a charter school,

25    yes.

```
 1              MR. WOODWARD:  And so there's several days that
 2    DCPS is closed in the next four to six weeks as well.  I
 3    wondered if --
 4              PROSPECTIVE JUROR:  Absolutely.
 5              MR. WOODWARD:  -- that's on your radar as well.
 6    Okay.  I'm dealing with it myself.
 7              THE COURT:  And of course, we won't be sitting on
 8    the federal holidays when the schools are closed.
 9              MR. WOODWARD:  They're unfortunately not federal
10    holidays.
11              PROSPECTIVE JUROR:  Yeah.
12              THE COURT:  They're coming up?  Okay.  I've got a
13    teenager in public schools, and thankfully she can take care
14    of herself most of the time.
15              Okay.  Mr. Nestler?
16              MR. NESTLER:  No questions, your Honor.  Thank
17    you.
18              THE COURT:  Thank you, ma'am.
19              Mr. Douyon will show you out of the courtroom and
20    provide you with additional instructions.
21              (Thereupon, Prospective Juror No. 1537 retired
22    from the courtroom and the following proceedings were had:)
23              MR. WOODWARD:  Judge, we'll formally object on the
24    hardship only.  It's -- you know, there are at least four
25    DCPS holidays between now and the end of six weeks.  And our
```

1    concern is that although, at the moment, she has no qualms

2    asking family to assist her for six weeks, at the end of six

3    weeks, she may not feel quite the same, having not gone

4    through this before.

5              THE COURT:  So I did ask her how she would feel

6    about having to entrust somebody else and find somebody else

7    to pick her daughter up.  And she seemed fine with it.

8              I think what I'm inclined to do is I'll qualify

9    her and, when she comes back, we'll find out whether she's

10   been able to make arrangements or not.  And depending upon

11   what her answer is, we can either qualify her or disqualify

12   her for cause.

13             Let's bring in our next juror.

14             (Thereupon, Prospective Juror No. 1088 entered the

15   courtroom and the following proceedings were had:)

16             THE COURTROOM DEPUTY:  Your Honor, this is Juror

17   No. 1088.

18             THE COURT:  Sir, how are you?

19             PROSPECTIVE JUROR:  I'm doing well.  Thank you.

20   And you?

21             THE COURT:  I'm fine.  Thank you for asking.

22             Thank you, first and foremost, for your patience

23   today.  I know it's been a long day.  And so we're all

24   grateful for your being here and for your service and for

25   completing your questionnaire.

1           If you are comfortable taking your mask off, you

2     can do that.

3           And your questionnaire is in front of you.  So

4     I'll ask you to turn to Page 11 and, in particular, to

5     Question 46.  Question 46 asks whether you've read, seen or

6     heard anything about the Oath Keepers organization.  And you

7     answered yes.  Can you tell us what you have read, seen or

8     heard about that organization?

9           PROSPECTIVE JUROR:  I've seen the name come up in

10    news articles.  I can't really point to specific things I've

11    heard.  Let's see.  I listened -- I watched some of the

12    January 6th hearings, so I heard the name come up in that in

13    passing.  I think that would mostly be it.

14          THE COURT:  Okay.  So we'll talk about the

15    January 6th hearings in a moment.

16          But in terms of what you have -- even including

17    the January 6th hearings, based upon what you've seen, read,

18    heard, are you able to sort of articulate specifics of what

19    you understand the organization's mission is, for example?

20          PROSPECTIVE JUROR:  I know of it as a pro-Trump

21    organization.

22          THE COURT:  Do you know anything more than that?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Are you aware of any alleged conduct

25    that they have engaged in in and around January the 6th?

1          PROSPECTIVE JUROR:  Just that they were at the

2     January 6th events.

3          THE COURT:  Anything more than their presence?  Do

4     you know -- have you heard what they purportedly did on that

5     day as opposed to just being present?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Okay.  You've said that you understand

8     the organization to be aligned with the former president.

9     Let me ask you, would the fact of the organization's

10    alignment with the former president pose any concerns for

11    you about being fair and impartial?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  And if you were to learn that these

14    Defendants were members of the organization and, in fact,

15    were aligned with the former president, would that give you

16    any trouble in being fair and impartial to them?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  Let me ask you, please, to turn back

19    to Page 6.  Question 14 asks whether you or a close friend

20    or family member has ever been employed by the Federal

21    Government.  Can you tell us who that might be?

22         PROSPECTIVE JUROR:  Let's see.  So I have some

23    friends who work as lawyers in the Federal Government, a

24    couple of friends.  I have a friend who's a federal marshal.

25    I know the Federal Government is big, so --

1           THE COURT:  Sure.

2           PROSPECTIVE JUROR:  But these are the people I can

3      think of off the top of my head.

4           THE COURT:  Let's start with your friends who are

5      lawyers in the Federal Government.  Do you know in what

6      capacity they are lawyers for the Federal Government?

7           PROSPECTIVE JUROR:  I forget which agencies

8      they're working at.  I know they both work in civil rights,

9      but there are civil rights offices in various different

10     agencies.  So I forget which ones.

11          THE COURT:  Do you know if they work for the

12     Department of Justice?

13          PROSPECTIVE JUROR:  It's possible one of them

14     does.  I'm not 100 percent sure, though.

15          THE COURT:  Okay.  Anything about the fact that

16     your friends are lawyers and do civil rights work that could

17     affect your ability to be fair in this case to one side or

18     the other?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  And I think you said you have a friend

21     who is a U.S. Marshal?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  So U.S. Marshals are law enforcement,

24     and I expect that there will be law enforcement testimony in

25     this case.  Is there anything about your friendship with

1    somebody who is a U.S. Marshal that might cause you to

2    believe you could not be fair to these Defendants?

3            PROSPECTIVE JUROR:  No.

4            THE COURT:  And you will be instructed that the

5    testimony of law enforcement officers should not be treated

6    any more favorably or less favorably just because they are

7    law enforcement.

8            Do you think your friendship with a U.S. Marshal

9    would prevent you from following that instruction?

10            PROSPECTIVE JUROR:  No.

11            THE COURT:  And let me ask you, if ultimately you

12    were to conclude in this case that the Government had not

13    met its burden of proof, would you be able to vote to acquit

14    these Defendants or a Defendant?

15            PROSPECTIVE JUROR:  Yes.

16            THE COURT:  And do you think the fact that you

17    have friendships with lawyers who do civil rights work or

18    with a U.S. Marshal would make it more difficult for you to

19    return and vote for an acquittal?

20            PROSPECTIVE JUROR:  No.

21            THE COURT:  Question 18 asks about close family,

22    friends or yourself who have attended rallies, protests or

23    demonstrations.  Can you tell us a little bit more about

24    that?

25            PROSPECTIVE JUROR:  Sorry.  Which question is it?

1          THE COURT:  Question 18.

2          PROSPECTIVE JUROR:  Sure.  Yes.  So I went to one

3    of the big Black Lives Matters protests a few years ago.

4    And I went to the Women's March in 2017.

5          THE COURT:  And I alluded to this question

6    earlier, which is that, you know, if you were to come to the

7    conclusion that these Defendants have political views that

8    are different than yours, do you think that would affect

9    your ability to be fair and impartial toward them?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  Do you think it would make it more

12    difficult for you to vote to acquit them even if you thought

13    the evidence did not meet the beyond-a-reasonable-doubt

14    standard?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Question 19, 20 and 21 asks about

17    people who either work on the Hill or live on the Hill as of

18    January the 6th.  Can you tell us who you know -- and I

19    don't need names -- of people who work on the Hill as of

20    January 6th or live on the Hill?

21          PROSPECTIVE JUROR:  So the neighborhood boundaries

22    are a little fuzzy in D.C., but I could be described as

23    living on Capitol Hill.

24          THE COURT:  Okay.

25          PROSPECTIVE JUROR:  Kind of in the periphery.  So

1    that's why I answered that.

2              THE COURT:  And in 21 you were asked whether a

3    close friend or family member was actually at the Capitol

4    on --

5              PROSPECTIVE JUROR:  Someone I know was at the

6    event and left partway through.

7              THE COURT:  I'm sorry.  When you say "at the

8    event," what do you mean?

9              PROSPECTIVE JUROR:  They were -- went to kind of

10   witness what was going on.

11             THE COURT:  Witness what was going on?

12             PROSPECTIVE JUROR:  Yeah.

13             THE COURT:  Were they -- was that person there as

14   a supporter of the former president and participating in

15   those events or somebody who just for, say, curiosity

16   purposes went down to observe what was going on?

17             PROSPECTIVE JUROR:  For curiosity purposes.

18             THE COURT:  When you -- were you at home on

19   January the 6th, when these events occurred?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Did you have any concerns for your

22   safety or for the safety of your friends and family?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  I'll ask you to turn to Page 10,

25   please.  Question 37 asks which of the individuals on the

1    list that we gave you you recognized.  And you've listed

2    Alex Jones and John Eastman and Roger Stone.

3            I don't have any reason to believe that Mr. Jones

4    or Mr. Eastman will be testifying in this case and I would

5    be surprised if their names were mentioned.  However,

6    Mr. Stone's name could be mentioned in this case.  And there

7    may be evidence that a defendant in this case has some

8    association or relationship with Mr. Stone.

9            Do you have impressions of Mr. Stone such that --

10    or such strong impressions of Mr. Stone that somebody's

11    association with him would cause you to -- would cause you

12    to have difficulties being fair and impartial to that

13    Defendant?

14            PROSPECTIVE JUROR:  No.

15            THE COURT:  And so -- do you have positive or

16    negative impressions of Mr. Stone?

17            PROSPECTIVE JUROR:  I have negative impressions of

18    Mr. Stone.

19            THE COURT:  And if a Defendant in this case had an

20    association with Mr. Stone, would you, by virtue of that

21    relationship, have a negative impression of that Defendant?

22            PROSPECTIVE JUROR:  No.

23            THE COURT:  Questions 39, 40, 41 asked about your

24    exposure to the news and media relating to January 6th.

25    Would you describe yourself as somebody who actively seeks

 1   out news relating to January 6th?

 2           PROSPECTIVE JUROR:  No.

 3           THE COURT:  And as a juror, you would be asked to

 4   sort of put aside whatever you've learned or seen about

 5   January 6th.  Do you have any reason to believe you could

 6   not do that in this case?

 7           PROSPECTIVE JUROR:  No.

 8           THE COURT:  Question 50 asks whether you or a

 9   close friend or family member has ever worked in the legal

10   field.  You've told us you have some friends in the

11   Department of Justice who are lawyers.

12           Anybody else in addition to those folks?

13           PROSPECTIVE JUROR:  My wife is a lawyer as well.

14           THE COURT:  Your wife is a lawyer.  And is she a

15   practicing lawyer?

16           PROSPECTIVE JUROR:  No, not right now.

17           THE COURT:  And -- it sounds like she practiced

18   once upon a time.

19           PROSPECTIVE JUROR:  Yeah.  Yeah.

20           THE COURT:  And what kind of work did she do?

21   What kind of law did she practice?

22           PROSPECTIVE JUROR:  So she was a clerk for Judge

23   Judith Rogers.

24           THE COURT:  Here in the D.C. Circuit?

25           PROSPECTIVE JUROR:  Yeah.

```
1              THE COURT:  Okay.  Did she practice law after her
2      clerkship?
3              PROSPECTIVE JUROR:  Yes.  She worked at a small
4      plaintiff's side law firm and then worked at American
5      Oversight Transparency, a nonprofit.
6              THE COURT:  Okay.  And at any point in her career
7      has she done any criminal work?
8              PROSPECTIVE JUROR:  No.
9              THE COURT:  Question 54 asks whether you or close
10     friends or family members have ever been the victim of a
11     crime.  Can you tell us about that?
12             PROSPECTIVE JUROR:  I -- porch pirates.  Packages
13     have been stolen --
14             THE COURT REPORTER:  I'm sorry.  Could you say
15     that again.
16             PROSPECTIVE JUROR:  I've had packages stolen
17     before from my porch.
18             THE COURT:  Okay.  Have you reported the theft of
19     those packages?
20             PROSPECTIVE JUROR:  Yes.
21             THE COURT:  And have you had interactions with the
22     MPD?
23             PROSPECTIVE JUROR:  Yes.
24             THE COURT:  And based on those interactions, would
25     you say you have favorable, unfavorable, neutral views about
```

1   MPD officers?

2              PROSPECTIVE JUROR:  Neutral.

3              THE COURT:  And I asked this earlier, but there

4   are likely to be -- there will be law enforcement officers

5   testifying in this case.  Do you think there's anything

6   about your encounters or experiences with Metropolitan

7   Police Department that would cause you to disfavor or favor

8   the testimony of law enforcement officers?

9              PROSPECTIVE JUROR:  No.

10             THE COURT:  All right.

11             Mr. Linder?  Mr. Fischer?

12             MR. FISCHER:  Good afternoon, sir.  First of all,

13  thank you for being here all day, and thank you for your

14  service.

15             Sir, just a couple of questions.  Are you

16  originally from Washington, D.C.?

17             PROSPECTIVE JUROR:  Not originally, no.

18             MR. FISCHER:  Where are you originally from?

19             PROSPECTIVE JUROR:  Originally from New York.

20             MR. FISCHER:  From New York.  And how long have

21  you lived in the District for?

22             PROSPECTIVE JUROR:  Since 2008, although I lived

23  in New Haven for three years in the middle.

24             MR. FISCHER:  I'm sorry.  You lived in --

25             PROSPECTIVE JUROR:  In New Haven for three years

1       in the middle.

2              MR. FISCHER:  New Haven.  Okay.  And you don't

3       have to tell me where you work at, but what kind of work do

4       you do?

5              PROSPECTIVE JUROR:  I'm a digital consultant

6       working with nonprofits.

7              MR. FISCHER:  Okay.  And -- you say -- it's for

8       nonprofit organizations?

9              PROSPECTIVE JUROR:  Uh-huh.

10             MR. FISCHER:  Does it do any type of work with the

11      Federal Government?

12             PROSPECTIVE JUROR:  No.

13             MR. FISCHER:  And -- sir, you have to understand,

14      I obviously don't know you and I don't believe you know

15      myself or the attorneys.  Is that correct?

16             PROSPECTIVE JUROR:  That's correct.

17             MR. FISCHER:  Okay.  So if you were picked as a

18      juror, can you give both sides your word that you would try

19      your best to be fair and impartial and follow the law?

20             PROSPECTIVE JUROR:  Yes.

21             MR. FISCHER:  All right.  Fair enough.

22             I have nothing else, your Honor.

23             THE COURT:  Thank you, Mr. Fischer.

24             Mr. Nestler.

25             MR. NESTLER:  No questions, your Honor.  Thank

1    you.

2              THE COURT:  Sir, thank you very much for your time

3    today.

4              Mr. Douyon will show you out of the courtroom and

5    provide you some additional instructions.

6              PROSPECTIVE JUROR:  Should I leave this here?

7              THE COURT:  Yes, please.

8              (Thereupon, Prospective Juror No. 1088 retired

9    from the courtroom and the following proceedings were had:)

10             (Thereupon, Prospective Juror No. 0754 entered the

11   courtroom and the following proceedings were had:)

12             THE COURTROOM DEPUTY:  Your Honor, this is Juror

13   No. 0754.

14             THE COURT:  Sir, how are you?

15             PROSPECTIVE JUROR:  Good.  How are you, sir?

16             THE COURT:  I'm good.  Thank you very much.

17             Feel free to remove your mask if you are

18   comfortable doing so.

19             First of all, thank you for your patience today.

20   I know it's been a long day.  Thank you for completing your

21   questionnaire and for your service.

22             Your questionnaire should be there in front of

23   you.  And I'll just ask you if you would, please, to turn to

24   Page 6.  We'll start with Question 14.  That question asks

25   whether you or a close friend or family member has ever been

1   employed by the Federal Government.  Can you tell us about

2   that?

3              PROSPECTIVE JUROR:  Yes.  My girlfriend is a

4   contractor for the State Department.

5              THE COURT:  I'm sorry.  Who is?

6              PROSPECTIVE JUROR:  My girlfriend is a contractor

7   for the State Department.  And my dad was in the Air Force.

8              THE COURT:  In the Air Force?

9              PROSPECTIVE JUROR:  Yeah.  My mom was a teacher

10  for the Department of Defense.

11             THE COURT:  Okay.  If you could either just pull

12  that microphone a little closer to you or keep your voice

13  up.  I'm having a little bit of trouble hearing you.

14             PROSPECTIVE JUROR:  Sorry.

15             THE COURT:  That's okay.

16             Question 19 asks whether you've ever been to the

17  Capitol or -- the Capitol Building or the Capitol grounds.

18  Can you just tell us the last time you were there and for

19  what reason?

20             PROSPECTIVE JUROR:  Maybe a month ago, jogging.

21             THE COURT:  Okay.  Other than sort of

22  recreationally, have you spent time at the Capitol Building?

23             PROSPECTIVE JUROR:  I think I went on a tour there

24  in high school.

25             THE COURT:  In high school?

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  If you would turn, please, to Page 10.

 3    Questions 39, 40 and 41 were all questions designed to ask

 4    you and find out how much news coverage you've been exposed

 5    to regarding the events of January the 6th.

 6              Let me ask, do you consider yourself somebody who

 7    actively seeks out news relating to January the 6th?

 8              PROSPECTIVE JUROR:  No.

 9              THE COURT:  And so -- you know, as a juror, you

10    will be instructed to sort of set aside whatever it is that

11    you've seen and you've heard about those events and view the

12    evidence that's only presented in this case.

13              Is that something you could do?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Do you have any reason to doubt that

16    you would be able to set aside whatever media you've been

17    exposed to?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  Question 46 asks whether you had read,

20    seen or heard anything about an organization known as the

21    Oath Keepers.

22              So let me just follow up on that question.  Have

23    you heard of that organization either from the media, from

24    conversations, social media, any potential source?

25              PROSPECTIVE JUROR:  I don't remember hearing about
```

```
 1    it specifically.  It may have come up on a podcast or
 2    something.
 3              THE COURT:  Okay.  I'm not asking you to guess.
 4    But to the extent that you think something you may have
 5    heard relates to the organization, can you tell us what that
 6    is, if you can recall?
 7              PROSPECTIVE JUROR:  I don't recall anything
 8    specific about the organization.
 9              THE COURT:  Okay.  Nothing about what it stands
10    for or what kind of organization it is?  You have no idea?
11              PROSPECTIVE JUROR:  No.
12              THE COURT:  Question 50 asks whether you have
13    close friends or family members who worked in the legal
14    profession.
15              PROSPECTIVE JUROR:  Yeah.  I'm an attorney.
16              THE COURT:  You're a lawyer.  Okay.
17              PROSPECTIVE JUROR:  Yes, sir.
18              THE COURT:  And can you tell us whether you
19    practice?
20              PROSPECTIVE JUROR:  Yes.  I -- I practice.
21              THE COURT:  And can you tell us what kind of law
22    you practice?
23              PROSPECTIVE JUROR:  I'm an antitrust lawyer.
24              THE COURT:  An antitrust lawyer.
25              And do you work -- I don't think you've identified
```

 1    yourself as an employee of the Federal Government.  So you

 2    work for a law firm?

 3              PROSPECTIVE JUROR:  Yes, sir.  Yes, your Honor.

 4    Sorry.

 5              THE COURT:  Sorry?

 6              PROSPECTIVE JUROR:  Yes, your Honor.  Sorry.

 7              THE COURT:  Okay.  No problem.  No problem.

 8              Are you employed by any law firms that have

 9    business in front of me?

10              PROSPECTIVE JUROR:  Not to my knowledge.

11              THE COURT:  Okay.  I have an antitrust case or

12    two.

13              Question 57 asks whether you, close friends or

14    family members have ever been arrested, charged, prosecuted

15    or convicted of any crime.

16              Can you tell us about that?

17              PROSPECTIVE JUROR:  Yes.  My dad's sister was

18    just -- just went through a trial and was found guilty of

19    elder abuse and I think -- I can't remember what --

20    negligent homicide, I think is what essentially the charge

21    was.

22              THE COURT:  And was that here in Washington, D.C.,

23    or elsewhere?

24              PROSPECTIVE JUROR:  It was in Macomb County,

25    Michigan.

1              THE COURT:  Is there anything about that

2    experience that would cause you to have hard feelings toward

3    the Government in this case?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  Let me just ask you -- you're a lawyer

6    and so you've undoubtedly learned some legal principles

7    about the criminal law.  Do you think you would be able to

8    set those aside and follow the instructions that I give you

9    even if you disagree with those instructions?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  All right.

12             Mr. Fischer?  Mr. Linder?

13             MR. LINDER:  No questions, your Honor.  Thank you.

14             THE COURT:  Mr. Nestler?

15             MR. NESTLER:  No questions, your Honor.  Thank

16   you.

17             THE COURT:  All right, sir.  Thank you very much.

18   You are free to go for the day.  Mr. Douyon will show you

19   out and provide you with some additional instructions.

20             PROSPECTIVE JUROR:  Thank you, your Honor.

21             THE COURT:  Thank you.

22             (Thereupon, Prospective Juror No. 0754 retired

23   from the courtroom and the following proceedings were had:)

24             THE COURT:  Counsel, we've got three more to go

25   and our court reporter has a 6:15 hard stop.  So I'll just

 1    ask everybody to be mindful of that.

 2              (Thereupon, Prospective Juror No. 0705 entered the

 3    courtroom and the following proceedings were had:)

 4              THE COURTROOM DEPUTY:  Your Honor, this is Juror

 5    0705.

 6              THE COURT:  Sir, how are you?

 7              PROSPECTIVE JUROR:  Doing well.

 8              THE COURT:  First of all, thank you for your

 9    patience today.  I know it's been a long day, and I

10    appreciate that.  And thank you for your service and

11    completing your questionnaire.

12              Feel free to remove your mask if you'd like.

13              You're juror 0705?

14              PROSPECTIVE JUROR:  Yes, I am.

15              THE COURT:  All right.  Let's turn to Question --

16    and your juror questionnaire is in front of you.  Let's turn

17    to Page 13 and Question 68 in which you've told us that you

18    are an employee for the House of Representatives.

19              You still say, "I believe that I would be an

20    impartial juror, but wanted to be clear about my

21    employment."

22              Were you employed at the House of Representatives

23    on January 6th?

24              PROSPECTIVE JUROR:  No.  2021?

25              THE COURT:  Yes.

1              PROSPECTIVE JUROR:  No.

2              THE COURT:  Okay.  So your employment has been

3      since then?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  And I take it -- let me ask.  Do you

6      work with people who were employed by the House on January

7      the 6th?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And have you talked with them about

10     the events of that day?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And can you tell us what they've told

13     you or what sort of impressions they've left with you about

14     the events of that day?

15             PROSPECTIVE JUROR:  Yeah.  I don't think we've --

16     frankly, they haven't recalled any, like, specific

17     recollection, and I work for a committee staff who are not

18     there when votes are being certified on the 6th.

19             THE COURT:  Okay.

20             PROSPECTIVE JUROR:  So our conversations have not

21     been about their experiences during that day, just generally

22     about January 6th.

23             THE COURT:  Okay.

24             PROSPECTIVE JUROR:  There's one person who has --

25     who was there and has made comments about it on, like, a

```
 1    large Zoom call.
 2              THE COURT:  And when you say generally spoken
 3    about it, what do you mean?
 4              PROSPECTIVE JUROR:  You know, we watched --
 5    watched some of the January 6th hearings, not together --
 6    not as a group activity.  I honestly don't remember the
 7    specifics.  It's just come up because it's obviously a big
 8    thing that happened.
 9              THE COURT:  Sure.
10              Given that you presently work on the Hill,
11    although you did not then, do you think -- this case,
12    obviously, involves the events of January the 6th.  Do you
13    think you could be fair to these Defendants even though you
14    are now employed by the House?
15              PROSPECTIVE JUROR:  Yes.
16              THE COURT:  And do you think it would be more
17    difficult, as somebody who's currently employed by the
18    House, to return a not guilty verdict because you would then
19    have to go back to work with people who may have had
20    experiences or have strong views about those events?
21              PROSPECTIVE JUROR:  No.
22              THE COURT:  You've said that you've watched the
23    January 6th hearings.  As part of your work, do you do any
24    work with the Select Committee?
25              PROSPECTIVE JUROR:  No.  I'm only energy.
```

```
1              THE COURT:  You're only energy.  Okay.
2              And to the extent that you have observed and
3    watched those hearings, can you just tell us how much of
4    those hearings you've watched?
5              PROSPECTIVE JUROR:  Yeah.  I've watched bits and
6    pieces, so -- I think it was the first night of hearings I
7    watched on TV in realtime.  And I think I watched most of
8    that first night's hearing.  I think there was -- I think
9    there may have been -- there's at least one, but maybe more
10   than one, Capitol Police officer.  There was a guy who was
11   filming a -- I think the guy who was filming a documentary
12   was there.  So I watched that and kind of a footage from
13   that day that they showed during the course of that
14   presentation.
15             And then I've seen clips and other bits on
16   Twitter --
17             THE COURT:  Okay.
18             PROSPECTIVE JUROR:  -- you know.
19             THE COURT:  And from what you have seen, do you
20   recall any testimony or comments about Oath Keepers being
21   made at that hearing?
22             PROSPECTIVE JUROR:  Yes.
23             THE COURT:  And can you tell us what you recall?
24             PROSPECTIVE JUROR:  Just that it was a topic of
25   conversation, that there was going to be a subsequent
```

1   hearing focusing on the Oath Keepers' involvement in

2   January 6th.  It was kind of foreshadowed with some

3   regularity, and a number of members made comments about how

4   the first hearing was going to be setting the stage,

5   reminding folks about what happened that day, and then

6   subsequent hearings would be describing kind of the nexus or

7   relationship -- both the Oath Keepers' role and it seemed

8   like the relationship between the Oath Keepers and some

9   folks in the administration.

10              THE COURT:  And --

11              PROSPECTIVE JUROR:  Prior administration.

12              THE COURT:  And did you watch or read or hear

13  anything about the particular hearing in which the subject

14  of the Oath Keepers came up?

15              PROSPECTIVE JUROR:  You know, I think I did.  And

16  it seems like something I should remember.  But I don't

17  remember anything about it.

18              THE COURT:  Let me ask this:  What impressions do

19  you have about the organization, whether they come from the

20  January 6th committee hearings or some -- from any other

21  source?

22              PROSPECTIVE JUROR:  I would say quite unfavorable.

23              THE COURT:  Okay.  And why would you say that?

24              PROSPECTIVE JUROR:  I mean, to the extent, from my

25  understanding, that the Oath Keepers kind of have some

```
1    either racist or antisemitic views.  I tend to look

2    disfavorably on people who have racist and antisemitic

3    views.

4              THE COURT:  Okay.  And so I think you have --

5    well, let me ask you this:  Given what your beliefs are

6    about the organization, how would that affect your ability

7    to be fair and impartial in this case?

8              PROSPECTIVE JUROR:  I don't think it would.  I

9    would imagine it would be hard to find a jury pool that

10   doesn't think -- doesn't have similar views.  But by

11   definition, many criminal cases involve folks who have been

12   accused of something.  I would hear the facts and then see

13   whether it -- you know -- what those facts dictated.

14             THE COURT:  Okay.

15             Counsel, are there any objections?

16             MR. LINDER:  No objections.

17             MR. NESTLER:  Yes.

18             THE COURT:  Go ahead, Mr. Nestler.

19             MR. NESTLER:  Good evening, sir.

20             So you had said that you had heard on the news

21   potentially that you thought the Oath Keepers group may

22   harbor racist or antisemitic views.  Is that right?

23             PROSPECTIVE JUROR:  I don't know if I said I heard

24   it on the news.  But that's my vague notion about the

25   organization.
```

1          MR. NESTLER:  And where are you getting your

2     information to inform your vague notion?

3          PROSPECTIVE JUROR:  Like everybody else, on

4     Twitter.

5          MR. NESTLER:  Okay.  And so if you were selected

6     as a juror and you were seated here and listened to the

7     evidence in the trial and you heard evidence that that's

8     actually not correct, that what you heard on Twitter might

9     not be accurate, what you heard on the news might not be

10     accurate, or even from the January 6th committee might not

11     be accurate, would you be able to put that vague notion out

12     of your mind and decide the case based on the facts as heard

13     here in court?

14          PROSPECTIVE JUROR:  Sure.  Yes.  Yes.

15          MR. NESTLER:  Okay.  And you said a vague notion.

16     Why are you saying a vague notion?

17          PROSPECTIVE JUROR:  I find it hard to recall which

18     of the many groups and militia-oriented groups we talked

19     about over the past six years hold what particular views.

20          MR. NESTLER:  Understood.  And if the judge tells

21     you you have to evaluate the evidence as to these five

22     Defendants not as to a group or other people, but these five

23     people and what they did or did not do, would you be able to

24     evaluate the evidence as to the individuals rather than the

25     group as a large?

```
 1              PROSPECTIVE JUROR:  Yes.

 2              MR. NESTLER:  Thank you.

 3              THE COURT:  Sir, thank you for your time.

 4   Mr. Douyon will show you out of the courtroom and provide

 5   you additional instructions.

 6              PROSPECTIVE JUROR:  Thank you very much.

 7              (Thereupon, Prospective Juror No. 0705 retired

 8   from the courtroom and the following proceedings were had:)

 9              THE COURT:  I'm going to strike 0705 for cause,

10   notwithstanding his statements that he could be fair and

11   impartial.  This is not going to be a trial about trying to

12   disabuse him of the notion that the Oath Keepers are racist

13   or antisemitic.  And so to the extent that he has that

14   impression, it's not really something that's going to come

15   up and be an issue at trial.  And so it's going to be

16   something embedded in his mind throughout the case.

17              And that, in combination with the fact that he

18   works at the House, I think, argues for striking him for

19   cause.

20              So 0705 will be stricken for cause.

21              Let's have our next juror come in, please.

22              (Thereupon, Prospective Juror No. 0861 entered the

23   courtroom and the following proceedings were had:)

24              THE COURTROOM DEPUTY:  Your Honor, this is Juror

25   No. 0861.
```

```
 1              THE COURT:  Sir, how are you?

 2              PROSPECTIVE JUROR:  Good.  You?

 3              THE COURT:  I'm good.  Thank you.  Thank you for

 4     your time and your patience today.  We're grateful.  I know

 5     it's been a long day.

 6              Feel free to remove your mask if you would like.

 7     And thank you for completing your questionnaire.  It is in

 8     front of you.

 9              Let me ask you, please, to begin with Question 11,

10     which is on Page 6.  And you were asked generally:  Is there

11     anything about you that the Court should know that might

12     affect your ability to be a fair and impartial juror in this

13     case?

14              And you answered:  I'm a registered Democrat,

15     historian with knowledge of similar events in the past.

16              Can you tell us why you thought it was important

17     to bring those facts to our attention?

18              PROSPECTIVE JUROR:  Sure.  Well, given what I know

19     about the January 6th event, I thought my political status

20     might have an influence on that, so I thought that was

21     important to put down.

22              The second aspect of that, I deal with a lot of

23     history related to -- especially European events, including

24     many events of people storming whatever center of government

25     might be important at that time, from the French Revolution,
```

1    Defenestration of Prague, and other events in history.  The

2    Russian Revolution, for example, is another one.

3              THE COURT:  Okay.  And how do you think your

4    understanding and history of those events would affect your

5    ability to be fair and impartial in this case?

6              PROSPECTIVE JUROR:  As a historian, it's my job to

7    look at things from multiple perspectives.  So I have

8    examined those -- many of those events from multiple

9    perspectives as well.  So I think that could be a benefit

10   towards being impartial and could be a hindrance.  I'm not

11   sure.

12             THE COURT:  Okay.  Do I hear you saying that, in

13   your view as a historian, there are -- you see parallels

14   between the events of January the 6th and some of the

15   European historical and revolutionary events that you've

16   just described?

17             PROSPECTIVE JUROR:  Yeah.  To what degree varies,

18   of course.  There are lots of differences as well.  But a

19   seat of government power, such as Congress or the Versailles

20   Palace, Palace of the Czars in St. Petersburg, there are

21   parallels.  Obviously, there are a lot of differences as

22   well.

23             THE COURT:  Okay.  Mr. Nestler?

24             MR. NESTLER:  No objection, your Honor.

25             THE COURT:  Sir, thank you very much for your

1    time.  I know it's been a long day.  I appreciate you coming

2    in and answering our questions.  Mr. Douyon will escort you

3    out of the courtroom and provide you additional

4    instructions.

5              PROSPECTIVE JUROR:  Thank you.

6              (Thereupon, Prospective Juror No. 0861 entered the

7    courtroom and the following proceedings were had:)

8              THE COURT:  So 0833 will be stricken for cause.

9              MR. FISCHER:  0861, your Honor.

10             THE COURT:  0861, my apologies.

11             THE COURTROOM DEPUTY:  Go ahead, your Honor?

12             THE COURT:  Yes.

13             We already handled 0833, right?

14             MR. FISCHER:  Yes.

15             (Thereupon, Prospective Juror No. 0826 entered the

16   courtroom and the following proceedings were had:)

17             THE COURTROOM DEPUTY:  Your Honor, this is Juror

18   No. 0826.

19             THE COURT:  Sir, how are you?

20             PROSPECTIVE JUROR:  Good.

21             THE COURT:  You're Juror 0826?  You can have a

22   seat.

23             First of all, thank you very much.  I think you

24   get the award for the most patient juror of the day because

25   you are our last juror of the day.  So thank you very much.

1          Thank you for coming and completing your

2     questionnaire as well.

3          Let me ask you -- the questionnaire is in front of

4     you.  Can I ask you to please turn to Page 11.  There are a

5     series of questions in that -- Questions 45 through 49 --

6     that asked you about your knowledge and understanding and

7     opinions about January 6th, about the Oath Keeper

8     organization and these Defendants.

9          Can you start by telling us what you know about

10    these Defendants and the Oath Keepers organization that

11    caused you to answer those questions yes?

12         PROSPECTIVE JUROR:  It's mostly through the

13    general information that I received through a -- mainstream

14    media, such as of *Washington Post*, *The Economist*, *Wall*

15    *Street Journal*, Bloomberg and so forth.

16         THE COURT:  Can I ask you to keep your voice up

17    and speak into the microphone?

18         PROSPECTIVE JUROR:  Sure.

19         THE COURT:  So based upon having read those

20    sources, what understanding have you developed about the

21    Oath Keepers?

22         PROSPECTIVE JUROR:  Not a full understanding,

23    other than it is a -- it was a potential threat before the

24    January 6th incident.  They have been flagged with some of

25    the other organizations as a potential cause for issues and

1    considerations.  So that's --

2         THE COURT:  When you say -- I think I heard you

3    say "flagged for potential cause and considerations," I

4    think is the phrase you used.  What do you mean by that?

5         PROSPECTIVE JUROR:  Because some of these medias

6    have noted them as a -- far-right or extremist

7    organizations.  So from that perspective, you know, they'd

8    noted that there are some potential, you know, violent

9    actors within the organization.  That would be a cause for

10   concern.  So that's the extent that I'm aware of.

11        THE COURT:  That's what you've read in the media?

12   And in particular, these Defendants that are listed in

13   Question 48, do you recognize any of them from what you have

14   read or seen in the media?

15        PROSPECTIVE JUROR:  The most notable name is the

16   first name, Stewart Rhodes, III.

17        THE COURT:  And what impressions or what do you

18   think you have learned in the media about Mr. Rhodes?

19        PROSPECTIVE JUROR:  Not much of an impression,

20   other than the fact that he is perhaps the leader at the

21   Oath Keepers organization.

22        THE COURT:  Okay.  What about the other four?  Any

23   recollection about hearing anything about them?

24        PROSPECTIVE JUROR:  Just seeing the names, but no

25   other information that I'm aware of.

 1          THE COURT:  Okay.  And to what extent is your

 2     reading and understanding -- what do you know that the Oath

 3     Keepers are alleged to have done on January the 6th?

 4          PROSPECTIVE JUROR:  The impression I got was just

 5     some of the violent acts.  And that's, again, information

 6     that I obtained through these mainstream media as well as

 7     the congressional hearings that has been going on since

 8     several months ago.

 9          THE COURT:  Since when?  Sorry.

10          PROSPECTIVE JUROR:  Several months ago, I believe.

11          THE COURT:  And you described conduct as violent.

12     Do you have a specific recollection of -- do you have a

13     recollection of specific acts that you read have been

14     reported by the group?

15          PROSPECTIVE JUROR:  Well, some of the images I've

16     seen and the video clips and so forth.  But I can't say for

17     sure whether that was associated with Oath Keepers and their

18     members.

19          THE COURT:  Okay.  What video clips come to mind?

20          PROSPECTIVE JUROR:  Carrying the assault rifles,

21     saying certain things that -- saying that they would kind of

22     overturn the election and so forth.  So some of those

23     wordings that I recall.

24          THE COURT:  So let me ask this:  Given all you

25     have read about the organization and the impressions that

1    have been left on you about the organization, do you think

2    you could be a fair and impartial juror to these Defendants

3    who are alleged to be members of or associated with the

4    group?

5         PROSPECTIVE JUROR:  Well, it was a violent act,

6    and it's hard to dissociate from those images and things

7    that I've heard.  And also, as a resident near the Capitol

8    Hill, that does come as to us pretty strongly.

9         THE COURT:  Okay.  And -- so would you be open to

10   hearing evidence that, for example, they did not engage in

11   violence on January the 6th?

12        PROSPECTIVE JUROR:  Well, again, I've seen the

13   articles and the video clips and images.  I would say that,

14   again, they're not -- I'm not sure if they are directly

15   associated with the Oath Keepers or not.  So...

16        THE COURT:  Okay.  And so I'll come back to the

17   question I asked earlier, which is:  Do you think you could

18   set aside what you have learned and honestly evaluate and

19   assess the evidence that's presented in this case?

20        PROSPECTIVE JUROR:  I found that to be difficult.

21        THE COURT:  You would find it to be difficult?

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  Mr. Nestler?

24        MR. NESTLER:  No objection, your Honor.

25        THE COURT:  Sir, thank you very much for your time

 1    today.  We appreciate it.  I know you've waited quite a long

 2    time.  Thank you for your service.

 3         Mr. Douyon will walk you out of the courtroom and

 4    provide you with additional instructions.

 5         (Thereupon, Prospective Juror No. 0826 retired

 6    from the courtroom and the following proceedings were had:)

 7         THE COURT:  So the juror who is in Line -- well,

 8    let me back up.

 9         This is what I have requested.  I have asked our

10    jury office to re-call for 3:00 tomorrow all of the jurors

11    we have qualified through today.  We are at 38 qualified,

12    based upon my count, which, you know, ideally means we pick

13    another seven.  We're not far from --

14         Am I wrong, Mr. Nestler?

15         MR. NESTLER:  I have 37.

16         THE COURT:  You have 37?

17         MR. NESTLER:  Yes.

18         MR. WOODWARD:  I also have 37.

19         MR. NESTLER:  I believe 1151, your Honor, might

20    have counted, if you're looking on the sheet --

21         MR. LINDER:  I have that as well.

22         THE COURT:  Well, I will figure out why I'm wrong

23    in a moment.  But bottom line is, we are at a place where I

24    think by -- hopefully by lunchtime tomorrow, if we start at

25    9:30 with the new group of jurors, that we ought to probably

1    get to our qualification -- certainly get to our

2    qualification number and beyond.

3              And so I've asked the jury office to have people

4    come back who have been qualified at 3:00, including those

5    folks that we just talked to within the last 60 minutes.

6              The juror who we've talked about who has

7    child-care issues who we spoke to, she is unable to come

8    back tomorrow at 3:00.  So let me ask whether anybody would

9    object to having her stricken for cause because of her

10   unavailability tomorrow.

11             MR. LINDER:  No objection.

12             MR. NESTLER:  We defer to the Court.

13             THE COURT:  Okay.

14             MR. LINDER:  No objection.  What line number was

15   she?  Because I need to put it on my paper.

16             THE COURT:  So that is Juror 1537 on Line 64.

17             So that brings us to 36 qualified.  We'll have to

18   figure out why my numbering is wrong.  But 36 qualified.

19   The target is 45.  That means we've got nine more to go.

20             MS. HALLER:  Your Honor, may I?

21             THE COURT:  Sure, Ms. Haller.

22             MS. HALLER:  1591 you said you'd revisit before

23   the end of the day, depending on where we were.

24             THE COURT:  I understand.  The idea is that we'll

25   revisit that once we get enough people qualified and see

 1    where we are.

 2                MS. HALLER:  I see.

 3                THE COURT:  So if we hit the schedule as I hope,

 4    we should be able to finish up and have our jury selected by

 5    tomorrow afternoon.

 6                MR. LINDER:  Would the Court entertain the idea of

 7    beginning at 9:00 rather than 9:30?

 8                THE COURT:  Would I entertain it?  Sure.

 9                MR. LINDER:  I think every minute would be --

10                THE COURT:  Look, I'm happy to start earlier than

11    that if everybody is available to do it.  But I -- there may

12    be some difficulty in terms of getting clients here and the

13    like.  But yes.

14                Can everybody start at 9:00 tomorrow?

15                MR. FISCHER:  Perfect.

16                MR. LINDER:  If we're going to have the jurors

17    here, we're happy to be available whenever the Court is

18    available.  We just don't know --

19                THE COURT:  No.  They'll be reporting here at

20    8:00.

21                Right?

22                THE COURTROOM DEPUTY:  Somewhere around there.  I

23    think the ones I dismissed today I told them to come back at

24    9:00.

25                THE COURT:  Oh.  You told them to come back at

```
1     9:00?
2              THE COURTROOM DEPUTY:  Yeah.
3              THE COURT:  Those are the ones we're going to
4     start with.
5              So it's going to be difficult to start at 9:00
6     because the ten who we asked -- who we dismissed, who were
7     here this morning and we've asked to come back, I told JC to
8     have them come back at 9:00.  So I think 9:30 is a more
9     realistic start time.
10             MR. LINDER:  I just didn't know if there was any
11    other stuff we could get --
12             THE COURT:  Look, we can cut, you know, the lunch
13    hour back a little bit, if our staff can do that.  So we'll
14    work as furiously as we can to make every minute count.
15             Thank you, everybody.  Have a good night.
16             (Proceedings concluded.)
17
18
19
20
21
22
23
24
25
```

1                              **CERTIFICATE**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4        certify that the foregoing constitutes a true and accurate

5        transcript of my stenographic notes, and is a full, true,

6        and complete transcript of the proceedings produced to the

7        best of my ability.

8

9

10                   Dated this 28th day of September, 2022.

11

12               /s/ Lisa Edwards, RDR, CRR
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25

**'** 

**'16** [1] - 584:12
**'18** [1] - 632:6

**/**

**/s** [1] - 745:12

**0**

**0090** [4] - 620:21, 620:24, 621:3, 636:18
**0576** [3] - 603:10, 603:13, 607:19
**0705** [4] - 726:2, 726:5, 726:13, 733:7, 733:9, 733:20
**0708** [1] - 676:23
**0754** [3] - 720:10, 720:13, 725:22
**08077** [1] - 561:17
**0826** [4] - 736:15, 736:18, 736:21, 741:5
**0833** [6] - 563:9, 563:16, 573:23, 573:25, 736:8, 736:13
**0861** [5] - 733:22, 733:25, 736:6, 736:9, 736:10
**0903** [3] - 677:7, 677:11, 685:16
**0925** [4] - 597:15, 597:18, 598:1, 603:8
**0980** [3] - 658:13, 658:16, 667:1

**1**

**1** [2] - 560:10, 575:20
**10** [15] - 570:20, 588:18, 598:20, 621:11, 647:13, 660:11, 668:4, 681:20, 692:25, 700:11, 700:14, 700:16, 703:5, 714:24, 722:2
**100** [3] - 634:16, 639:17, 711:14
**1034** [5] - 640:14, 645:1, 645:4, 645:15, 652:15
**1051** [3] - 640:17, 652:20, 653:5
**1052** [2] - 652:17, 658:11

**1088** [3] - 708:14, 708:17, 720:8
**10th** [1] - 564:5
**11** [14] - 566:24, 580:12, 599:13, 603:22, 612:10, 641:8, 653:15, 673:14, 677:19, 683:16, 686:9, 709:4, 734:9, 737:4
**1151** [1] - 741:19
**11th** [1] - 630:16
**12** [2] - 630:21, 651:13
**1204** [4] - 685:18, 685:21, 686:1, 699:1
**1295** [4] - 672:23, 673:2, 673:10, 676:21
**12:30** [1] - 699:23
**13** [4] - 565:15, 582:3, 659:2, 726:17
**130** [1] - 561:6
**13th** [1] - 701:22
**14** [9] - 568:20, 598:7, 645:19, 651:14, 651:19, 659:25, 690:4, 710:19, 720:24
**141** [1] - 561:6
**1443** [4] - 640:14, 640:21, 640:24, 644:24
**15** [5] - 568:17, 608:10, 636:21, 686:25, 687:1
**1515** [4] - 607:21, 607:24, 608:2, 620:19
**1537** [4] - 699:3, 699:6, 707:21, 742:16
**1542** [3] - 667:3, 667:6, 672:21
**1591** [5] - 574:23, 574:25, 575:10, 596:1, 742:22
**17110** [1] - 561:10
**18** [9] - 583:20, 584:6, 609:12, 646:5, 680:1, 681:5, 691:2, 712:21, 713:1
**1808** [1] - 561:3
**19** [8] - 586:13, 627:8, 647:1, 667:15, 692:5, 695:13, 713:16, 721:16
**1989** [1] - 695:14

**2**

**20** [4] - 610:6,

634:16, 687:1, 713:16
**200** [1] - 639:17
**20001** [2] - 561:17, 745:14
**20010** [1] - 561:3
**2008** [2] - 651:13, 718:22
**2015** [1] - 584:12
**2017** [2] - 632:6, 713:4
**2018** [1] - 692:10
**2019** [1] - 661:25
**202** [1] - 561:18, 745:15
**2020** [1] - 610:10, 611:12
**2021** [1] - 726:24
**2022** [2] - 560:6, 745:10
**20530** [1] - 560:20
**20579** [1] - 560:17
**21** [3] - 586:13, 713:16, 714:2
**21061** [1] - 561:13
**22** [2] - 570:6, 586:13
**22-00015** [1] - 560:3
**23** [1] - 702:12
**24** [2] - 587:9, 692:15
**28** [1] - 560:6
**28th** [1] - 745:10
**29** [1] - 637:4
**2:04** [1] - 560:7

**3**

**303** [1] - 561:6
**3300** [1] - 560:23
**333** [2] - 561:16, 745:14
**35** [1] - 587:18
**354-3269** [2] - 561:18, 745:15
**36** [2] - 742:17, 742:18
**37** [7] - 621:11, 668:5, 681:20, 714:25, 741:15, 741:16, 741:18
**38** [1] - 741:11
**39** [12] - 570:21, 589:6, 598:20, 615:23, 624:17, 625:2, 660:12, 668:10, 681:25, 703:6, 715:23, 722:3
**3:00** [3] - 741:10, 742:4, 742:8
**3:25** [1] - 636:20
**3:30** [2] - 700:4,

700:6
**3:35** [1] - 636:21
**3:50** [1] - 636:22

**4**

**40** [7] - 598:20, 624:17, 625:2, 660:12, 668:10, 715:23, 722:3
**4031** [1] - 561:9
**41** [12] - 570:21, 589:6, 598:20, 615:23, 624:18, 625:2, 660:12, 668:10, 681:25, 703:6, 715:23, 722:3
**42** [1] - 625:17
**44** [2] - 614:3, 626:15
**45** [2] - 737:5, 742:19
**46** [18] - 580:13, 599:13, 603:23, 603:25, 612:11, 641:9, 653:16, 653:18, 660:23, 669:6, 673:15, 677:19, 686:9, 686:11, 703:23, 709:5, 722:19
**48** [3] - 686:9, 688:2, 738:13
**49** [1] - 737:5

**5**

**5** [1] - 699:15
**50** [11] - 590:10, 614:2, 616:13, 634:16, 636:25, 648:22, 683:12, 683:16, 694:23, 716:8, 723:12
**53** [1] - 566:23
**54** [2] - 649:8, 661:16, 683:24, 695:8, 717:9
**55** [1] - 695:8
**563** [1] - 562:3
**57** [4] - 600:16, 663:4, 704:5, 724:13
**5:00** [1] - 699:22

**6**

**6** [9] - 568:20, 582:3, 645:18, 659:1, 690:4, 702:4, 710:19, 720:24, 734:10

**60** [1] - 742:5
**600** [1] - 637:5
**601** [1] - 560:16
**64** [1] - 742:16
**6706** [1] - 561:17
**68** [3] - 565:13, 640:18, 726:17
**69** [1] - 640:18
**6:15** [1] - 725:25
**6th** [111] - 566:12, 566:21, 570:8, 570:23, 570:25, 571:18, 578:11, 582:12, 586:1, 586:11, 588:4, 589:9, 589:22, 592:22, 592:24, 598:22, 598:24, 600:1, 600:5, 604:19, 604:20, 604:24, 605:12, 605:16, 606:2, 608:16, 610:7, 610:15, 610:22, 611:16, 611:17, 613:1, 614:5, 616:3, 617:17, 617:25, 618:3, 624:20, 625:5, 625:19, 632:8, 633:14, 634:11, 634:21, 642:13, 642:15, 647:16, 648:14, 655:8, 655:12, 655:14, 656:3, 657:1, 657:8, 659:14, 659:23, 660:14, 668:12, 668:15, 669:17, 670:1, 674:3, 674:5, 674:25, 678:1, 678:7, 678:11, 678:17, 682:2, 682:21, 686:16, 686:18, 687:6, 687:13, 687:17, 689:3, 689:4, 693:10, 697:5, 703:7, 709:12, 709:15, 709:17, 709:25, 710:2, 713:18, 713:20, 714:19, 715:24, 716:1, 716:5, 722:5, 722:7, 726:23, 727:7, 727:18, 727:22, 728:5, 728:12, 728:23, 730:2, 730:20, 732:10, 734:19, 735:14, 737:7, 737:24, 739:3, 740:11

## 7

**7** [4] - 608:9, 627:8, 667:14, 679:25
**700** [1] - 560:24
**71** [2] - 563:7, 563:8
**7310** [1] - 561:12
**75219** [1] - 560:24

## 8

**833** [2] - 563:2, 563:5
**8:00** [1] - 743:20
**8:30** [2] - 699:22, 699:23

## 9

**9** [3] - 587:17, 587:18, 702:5
**950** [1] - 560:19
**9:00** [6] - 743:7, 743:14, 743:24, 744:1, 744:5, 744:8
**9:30** [2] - 741:25, 743:7, 744:8

## A

**ability** [37] - 570:17, 581:8, 582:21, 584:19, 584:20, 586:2, 594:11, 597:6, 598:14, 600:6, 601:12, 602:19, 605:4, 609:22, 610:3, 611:21, 611:23, 611:25, 613:13, 623:12, 624:23, 638:25, 643:25, 646:17, 646:20, 650:1, 664:19, 682:16, 684:22, 689:25, 691:15, 711:17, 713:9, 731:6, 734:12, 735:5, 745:7
**able** [41] - 564:25, 565:3, 568:4, 573:16, 580:2, 581:23, 597:5, 604:7, 612:7, 615:20, 616:11, 623:16, 635:15, 643:1, 643:4, 643:6, 646:23, 647:10, 648:14, 653:23, 656:17, 661:13, 663:2, 665:2, 665:7, 670:10, 683:7,

692:11, 692:19, 694:12, 701:6, 701:12, 706:2, 708:10, 709:18, 712:13, 722:16, 725:7, 732:11, 732:23, 743:4
**absence** [2] - 576:4, 576:7
**absent** [1] - 650:17
**absolutely** [4] - 635:18, 636:6, 700:25, 707:4
**abuse** [1] - 724:19
**accept** [4] - 581:23, 613:24, 673:23, 699:18
**accidents** [1] - 591:1
**according** [1] - 592:24
**account** [1] - 634:19
**accurate** [4] - 732:9, 732:10, 732:11, 745:4
**accused** [5] - 582:12, 585:16, 674:8, 674:16, 731:12
**acquisition** [1] - 687:12
**acquit** [13] - 570:1, 572:9, 579:8, 580:8, 583:2, 591:25, 596:11, 597:4, 612:7, 657:20, 670:18, 712:13, 713:12
**acquittal** [1] - 712:19
**acquitting** [2] - 592:4, 658:1
**act** [2] - 585:14, 740:5
**acted** [1] - 634:21
**Action** [1] - 560:3
**active** [2] - 636:9, 668:14
**actively** [12] - 570:24, 589:8, 598:24, 616:2, 625:4, 647:20, 668:14, 682:4, 682:5, 703:8, 715:25, 722:7
**activity** [2] - 636:7, 728:6
**actors** [1] - 738:9
**acts** [3] - 674:2, 739:5, 739:13
**actual** [4] - 581:14, 586:7, 633:18, 639:11
**add** [1] - 639:3
**added** [2] - 575:25, 576:15
**addition** [3] - 583:11,

688:9, 716:12
**additional** [22] - 573:22, 595:23, 603:5, 607:17, 620:15, 636:17, 652:11, 658:8, 666:22, 670:20, 672:18, 676:17, 684:25, 685:14, 698:21, 700:23, 707:20, 720:5, 725:19, 733:5, 736:3, 741:4
**administration** [2] - 730:9, 730:11
**adrenaline** [1] - 586:25
**affect** [38] - 570:17, 581:8, 582:21, 584:19, 584:20, 586:2, 594:10, 598:16, 600:5, 601:12, 602:18, 606:4, 606:6, 606:20, 606:21, 609:21, 610:2, 613:12, 624:23, 624:25, 629:12, 636:10, 636:12, 646:17, 646:19, 650:1, 661:9, 661:12, 664:19, 684:22, 691:14, 691:20, 711:17, 713:8, 731:6, 734:12, 735:4
**affiliated** [3] - 615:2, 643:13
**aftercare** [5] - 699:18, 700:18, 700:21, 700:23, 701:21
**aftermath** [2] - 579:2, 676:1
**AFTERNOON** [1] - 560:5
**afternoon** [22] - 572:23, 591:8, 601:22, 617:5, 618:18, 628:8, 628:9, 628:11, 631:15, 645:5, 651:3, 664:5, 666:2, 667:7, 670:21, 673:3, 685:5, 696:2, 696:3, 699:7, 718:12, 743:5
**afterwards** [1] - 614:9
**aged** [1] - 655:5
**agencies** [2] - 711:7, 711:10

**agency** [1] - 569:4
**Agency** [1] - 690:10
**agent** [3] - 569:3, 569:17, 570:1
**ago** [14] - 577:11, 609:18, 641:25, 654:24, 659:17, 677:15, 680:6, 687:1, 695:14, 713:3, 721:20, 739:8, 739:10
**ahead** [4] - 637:22, 675:19, 731:18, 736:11
**AID** [2] - 690:18, 695:6
**aide** [1] - 590:2
**Air** [2] - 721:7, 721:8
**al** [1] - 560:6
**Alex** [6] - 588:19, 614:16, 668:7, 681:22, 693:3, 715:2
**ALEXANDRA** [1] - 560:18
**aligned** [2] - 710:8, 710:15
**alignment** [1] - 710:10
**aligns** [1] - 593:24
**allegation** [6] - 585:8, 585:13, 585:23, 628:16, 628:22, 638:9
**allegations** [2] - 585:9, 688:4
**alleged** [10] - 605:12, 638:7, 643:12, 656:2, 657:3, 661:7, 674:2, 709:24, 739:3, 740:3
**allegiance** [1] - 594:19
**allied** [1] - 580:24
**allow** [1] - 578:25
**alluded** [1] - 713:5
**alone** [3] - 594:24, 609:1, 615:10
**altogether** [1] - 702:17
**Amendment** [1] - 585:7
**AMERICA** [1] - 560:3
**American** [1] - 717:4
**AMIT** [1] - 560:10
**amount** [1] - 596:5
**analyst** [2] - 601:15, 601:18
**analytics** [1] - 651:10
**AND** [1] - 561:9
**annually** [1] - 609:17
**answer** [14] - 573:3, 592:5, 595:3, 629:23,

631:8, 631:25, 649:10, 660:24, 661:18, 678:16, 684:2, 694:18, 708:11, 737:11
**answered** [16] - 565:12, 565:18, 567:24, 569:1, 570:8, 570:9, 586:13, 599:15, 616:5, 653:21, 688:1, 690:7, 699:17, 709:7, 714:1, 734:14
**answering** [3] - 567:12, 574:2, 736:2
**answers** [4] - 565:13, 597:2, 608:8, 675:16
**antidemocratic** [1] - 674:21
**antisemitic** [4] - 731:1, 731:2, 731:22, 733:13
**antitrust** [3] - 723:23, 723:24, 724:11
**anyway** [1] - 636:8
**apologies** [2] - 588:9, 736:10
**apologize** [2] - 574:20, 592:10
**aPPEARANCES** [1] - 560:13
**APPEARANCES** [1] - 561:1
**apply** [1] - 679:16
**appreciate** [16] - 602:2, 631:11, 645:10, 650:21, 653:9, 658:6, 658:20, 664:8, 665:24, 667:10, 672:9, 673:7, 698:13, 726:10, 736:1, 741:1
**appropriate** [1] - 585:6
**area** [6] - 623:21, 623:24, 633:1, 639:15, 680:16, 683:22
**argues** [1] - 733:18
**arms** [1] - 690:24
**arrangements** [4] - 564:4, 565:6, 576:3, 708:10
**arrested** [6] - 600:17, 649:21, 663:5, 704:6, 704:12, 724:14
**article** [1] - 654:24
**articles** [3] - 589:15,

748

709:10, 740:13
**articulate** [1] -
709:18
**articulated** [1] -
656:25
**aside** [32] - 571:6,
571:14, 571:19,
579:22, 587:13,
589:18, 616:10,
643:2, 643:7, 647:10,
648:13, 648:14,
656:18, 668:22,
675:1, 679:5, 679:14,
681:15, 682:11,
682:16, 683:6, 683:7,
689:7, 692:12,
692:19, 694:19,
703:14, 716:4,
722:10, 722:16,
725:8, 740:18
**aspect** [1] - 734:22
**assault** [1] - 739:20
**assess** [3] - 627:25,
639:22, 740:19
**assessing** [2] -
627:24, 640:4
**assessment** [1] -
638:24
**assist** [1] - 708:2
**assistant** [1] - 576:6
**associate** [1] - 618:2
**associated** [12] -
588:5, 618:7, 646:3,
655:8, 655:11,
655:14, 657:4, 661:7,
674:17, 739:17,
740:3, 740:15
**ASSOCIATES** [1] -
561:9
**association** [9] -
614:22, 614:24,
615:3, 615:6, 615:10,
715:8, 715:11, 715:20
**assume** [2] - 608:19,
665:14
**assuming** [2] -
646:1, 697:22
**Atlanta** [2] - 631:1,
671:14
**attacked** [1] - 600:9
**attacking** [1] -
638:18
**attempted** [4] -
585:9, 585:14,
585:23, 585:24
**attended** [14] -
566:17, 584:14,
609:14, 609:16,
609:17, 626:16,
646:6, 646:10,

646:11, 680:2,
680:10, 680:13,
688:14, 712:22
**attention** [3] -
669:18, 673:14,
734:17
**attorney** [5] - 590:22,
594:1, 616:17,
616:19, 723:15
**ATTORNEY'S** [1] -
560:15
**attorneys** [5] -
592:18, 631:3,
665:20, 671:23,
719:15
**audibly** [1] - 631:9
**audience** [1] -
693:11
**aunts** [1] - 594:16
**available** [4] - 701:2,
743:11, 743:17,
743:18
**Avenue** [4] - 560:19,
560:23, 561:16,
745:14
**avid** [2] - 594:9,
629:3
**avoided** [1] - 660:20
**award** [1] - 736:24
**aware** [14] - 602:11,
602:15, 624:18,
624:21, 628:15,
628:19, 628:20,
637:25, 638:20,
638:22, 674:1,
709:24, 738:10,
738:25
**awareness** [1] -
674:7

### B

**baby** [1] - 576:25
**backyard** [1] - 642:3
**bad** [2] - 637:5,
656:12
**Baltimore** [2] -
566:10, 568:17
**banks** [2] - 651:9
**BARRETT** [1] -
560:23
**base** [1] - 601:15
**based** [31] - 568:3,
571:21, 573:2,
573:14, 579:11,
594:25, 608:7,
611:25, 613:13,
613:15, 614:10,
615:10, 637:24,

654:2, 654:14, 656:1,
656:16, 656:18,
661:14, 664:17,
672:4, 676:4, 676:8,
683:1, 687:15,
693:17, 709:17,
717:24, 732:12,
737:19, 741:12
**basis** [1] - 635:1
**bat** [1] - 575:19
**batting** [1] - 637:5
**bear** [1] - 653:3
**beat** [1] - 685:25
**become** [2] - 632:3,
638:17
**becoming** [1] -
628:18
**BEFORE** [1] - 560:10
**befriend** [1] - 632:4
**begin** [4] - 598:6,
634:10, 706:10, 734:9
**beginning** [2] -
591:13, 743:7
**behalf** [1] - 630:5
**behind** [1] - 587:5
**belief** [1] - 669:20
**beliefs** [5] - 618:8,
629:7, 629:8, 629:9,
731:5
**belonged** [1] -
606:12
**benefit** [1] - 735:9
**best** [8] - 595:13,
596:8, 629:24, 631:5,
672:3, 719:19, 745:7
**between** [7] -
615:21, 630:4,
644:11, 703:1,
707:25, 730:8, 735:14
**beyond** [10] - 565:14,
612:4, 619:3, 657:17,
670:16, 678:9,
702:25, 703:2,
713:13, 742:2
**beyond-a-
reasonable-doubt** [2]
- 703:2, 713:13
**bias** [2] - 630:7,
630:10
**Biden** [2] - 585:11,
628:17
**big** [5] - 576:19,
576:23, 710:25,
713:3, 728:7
**bit** [10] - 568:9,
592:17, 630:7,
636:25, 671:19,
680:4, 688:22,
712:23, 721:13,
744:13

**bits** [2] - 729:5,
729:15
**black** [2] - 623:21,
623:23
**Black** [2] - 680:14,
713:3
**block** [1] - 611:4
**blocking** [1] - 635:17
**Bloomberg** [1] -
737:15
**boring** [1] - 666:15
**bothered** [1] - 606:7
**bottom** [2] - 587:17,
741:23
**boundaries** [1] -
713:21
**box** [1] - 673:1
**BRADFORD** [1] -
561:5
**BRAND** [1] - 561:2
**break** [3] - 575:4,
670:11, 684:5
**breaking** [2] -
669:23, 669:25
**briefly** [3] - 635:8,
651:1, 685:4
**BRIGHT** [5] - 560:22,
560:23, 574:13,
574:19, 575:5
**bring** [5] - 606:22,
640:13, 708:13,
734:17
**bringing** [2] -
640:15, 640:20
**brings** [1] - 742:17
**broke** [3] - 670:4,
670:6, 670:10
**broken** [6] - 586:7,
586:10, 632:22,
684:5, 684:6
**brother** [2] - 683:17,
683:19
**brother-in-law** [2] -
683:17, 683:19
**brothers** [6] -
704:20, 704:21,
705:4, 705:13, 705:19
**brought** [2] - 637:14,
697:5
**Building** [15] - 611:5,
627:10, 627:11,
647:2, 647:3, 647:6,
647:10, 667:17,
667:25, 669:23,
681:7, 692:6, 692:9,
721:17, 721:22
**building** [1] - 681:15
**bunker** [1] - 642:3
**burden** [11] - 569:25,
572:7, 579:6, 579:7,

580:6, 582:25, 619:3,
657:19, 670:15,
670:18, 712:13
**Bureau** [1] - 569:18
**Burnie** [1] - 561:13
**business** [3] -
564:12, 635:19, 724:9
**buys** [1] - 645:25
**BY** [1] - 561:14
**bye** [3] - 622:4, 635:6

### C

**cafeteria** [2] - 659:8,
659:9
**Caldwell** [2] -
587:19, 587:24
**CALDWELL** [1] -
561:12
**Caller** [2] - 608:13,
619:9
**camouflage** [1] -
655:23
**cannot** [1] - 567:16
**capacity** [6] - 582:5,
659:6, 660:8, 690:17,
690:20, 711:6
**Capitol** [52] - 578:18,
582:5, 586:14,
586:15, 593:3,
596:13, 600:8,
605:16, 605:23,
610:7, 610:9, 611:4,
621:17, 624:19,
627:9, 627:10,
627:11, 627:16,
638:9, 647:2, 647:3,
647:5, 647:9, 655:24,
659:6, 667:16,
667:17, 667:24,
667:25, 669:23,
673:25, 674:5,
675:25, 678:8, 681:6,
681:7, 692:6, 692:9,
713:23, 714:3,
721:17, 721:22,
729:10, 740:7
**car** [3] - 605:19,
684:4, 684:6
**cardiology** [2] -
666:6, 666:9
**care** [6] - 564:19,
564:22, 565:1, 565:4,
707:13, 742:7
**career** [1] - 717:6
**Carolina** [1] - 651:22
**carrying** [1] - 739:20
**case** [132] - 565:7,
565:17, 566:6, 566:7,

567:24, 569:14,
569:20, 569:23,
571:8, 571:21, 572:3,
572:8, 573:2, 573:13,
577:8, 577:20, 579:1,
579:17, 580:7,
581:21, 582:11,
582:15, 582:22,
584:17, 585:9,
585:23, 587:15,
588:11, 588:21,
589:3, 589:19, 593:5,
594:8, 595:7, 595:10,
596:9, 598:13,
598:15, 600:6, 601:9,
601:13, 602:6,
602:11, 605:5,
605:14, 606:5,
606:18, 606:19,
608:25, 609:7,
611:16, 611:25,
615:7, 616:11,
618:21, 622:7,
622:10, 623:8,
624:24, 627:19,
628:1, 628:15, 630:3,
635:14, 643:1, 643:3,
643:9, 646:15,
646:22, 647:8,
647:11, 648:16,
650:2, 651:25,
656:19, 656:20,
662:14, 662:17,
662:18, 662:23,
663:16, 663:21,
664:1, 664:12,
667:24, 668:9,
668:25, 669:11,
670:3, 675:2, 679:5,
679:6, 680:19,
681:14, 681:17,
681:23, 681:24,
682:17, 684:18,
688:3, 689:11,
691:12, 691:13,
692:13, 692:22,
693:5, 694:2, 694:10,
697:2, 697:3, 701:15,
703:18, 711:17,
711:25, 712:12,
715:4, 715:6, 715:7,
715:19, 716:6, 718:5,
722:12, 724:11,
725:3, 728:11, 731:7,
732:12, 733:16,
734:13, 735:5, 740:19
**cases** [4] - 566:25,
651:10, 705:14,
731:11
**casual** [1] - 612:17
**catches** [1] - 703:9

**caused** [1] - 737:11
**center** [1] - 734:24
**ceremonial** [1] -
631:17
**certain** [5] - 572:12,
614:17, 635:17,
739:21
**certainly** [5] - 638:3,
638:14, 638:20,
665:15, 742:1
**CERTIFICATE** [1] -
745:1
**certified** [1] - 727:18
**certify** [1] - 745:4
**certifying** [1] -
585:15
**cetera** [2] - 572:1,
585:22
**challenge** [1] -
637:24
**challenging** [3] -
577:1, 578:3, 583:5
**change** [3] - 599:8,
675:6, 675:10
**changed** [2] -
568:15, 689:13
**changing** [2] -
675:14, 675:21
**channel** [1] - 599:8
**chaotic** [1] - 606:23
**characterize** [1] -
696:15
**characterized** [1] -
581:18
**charge** [1] - 724:20
**charged** [13] -
577:20, 586:1, 586:5,
600:18, 642:21,
657:5, 661:7, 663:6,
669:25, 702:23,
704:6, 704:12, 724:14
**charges** [2] - 619:4,
663:9
**charter** [2] - 706:23,
706:24
**check** [4] - 565:6,
565:10, 586:24,
608:13
**checked** [7] -
580:15, 580:19,
587:21, 610:19,
649:1, 661:20, 699:17
**checking** [1] - 609:6
**Chicago** [3] - 695:14,
695:15, 696:25
**Chief** [1] - 588:21
**chief** [1] - 588:24
**child** [7] - 564:23,
565:1, 565:4, 671:18,
699:25, 706:22, 742:7

**child-care** [1] - 742:7
**children** [1] - 597:10
**choices** [1] - 656:12
**Christian** [2] -
641:23
**Christmastime** [1] -
667:19
**Cinnaminson** [1] -
561:7
**circle** [1] - 577:4
**Circuit** [1] - 716:24
**circumstances** [2] -
576:3, 650:18
**citizen** [1] - 578:6
**citizens** [1] - 682:9
**City** [2] - 566:10,
568:17
**city** [3] - 579:16,
635:12, 680:15
**civic** [1] - 619:1
**civics** [3] - 584:23,
584:24, 585:21
**civil** [7] - 590:20,
590:21, 590:22,
711:8, 711:9, 711:16,
712:17
**clear** [8] - 578:2,
596:20, 596:22,
615:5, 632:16,
639:23, 698:8, 726:20
**clearly** [2] - 574:15,
657:13
**clerk** [1] - 716:22
**clerkship** [1] - 717:2
**clients** [2] - 590:23,
743:12
**clips** [4] - 729:15,
739:16, 739:19,
740:13
**close** [54] - 568:21,
569:2, 570:7, 570:13,
578:9, 578:17, 582:3,
583:8, 583:15, 584:7,
586:23, 590:11,
592:14, 596:12,
596:21, 598:7, 598:8,
600:17, 609:13,
610:6, 610:12, 614:3,
640:10, 645:19,
645:20, 646:2, 646:5,
646:10, 648:23,
649:9, 659:5, 660:1,
661:16, 663:5, 680:1,
680:16, 683:12,
683:25, 690:5, 691:3,
694:23, 695:8, 704:5,
704:11, 704:19,
704:23, 710:19,
712:21, 714:3, 716:9,
717:9, 720:25,

723:13, 724:13
**closed** [2] - 707:2,
707:8
**closer** [1] - 721:12
**closures** [1] - 570:13
**clothing** [1] - 655:22
**Cocomelon** [2] -
599:3, 599:7
**colleagues** [3] -
574:21, 620:7, 690:15
**College** [1] - 585:15
**college** [2] - 630:22,
671:19
**COLUMBIA** [2] -
560:1, 560:16
**Columbia** [16] -
561:16, 576:11,
630:21, 649:16,
649:18, 651:16,
662:2, 663:11,
664:10, 684:8,
684:11, 697:6,
697:17, 705:5, 705:9,
745:13
**combination** [2] -
701:3, 733:17
**combined** [2] -
637:1, 637:2
**comfortable** [14] -
575:14, 603:19,
605:24, 608:5,
618:24, 619:5, 641:5,
645:13, 658:24,
667:12, 673:8,
677:17, 709:1, 720:18
**coming** [16] -
577:13, 601:25,
604:19, 604:24,
617:7, 617:16,
617:20, 623:3,
635:16, 655:1,
677:14, 678:8,
678:19, 707:12,
736:1, 737:1
**commendably** [1] -
634:21
**comment** [1] - 596:7
**commentary** [3] -
614:12, 683:2, 687:5
**commented** [1] -
627:6
**comments** [5] -
590:7, 625:19,
727:25, 729:20, 730:3
**commitment** [1] -
574:4
**committed** [3] -
586:9, 592:12, 602:17
**committee** [4] -
687:13, 727:17,

730:20, 732:10
**Committee** [1] -
728:24
**common** [1] - 567:15
**communicate** [1] -
633:23
**communications** [2]
- 635:11, 635:20
**community** [2] -
570:11, 576:24
**comp** [1] - 683:23
**companies** [1] -
590:25
**company** [2] - 620:3,
634:23
**compelling** [1] -
693:23
**complete** [2] -
677:15, 745:6
**completed** [2] -
564:7, 658:21
**completely** [2] -
595:6, 678:25
**completing** [15] -
575:13, 597:22,
603:17, 608:6, 621:6,
641:4, 645:11,
653:12, 673:7, 686:5,
708:25, 720:20,
726:11, 734:7, 737:1
**complicated** [1] -
671:13
**complies** [1] -
644:14
**concept** [1] - 577:5
**concern** [7] - 570:6,
610:14, 610:16,
610:17, 625:3, 708:1,
738:10
**concerned** [2] -
586:16, 586:19
**concerning** [1] -
627:5
**concerns** [6] - 580:2,
611:16, 654:24,
689:25, 710:10,
714:21
**concert** [1] - 606:12
**conclude** [1] -
712:12
**concluded** [1] -
744:16
**conclusion** [8] -
584:17, 610:1,
648:20, 657:11,
670:10, 670:17,
694:9, 713:7
**conclusions** [2] -
615:9, 689:17
**conditions** [1] -

750

702:6
**conduct** [3] - 678:10, 709:24, 739:11
**confer** [1] - 677:4
**confers** [1] - 653:1
**confirm** [5] - 599:16, 669:8, 694:18, 702:25, 704:1
**conflict** [1] - 565:24
**Congress** [2] - 585:25, 735:19
**Congress's** [1] - 585:14
**congressional** [7] - 589:14, 614:4, 626:17, 626:18, 682:20, 683:8, 739:7
**connection** [3] - 566:20, 599:25, 616:14
**consecutively** [1] - 630:21
**conservative** [2] - 641:22, 654:17
**consider** [18] - 571:20, 571:21, 576:20, 577:25, 579:23, 589:3, 589:8, 595:11, 597:12, 598:23, 623:11, 643:8, 668:13, 682:3, 694:12, 697:11, 722:6
**considerations** [2] - 738:1, 738:3
**considered** [1] - 576:21
**considering** [2] - 595:7, 623:12
**conspiracy** [1] - 642:21
**constitutes** [1] - 745:4
**Constitution** [3] - 561:16, 585:6, 745:14
**constitutional** [1] - 641:22
**consult** [1] - 575:17
**consultant** [2] - 685:8, 719:5
**consulting** [1] - 651:8
**consumed** [4] - 660:13, 668:12, 674:24, 682:1
**CONT'D** [1] - 561:1
**contact** [4] - 587:20, 587:22, 684:13, 705:2
**Contee** [1] - 588:21
**content** [1] - 612:21
**context** [1] - 575:6

**contractor** [2] - 721:4, 721:6
**contradict** [1] - 694:11
**contradicted** [3] - 613:23, 622:24, 623:9
**contrary** [4] - 648:18, 657:7, 675:13, 689:16
**conversation** [4] - 583:4, 634:23, 686:20, 729:25
**conversations** [6] - 610:25, 635:2, 669:10, 704:2, 722:24, 727:20
**convicted** [7] - 600:18, 663:6, 663:9, 704:7, 704:12, 705:5, 724:15
**convinced** [4] - 569:23, 572:6, 582:24, 612:5
**cordial** [2] - 622:5, 634:25
**correct** [34] - 563:24, 564:8, 564:10, 564:24, 568:6, 568:19, 586:12, 593:13, 594:2, 605:8, 608:23, 621:4, 621:18, 625:16, 631:23, 632:9, 638:3, 646:1, 646:4, 653:6, 657:24, 659:24, 660:17, 660:18, 661:14, 661:15, 665:21, 666:13, 666:14, 674:20, 702:20, 719:15, 719:16, 732:8
**corrected** [1] - 689:13
**correction** [1] - 699:11
**cost** [1] - 700:23
**counsel** [7] - 607:11, 644:12, 658:2, 676:23, 677:4, 725:24, 731:15
**count** [3] - 701:17, 741:12, 744:14
**counted** [1] - 741:20
**counties** [1] - 566:17
**country** [4] - 593:16, 593:17, 629:17, 664:23
**County** [2] - 662:4, 724:24
**couple** [7] - 602:3, 624:2, 624:3, 680:6,

691:10, 710:24, 718:15
**course** [8] - 574:6, 592:17, 637:4, 661:5, 677:14, 707:7, 729:13, 735:18
**Court** [13] - 561:15, 561:15, 594:13, 637:25, 644:11, 653:1, 702:16, 734:11, 742:12, 743:6, 743:17, 745:12, 745:13
**COURT** [705] - 560:1, 563:1, 563:4, 563:7, 563:13, 563:15, 563:18, 564:1, 564:3, 564:6, 564:9, 564:11, 564:15, 564:21, 564:25, 565:8, 565:11, 565:22, 566:5, 566:11, 566:14, 566:18, 566:23, 567:10, 567:14, 567:25, 568:10, 568:11, 568:16, 568:20, 568:25, 569:4, 569:6, 569:9, 569:11, 569:16, 569:23, 570:3, 570:5, 570:14, 570:20, 571:5, 571:10, 571:16, 571:24, 572:5, 572:11, 572:16, 572:20, 573:19, 573:25, 574:17, 574:21, 575:1, 575:7, 575:9, 575:12, 575:16, 575:25, 576:8, 576:15, 577:4, 577:18, 578:8, 578:20, 578:24, 579:5, 579:15, 579:21, 580:1, 580:5, 580:10, 580:12, 581:2, 581:5, 581:20, 582:2, 582:9, 582:11, 582:14, 582:20, 582:24, 583:7, 583:11, 583:17, 583:20, 583:24, 584:2, 584:4, 584:16, 585:1, 585:8, 585:13, 585:20, 586:8, 586:13, 586:20, 587:4, 587:9, 587:13, 587:17, 588:8, 588:10, 588:14, 588:17, 589:2, 589:6, 589:17, 589:21,

590:5, 590:10, 590:16, 590:20, 590:23, 591:3, 591:7, 595:16, 595:20, 595:23, 596:20, 597:19, 597:21, 598:1, 598:3, 598:6, 598:12, 598:19, 599:4, 599:6, 599:9, 599:12, 599:19, 599:22, 599:24, 600:4, 600:10, 600:13, 600:16, 600:22, 600:25, 601:3, 601:7, 601:11, 601:16, 601:19, 602:24, 603:3, 603:7, 603:14, 603:16, 603:25, 604:6, 604:9, 604:13, 604:22, 605:8, 605:10, 605:25, 606:16, 607:4, 607:10, 607:14, 607:25, 608:2, 608:4, 608:12, 608:15, 608:21, 608:24, 609:4, 609:9, 609:12, 609:19, 609:25, 610:5, 610:14, 610:21, 610:24, 611:8, 611:12, 611:14, 612:1, 612:9, 612:13, 612:20, 612:23, 613:2, 613:10, 613:17, 613:23, 614:2, 614:10, 614:14, 615:5, 615:9, 615:12, 615:23, 616:9, 616:13, 616:19, 616:22, 617:1, 617:4, 618:17, 620:11, 620:14, 620:17, 620:25, 621:2, 621:5, 621:10, 621:13, 621:19, 621:21, 622:1, 622:6, 622:14, 622:18, 622:23, 623:4, 623:11, 623:18, 623:22, 623:25, 624:3, 624:5, 624:12, 624:16, 624:22, 625:2, 625:11, 625:14, 625:17, 625:23, 625:25, 626:3, 626:6, 626:8, 626:13, 626:15, 626:24, 627:2, 627:8, 627:17, 627:22, 628:4, 628:6, 630:24,

631:8, 631:12, 631:25, 632:16, 635:6, 636:1, 636:9, 636:14, 636:16, 636:20, 637:7, 637:11, 637:13, 637:17, 637:20, 637:23, 639:3, 639:7, 640:18, 640:25, 641:2, 641:11, 642:8, 642:19, 642:23, 643:6, 643:11, 643:16, 643:19, 643:20, 643:24, 644:4, 644:8, 644:10, 644:13, 644:15, 644:18, 644:22, 645:5, 645:7, 645:9, 645:17, 646:1, 646:5, 646:11, 646:14, 646:21, 647:1, 647:7, 647:13, 648:2, 648:5, 648:11, 648:18, 648:22, 649:3, 649:6, 649:8, 649:14, 649:19, 649:21, 649:24, 650:4, 650:11, 650:17, 650:21, 650:25, 652:5, 652:9, 652:13, 652:21, 652:23, 653:3, 653:7, 653:10, 653:18, 654:2, 654:7, 654:11, 654:13, 654:20, 655:2, 655:6, 655:13, 655:18, 655:25, 656:6, 656:13, 656:15, 656:24, 657:10, 657:15, 657:24, 658:2, 658:5, 658:10, 658:17, 658:19, 659:4, 659:9, 659:11, 659:13, 659:16, 659:21, 659:23, 659:25, 660:7, 660:11, 660:19, 660:23, 661:4, 661:13, 661:16, 661:23, 662:1, 662:5, 662:10, 662:12, 662:16, 662:21, 663:4, 663:10, 663:14, 663:19, 663:23, 664:3, 666:1, 666:18, 666:21, 666:25, 667:7, 667:9, 667:21, 667:23, 668:4, 668:19, 668:21, 669:2, 669:6, 669:14, 669:19,

669:24, 670:8,
670:13, 670:20,
672:13, 672:16,
672:20, 673:3, 673:5,
673:12, 673:17,
674:1, 674:6, 674:10,
674:12, 674:20,
674:23, 675:8,
675:16, 675:19,
676:12, 676:14,
676:19, 676:23,
677:2, 677:6, 677:12,
678:2, 678:9, 678:13,
678:20, 678:23,
679:11, 679:13,
679:19, 679:24,
680:8, 680:10,
680:12, 680:18,
680:24, 681:5,
681:13, 681:19,
682:8, 682:15,
682:19, 683:1, 683:5,
683:12, 683:16,
683:19, 683:21,
683:24, 684:7,
684:10, 684:13,
684:16, 684:20,
684:25, 685:3,
685:12, 685:22,
685:25, 686:3, 686:8,
686:11, 686:17,
686:22, 687:3, 687:9,
687:11, 687:19,
687:21, 688:1,
688:13, 688:18,
688:23, 688:25,
689:6, 689:10,
689:15, 689:22,
689:24, 690:3,
690:12, 690:14,
690:20, 690:24,
691:2, 691:7, 691:11,
691:18, 691:24,
692:5, 692:11,
692:15, 692:18,
692:25, 693:13,
693:16, 693:21,
693:24, 694:1, 694:9,
694:16, 694:23,
695:5, 695:8, 695:12,
695:15, 695:17,
695:21, 695:25,
698:15, 698:17,
698:20, 698:24,
699:7, 699:10, 700:3,
700:5, 700:7, 700:10,
700:13, 700:14,
700:17, 700:21,
701:1, 701:5, 701:9,
701:14, 701:23,
702:1, 702:4, 702:9,

702:12, 702:15,
702:20, 703:5,
703:13, 703:17,
703:20, 703:23,
704:5, 704:10,
704:16, 704:18,
704:21, 704:23,
705:1, 705:4, 705:8,
705:12, 705:17,
705:21, 705:24,
706:7, 706:10,
706:12, 706:15,
706:19, 707:7,
707:12, 707:18,
708:5, 708:18,
708:21, 709:14,
709:22, 709:24,
710:3, 710:7, 710:13,
710:18, 711:1, 711:4,
711:11, 711:15,
711:20, 711:23,
712:4, 712:11,
712:16, 712:21,
713:1, 713:5, 713:11,
713:16, 713:24,
714:2, 714:7, 714:11,
714:13, 714:18,
714:21, 714:24,
715:15, 715:19,
715:23, 716:3, 716:8,
716:14, 716:17,
716:20, 716:24,
717:1, 717:6, 717:9,
717:14, 717:18,
717:21, 717:24,
718:3, 718:10,
719:23, 720:2, 720:7,
720:14, 720:16,
721:5, 721:8, 721:11,
721:15, 721:21,
721:25, 722:2, 722:9,
722:15, 722:19,
723:3, 723:9, 723:12,
723:16, 723:18,
723:21, 723:24,
724:5, 724:7, 724:11,
724:22, 725:1, 725:5,
725:11, 725:14,
725:17, 725:21,
725:24, 726:6, 726:8,
726:15, 726:25,
727:2, 727:5, 727:9,
727:12, 727:19,
727:23, 728:2, 728:9,
728:16, 728:22,
729:1, 729:17,
729:19, 729:23,
730:10, 730:12,
730:18, 730:23,
731:4, 731:14,
731:18, 733:3, 733:9,

734:1, 734:3, 735:3,
735:12, 735:23,
735:25, 736:8,
736:10, 736:12,
736:19, 736:21,
737:16, 737:19,
738:2, 738:11,
738:17, 738:22,
739:1, 739:9, 739:11,
739:19, 739:24,
740:9, 740:16,
740:21, 740:23,
740:25, 741:7,
741:16, 741:22,
742:13, 742:16,
742:21, 742:24,
743:3, 743:8, 743:10,
743:19, 743:25,
744:3, 744:12
  **court** [10] - 568:2,
568:8, 573:2, 573:9,
573:14, 579:18,
579:24, 662:8,
725:25, 732:13
  **Court's** [2] - 588:1,
591:24
  **COURTROOM** [27] -
563:3, 563:11,
574:25, 597:17,
603:12, 607:23,
620:23, 637:12,
640:16, 640:23,
645:3, 652:19,
652:25, 658:15,
667:5, 672:25, 677:9,
685:20, 699:5,
708:16, 720:12,
726:4, 733:24,
736:11, 736:17,
743:22, 744:2
  **courtroom** [66] -
563:10, 571:17,
573:21, 573:24,
574:18, 574:24,
592:11, 595:21,
596:2, 597:16, 603:5,
603:9, 603:11,
607:16, 607:20,
607:22, 620:15,
620:20, 620:22,
631:17, 636:17,
636:19, 640:22,
644:19, 644:25,
645:2, 652:10,
652:16, 652:18,
653:1, 658:12,
658:14, 666:23,
667:2, 667:4, 672:17,
672:22, 672:24,
676:16, 676:22,
677:8, 678:24,

679:15, 685:14,
685:17, 685:19,
698:21, 699:2, 699:4,
707:19, 707:22,
708:15, 720:4, 720:9,
720:11, 725:23,
726:3, 733:4, 733:8,
733:23, 736:3, 736:7,
736:16, 741:3, 741:6
  **cousins** [2] - 594:15,
663:8
  **cover** [1] - 706:3
  **coverage** [15] -
570:22, 589:7,
615:19, 615:24,
615:25, 616:7, 618:1,
625:3, 627:3, 647:17,
647:18, 660:16,
694:17, 703:7, 722:4
  **covered** [1] - 565:14
  **covers** [1] - 608:16
  **COVID** [5] - 636:7,
659:19, 659:21,
659:22, 692:10
  **create** [1] - 597:10
  **creates** [1] - 565:16
  **credibility** [6] -
622:20, 623:12,
627:24, 627:25,
638:18, 640:5
  **credible** [2] - 568:3,
623:1
  **crime** [11] - 600:18,
649:10, 661:17,
663:6, 684:1, 684:17,
695:10, 704:7,
704:13, 717:11,
724:15
  **crimes** [2] - 585:17,
695:10
  **criminal** [16] -
566:25, 587:11,
587:14, 590:19,
616:19, 616:21,
649:4, 657:15,
679:21, 684:18,
692:18, 692:20,
705:9, 717:7, 725:7,
731:11
  **Criminal** [1] - 560:3
  **Crisp** [1] - 637:13
  **CRISP** [6] - 561:8,
561:9, 637:14,
637:19, 637:21,
637:24
  **criteria** [1] - 624:10
  **crossed** [1] - 587:18
  **crowd** [1] - 655:16
  **CRR** [3] - 561:14,
745:3, 745:12

  **curiosity** [3] -
589:16, 714:15,
714:17
  **curious** [3] - 575:25,
576:15, 576:22
  **current** [3] - 581:24,
660:21, 690:9
  **cut** [2] - 676:2,
744:12
  **cuts** [1] - 596:9
  **Czars** [1] - 735:20

---

## D

  **D.C** [31] - 560:6,
560:17, 560:20,
561:3, 561:17,
566:12, 575:21,
576:21, 577:23,
578:6, 586:23,
600:25, 617:16,
627:13, 627:15,
633:5, 639:15, 655:9,
671:4, 676:1, 684:14,
696:24, 697:1,
697:20, 706:22,
713:22, 716:24,
718:16, 724:22,
745:14
  **dad** [3] - 590:13,
671:18, 721:7
  **dad's** [1] - 724:17
  **Daily** [5] - 608:13,
619:9, 647:25, 648:1,
648:2
  **Dallas** [1] - 560:24
  **danger** [2] - 578:16,
587:1
  **data** [1] - 651:10
  **date** [2] - 659:19,
662:8
  **Dated** [1] - 745:10
  **daughter** [7] - 680:5,
681:9, 684:6, 699:18,
701:18, 706:3, 708:7
  **DAVID** [1] - 561:11
  **DAY** [1] - 560:10
  **daycare** [1] - 700:22
  **days** [6] - 570:14,
578:18, 590:1,
592:23, 701:2, 701:1
  **DCPS** [2] - 707:2,
707:25
  **deal** [1] - 734:22
  **dealing** [1] - 707:6
  **decide** [2] - 573:13,
732:12
  **deciding** [1] - 573:1
  **decision** [2] -

596:17, 672:3
**deep** [2] - 589:16,
635:1
**deeply** [1] - 580:22
**DEF** [1] - 565:19
**DEFENDANT** [5] -
560:21, 561:2, 561:5,
561:8, 561:11
**Defendant** [7] -
614:22, 614:24,
615:7, 712:14,
715:13, 715:19,
715:21
**defendant** [2] -
679:21, 715:7
**Defendants** [67] -
560:7, 565:18, 566:1,
566:7, 577:20,
577:22, 579:9,
579:23, 580:8,
582:11, 584:17,
585:9, 585:23, 592:1,
594:9, 595:7, 598:13,
602:5, 602:13, 605:2,
606:21, 612:2,
613:13, 624:24,
628:17, 629:3, 630:6,
643:12, 646:15,
646:22, 646:24,
651:24, 656:18,
657:16, 661:6,
661:10, 664:13,
664:15, 669:4,
669:25, 670:14,
674:16, 675:23,
679:7, 679:20,
680:20, 680:25,
683:10, 688:3, 688:5,
688:7, 690:1, 691:13,
691:19, 691:21,
697:4, 703:21,
710:14, 712:2,
712:14, 713:7,
728:13, 732:22,
737:8, 737:10,
738:12, 740:2
**defendants** [1] -
616:24
**Defenestration** [1] -
735:1
**defense** [8] - 590:22,
601:21, 616:17,
616:19, 628:7, 638:5,
649:4, 664:4
**Defense** [1] - 721:10
**defer** [1] - 742:12
**defined** [1] - 654:10
**definitely** [9] - 578:5,
654:16, 655:11,
655:12, 675:5, 687:2,

694:5, 698:11, 703:11
**definition** [1] -
731:11
**degree** [3] - 613:8,
639:10, 735:17
**deliberately** [1] -
660:19
**Delta** [1] - 633:4
**Democrat** [1] -
734:14
**demonstrate** [2] -
574:4, 585:7
**demonstration** [4] -
584:8, 609:14, 646:7,
680:3
**demonstrations** [2] -
691:4, 712:23
**denied** [1] - 638:12
**deny** [1] - 640:12
**department** [2] -
666:6, 666:9
**DEPARTMENT** [1] -
560:19
**Department** [12] -
583:14, 649:25,
684:14, 690:19,
690:25, 695:7,
711:12, 716:11,
718:7, 721:4, 721:7,
721:10
**departments** [1] -
566:17
**depth** [1] - 612:16
**DEPUTY** [27] - 563:3,
563:11, 574:25,
597:17, 603:12,
607:23, 620:23,
637:12, 640:16,
640:23, 645:3,
652:19, 652:25,
658:15, 667:5,
672:25, 677:9,
685:20, 699:5,
708:16, 720:12,
726:4, 733:24,
736:11, 736:17,
743:22, 744:2
**deputy** [1] - 653:1
**describe** [5] -
612:21, 616:1, 665:1,
688:20, 715:25
**described** [7] -
581:5, 581:16, 606:1,
640:11, 713:22,
735:16, 739:11
**describing** [2] -
611:1, 730:6
**designed** [6] -
570:21, 598:21,
647:14, 668:10,

681:25, 722:3
**detail** [2] - 608:20,
639:12
**details** [3] - 641:19,
687:1, 687:21
**detect** [1] - 597:5,
639:23, 640:6
**determination** [1] -
703:2
**determine** [1] -
702:22
**developed** [1] -
737:20
**Development** [1] -
690:11
**development** [2] -
690:12, 695:3
**dictated** [1] - 731:13
**died** [2] - 578:18,
596:13
**difference** [1] - 703:1
**differences** [2] -
735:18, 735:21
**different** [22] -
581:21, 581:24,
584:17, 584:21,
594:22, 599:9,
609:20, 609:24,
613:18, 639:21,
646:16, 648:20,
657:11, 670:3,
680:21, 689:18,
691:14, 701:14,
702:16, 702:22,
711:9, 713:8
**differently** [2] -
582:16, 623:5
**difficult** [15] -
575:23, 583:4,
584:25, 591:17,
592:10, 596:16,
628:22, 628:25,
691:25, 712:18,
713:12, 728:17,
740:20, 740:21, 744:5
**difficulties** [1] -
715:12
**difficulty** [13] -
567:5, 567:6, 567:19,
571:22, 572:8, 583:1,
591:5, 640:4, 657:19,
663:25, 670:18,
681:1, 743:12
**digested** [1] - 647:15
**digital** [1] - 719:5
**diplomatic** [1] -
690:21
**Dire** [1] - 562:3
**dire** [1] - 637:3
**direct** [2] - 592:25,

673:14
**direction** [2] - 656:22
**directions** [2] -
590:3, 658:8
**directly** [2] - 633:24,
740:14
**director** [1] - 576:6
**disabuse** [1] -
733:12
**disagree** [1] - 725:9
**disagreement** [3] -
696:14, 696:17,
696:19
**discern** [1] - 680:19
**disclaimer** [1] -
641:17
**discomfort** [2] -
606:1, 606:4
**discredit** [2] - 568:4
**discuss** [1] - 608:25
**discussion** [2] -
638:14, 644:11
**discussions** [2] -
590:3, 633:13
**disfavor** [2] - 601:8,
718:7
**disfavorably** [1] -
731:2
**dismiss** [1] - 644:15
**dismissed** [2] -
743:23, 744:6
**dispatcher** [1] -
568:17
**dispute** [1] - 630:4
**disqualify** [1] -
708:11
**disqualifying** [1] -
639:8
**disrupt** [1] - 585:14
**dissociate** [1] -
740:6
**distinguish** [1] -
615:21
**district** [1] - 745:13
**District** [20] - 561:15,
561:16, 576:10,
630:19, 630:20,
649:16, 649:17,
651:15, 662:2,
663:10, 664:10,
671:10, 684:8,
684:10, 697:6,
697:17, 705:5, 705:9,
718:21, 745:13
**DISTRICT** [4] -
560:1, 560:1, 560:11,
560:16
**disturbing** [1] -
696:22
**divorced** [1] - 688:16

**DM'd** [1] - 634:1
**DMV** [4] - 632:25,
633:2, 633:9
**documentary** [1] -
729:11
**documented** [1] -
634:19
**domestic** [1] -
661:24
**Donald** [8] - 594:10,
594:14, 602:14,
629:4, 629:5, 629:19,
661:9, 665:11
**done** [7] - 581:13,
588:2, 609:5, 627:14,
656:2, 717:7, 739:3
**doomsday** [1] -
642:4
**double** [1] - 584:5
**doubt** [13] - 571:24,
580:1, 587:4, 587:7,
612:5, 619:4, 639:24,
657:18, 670:16,
702:25, 703:2,
713:13, 722:15
**doubts** [2] - 627:23,
689:25
**Douyon** [20] -
573:21, 595:21,
603:4, 607:16,
620:14, 636:16,
644:18, 652:10,
658:7, 666:22,
672:17, 676:16,
685:13, 698:20,
707:19, 720:4,
725:18, 733:4, 736:2,
741:3
**down** [15] - 601:25,
605:16, 605:17,
605:19, 606:10,
607:2, 607:8, 607:9,
617:7, 635:1, 638:11,
644:6, 679:9, 714:16,
734:21
**draw** [1] - 615:9
**drawn** [2] - 594:21,
638:9
**dried** [1] - 676:2
**drop** [1] - 605:19
**dropoff** [2] - 699:24,
700:1
**drug** [1] - 663:9
**due** [1] - 574:9
**Dunn** [24] - 621:17,
621:19, 622:7,
624:13, 624:18,
625:22, 625:24,
625:25, 627:18,
630:2, 630:5, 630:7,

630:10, 630:13,
631:22, 632:4,
635:16, 638:1, 638:2,
638:12, 693:8, 693:9,
693:17, 694:1
  **Dunn's** [2] - 638:7,
694:11
  **duration** [2] - 699:18
  **during** [10] - 574:6,
595:2, 612:25,
615:15, 634:22,
635:19, 661:4,
680:14, 727:21,
729:13
  **duty** [3] - 576:20,
619:1, 650:23

---

**E**

---

  **early** [1] - 574:15
  **ears** [2] - 599:1,
668:16
  **Eastman** [3] - 693:3,
715:2, 715:4
  **easy** [1] - 662:19
  **Economist** [1] -
737:14
  **education** [2] -
584:22, 671:3
  **educator** [1] - 577:25
  **EDWARD** [1] -
560:22
  **EDWARDS** [3] -
560:14, 561:14, 745:3
  **Edwards** [1] - 745:12
  **effectively** [1] -
639:13
  **eight** [1] - 630:22
  **either** [24] - 572:17,
582:6, 588:20, 590:5,
601:8, 608:19,
621:14, 627:5, 636:2,
638:5, 643:12, 649:4,
649:25, 657:3, 661:6,
661:7, 693:4, 695:6,
701:2, 708:11,
713:17, 721:11,
722:23, 731:1
  **elaborate** [1] - 704:9
  **elder** [1] - 724:19
  **election** [2] - 673:24,
739:22
  **Electoral** [1] - 585:15
  **elementary** [1] -
575:21
  **elicit** [1] - 570:22
  **ELMER** [1] - 560:6
  **elsewhere** [5] -
601:1, 649:16,

663:11, 705:6, 724:23
  **embedded** [1] -
733:16
  **emotional** [5] -
594:20, 610:17,
610:19, 611:7, 611:23
  **employed** [21] -
566:1, 567:21,
568:22, 582:4, 583:8,
583:14, 598:8,
645:21, 659:5,
659:21, 660:2, 660:5,
660:8, 690:5, 710:20,
721:1, 724:8, 726:22,
727:6, 728:14, 728:17
  **employee** [3] -
690:10, 724:1, 726:18
  **employer** [1] - 651:6
  **employment** [4] -
568:15, 591:16,
726:21, 727:2
  **encounter** [1] -
609:23
  **encounters** [1] -
718:6
  **end** [6] - 597:9,
597:11, 636:23,
707:25, 708:2, 742:23
  **ended** [1] - 605:23
  **energy** [2] - 728:25,
729:1
  **enforcement** [31] -
566:4, 566:6, 567:1,
567:3, 567:17,
567:18, 567:22,
569:17, 569:20,
569:21, 583:18,
646:3, 650:5, 650:7,
662:6, 662:16,
662:22, 662:23,
662:24, 663:1,
684:21, 684:23,
685:16, 690:24,
693:14, 711:23,
711:24, 712:5, 712:7,
718:4, 718:8
  **engage** [1] - 740:10
  **engaged** [1] - 709:25
  **Enrique** [1] - 614:16
  **entered** [21] - 563:9,
574:23, 597:15,
603:10, 607:21,
620:21, 640:21,
645:1, 652:17,
658:13, 667:3,
672:23, 677:7,
685:18, 699:3,
708:14, 720:10,
726:2, 733:22, 736:6,
736:15

  **entertain** [2] - 743:6,
743:8
  **entire** [1] - 577:1
  **entitled** [2] - 629:7,
696:8
  **entrust** [1] - 708:6
  **environment** [1] -
617:10
  **episode** [1] - 626:24
  **era** [1] - 640:8
  **escort** [5] - 603:4,
672:17, 676:16,
685:13, 736:2
  **especially** [2] -
611:3, 734:23
  **espouse** [1] - 580:22
  **ESQ** [12] - 560:14,
560:14, 560:15,
560:18, 560:18,
560:21, 560:22,
560:22, 561:2, 561:5,
561:8, 561:11
  **essentially** [2] -
675:10, 724:20
  **et** [3] - 560:6, 572:1,
585:22
  **European** [2] -
734:23, 735:15
  **evaluate** [13] -
622:14, 630:11,
648:15, 669:2, 675:2,
675:5, 679:5, 684:22,
689:10, 694:2,
732:21, 732:24,
740:18
  **evaluating** [3] -
613:20, 683:9, 702:22
  **evening** [3] - 563:22,
699:9, 699:10, 731:19
  **event** [8] - 592:20,
626:17, 626:22,
634:17, 637:6, 714:6,
714:8, 734:19
  **events** [62] - 565:23,
566:15, 570:14,
570:17, 570:23,
571:18, 578:22,
579:19, 582:12,
586:11, 589:9,
592:24, 598:22,
599:25, 600:4,
600:14, 606:19,
608:16, 610:22,
611:15, 611:16,
620:7, 622:3, 625:5,
626:4, 630:16, 634:7,
634:8, 634:13, 636:8,
638:13, 647:15,
647:19, 648:14,
660:16, 660:22,

668:12, 668:23,
670:1, 674:25, 682:2,
682:4, 682:11, 703:7,
703:9, 710:2, 714:15,
714:19, 722:5,
722:11, 727:10,
727:14, 728:12,
728:20, 734:15,
734:23, 734:24,
735:1, 735:4, 735:8,
735:14, 735:15
  **evidence** [88] -
568:3, 569:24,
571:20, 571:21,
572:2, 573:2, 573:9,
579:23, 581:21,
581:24, 584:23,
589:3, 594:8, 602:11,
602:12, 606:19,
611:17, 613:14,
613:15, 613:17,
613:20, 613:23,
613:24, 614:22,
618:12, 622:24,
623:8, 623:11, 629:2,
630:3, 643:3, 643:8,
647:9, 647:11,
648:15, 648:18,
656:19, 656:21,
657:7, 657:11,
657:22, 661:14,
664:14, 667:24,
668:2, 668:24, 669:2,
670:2, 670:8, 675:2,
675:5, 675:6, 675:12,
675:13, 675:14,
675:23, 679:5,
679:10, 679:14,
681:14, 681:16,
682:12, 682:17,
689:10, 689:15,
689:21, 692:13,
694:10, 694:14,
694:20, 697:2, 697:3,
697:11, 697:12,
697:15, 702:22,
703:17, 713:13,
715:7, 722:12, 732:7,
732:21, 732:24,
740:10, 740:19
  **evolved** [1] - 632:22
  **ex** [2] - 600:21,
691:23
  **ex-President** [1] -
691:23
  **ex-wife** [1] - 600:21
  **exact** [2] - 641:19,
659:18
  **exactly** [2] - 601:19,
642:21

  **examined** [1] - 735:8
  **example** [10] -
564:16, 571:25,
586:10, 616:24,
622:23, 654:3,
709:19, 735:2, 740:10
  **excuse** [6] - 565:15,
568:7, 570:3, 626:17,
640:6, 683:9
  **expect** [8] - 566:5,
571:16, 588:20,
606:18, 614:19,
642:25, 647:8, 711:24
  **expectation** [1] -
579:18
  **expectations** [1] -
678:25
  **expected** [2] - 592:7,
701:16
  **expecting** [1] -
662:22
  **expects** [1] - 674:23
  **experience** [9] -
601:4, 601:7, 631:20,
662:13, 676:9,
695:17, 695:21,
695:23, 725:2
  **experienced** [4] -
578:5, 606:1, 606:4,
668:1
  **experiences** [7] -
663:15, 663:20,
684:16, 684:21,
718:6, 727:21, 728:20
  **explain** [3] - 592:2,
619:21, 661:22
  **explained** [1] -
657:13
  **exposed** [5] -
570:23, 572:1, 625:3,
722:4, 722:17
  **exposure** [4] - 589:7,
598:21, 703:6, 715:24
  **expressed** [1] -
574:1
  **expression** [1] -
635:4
  **extend** [1] - 591:15
  **extended** [2] -
576:11, 591:21
  **extensive** [2] -
623:16, 641:24
  **extent** [21] - 589:23,
612:18, 613:3, 615:3,
622:4, 626:14,
626:19, 627:2,
633:22, 647:18,
654:13, 668:15,
669:19, 678:2, 705:4,
723:4, 729:2, 730:24,

733:13, 738:10, 739:1
  **extraordinary** [1] - 650:17
  **extreme** [2] - 581:1, 581:6
  **extremely** [1] - 592:25
  **extremism** [1] - 581:18
  **extremist** [1] - 738:6
  **eyeballs** [2] - 599:1, 668:16

# F

  **Facebook** [19] - 621:22, 621:24, 622:2, 622:19, 623:19, 624:13, 626:2, 626:4, 630:8, 630:14, 631:20, 631:24, 633:23, 635:13, 635:16, 635:22, 639:13, 639:16, 640:3
  **fact** [29] - 566:18, 566:20, 574:5, 585:16, 586:1, 586:4, 598:14, 605:1, 608:13, 609:6, 611:18, 622:18, 624:22, 624:23, 638:19, 668:22, 670:6, 691:24, 694:3, 697:7, 697:14, 710:9, 710:14, 711:15, 712:16, 733:17, 738:20
  **factors** [1] - 574:12
  **facts** [19] - 578:1, 579:13, 581:14, 586:6, 589:18, 592:8, 592:18, 598:17, 601:15, 602:8, 608:25, 611:25, 672:4, 689:21, 731:12, 731:13, 732:12, 734:17
  **fair** [78] - 565:17, 570:18, 574:2, 579:22, 580:2, 581:8, 582:21, 584:19, 585:18, 586:8, 587:5, 591:5, 594:11, 595:3, 595:4, 595:12, 596:6, 596:16, 598:14, 600:6, 601:5, 601:13, 602:5, 602:19, 605:4, 605:13, 609:22, 610:3, 611:21,

624:24, 628:23, 628:25, 630:1, 631:5, 634:22, 638:25, 644:1, 646:17, 646:23, 651:24, 662:14, 662:18, 663:15, 663:21, 663:25, 664:20, 665:9, 665:14, 665:20, 672:2, 678:23, 679:6, 680:21, 681:1, 683:10, 689:25, 691:15, 692:1, 696:15, 697:9, 697:18, 698:10, 703:20, 710:11, 710:16, 711:17, 712:2, 713:9, 715:12, 719:19, 719:21, 728:13, 731:7, 733:10, 734:12, 735:5, 740:2
  **fairly** [13] - 578:25, 586:3, 610:1, 643:3, 669:3, 675:2, 675:3, 675:5, 679:20, 679:23, 681:4, 697:8, 705:22
  **fairness** [1] - 683:9
  **fall** [1] - 577:1
  **fallen** [2] - 612:5, 670:17
  **familiar** [4] - 587:25, 592:17, 592:18, 615:17
  **family** [51] - 564:17, 568:21, 570:7, 578:10, 582:4, 583:8, 584:7, 590:11, 598:8, 600:17, 605:18, 609:13, 610:6, 645:20, 646:2, 646:6, 648:23, 649:9, 659:5, 660:1, 660:4, 661:17, 663:5, 669:10, 680:2, 683:13, 683:25, 690:5, 691:4, 694:24, 695:9, 699:19, 700:18, 701:1, 701:23, 704:6, 704:11, 704:15, 704:16, 704:19, 708:2, 710:20, 712:21, 714:3, 714:22, 716:9, 717:10, 720:25, 723:13, 724:14
  **far** [6] - 586:22, 638:1, 673:23,

675:24, 738:6, 741:13
  **far-right** [2] - 673:23, 738:6
  **fashioned** [1] - 654:19
  **father** [8] - 569:3, 569:6, 569:12, 570:1, 570:2, 570:3, 591:4, 594:1
  **father-in-law** [1] - 570:1
  **favor** [4] - 569:13, 569:20, 601:8, 718:7
  **favorable** [3] - 678:14, 705:18, 717:25
  **favorably** [4] - 688:19, 695:23, 712:6
  **FBI** [3] - 569:5, 569:9, 570:1
  **Federal** [20] - 568:22, 569:18, 583:9, 598:9, 645:21, 645:24, 646:3, 660:2, 660:9, 690:6, 690:9, 690:15, 710:20, 710:23, 710:25, 711:5, 711:6, 719:11, 721:1, 724:1
  **federal** [5] - 569:3, 702:15, 707:8, 707:9, 710:24
  **feed** [2] - 571:1, 589:12
  **feelers** [1] - 702:3
  **feelings** [6] - 577:24, 579:19, 579:22, 594:18, 705:8, 725:2
  **fellow** [1] - 609:1
  **felt** [2] - 579:2, 607:8
  **fervent** [1] - 602:13
  **fervently** [1] - 594:10
  **few** [17] - 578:18, 591:12, 593:19, 621:22, 623:20, 624:9, 627:14, 631:18, 633:9, 645:23, 654:1, 660:4, 664:8, 670:25, 677:15, 696:7, 713:3
  **fiancé** [5] - 608:12, 608:15, 609:1, 619:8, 619:18
  **field** [5] - 590:12, 616:14, 648:24, 683:13, 716:10
  **figure** [4] - 598:21, 680:19, 741:22, 742:18
  **figured** [1] - 637:16
  **figuring** [1] - 577:14

**filled** [2] - 588:2, 665:5
  **filling** [7] - 591:10, 601:24, 617:11, 628:11, 631:15, 651:4, 696:5
  **filming** [2] - 729:11
  **final** [1] - 595:3
  **fine** [6] - 575:8, 643:24, 649:14, 665:17, 708:7, 708:21
  **finish** [1] - 743:4
  **firearms** [7] - 674:4, 697:4, 697:5, 697:7, 697:8, 697:13, 697:14
  **firm** [4] - 639:23, 656:7, 717:4, 724:2
  **firms** [1] - 724:8
  **First** [1] - 585:7
  **first** [32] - 563:5, 576:2, 577:11, 580:20, 591:12, 601:24, 608:9, 614:8, 614:21, 621:10, 628:10, 629:6, 636:25, 642:9, 645:9, 651:2, 653:11, 665:3, 670:24, 677:18, 686:3, 699:8, 699:11, 708:22, 718:12, 720:19, 726:8, 729:6, 729:8, 730:4, 736:23, 738:16
  **firsthand** [1] - 571:13
  **FISCHER** [93] - 561:11, 561:12, 591:8, 591:10, 591:19, 591:22, 592:9, 592:16, 593:2, 593:5, 593:8, 593:12, 593:15, 593:25, 594:4, 594:7, 594:13, 594:24, 595:14, 596:3, 597:14, 601:22, 601:24, 602:2, 602:9, 602:18, 602:21, 628:8, 628:10, 628:14, 628:21, 629:1, 629:11, 629:14, 630:1, 630:12, 630:18, 631:2, 631:11, 642:5, 643:15, 651:1, 651:11, 651:15, 651:18, 651:20, 651:23, 652:2, 664:5, 664:7, 664:12, 664:22, 665:9,

665:14, 665:18, 665:23, 670:21, 670:24, 671:5, 671:9, 671:12, 671:16, 671:21, 672:1, 672:6, 672:9, 672:12, 696:2, 696:4, 696:7, 696:14, 696:23, 697:2, 697:13, 697:24, 698:1, 698:4, 698:6, 698:8, 698:12, 718:12, 718:18, 718:20, 718:24, 719:2, 719:7, 719:10, 719:13, 719:17, 719:21, 736:9, 736:14, 743:15
  **Fischer** [9] - 591:7, 595:16, 602:24, 631:12, 652:5, 696:1, 718:11, 719:23, 725:12
  **five** [20] - 584:8, 609:13, 646:7, 657:3, 671:15, 680:2, 691:5, 732:21, 732:22
  **flagged** [2] - 737:24, 738:3
  **flight** [3] - 563:21, 563:25, 564:2
  **Floyd** [2] - 609:18, 691:10
  **focus** [13] - 572:2, 589:18, 647:11, 668:2, 668:24, 681:16, 682:12, 682:17, 692:13, 694:7, 694:20, 703:17
  **focusing** [2] - 641:18, 730:1
  **folks** [9] - 594:18, 597:12, 621:15, 697:14, 716:12, 730:5, 730:9, 731:11, 742:5
  **follow** [12] - 587:15, 614:9, 636:5, 650:8, 663:2, 665:20, 666:12, 692:21, 704:1, 719:19, 722:22, 725:8
  **followed** [4] - 600:13, 614:6, 626:20, 626:25
  **following** [49] - 563:10, 567:5, 567:7, 567:19, 573:24, 574:24, 596:2, 597:7, 597:16, 603:9, 603:11, 607:20,

755

607:22, 616:4,
620:20, 620:22,
625:18, 636:19,
637:10, 640:22,
644:25, 645:2,
652:16, 652:18,
658:12, 658:14,
667:2, 667:4, 672:22,
672:24, 676:22,
677:8, 685:17,
685:19, 699:2, 699:4,
706:4, 707:22,
708:15, 712:9, 720:9,
720:11, 725:23,
726:3, 733:8, 733:23,
736:7, 736:16, 741:6
  **followup** [5] -
595:17, 608:7,
650:25, 706:15,
706:17
  **food** [1] - 642:3
  **footage** [1] - 729:12
  **FOR** [8] - 560:1,
560:14, 560:16,
560:21, 561:2, 561:5,
561:8, 561:11
  **force** [2] - 628:17,
692:24
  **Force** [2] - 721:7,
721:8
  **foregoing** [1] - 745:4
  **foreign** [3] - 593:16,
629:17, 664:23
  **foremost** [4] - 642:9,
686:3, 699:12, 708:22
  **foresee** [1] - 582:25
  **foreshadowed** [1] -
730:2
  **forget** [2] - 711:7,
711:10
  **forgive** [2] - 641:17,
650:13
  **form** [4] - 591:10,
601:25, 617:11,
629:24
  **formally** [1] - 707:23
  **formed** [6] - 571:17,
654:6, 674:24, 679:4,
686:25, 689:8
  **former** [17] - 580:24,
590:2, 602:14,
604:25, 605:3, 610:2,
629:3, 646:23, 661:9,
665:11, 680:25,
691:20, 710:8,
710:10, 710:15,
714:14
  **FORMERFEDSGR**
**OUP.COM** [1] - 561:5
  **forms** [3] - 628:11,

651:4, 696:5
  **forth** [3] - 737:15,
739:16, 739:22
  **forward** [1] - 590:2
  **four** [7] - 666:10,
701:2, 701:16, 706:4,
707:2, 707:24, 738:22
  **frankly** [2] - 574:3,
727:16
  **free** [18] - 563:18,
575:13, 575:17,
597:23, 603:18,
608:4, 621:5, 641:6,
645:14, 658:23,
667:11, 673:9,
677:16, 699:12,
720:17, 725:18,
726:12, 734:6
  **French** [1] - 734:25
  **frequent** [2] -
619:14, 620:4
  **Friday** [5] - 565:9,
574:15, 574:16,
574:22, 575:3
  **Fridays** [1] - 699:23
  **friend** [43] - 568:21,
569:2, 570:7, 578:6,
578:9, 578:17, 582:4,
582:6, 583:1, 583:8,
583:20, 583:25,
586:14, 590:11,
592:14, 592:15,
592:24, 596:12,
596:21, 596:22,
598:8, 600:17,
609:13, 610:6,
645:20, 646:6, 649:9,
659:5, 660:1, 661:17,
663:5, 680:2, 683:25,
690:5, 704:6, 704:11,
710:19, 710:24,
711:20, 714:3, 716:9,
720:25
  **friend's** [5] - 569:6,
569:12, 570:2, 570:3,
596:21
  **friends** [43] - 583:13,
583:17, 584:7,
610:11, 610:12,
611:19, 621:23,
621:24, 626:2, 630:8,
632:3, 639:13, 640:4,
645:23, 646:2,
646:10, 646:16,
648:23, 648:25,
669:10, 681:3,
683:13, 690:18,
691:3, 692:2, 694:24,
695:1, 695:9, 701:25,
702:1, 704:15,

704:16, 704:23,
710:23, 710:24,
711:4, 711:16,
712:22, 714:22,
716:10, 717:10,
723:13, 724:13
  **friendship** [3] -
582:16, 711:25, 712:8
  **friendships** [1] -
712:17
  **Front** [1] - 561:9
  **front** [25] - 563:20,
575:16, 584:24,
598:4, 598:18,
603:20, 608:6, 621:7,
641:6, 653:14,
658:25, 667:13,
673:13, 677:16,
686:6, 694:15,
699:14, 703:10,
703:12, 709:3,
720:22, 724:9,
726:16, 734:8, 737:3
  **full** [4] - 599:6,
653:12, 737:22, 745:5
  **fully** [1] - 567:12
  **funny** [1] - 656:10
  **furiously** [1] - 744:14
  **fuzzy** [1] - 713:22
  **fyre** [1] - 632:24

# G

  **garage** [1] - 686:20
  **gathering** [1] - 613:8
  **general** [14] - 572:14,
584:23, 592:19,
594:14, 611:2,
628:16, 629:4, 642:9,
674:7, 687:11, 689:5,
696:10, 737:13
  **generally** [5] - 577:6,
674:21, 727:21,
728:2, 734:10
  **gentleman** [1] -
641:25
  **gentlemen** [1] -
693:4
  **George** [2] - 609:18,
691:10
  **George's** [1] - 662:3
  **Georgia** [2] - 631:1,
671:15
  **GEYER** [23] - 561:5,
631:15, 631:20,
631:24, 632:2, 632:8,
632:10, 632:14,
632:18, 632:20,
633:2, 633:4, 633:6,

633:10, 633:14,
633:21, 634:3, 634:6,
634:9, 634:14,
634:18, 635:3, 639:5
  **Geyer** [6] - 631:14,
632:16, 635:6,
637:17, 639:3, 639:7
  **girlfriend** [2] - 721:3,
721:6
  **given** [14] - 574:15,
590:7, 630:4, 630:5,
650:6, 650:7, 655:25,
656:15, 662:25,
674:12, 728:10,
731:5, 734:18, 739:24
  **glasses** [4] - 670:23,
702:7, 702:8, 702:11
  **Glen** [1] - 561:13
  **godfather** [1] -
616:17
  **Gov** [1] - 633:9
  **government** [4] -
585:4, 660:5, 734:24,
735:19
  **GOVERNMENT** [1] -
560:14
  **Government** [41] -
568:22, 569:24,
572:7, 579:6, 579:7,
580:6, 582:25, 583:9,
598:9, 601:8, 612:3,
612:5, 617:2, 619:3,
638:2, 638:3, 638:5,
645:21, 645:24,
646:3, 657:18,
657:21, 660:2, 660:9,
662:18, 670:17,
690:6, 690:10,
690:15, 705:13,
705:18, 710:21,
710:23, 710:25,
711:5, 711:6, 712:12,
719:11, 721:1, 724:1,
725:3
  **Government's** [4] -
612:2, 657:17,
663:21, 670:15
  **Governor** [1] -
561:12
  **grad** [1] - 671:20
  **grand** [4] - 702:13,
702:15, 702:16,
702:21
  **grandparents** [1] -
647:6
  **grateful** [3] - 677:13,
708:24, 734:4
  **great** [6] - 596:4,
631:2, 639:11,
666:11, 685:10,

698:12
  **greater** [5] - 567:2,
567:16, 567:20,
650:7, 662:25
  **grew** [1] - 590:14
  **grounds** [13] - 627:9,
627:11, 647:2, 647:4,
647:9, 667:16,
667:20, 667:25,
681:6, 681:14, 692:6,
721:17
  **group** [52] - 580:22,
604:17, 604:23,
604:24, 605:2, 622:3,
622:19, 623:19,
624:6, 634:13,
634:14, 636:2, 636:3,
636:4, 636:7, 636:9,
636:10, 639:14,
639:20, 642:11,
642:12, 648:3, 654:4,
654:5, 654:15,
654:22, 656:2, 657:4,
660:25, 664:15,
669:7, 669:9, 669:12,
669:14, 669:15,
673:23, 674:2, 674:7,
674:17, 674:19,
675:7, 678:14,
686:25, 687:14,
728:6, 731:21,
732:22, 732:25,
739:14, 740:4, 741:25
  **groups** [22] - 621:23,
624:1, 624:13, 626:1,
632:11, 632:12,
632:14, 632:17,
632:18, 632:21,
632:22, 633:13,
633:15, 634:7,
635:17, 639:16,
669:17, 669:20,
678:6, 732:18
  **guess** [19] - 575:6,
576:20, 577:13,
579:10, 579:12,
583:15, 584:24,
594:7, 594:19, 595:2,
596:12, 608:19,
628:12, 634:18,
670:25, 675:7,
688:21, 704:10, 723:3
  **guessing** [1] -
608:21
  **guilt** [3] - 612:3,
657:17, 670:16
  **guilty** [4] - 619:5,
657:23, 724:18,
728:18
  **guns** [1] - 697:4

**guy** [4] - 606:11, 607:2, 729:10, 729:11

# H

**habits** [2] - 635:14, 635:15
**half** [4] - 570:15, 578:21, 606:2, 665:6
**half-plus** [1] - 570:15
**Haller** [1] - 742:21
**HALLER** [4] - 568:7, 742:20, 742:22, 743:2
**hand** [2] - 632:23, 658:10
**handled** [1] - 736:13
**hands** [2] - 599:6, 655:16
**hang** [2] - 629:20, 631:13
**happy** [4] - 575:4, 684:2, 743:10, 743:17
**harbor** [2] - 705:12, 731:22
**hard** [8] - 571:14, 579:13, 678:15, 725:2, 725:25, 731:9, 732:17, 740:6
**harder** [4] - 579:11, 591:21, 591:25, 596:11
**hardly** [1] - 640:9
**hardship** [11] - 574:9, 575:20, 576:23, 591:16, 597:9, 650:13, 699:16, 699:24, 705:25, 706:18, 707:24
**hardships** [1] - 574:8
**HARRELSON** [1] - 561:5
**Harrisburg** [1] - 561:10
**Harry** [6] - 621:17, 625:21, 630:2, 637:25, 693:8
**hat** [1] - 588:5
**hate** [1] - 577:2
**Haven** [3] - 718:23, 718:25, 719:2
**head** [4] - 655:7, 656:1, 688:15, 711:3
**headline** [1] - 612:19
**headlines** [5] - 580:21, 581:13, 581:17, 617:13, 686:24
**headphones** [1] -

644:8
**healthcare** [1] - 685:9
**hear** [19] - 573:10, 573:14, 592:11, 598:12, 599:1, 605:2, 614:18, 618:11, 621:16, 643:20, 664:18, 668:16, 670:2, 681:14, 696:17, 696:21, 730:12, 731:12, 735:12
**heard** [85] - 571:12, 573:2, 573:15, 574:19, 578:14, 580:14, 580:18, 580:20, 581:16, 587:23, 593:9, 599:14, 599:17, 599:21, 599:24, 600:2, 600:8, 604:1, 604:3, 604:11, 604:12, 604:15, 605:11, 612:14, 612:15, 613:5, 615:16, 615:17, 627:4, 641:12, 641:15, 641:19, 648:6, 648:8, 653:19, 653:22, 653:25, 660:25, 664:17, 664:19, 669:7, 669:9, 673:18, 673:20, 674:13, 675:12, 677:20, 677:23, 677:25, 678:2, 678:10, 679:15, 682:22, 686:12, 686:14, 686:15, 687:2, 687:23, 688:4, 688:7, 688:8, 688:10, 688:11, 693:18, 703:24, 704:3, 709:6, 709:8, 709:11, 709:12, 709:18, 710:4, 722:11, 722:20, 722:23, 723:5, 731:20, 731:23, 732:7, 732:8, 732:9, 732:12, 738:2, 740:7
**hearing** [20] - 587:22, 590:6, 590:14, 613:19, 626:17, 626:18, 657:6, 665:4, 675:12, 675:13, 687:17, 721:13, 722:25, 729:8, 729:21, 730:1, 730:4, 730:13,

738:23, 740:10
**hearings** [28] - 589:14, 589:22, 589:23, 604:20, 614:5, 614:6, 614:11, 626:20, 627:4, 682:20, 683:3, 683:9, 686:16, 686:18, 687:6, 693:11, 709:12, 709:15, 709:17, 728:5, 728:23, 729:3, 729:4, 729:6, 730:6, 730:20, 739:7
**heart** [1] - 595:5
**hearts** [1] - 595:5
**heavy** [1] - 592:25
**held** [2] - 651:11, 671:5
**hello** [2] - 652:21, 666:3
**help** [3] - 571:10, 701:20
**helped** [1] - 673:24
**helpful** [1] - 575:17
**hereby** [1] - 745:3
**herself** [2] - 700:12, 707:14
**hesitancy** [4] - 595:2, 596:5, 596:25, 597:5
**hesitated** [2] - 592:4, 596:8
**hesitation** [2] - 639:24, 672:6
**hi** [16] - 572:24, 572:25, 591:9, 601:23, 603:14, 608:1, 617:6, 620:25, 622:4, 635:6, 664:6, 667:8, 670:22, 685:6
**hi/bye** [1] - 635:1
**high** [5] - 671:14, 704:25, 721:24, 721:25
**higher** [1] - 702:24
**Highway** [1] - 561:12
**Hill** [24] - 578:7, 578:10, 582:6, 582:9, 582:17, 600:8, 610:7, 610:10, 610:11, 610:13, 611:2, 611:5, 611:8, 611:18, 611:19, 624:19, 713:17, 713:19, 713:20, 713:23, 728:10, 740:8
**himself** [1] - 592:23
**hindrance** [1] - 735:10

**hint** [1] - 640:2
**historian** [3] - 734:15, 735:6, 735:13
**historical** [1] - 735:15
**history** [3] - 734:23, 735:1, 735:4
**hit** [2] - 649:13, 743:3
**hit-and-run** [1] - 649:13
**hold** [4] - 691:13, 695:22, 696:13, 732:19
**holidays** [3] - 707:8, 707:10, 707:25
**home** [5] - 606:14, 616:6, 626:21, 700:12, 714:18
**homicide** [1] - 724:20
**honest** [2] - 565:5, 567:11, 579:22, 675:16
**honestly** [16] - 565:10, 579:11, 580:25, 586:3, 595:5, 595:10, 632:5, 632:6, 633:17, 662:19, 669:3, 675:2, 675:3, 675:15, 728:6, 740:18
**Honor** [55] - 568:7, 574:13, 595:15, 595:19, 596:3, 597:14, 597:17, 602:22, 603:1, 603:12, 607:13, 607:23, 620:23, 632:20, 635:5, 637:19, 639:5, 640:23, 643:18, 643:23, 645:3, 652:3, 652:7, 652:19, 658:3, 658:15, 667:5, 672:12, 672:14, 673:2, 676:13, 677:3, 677:11, 685:20, 698:16, 699:5, 707:16, 708:16, 719:22, 719:25, 720:12, 724:3, 724:6, 725:13, 725:15, 725:20, 726:4, 733:24, 735:24, 736:9, 736:11, 736:17, 740:24, 741:19, 742:20
**HONORABLE** [1] - 560:10
**hope** [2] - 682:9,

743:3
**hopefully** [1] - 741:24
**horns** [1] - 588:5
**host** [1] - 634:7
**hotels** [1] - 687:18
**hour** [2] - 565:2, 744:13
**hours** [1] - 635:19
**House** [9] - 583:15, 583:21, 583:25, 726:18, 726:22, 727:6, 728:14, 728:18, 733:18
**house** [1] - 684:5
**HUD** [1] - 645:25
**huge** [1] - 607:2
**HUGHES** [1] - 560:18
**humongous** [1] - 606:12
**hundred** [2] - 624:2, 624:3
**husband** [3] - 596:12, 598:10, 600:20
**husband's** [1] - 601:4
**hypothetically** [2] - 623:6, 623:8

# I

**idea** [6] - 637:25, 670:5, 670:9, 723:10, 742:24, 743:6
**ideally** [1] - 741:12
**ideas** [1] - 617:24
**identified** [8] - 588:21, 614:16, 621:16, 631:22, 668:7, 681:22, 693:3, 723:25
**identify** [3] - 621:13, 693:1, 706:20
**III** [2] - 560:6, 738:16
**illegal** [4] - 656:5, 656:7, 656:10, 697:20
**image** [1] - 588:6
**imagery** [1] - 611:17
**images** [12] - 588:4, 607:5, 655:6, 655:11, 655:13, 655:19, 655:25, 656:2, 656:17, 739:15, 740:6, 740:13
**imagine** [2] - 629:2, 731:9
**immediate** [2] -

579:2, 587:1
**impact** [7] - 610:25, 611:1, 611:20, 611:22, 611:24, 626:8, 626:10
**impactful** [1] - 611:7
**impartial** [59] - 565:17, 570:18, 574:3, 578:2, 578:4, 581:8, 582:22, 584:19, 584:21, 591:5, 594:11, 595:4, 595:5, 596:6, 596:17, 598:15, 600:6, 602:19, 605:4, 605:13, 609:22, 610:3, 611:21, 624:24, 628:23, 628:25, 631:6, 638:25, 644:1, 646:18, 646:24, 651:24, 663:16, 663:25, 664:20, 665:20, 672:3, 679:6, 680:22, 681:1, 683:10, 690:1, 691:15, 692:1, 697:18, 698:10, 703:21, 710:11, 710:16, 713:9, 715:12, 719:19, 726:20, 731:7, 733:11, 734:12, 735:5, 735:10, 740:2
**impartiality** [1] - 625:1
**impartially** [6] - 579:1, 586:3, 630:11, 639:22, 643:3, 669:3
**important** [3] - 734:16, 734:21, 734:25
**importantly** [5] - 579:5, 606:21, 639:10, 639:20, 643:6
**impression** [17] - 570:16, 599:19, 610:25, 611:6, 613:11, 614:23, 615:14, 642:24, 657:7, 674:14, 674:18, 688:18, 688:20, 715:21, 733:14, 738:19, 739:4
**impressions** [25] - 611:20, 613:18, 629:16, 656:1, 656:4, 656:15, 675:1, 675:11, 678:13, 679:4, 684:20,

687:14, 689:8, 689:13, 689:17, 689:18, 693:17, 715:9, 715:10, 715:16, 715:17, 727:13, 730:18, 738:17, 739:25
**inaugurations** [1] - 584:14
**incident** [2] - 638:8, 737:24
**inclined** [1] - 708:8
**including** [6] - 569:17, 609:1, 642:12, 709:16, 734:23, 742:4
**inconsistent** [1] - 670:9
**indecisiveness** [1] - 588:15
**independent** [1] - 635:11
**indicate** [1] - 643:2
**indicated** [23] - 566:23, 575:20, 583:7, 587:11, 589:21, 591:23, 592:10, 593:8, 594:1, 598:7, 598:9, 608:12, 610:5, 615:24, 647:1, 647:17, 650:11, 660:15, 666:12, 694:16, 696:8, 700:17, 702:5
**indicating** [1] - 643:15
**indication** [1] - 574:16
**individual** [1] - 577:21
**individuals** [6] - 587:21, 591:1, 609:20, 693:2, 714:25, 732:24
**infer** [1] - 691:12
**influence** [2] - 582:14, 734:20
**inform** [1] - 732:2
**information** [12] - 570:25, 589:9, 616:2, 623:2, 625:5, 625:9, 625:13, 687:12, 732:2, 737:13, 738:25, 739:5
**injured** [1] - 593:2
**innocent** [4] - 612:2, 657:16, 670:2, 670:15
**INOVA** [2] - 666:5, 666:8
**inquire** [1] - 702:3

**inquired** [1] - 701:22
**inside** [8] - 627:9, 647:2, 647:3, 647:9, 667:16, 681:6, 681:7, 681:10
**instance** [1] - 606:16
**instigated** [1] - 618:9
**instruct** [1] - 679:16
**instructed** [8] - 567:15, 636:2, 650:4, 662:21, 662:23, 668:22, 712:4, 722:10
**instruction** [9] - 566:24, 567:5, 567:7, 567:15, 567:19, 636:5, 650:9, 663:2, 712:9
**instructions** [26] - 573:22, 587:15, 588:1, 595:24, 603:5, 607:17, 620:15, 636:17, 644:19, 652:11, 666:23, 672:18, 676:17, 685:14, 692:21, 692:23, 698:21, 707:20, 720:5, 725:8, 725:9, 725:19, 733:5, 736:4, 741:4
**insurance** [1] - 590:25
**interaction** [2] - 623:16, 649:25
**interactions** [2] - 717:21, 717:24
**interest** [1] - 614:9
**interested** [1] - 624:7
**interesting** [4] - 577:12, 577:15, 577:16, 577:18
**interfere** [3] - 585:14, 585:24, 585:25
**interior** [2] - 667:25, 681:15
**International** [1] - 690:11
**international** [3] - 616:5, 690:19, 695:2
**interview** [1] - 638:12
**interviews** [1] - 693:20
**intriguing** [2] - 577:7, 577:8
**Investigation** [1] - 569:18
**invited** [1] - 624:6
**involve** [3] - 564:16, 662:5, 731:11

**involved** [11] - 566:4, 612:25, 613:3, 613:6, 613:8, 638:8, 638:11, 638:22, 669:17, 669:22, 678:7
**involvement** [5] - 566:14, 605:11, 605:12, 617:24, 730:1
**involves** [1] - 728:12
**issue** [3] - 640:20, 702:9, 733:15
**issues** [7] - 572:15, 573:1, 573:4, 573:7, 600:21, 737:25, 742:7
**itself** [1] - 643:11

## J

**JAMES** [1] - 560:22
**January** [107] - 566:12, 566:21, 570:8, 570:23, 571:18, 578:11, 582:12, 585:25, 586:11, 588:4, 589:9, 589:22, 592:22, 592:24, 598:22, 598:24, 599:25, 600:5, 604:19, 604:20, 604:24, 605:12, 605:16, 608:16, 610:7, 610:15, 611:16, 611:17, 613:1, 614:5, 616:3, 617:17, 617:25, 618:3, 624:20, 625:5, 625:19, 630:16, 632:8, 633:14, 634:11, 634:21, 642:13, 642:15, 647:15, 648:14, 655:8, 655:12, 655:14, 656:3, 657:1, 657:8, 659:13, 659:23, 660:14, 668:12, 668:15, 669:17, 670:1, 674:3, 674:5, 674:25, 678:1, 678:7, 678:10, 678:17, 682:2, 682:21, 686:16, 686:18, 687:6, 687:13, 687:17, 689:3, 689:4, 693:10, 697:5, 703:7, 709:12, 709:15, 709:17, 709:25, 710:2, 713:18, 713:20, 714:19, 715:24,

716:1, 716:5, 722:5, 722:7, 726:23, 727:6, 727:22, 728:5, 728:12, 728:23, 730:2, 730:20, 732:10, 734:19, 735:14, 737:7, 737:24, 739:3, 740:11
**JC** [2] - 640:15, 744:7
**JEFFREY** [1] - 560:15
**Jersey** [1] - 561:7
**job** [10] - 573:8, 608:16, 612:3, 616:9, 626:12, 635:20, 648:12, 651:12, 671:19, 735:6
**jobs** [1] - 608:19
**Joe** [1] - 628:17
**jogging** [1] - 721:20
**John** [2] - 693:3, 715:2
**join** [3] - 593:18, 624:14, 639:5
**joined** [1] - 624:14
**joining** [1] - 624:11
**JONATHAN** [1] - 561:8
**Jones** [8] - 588:19, 614:16, 668:7, 681:22, 681:23, 693:3, 715:2, 715:3
**Journal** [1] - 737:15
**journalist** [1] - 619:24
**JR** [3] - 560:14, 560:22, 561:2
**judge** [11] - 572:25, 611:25, 613:13, 619:1, 619:7, 634:25, 644:8, 656:18, 661:13, 707:23, 732:20
**JUDGE** [1] - 560:11
**Judge** [1] - 716:22
**judgment** [1] - 618:20
**judicial** [1] - 618:25
**Judith** [1] - 716:23
**jumping** [1] - 606:25
**June** [1] - 614:8
**junior** [1] - 704:24
**juries** [1] - 689:19
**jurisdictional** [1] - 702:16
**Juror** [70] - 563:9, 573:23, 574:23, 574:25, 575:10, 596:1, 597:15,

758

597:17, 598:1, 603:8,
603:10, 603:12,
607:19, 607:21,
607:23, 608:2,
620:19, 620:21,
620:23, 621:3,
636:18, 640:17,
640:21, 640:23,
644:24, 645:1, 645:3,
645:15, 652:15,
652:17, 652:19,
653:5, 658:11,
658:13, 658:15,
667:1, 667:3, 667:5,
672:21, 672:23,
673:2, 673:10,
676:21, 677:7,
677:11, 685:16,
685:18, 685:20,
686:1, 699:1, 699:3,
699:5, 707:21,
708:14, 708:16,
720:8, 720:10,
720:12, 725:22,
726:2, 726:4, 733:7,
733:22, 733:24,
736:6, 736:15,
736:17, 736:21,
741:5, 742:16

**JUROR** [744] -
563:14, 563:17,
563:24, 564:2, 564:5,
564:8, 564:10,
564:14, 564:18,
564:24, 565:5,
565:10, 565:21,
566:2, 566:10,
566:13, 566:16,
566:22, 567:8,
567:11, 567:23,
568:6, 568:15,
568:19, 568:24,
569:2, 569:5, 569:8,
569:10, 569:15,
569:22, 570:2, 570:4,
570:10, 570:19,
571:3, 571:9, 571:12,
571:23, 572:4,
572:10, 572:13,
572:24, 573:4, 573:6,
573:12, 573:17,
575:8, 575:11,
575:15, 575:24,
576:5, 576:13,
576:18, 577:9,
577:21, 578:12,
578:23, 579:4,
579:10, 579:20,
579:25, 580:4, 580:9,
580:11, 580:19,
581:3, 581:10, 582:1,

582:8, 582:10,
582:13, 582:19,
582:23, 583:3,
583:10, 583:13,
583:19, 583:22,
584:1, 584:3, 584:10,
584:20, 585:3,
585:12, 585:19,
586:4, 586:12,
586:18, 586:21,
587:7, 587:12,
587:16, 587:25,
588:9, 588:12,
588:15, 588:25,
589:5, 589:13,
589:20, 589:24,
590:9, 590:13,
590:18, 590:21,
590:25, 591:6, 591:9,
591:18, 591:20,
592:3, 592:14,
592:21, 593:4, 593:7,
593:11, 593:14,
593:22, 594:3, 594:6,
594:12, 594:15,
595:8, 595:22,
595:25, 597:20,
597:25, 598:2, 598:5,
598:11, 598:16,
599:2, 599:5, 599:7,
599:11, 599:18,
599:21, 599:23,
600:2, 600:7, 600:12,
600:15, 600:20,
600:23, 601:2, 601:6,
601:10, 601:14,
601:17, 601:23,
602:1, 602:7, 602:16,
602:20, 603:6,
603:15, 603:24,
604:4, 604:7, 604:10,
604:14, 605:6, 605:9,
605:15, 606:6,
606:22, 607:6,
607:18, 608:1, 608:3,
608:11, 608:14,
608:17, 608:23,
609:3, 609:8, 609:11,
609:16, 609:23,
610:4, 610:9, 610:16,
610:23, 611:1,
611:10, 611:13,
611:22, 612:8,
612:12, 612:16,
612:22, 612:24,
613:5, 613:15,
613:22, 614:1, 614:7,
614:13, 615:1, 615:8,
615:11, 615:16,
616:4, 616:12,
616:16, 616:21,

616:25, 617:3, 617:6,
617:9, 617:14,
617:18, 617:22,
618:1, 618:6, 618:10,
618:13, 618:15,
618:22, 618:24,
619:6, 619:10,
619:12, 619:20,
619:23, 620:4, 620:8,
620:13, 620:16,
620:18, 621:1, 621:4,
621:9, 621:12,
621:18, 621:20,
621:22, 622:3,
622:12, 622:16,
622:22, 623:2,
623:10, 623:15,
623:20, 623:23,
624:2, 624:4, 624:8,
624:15, 624:21,
624:25, 625:8,
625:12, 625:16,
625:21, 625:24,
626:1, 626:5, 626:7,
626:10, 626:14,
626:21, 627:1, 627:7,
627:13, 627:20,
628:2, 628:5, 628:9,
628:13, 628:20,
628:24, 629:6,
629:12, 629:22,
630:9, 630:15,
630:20, 631:1, 631:7,
631:10, 631:19,
631:23, 632:1, 632:5,
632:9, 632:12,
632:19, 632:21,
633:3, 633:5, 633:8,
633:11, 633:17,
633:25, 634:5, 634:7,
634:12, 634:15,
634:24, 635:10,
635:18, 635:25,
636:6, 636:12,
636:15, 641:1,
641:10, 641:16,
642:6, 642:14,
642:20, 643:5,
643:10, 644:2,
644:14, 644:17,
644:21, 645:6, 645:8,
645:16, 645:23,
646:4, 646:9, 646:13,
646:19, 646:25,
647:5, 647:12,
647:23, 648:4,
648:10, 648:17,
648:21, 648:25,
649:5, 649:7, 649:12,
649:17, 649:20,
649:23, 650:3,

650:10, 650:16,
650:20, 650:24,
651:8, 651:13,
651:17, 651:19,
651:22, 652:1,
652:12, 652:14,
652:22, 652:24,
653:6, 653:8, 653:17,
653:23, 654:5, 654:9,
654:12, 654:16,
654:23, 655:4,
655:10, 655:15,
655:21, 656:4, 656:9,
656:14, 656:21,
657:9, 657:13,
657:21, 657:25,
658:9, 658:18, 659:3,
659:7, 659:10,
659:12, 659:15,
659:18, 659:22,
659:24, 660:4,
660:10, 660:18,
660:21, 661:2,
661:12, 661:15,
661:21, 661:24,
662:3, 662:7, 662:11,
662:15, 662:19,
663:3, 663:8, 663:12,
663:17, 663:22,
664:2, 664:6, 664:11,
664:21, 665:2,
665:13, 665:17,
665:22, 665:25,
666:3, 666:5, 666:8,
666:14, 666:20,
666:24, 667:8,
667:18, 667:22,
668:3, 668:18,
668:20, 669:1, 669:5,
669:12, 669:16,
669:22, 670:7,
670:12, 670:19,
670:22, 671:3, 671:7,
671:11, 671:13,
671:18, 671:25,
672:5, 672:8, 672:11,
672:19, 673:4,
673:11, 673:16,
673:22, 674:4, 674:9,
674:11, 674:18,
674:21, 675:4,
675:15, 675:22,
676:6, 676:8, 676:18,
677:24, 678:5,
678:12, 678:15,
678:21, 679:8,
679:12, 679:18,
679:22, 680:5, 680:9,
680:11, 680:14,
680:23, 681:2, 681:8,
681:18, 682:5,

682:14, 682:18,
682:23, 683:4,
683:11, 683:15,
683:17, 683:20,
683:23, 684:4, 684:9,
684:12, 684:15,
684:19, 684:24,
685:6, 685:8, 685:15,
685:23, 686:2, 686:7,
686:10, 686:15,
686:19, 686:23,
687:7, 687:10,
687:16, 687:20,
687:23, 688:10,
688:15, 688:21,
688:24, 689:4, 689:9,
689:14, 689:19,
689:23, 690:2, 690:9,
690:13, 690:18,
690:23, 691:1, 691:6,
691:8, 691:16,
691:22, 692:2, 692:8,
692:14, 692:17,
692:23, 693:10,
693:15, 693:19,
693:22, 693:25,
694:5, 694:14,
694:22, 695:1, 695:6,
695:11, 695:13,
695:16, 695:20,
695:24, 696:3, 696:6,
696:12, 696:16,
696:25, 697:10,
697:19, 697:25,
698:3, 698:5, 698:7,
698:11, 698:14,
698:19, 698:22,
698:25, 699:9, 700:1,
700:4, 700:6, 700:8,
700:11, 700:16,
700:20, 700:25,
701:4, 701:8, 701:10,
701:19, 701:25,
702:2, 702:7, 702:10,
702:14, 702:18,
703:4, 703:11,
703:16, 703:19,
703:22, 704:4, 704:9,
704:14, 704:17,
704:20, 704:22,
704:24, 705:2, 705:7,
705:11, 705:15,
705:20, 705:23,
706:5, 706:8, 706:11,
706:14, 706:24,
707:4, 707:11,
708:19, 709:9,
709:20, 709:23,
710:1, 710:6, 710:12,
710:17, 710:22,
711:2, 711:7, 711:13,

759

711:19, 711:22,
712:3, 712:10,
712:15, 712:20,
712:25, 713:2,
713:10, 713:15,
713:21, 713:25,
714:5, 714:9, 714:12,
714:17, 714:20,
714:23, 715:14,
715:17, 715:22,
716:2, 716:7, 716:13,
716:16, 716:19,
716:22, 716:25,
717:3, 717:8, 717:12,
717:16, 717:20,
717:23, 718:2, 718:9,
718:17, 718:19,
718:22, 718:25,
719:5, 719:9, 719:12,
719:16, 719:20,
720:6, 720:15, 721:3,
721:6, 721:9, 721:14,
721:20, 721:23,
722:1, 722:8, 722:14,
722:18, 722:25,
723:7, 723:11,
723:15, 723:17,
723:20, 723:23,
724:3, 724:6, 724:10,
724:17, 724:24,
725:4, 725:10,
725:20, 726:7,
726:14, 726:24,
727:1, 727:4, 727:8,
727:11, 727:15,
727:20, 727:24,
728:4, 728:15,
728:21, 728:25,
729:5, 729:18,
729:22, 729:24,
730:11, 730:15,
730:22, 730:24,
731:8, 731:23, 732:3,
732:14, 732:17,
733:1, 733:6, 734:2,
734:18, 735:6,
735:17, 736:5,
736:20, 737:12,
737:18, 737:22,
738:5, 738:15,
738:19, 738:24,
739:4, 739:10,
739:15, 739:20,
740:5, 740:12,
740:20, 740:22
  **juror** [68] - 563:16,
563:19, 565:17,
571:5, 571:8, 573:8,
574:4, 575:16, 577:7,
579:1, 579:6, 582:22,
596:4, 601:13,

601:20, 605:4, 606:5,
606:17, 608:24,
616:9, 618:20, 619:2,
631:5, 635:14,
635:21, 637:14,
637:18, 646:18,
647:7, 648:12, 650:2,
650:4, 653:14,
658:25, 664:1,
667:12, 667:24,
668:21, 670:14,
672:1, 673:13,
674:24, 675:10,
679:2, 679:13,
681:13, 682:10,
689:6, 699:14,
699:15, 702:21,
703:13, 708:13,
716:3, 719:18, 722:9,
726:13, 726:16,
726:20, 732:6,
733:21, 734:12,
736:24, 736:25,
740:2, 741:7, 742:6
  **jurors** [11] - 567:15,
571:16, 609:1, 637:1,
637:2, 642:25, 643:1,
678:24, 741:10,
741:25, 743:16
  **JURY** [1] - 560:10
  **jury** [23] - 574:6,
576:11, 576:21,
577:5, 577:10,
579:17, 587:10,
587:11, 602:12,
650:22, 689:21,
692:15, 692:16,
692:18, 698:9,
702:13, 702:15,
702:16, 731:9,
741:10, 742:3, 743:4
  **justice** [3] - 587:14,
692:20, 705:9
  **Justice** [2] - 711:12,
716:11
  **JUSTICE** [1] - 560:19
  **justification** [1] -
574:11
  **justify** [1] - 574:12
  **JUSTIN** [1] - 560:18

## K

  **KATHRYN** [1] -
560:14
  **keep** [8] - 571:19,
580:5, 619:24,
652:24, 660:21,
682:6, 721:12, 737:16
  **Keeper** [3] - 581:12,

648:3, 737:7
  **Keepers** [51] -
580:14, 590:8, 593:6,
593:12, 593:19,
593:20, 599:14,
599:17, 600:3, 604:1,
604:18, 612:14,
614:12, 617:13,
618:14, 627:5,
638:10, 638:16,
641:12, 648:7, 648:9,
653:19, 661:1, 661:5,
664:15, 665:1, 665:8,
669:8, 673:18,
677:20, 683:3,
686:12, 686:21,
687:6, 688:16, 689:2,
703:25, 709:6,
722:21, 729:20,
730:8, 730:14,
730:25, 731:21,
733:12, 737:10,
737:21, 738:21,
739:3, 739:17, 740:15
  **Keepers'** [2] - 730:1,
730:7
  **kept** [1] - 605:18
  **kids'** [1] - 599:7
  **killed** [1] - 592:23
  **kind** [33] - 564:15,
576:22, 580:25,
581:17, 586:2,
586:25, 590:16,
590:19, 601:20,
612:17, 613:8, 614:8,
615:17, 619:24,
625:6, 625:9, 667:19,
669:23, 678:15,
680:16, 690:16,
713:25, 714:9,
716:20, 716:21,
719:3, 723:10,
723:21, 729:12,
730:2, 730:6, 730:25,
739:21
  **knowing** [6] -
566:21, 584:21,
592:1, 592:6, 628:21
  **knowledge** [10] -
576:8, 576:13,
576:14, 577:22,
612:18, 612:23,
613:3, 724:10,
734:15, 737:6
  **known** [3] - 648:9,
660:25, 722:20
  **knows** [2] - 566:17,
639:9

## L

  **language** [1] -
656:14
  **large** [6] - 639:14,
639:20, 651:9, 728:1,
732:25
  **LASSITER** [1] -
560:23
  **last** [18] - 576:25,
584:8, 591:14, 596:7,
609:13, 615:19,
646:7, 654:1, 662:8,
665:5, 666:10, 680:2,
691:5, 701:16,
705:24, 721:18,
736:25, 742:5
  **latter** [3] - 589:13,
668:18, 668:19
  **laughter** [1] - 666:16
  **law** [54] - 566:3,
566:5, 566:25, 567:2,
567:16, 567:18,
567:21, 569:17,
569:20, 569:21,
570:1, 583:17, 585:4,
586:10, 590:17,
592:8, 646:3, 650:5,
650:6, 662:5, 662:16,
662:22, 662:24,
663:1, 665:21, 672:4,
674:22, 679:9,
679:16, 683:17,
683:19, 683:22,
684:20, 684:22,
688:14, 690:16,
690:24, 693:13,
695:2, 711:23,
711:24, 712:5, 712:7,
716:21, 717:1, 717:4,
718:4, 718:8, 719:19,
723:21, 724:2, 724:8,
725:7
  **Law** [1] - 687:24
  **LAW** [1] - 561:2
  **Lawn** [1] - 560:23
  **laws** [2] - 586:7,
697:22
  **lawyer** [13] - 590:13,
590:15, 649:6,
656:11, 683:18,
683:19, 716:13,
716:14, 716:15,
723:16, 723:23,
723:24, 725:5
  **lawyers** [13] - 649:1,
649:3, 649:4, 665:15,
695:3, 695:4, 710:23,
711:5, 711:6, 711:16,

712:17, 716:11
  **lays** [1] - 585:6
  **lead** [1] - 663:24
  **leader** [2] - 570:12,
738:20
  **learn** [9] - 609:19,
646:14, 646:21,
661:4, 661:8, 680:24,
691:11, 691:18,
710:13
  **learned** [16] - 571:6,
587:14, 613:21,
627:4, 668:23,
679:15, 683:6, 683:8,
687:15, 689:7,
689:16, 692:20,
716:4, 725:6, 738:18,
740:18
  **learning** [1] - 581:19
  **least** [5] - 568:1,
606:10, 640:9,
707:24, 729:9
  **leave** [11] - 570:16,
576:25, 577:2,
644:21, 644:22,
666:23, 676:18,
676:19, 698:22,
706:5, 720:6
  **leaving** [1] - 605:23
  **left** [15] - 606:14,
610:10, 610:24,
610:25, 613:19,
615:14, 630:22,
642:24, 656:16,
674:14, 688:18,
693:16, 714:6,
727:13, 740:1
  **legal** [11] - 590:11,
616:14, 648:24,
656:22, 683:13,
694:24, 697:21,
697:23, 716:9,
723:13, 725:6
  **length** [3] - 574:5,
591:20, 701:17
  **less** [3] - 695:23,
697:18, 712:6
  **lesser** [5] - 567:2,
567:16, 567:20,
650:7, 662:25
  **lethal** [1] - 697:8
  **letting** [1] - 650:21
  **level** [3] - 610:19,
611:7, 611:23
  **life** [2] - 590:14,
629:13
  **Life** [1] - 609:17
  **light** [1] - 615:18
  **like..** [1] - 616:8
  **likelihood** [1] - 638:4

760

**likely** [7] - 569:16, 588:20, 594:8, 602:12, 681:24, 706:10, 718:4
**likewise** [1] - 652:23
**limitation** [1] - 576:10
**limited** [1] - 687:12
**Linder** [6] - 591:7, 617:4, 684:25, 695:25, 718:11, 725:12
**LINDER** [31] - 560:21, 560:23, 563:6, 563:8, 572:18, 607:12, 617:5, 617:7, 617:10, 617:15, 617:19, 617:23, 618:5, 618:8, 618:11, 618:14, 618:16, 637:6, 658:4, 685:1, 696:1, 706:16, 725:13, 731:16, 741:21, 742:11, 742:14, 743:6, 743:9, 743:16, 744:10
**line** [3] - 642:17, 741:23, 742:14
**Line** [4] - 563:7, 640:18, 741:7, 742:16
**lines** [1] - 629:1
**LISA** [2] - 561:14, 745:3
**Lisa** [1] - 745:12
**list** [3] - 668:6, 681:21, 715:1
**listed** [1] - 588:19, 715:1, 738:12
**listen** [5] - 573:9, 592:7, 647:25, 648:1, 679:14
**listened** [3] - 626:16, 709:11, 732:6
**literal** [1] - 649:12
**litigation** [1] - 651:8
**live** [8] - 576:20, 600:12, 611:5, 616:6, 675:24, 680:16, 713:17, 713:20
**lived** [14] - 610:9, 611:4, 611:18, 611:19, 627:13, 630:19, 630:20, 651:18, 671:15, 676:1, 697:1, 718:21, 718:22, 718:24
**lives** [1] - 675:24
**Lives** [2] - 680:14, 713:3
**living** [11] - 577:22,

601:17, 610:7, 610:13, 611:2, 611:8, 635:9, 666:4, 678:18, 685:7, 713:23
**LLC** [2] - 561:5, 561:9
**look** [12] - 590:1, 592:8, 593:24, 598:17, 639:8, 673:12, 675:5, 677:19, 731:1, 735:7, 743:10, 744:12
**looking** [1] - 578:1, 616:2, 741:20
**lost** [1] - 614:9
**loud** [1] - 606:13
**lunch** [1] - 744:12
**lunchtime** [1] - 741:24

# M

**ma'am** [67] - 563:13, 573:19, 575:7, 591:8, 594:1, 594:25, 595:20, 597:19, 600:11, 601:11, 601:22, 602:23, 603:3, 603:14, 607:14, 607:25, 618:18, 620:11, 620:17, 620:25, 628:8, 630:18, 631:2, 631:11, 635:4, 635:9, 635:24, 636:1, 636:14, 640:25, 644:6, 644:13, 645:5, 649:6, 651:2, 652:4, 652:9, 652:13, 653:3, 658:5, 658:17, 659:17, 660:17, 662:13, 663:23, 664:3, 664:5, 665:14, 665:15, 665:23, 666:2, 666:21, 667:7, 670:21, 671:22, 672:9, 672:16, 696:2, 696:7, 696:24, 698:1, 698:12, 698:18, 699:7, 700:15, 705:25, 707:18
**Macomb** [1] - 724:24
**MAGA** [1] - 641:21
**mainstream** [2] - 737:13, 739:6
**majestic** [1] - 631:17
**Mall** [1] - 667:20
**manager** [1] - 570:11
**managing** [1] - 570:11

**March** [6] - 584:11, 609:16, 662:8, 680:7, 691:9, 713:4
**march** [5] - 609:14, 609:17, 646:7, 680:3, 680:10
**marches** [5] - 646:10, 646:12, 680:12, 691:9, 691:10
**marketing** [2] - 635:10, 635:20
**married** [1] - 600:21
**marshal** [1] - 710:24
**Marshal** [4] - 711:21, 712:1, 712:8, 712:18
**Marshals** [1] - 711:23
**Mary** [1] - 633:4
**Maryland** [3] - 561:13, 633:5, 663:12
**mask** [19] - 563:18, 575:14, 597:23, 603:18, 608:4, 621:5, 641:5, 645:13, 652:24, 658:23, 667:11, 673:9, 677:17, 685:23, 699:13, 709:1, 720:17, 726:12, 734:6
**maternity** [1] - 576:25
**Matter** [1] - 680:15
**matter** [3] - 572:14, 586:5, 639:9
**Matters** [1] - 713:3
**matters** [1] - 689:20
**mean** [33] - 576:18, 580:19, 585:1, 585:3, 601:14, 619:12, 619:21, 623:15, 626:11, 629:16, 634:18, 637:18, 656:24, 675:4, 675:24, 676:3, 676:8, 678:5, 678:15, 678:21, 679:9, 684:4, 688:21, 689:1, 696:12, 697:11, 701:10, 701:19, 704:18, 714:8, 728:3, 730:24, 738:4
**means** [5] - 565:19, 603:21, 615:4, 741:12, 742:19
**meant** [1] - 576:17
**media** [40] - 570:22, 571:7, 571:14, 572:1, 574:3, 581:12, 589:7, 593:10, 598:22, 613:19, 616:11,

619:15, 625:13, 625:15, 625:18, 626:11, 626:12, 633:20, 634:19, 635:19, 640:8, 648:11, 668:11, 669:10, 676:5, 682:1, 682:16, 683:7, 694:4, 704:2, 715:24, 722:16, 722:23, 722:24, 737:14, 738:11, 738:14, 738:18, 739:6
**medias** [1] - 738:5
**meet** [7] - 580:6, 612:4, 634:6, 634:8, 657:18, 657:21, 713:13
**meeting** [1] - 687:5
**meetings** [4] - 634:9, 634:10, 634:13, 634:22
**MEGGS** [1] - 561:2
**MEHTA** [1] - 560:10
**member** [32] - 564:17, 567:17, 568:21, 570:7, 578:10, 582:4, 583:8, 590:11, 598:8, 600:17, 609:13, 610:6, 624:5, 624:13, 645:20, 646:6, 649:9, 659:5, 660:1, 661:17, 663:5, 680:2, 683:25, 690:5, 699:19, 700:18, 704:6, 704:11, 710:20, 714:3, 716:9, 720:25
**members** [28] - 604:23, 605:1, 605:18, 638:10, 638:15, 646:2, 648:23, 657:3, 660:4, 661:5, 661:7, 664:15, 674:15, 674:18, 683:13, 691:4, 694:24, 695:9, 701:1, 701:24, 704:19, 710:14, 717:10, 723:13, 724:14, 730:3, 739:18, 740:3
**memories** [1] - 577:24
**men** [2] - 654:6, 655:5
**mentioned** [17] - 566:3, 583:24, 585:21, 588:21, 615:13, 615:14, 617:12, 632:10,

654:20, 668:7, 668:9, 677:25, 678:3, 681:24, 693:7, 715:5, 715:6
**mentions** [1] - 678:4
**mere** [2] - 585:16, 691:24
**merely** [1] - 639:9
**Messenger** [1] - 633:24
**met** [12] - 569:24, 572:7, 579:6, 579:7, 582:25, 619:3, 622:1, 634:3, 634:5, 639:19, 712:13
**Metropolitan** [3] - 649:25, 684:14, 718:6
**Michigan** [1] - 724:25
**microphone** [3] - 677:10, 721:12, 737:17
**middle** [5] - 606:13, 627:15, 655:5, 718:23, 719:1
**middle-aged** [1] - 655:5
**Midwest** [2] - 654:25, 655:1
**might** [42] - 569:13, 570:17, 572:12, 579:11, 584:24, 587:2, 591:5, 593:18, 596:16, 600:5, 601:4, 601:8, 601:12, 609:10, 614:15, 621:15, 621:16, 634:24, 646:15, 650:1, 656:8, 662:17, 663:15, 663:20, 668:6, 668:23, 680:20, 684:21, 693:1, 694:11, 695:18, 710:21, 712:1, 732:8, 732:9, 732:10, 734:11, 734:20, 734:25, 741:19
**milestone** [1] - 636:25
**military** [1] - 655:22
**military-type** [1] - 655:22
**militia** [6] - 641:22, 642:10, 673:23, 687:8, 687:14, 732:18
**militia-oriented** [1] - 732:18
**mind** [24] - 565:16, 571:19, 571:24,

761

578:2, 580:1, 580:2, 580:5, 588:3, 607:5, 612:7, 627:23, 632:15, 648:19, 656:7, 670:5, 675:11, 675:14, 675:21, 679:19, 689:12, 701:20, 732:12, 733:16, 739:19

**minded** [3] - 657:6, 657:10, 675:9

**mindful** [1] - 726:1

**mine** [1] - 592:15

**minimum** [1] - 636:7

**minor** [1] - 564:23

**minute** [2] - 743:9, 744:14

**minutes** [2] - 636:21, 742:5

**misread** [1] - 566:2

**missed** [1] - 575:3

**mission** [3] - 642:13, 654:8, 709:19

**misstatement** [1] - 638:3

**mixed** [1] - 634:23

**modify** [1] - 635:15

**mom** [2] - 660:6, 721:9

**mom's** [1] - 660:5

**moment** [8] - 578:9, 587:1, 644:5, 644:7, 653:4, 708:1, 709:15, 741:23

**Monday** [5] - 565:7, 565:9, 699:22, 706:3, 706:10

**monitoring** [1] - 636:10

**month** [3] - 577:3, 591:15, 721:20

**months** [4] - 611:10, 616:7, 739:8, 739:10

**morning** [3] - 574:17, 575:2, 744:7

**most** [9] - 610:11, 627:15, 635:18, 641:24, 690:18, 707:14, 729:7, 736:24, 738:15

**mostly** [4] - 616:4, 623:20, 709:13, 737:12

**move** [4] - 568:8, 596:3, 596:18, 639:1

**moved** [6] - 610:10, 611:9, 611:10, 633:1, 671:14, 671:16

**MPD** [2] - 717:22, 718:1

**MR** [218] - 563:6, 563:8, 572:18, 572:19, 572:22, 572:25, 573:5, 573:8, 573:13, 573:18, 574:13, 574:19, 575:5, 591:8, 591:10, 591:19, 591:22, 592:9, 592:16, 593:2, 593:5, 593:8, 593:12, 593:15, 593:25, 594:4, 594:7, 594:13, 594:24, 595:14, 595:18, 596:3, 597:14, 601:22, 601:24, 602:2, 602:9, 602:18, 602:21, 603:1, 607:12, 607:13, 617:5, 617:7, 617:10, 617:15, 617:19, 617:23, 618:5, 618:8, 618:11, 618:14, 618:16, 618:18, 618:23, 619:2, 619:7, 619:11, 619:17, 619:21, 620:2, 620:6, 620:10, 628:8, 628:10, 628:14, 628:21, 629:1, 629:11, 629:14, 630:1, 630:12, 630:18, 631:2, 631:11, 631:15, 631:20, 631:24, 632:2, 632:8, 632:10, 632:14, 632:18, 632:20, 633:2, 633:4, 633:6, 633:10, 633:14, 633:21, 634:3, 634:6, 634:9, 634:14, 634:18, 635:3, 635:8, 635:13, 635:23, 637:6, 637:14, 637:21, 637:24, 639:5, 642:5, 643:15, 643:17, 643:22, 651:1, 651:11, 651:15, 651:18, 651:20, 651:23, 652:2, 652:7, 658:3, 658:4, 664:5, 664:7, 664:12, 664:22, 665:9, 665:14, 665:18, 665:23, 666:2, 666:4, 666:11, 666:17, 670:21, 670:24, 671:5, 671:9, 671:12, 671:16, 671:21, 672:1, 672:6,

672:9, 672:12, 672:14, 675:18, 675:20, 676:4, 676:7, 676:10, 676:13, 677:1, 677:3, 677:5, 685:1, 685:4, 685:7, 685:10, 696:1, 696:2, 696:4, 696:7, 696:14, 696:23, 697:2, 697:13, 697:24, 698:1, 698:4, 698:6, 698:8, 698:12, 698:16, 706:16, 706:17, 706:21, 707:1, 707:5, 707:9, 707:16, 707:23, 718:12, 718:18, 718:20, 718:24, 719:2, 719:7, 719:10, 719:13, 719:17, 719:21, 719:25, 725:13, 725:15, 731:16, 731:17, 731:19, 732:1, 732:5, 732:15, 732:20, 733:2, 735:24, 736:9, 736:14, 740:24, 741:15, 741:17, 741:18, 741:19, 741:21, 742:11, 742:12, 742:14, 743:6, 743:9, 743:15, 743:16, 744:10

**MS** [5] - 568:7, 676:25, 742:20, 742:22, 743:2

**mugged** [1] - 695:13

**multiple** [3] - 639:21, 735:7, 735:8

**must** [2] - 574:19, 681:11

## N

**name** [18] - 587:22, 587:25, 588:4, 588:6, 614:18, 614:20, 615:12, 615:14, 615:16, 615:17, 668:7, 668:9, 681:24, 709:9, 709:12, 715:6, 738:15, 738:16

**names** [12] - 588:19, 614:15, 621:14, 621:16, 632:14, 669:18, 681:21, 688:11, 693:1, 713:19, 715:5, 738:24

**Nashville** [1] - 616:17

**native** [1] - 696:24

**nature** [3] - 564:13, 623:19, 639:12

**Navarro** [1] - 693:3

**NAVSEA** [1] - 645:24

**Navy** [2] - 610:10, 645:25

**near** [2] - 605:16, 740:7

**necessarily** [2] - 678:21, 696:20

**need** [5] - 601:20, 603:21, 701:19, 713:19, 742:15

**negative** [7] - 615:18, 650:1, 688:22, 715:16, 715:17, 715:21

**negligent** [1] - 724:20

**neighborhood** [2] - 611:7, 713:21

**nephew** [1] - 564:19

**Nestler** [20] - 572:21, 595:17, 602:25, 618:17, 631:13, 635:7, 652:6, 666:1, 672:13, 675:19, 676:12, 685:3, 698:15, 707:15, 719:24, 725:14, 731:18, 735:23, 740:23, 741:14

**NESTLER** [63] - 560:15, 572:19, 572:22, 572:25, 573:5, 573:8, 573:13, 573:18, 595:18, 603:1, 607:13, 618:18, 618:23, 619:2, 619:7, 619:11, 619:17, 619:21, 620:2, 620:6, 620:10, 635:8, 635:13, 635:23, 643:17, 643:22, 652:7, 658:3, 666:2, 666:4, 666:7, 666:11, 666:17, 672:14, 675:18, 675:20, 676:4, 676:7, 676:10, 676:13, 677:1, 677:3, 677:5, 685:4, 685:7, 685:10, 698:16, 707:16, 719:25, 731:17, 731:19, 732:1, 732:5, 732:15, 732:20, 733:2, 735:24, 740:24, 741:15, 741:17,

741:19, 742:12

**neutral** [3] - 688:19, 717:25, 718:2

**never** [5] - 594:17, 599:21, 600:2, 688:10, 697:5

**new** [2] - 702:2, 741:25

**New** [6] - 561:7, 718:19, 718:20, 718:23, 718:25, 719:2

**news** [53] - 570:24, 571:1, 571:14, 573:15, 580:21, 589:11, 598:22, 598:24, 598:25, 612:17, 615:18, 615:24, 615:25, 616:5, 616:6, 617:12, 619:15, 625:3, 625:10, 625:15, 626:22, 632:11, 632:14, 632:17, 633:15, 647:14, 647:17, 647:18, 660:13, 660:16, 660:20, 660:22, 666:12, 666:15, 668:11, 668:15, 674:24, 682:1, 682:4, 686:24, 693:20, 694:17, 703:6, 703:8, 709:10, 715:24, 716:1, 722:4, 722:7, 731:20, 731:24, 732:9

**newspaper** [1] - 571:2

**next** [7] - 581:20, 584:4, 587:19, 706:10, 707:2, 708:13, 733:21

**nexus** [1] - 730:6

**night** [4] - 626:21, 626:23, 729:6, 744:15

**night's** [1] - 729:8

**nine** [1] - 742:19

**nobody** [3] - 564:22, 665:7, 674:23

**non** [1] - 569:21

**non-law** [1] - 569:21

**none** [3] - 631:3, 646:1, 684:10

**nonprofit** [3] - 671:4, 717:5, 719:8

**nonprofits** [1] - 719:6

**normally** [1] - 606:15

**North** [2] - 561:9, 651:22

**Northwest** [5] -

560:16, 560:19,
561:3, 561:16, 745:14
**nosy** [1] - 605:23
**notable** [1] - 738:15
**noted** [3] - 638:19,
738:6, 738:8
**notes** [1] - 745:5
**nothing** [15] -
593:17, 595:15,
602:21, 613:9, 616:8,
629:17, 652:2, 654:1,
664:24, 672:12,
674:10, 691:1,
703:12, 719:22, 723:9
**notion** [7] - 670:3,
731:24, 732:2,
732:11, 732:15,
732:16, 733:12
**notions** [4] - 577:19,
617:24, 623:13, 642:9
**notwithstanding** [3]
- 579:1, 694:3, 733:10
**number** [9] - 563:6,
646:9, 648:25,
662:22, 695:1,
706:12, 730:3, 742:2,
742:14
**numbering** [1] -
742:18

---

## O

**Oak** [1] - 560:23
**Oath** [56] - 580:14,
581:12, 590:7, 593:6,
593:12, 593:18,
593:20, 599:14,
599:17, 600:2, 604:1,
604:17, 612:14,
614:12, 617:13,
618:14, 627:5,
638:10, 638:16,
641:12, 648:3, 648:7,
648:9, 653:19, 661:1,
661:5, 664:15,
664:25, 665:7, 669:8,
673:18, 677:20,
683:3, 686:12,
686:21, 687:6,
688:15, 689:2,
703:25, 709:6,
722:21, 729:20,
730:1, 730:7, 730:8,
730:14, 730:25,
731:21, 733:12,
737:7, 737:10,
737:21, 738:21,
739:2, 739:17, 740:15
**object** [2] - 707:23,
742:9

**objection** [12] -
572:17, 607:10,
607:12, 637:15,
643:17, 643:23,
675:17, 676:12,
735:24, 740:24,
742:11, 742:14
**objections** [3] -
658:2, 731:15, 731:16
**objective** [2] -
565:17, 638:24
**objectively** [1] -
589:19
**obligation** [1] -
657:17
**obligations** [2] -
574:9, 650:15
**observe** [1] - 714:16
**observed** [1] - 729:2
**obtained** [1] - 739:6
**obviously** [9] -
611:15, 611:23,
631:17, 665:18,
671:23, 719:14,
728:7, 728:12, 735:21
**occupation** [1] -
671:2
**occur** [2] - 611:6,
634:10
**occurred** [1] -
714:19
**OF** [5] - 560:1, 560:3,
560:10, 560:16,
560:19
**offended** [1] - 666:18
**offenses** [3] - 586:2,
586:9, 657:5
**OFFICE** [1] - 560:15
**office** [3] - 633:18,
741:10, 742:3
**officer** [21] - 566:1,
566:8, 566:9, 566:19,
567:1, 567:3, 568:2,
568:12, 568:14,
578:18, 592:13,
596:13, 631:21,
638:25, 650:5, 650:7,
662:24, 663:1,
693:14, 729:10
**Officer** [22] - 621:17,
621:19, 622:6,
624:13, 624:18,
625:21, 625:24,
625:25, 627:18,
630:2, 630:5, 630:7,
630:10, 630:13,
631:22, 632:4,
634:16, 637:25,
638:1, 638:7, 638:12,
694:11

**officer's** [1] - 568:4
**officers** [6] - 565:19,
695:22, 712:5, 718:1,
718:4, 718:8
**offices** [1] - 711:9
**Official** [1] - 561:15
**official** [1] - 745:12
**officially** [1] - 695:4
**often** [1] - 677:25
**old** [5] - 599:2,
599:4, 599:10,
654:19, 666:15
**old-fashioned** [1] -
654:19
**older** [1] - 663:17
**once** [6] - 596:22,
635:25, 648:8, 706:5,
716:18, 742:25
**one** [57] - 565:23,
569:13, 570:15,
572:22, 583:5,
583:15, 585:8,
589:15, 589:25,
590:1, 591:24, 594:8,
599:2, 599:4, 599:10,
602:13, 614:8, 615:9,
619:4, 624:18,
626:21, 626:24,
627:17, 629:2, 630:6,
632:23, 632:24,
633:8, 634:10,
634:13, 637:15,
638:7, 638:10, 644:6,
645:24, 649:10,
677:3, 678:6, 678:16,
682:23, 684:2,
684:17, 688:16,
695:18, 705:2,
705:24, 706:8,
711:13, 711:17,
713:2, 727:24, 729:9,
729:10, 735:2
**one-on-one** [2] -
634:10, 634:13
**one-year-old** [3] -
599:2, 599:4, 599:10
**ones** [8] - 633:9,
640:11, 642:16,
655:16, 711:10,
743:23, 744:3
**online** [1] - 640:9
**open** [17] - 571:19,
580:5, 580:10,
581:19, 613:19,
618:11, 645:18,
648:19, 657:6,
657:10, 670:5, 675:9,
675:11, 675:13,
675:20, 689:12, 740:9
**open-minded** [3] -

**657:6, 657:10, 675:9
**operations** [1] -
576:6
**opinion** [10] -
594:14, 629:5,
629:25, 665:10,
665:12, 675:6, 696:9,
696:11, 696:12
**opinions** [9] -
571:13, 571:18,
577:19, 579:19,
579:22, 588:25,
674:24, 679:1, 737:7
**opportunities** [2] -
630:16, 633:13
**opposed** [2] -
654:18, 710:5
**opposite** [1] - 594:18
**order** [6] - 585:4,
624:5, 653:9, 662:8,
662:9, 662:10
**ordinarily** [1] -
574:10
**organization** [56] -
580:15, 581:15,
593:23, 599:15,
599:16, 599:25,
604:2, 604:15,
605:11, 612:14,
612:25, 619:15,
641:13, 641:15,
642:8, 643:8, 643:11,
643:13, 648:7, 648:9,
653:20, 661:6,
661:10, 665:1, 671:4,
671:8, 673:19,
673:21, 674:14,
674:15, 677:21,
677:23, 686:13,
686:14, 689:2,
703:25, 704:3, 709:6,
709:8, 709:21, 710:8,
710:14, 722:20,
722:23, 723:5, 723:8,
723:10, 730:19,
731:6, 731:25, 737:8,
737:10, 738:9,
738:21, 739:25, 740:1
**organization's** [2] -
709:19, 710:9
**organizations** [4] -
633:10, 719:8,
737:25, 738:7
**organize** [1] - 673:24
**organizing** [1] -
678:7
**oriented** [1] - 732:18
**originally** [1] -
630:24, 651:20,
664:10, 671:9,

**671:12, 718:16,
718:17, 718:18,
718:19
**ought** [1] - 741:25
**ourselves** [1] -
637:22
**outside** [4] - 621:24,
679:3, 679:15, 697:16
**Oversight** [1] - 717:5
**overturn** [1] - 739:22
**own** [5] - 581:13,
629:24, 629:25,
676:8, 696:10

---

## P

**P.A** [1] - 561:12
**p.m** [1] - 560:7
**packages** [3] -
717:12, 717:16,
717:19
**Page** [43] - 562:3,
565:15, 566:24,
568:20, 570:20,
580:12, 582:3,
587:17, 588:18,
598:20, 599:13,
603:22, 608:9,
612:10, 621:11,
641:8, 645:18,
647:13, 653:15,
659:1, 660:11,
667:14, 668:4,
673:14, 677:19,
679:25, 681:20,
683:16, 686:9, 690:4,
692:25, 699:15,
702:4, 703:5, 709:4,
710:19, 714:24,
720:24, 722:2,
726:17, 734:10, 737:4
**page** [4] - 624:17,
627:8, 630:14, 683:15
**Palace** [2] - 735:20
**paper** [4] - 653:25,
654:23, 665:4, 742:15
**parallels** [2] -
735:13, 735:21
**parents** [3] - 564:19,
586:24, 647:6
**Park** [1] - 561:3
**parking** [2] - 686:20,
687:4
**part** [14] - 608:16,
609:18, 609:20,
611:16, 624:1,
626:11, 635:17,
635:20, 639:14,
639:16, 639:20,

763

643:13, 674:16,
728:23
**partial** [1] - 695:18
**participate** [3] -
606:9, 617:20, 636:3
**participated** [3] -
584:7, 584:12, 586:11
**participating** [3] -
582:12, 670:1, 714:14
**participation** [2] -
691:3
**particular** [16] -
577:16, 583:16,
593:23, 596:4,
608:18, 611:3,
628:15, 641:9,
642:13, 671:7, 686:9,
705:17, 709:4,
730:13, 732:19,
738:12
**particularly** [1] -
577:7
**parties** [2] - 643:17,
643:22
**partway** [1] - 714:6
**passage** [1] - 578:25
**passed** [1] - 660:6
**passing** [1] - 709:13
**passionate** [1] -
687:16
**past** [7] - 609:5,
626:14, 630:22,
637:4, 694:6, 732:19,
734:15
**patch** [1] - 642:1
**patience** [14] - 641:2,
645:10, 658:6,
658:19, 667:9, 673:6,
677:13, 685:13,
686:4, 699:12,
708:22, 720:19,
726:9, 734:4
**patient** [1] - 736:24
**patrol** [1] - 627:15
**patrols** [1] - 627:16
**pause** [3] - 585:17,
605:4, 697:8
**pay** [1] - 669:18
**paying** [1] - 700:22
**pedophiles** [1] -
696:18
**Pennsylvania** [2] -
560:19, 561:10
**people** [51] - 566:17,
566:21, 577:13,
588:18, 594:14,
594:21, 604:17,
606:25, 609:24,
611:3, 613:8, 614:15,
616:14, 619:1,

621:14, 624:1, 629:5,
629:7, 629:9, 633:12,
634:8, 634:16,
635:17, 639:14,
639:17, 640:9,
650:14, 650:18,
666:15, 668:5, 668:6,
674:15, 674:22,
678:17, 681:21,
690:19, 693:1,
696:18, 701:18,
711:2, 713:17,
713:19, 727:6,
728:19, 731:2,
732:22, 732:23,
734:24, 742:3, 742:25
**perceived** [1] -
596:25
**percent** [1] - 711:14
**perfect** [1] - 743:15
**perhaps** [12] -
566:21, 579:2,
591:25, 604:18,
604:23, 614:11,
622:21, 630:6, 657:1,
678:9, 700:17, 738:20
**period** [1] - 576:11
**periphery** [1] -
713:25
**permit** [1] - 701:12
**person** [26] - 567:1,
567:2, 567:17,
567:21, 568:3,
568:12, 578:4,
578:11, 582:9, 583:9,
583:16, 583:21,
583:22, 584:2,
584:22, 588:10,
595:12, 623:14,
625:20, 634:4, 634:5,
634:6, 640:19,
714:13, 727:24
**person's** [1] - 639:10
**personal** [14] -
564:12, 564:14,
564:18, 587:20,
594:20, 596:21,
621:25, 629:13,
634:9, 634:13,
649:11, 661:18,
661:21, 684:1
**personally** [6] -
569:7, 621:19, 622:1,
636:10, 636:13,
680:13
**personnel** [1] - 566:4
**perspective** [3] -
578:6, 638:6, 738:7
**perspectives** [2] -
735:7, 735:9

**perusal** [1] - 612:18
**Peter** [1] - 693:3
**Petersburg** [1] -
735:20
**PHILLIP** [1] - 560:21
**photographs** [3] -
573:10, 654:20,
654:22
**phrase** [2] - 613:7,
738:4
**physically** [2] -
578:16, 610:18
**pick** [9] - 686:8,
699:19, 700:8,
700:18, 701:12,
701:18, 706:3, 708:7,
741:12
**picked** [2] - 631:5,
719:17
**pickup** [4] - 699:24,
700:2, 700:3, 701:3
**picture** [1] - 642:16
**pictures** [2] - 573:10,
653:25
**pieces** [1] - 729:6
**pirates** [1] - 717:12
**place** [2] - 594:21,
741:23
**placement** [1] -
563:6
**Plaintiff** [1] - 560:4
**plaintiff's** [1] - 717:4
**planned** [2] - 574:6,
606:7
**planning** [2] -
605:22, 606:8
**platform** [1] - 625:18
**played** [2] - 606:18,
638:16
**pleasant** [1] - 577:13
**plus** [3] - 570:15,
578:21, 637:3
**podcast** [2] - 647:25,
723:1
**podcasts** [1] - 648:3
**point** [10] - 571:15,
606:24, 611:9, 636:1,
638:7, 638:10,
688:17, 700:19,
709:10, 717:6
**points** [1] - 565:14
**Police** [8] - 578:18,
596:13, 621:17,
631:22, 649:25,
684:14, 718:7, 729:10
**police** [5] - 565:19,
566:1, 566:8, 566:9,
566:19, 568:1, 568:2,
568:12, 568:13,
588:23, 592:13,

606:24, 631:21,
649:19, 695:22
**political** [13] -
584:18, 584:21,
609:21, 629:7,
630:13, 646:15,
654:15, 680:20,
691:13, 691:17,
696:9, 713:7, 734:19
**political-type** [1] -
630:13
**pool** [1] - 731:9
**porch** [2] - 717:12,
717:17
**portion** [6] - 589:22,
614:4, 626:16,
626:17, 638:15,
682:20
**pose** [1] - 710:10
**posed** [1] - 578:2
**position** [2] - 577:3,
671:6
**positive** [2] - 650:1,
715:15
**possess** [1] - 697:14
**possessed** [1] -
697:7
**possession** [1] -
697:4
**possibility** [3] -
580:6, 591:15, 605:15
**possible** [2] - 693:7,
711:13
**possibly** [3] -
569:18, 576:1, 576:16
**Post** [1] - 737:14
**post** [1] - 626:3
**posted** [1] - 638:20
**posting** [5] - 630:12,
630:13, 630:17,
633:15, 638:21
**postpone** [1] -
564:16
**posts** [4] - 625:19,
626:6, 626:9, 638:21
**potential** [12] -
576:19, 614:15,
650:22, 668:6,
674:15, 687:4, 693:2,
722:24, 737:23,
737:25, 738:3, 738:8
**potentially** [3] -
583:4, 675:14, 731:21
**power** [2] - 585:10,
585:24, 735:19
**practically** [1] -
596:5
**practice** [5] - 716:21,
717:1, 723:19,
723:20, 723:22

**practiced** [1] -
716:17
**practices** [3] -
590:17, 683:21,
683:22
**practicing** [2] -
695:3, 716:15
**pragmatic** [1] -
595:12
**Prague** [1] - 735:1
**pre** [3] - 617:17,
659:21, 659:22
**pre-COVID** [2] -
659:21, 659:22
**pre-January** [1] -
617:17
**precisely** [1] -
646:22
**preconceived** [3] -
577:19, 579:12,
617:23
**preconceptions** [1] -
623:13
**predispose** [1] -
684:17
**predisposed** [1] -
616:24
**prejudiced** [1] -
617:2
**prepared** [1] - 597:8
**prepper** [2] - 642:5,
642:6
**presence** [1] - 710:3
**present** [4] - 650:12,
657:22, 699:23, 710:5
**presentation** [2] -
682:25, 729:14
**presented** [23] -
572:3, 579:24, 592:8,
594:8, 598:17,
613:14, 613:16,
615:21, 618:12,
643:9, 648:16,
656:19, 656:20,
668:2, 668:24, 670:9,
679:6, 689:11,
694:10, 694:20,
697:12, 722:12,
740:19
**presently** [1] -
728:10
**president** [11] -
590:2, 604:25, 605:3,
628:18, 646:23,
665:11, 710:8,
710:10, 710:15,
714:14
**President** [12] -
580:24, 585:10,
585:11, 602:14,

610:2, 615:3, 615:6,
629:4, 661:9, 680:25,
691:20, 691:23
**presidents** [1] -
584:15
**press** [2] - 618:1,
630:15
**presumably** [1] -
604:24
**presume** [3] -
574:13, 586:9, 671:22
**presumed** [4] -
612:2, 657:16, 670:2,
670:15
**pretty** [14] - 576:23,
577:23, 578:1, 578:4,
583:5, 586:23,
626:11, 626:22,
633:19, 636:7,
675:23, 676:2, 681:4,
740:8
**prevent** [3] - 585:10,
601:4, 712:9
**previous** [2] - 566:3,
584:14
**previously** [8] -
569:3, 573:15,
587:11, 613:21,
613:24, 613:25,
626:7, 634:25
**primarily** [2] -
622:19, 625:14
**prime** [1] - 682:24
**prime-time** [1] -
682:24
**Prince** [1] - 662:3
**principal** [4] -
575:21, 576:6,
576:10, 577:25
**principles** [1] - 725:6
**private** [3] - 649:11,
661:19, 684:2
**privately** [2] - 653:2,
677:4
**privilege** [1] - 576:20
**pro** [1] - 709:20
**pro-Trump** [1] -
709:20
**probable** [1] - 703:2
**problem** [5] - 592:4,
657:25, 696:20, 724:7
**problematic** [1] -
574:8
**proceeding** [1] -
616:7
**proceedings** [42] -
563:10, 573:24,
574:24, 596:2,
597:16, 603:9,
603:11, 607:20,

607:22, 620:20,
620:22, 636:19,
637:10, 640:22,
644:25, 645:2,
652:16, 652:18,
658:12, 658:14,
667:2, 667:4, 672:22,
672:24, 676:22,
677:8, 685:17,
685:19, 699:2, 699:4,
707:22, 708:15,
720:9, 720:11,
725:23, 726:3, 733:8,
733:23, 736:7,
736:16, 741:6, 745:6
**Proceedings** [1] -
744:16
**process** [7] - 577:12,
587:15, 591:14,
639:1, 662:20,
692:20, 705:9
**produced** [1] - 745:6
**profession** [2] -
694:24, 723:14
**professional** [7] -
574:9, 587:20,
633:10, 633:12,
635:21, 650:14
**professionally** [2] -
636:11, 636:13
**professionals** [4] -
623:21, 623:23,
639:15
**programming** [1] -
599:9
**progressing** [1] -
654:18
**prohibition** [1] -
576:9
**project** [1] - 633:18
**proof** [7] - 569:25,
572:7, 579:6, 579:8,
580:7, 612:4, 712:13
**property** [1] - 570:11
**prosecuted** [7] -
600:18, 663:6, 704:7,
704:12, 705:13,
705:19, 724:14
**prosecutors** [1] -
649:4
**prospective** [1] -
637:21
**Prospective** [40] -
563:9, 573:23,
574:23, 596:1,
597:15, 603:8,
603:10, 607:19,
607:21, 620:19,
620:21, 636:18,
640:21, 644:24,

645:1, 652:15,
652:17, 658:11,
658:13, 667:1, 667:3,
672:21, 672:23,
676:21, 677:7,
685:16, 685:18,
699:1, 699:3, 707:21,
708:14, 720:8,
720:10, 725:22,
726:2, 733:7, 733:22,
736:6, 736:15, 741:5
**PROSPECTIVE** [744]
- 563:14, 563:17,
563:24, 564:2, 564:5,
564:8, 564:10,
564:14, 564:18,
564:24, 565:5,
565:10, 565:21,
566:2, 566:10,
566:13, 566:16,
566:22, 567:8,
567:11, 567:23,
568:6, 568:15,
568:19, 568:24,
569:2, 569:5, 569:8,
569:10, 569:15,
569:22, 570:2, 570:4,
570:10, 570:19,
571:3, 571:9, 571:12,
571:23, 572:4,
572:10, 572:13,
572:24, 573:4, 573:6,
573:12, 573:17,
575:8, 575:11,
575:15, 575:24,
576:5, 576:13,
576:18, 577:9,
577:21, 578:12,
578:23, 579:4,
579:10, 579:20,
579:25, 580:4, 580:9,
580:11, 580:19,
581:3, 581:10, 582:1,
582:8, 582:10,
582:13, 582:19,
582:23, 583:3,
583:10, 583:13,
583:19, 583:22,
584:1, 584:3, 584:10,
584:20, 585:3,
585:12, 585:19,
586:4, 586:12,
586:18, 586:21,
587:7, 587:12,
587:16, 587:25,
588:9, 588:12,
588:15, 588:25,
589:5, 589:13,
589:20, 589:24,
590:9, 590:13,
590:18, 590:21,

590:25, 591:6, 591:9,
591:18, 591:20,
592:3, 592:14,
592:21, 593:4, 593:7,
593:11, 593:14,
593:22, 594:3, 594:6,
594:12, 594:15,
595:8, 595:22,
595:25, 597:20,
597:25, 598:2, 598:5,
598:11, 598:16,
599:2, 599:5, 599:7,
599:11, 599:18,
599:21, 599:23,
600:2, 600:7, 600:12,
600:15, 600:20,
600:23, 601:2, 601:6,
601:10, 601:14,
601:17, 601:23,
602:1, 602:7, 602:16,
602:20, 603:6,
603:15, 603:24,
604:4, 604:7, 604:10,
604:16, 605:6, 605:9,
605:15, 606:6,
606:22, 607:6,
607:18, 608:1, 608:3,
608:11, 608:14,
608:17, 608:23,
609:3, 609:8, 609:11,
609:16, 609:23,
610:4, 610:9, 610:16,
610:23, 611:1,
611:10, 611:13,
611:22, 612:8,
612:12, 612:16,
612:22, 612:24,
613:5, 613:15,
613:22, 614:1, 614:7,
614:13, 615:1, 615:8,
615:11, 615:16,
616:4, 616:12,
616:16, 616:21,
616:25, 617:3, 617:6,
617:9, 617:14,
617:18, 617:22,
618:1, 618:6, 618:10,
618:13, 618:15,
618:22, 618:24,
619:6, 619:10,
619:12, 619:20,
619:23, 620:4, 620:8,
620:13, 620:16,
620:18, 621:1, 621:4,
621:9, 621:12,
621:18, 621:20,
621:22, 622:3,
622:12, 622:16,
622:22, 623:2,
623:10, 623:15,
623:20, 623:23,

624:2, 624:4, 624:8,
624:15, 624:21,
624:25, 625:8,
625:12, 625:16,
625:21, 625:24,
626:1, 626:5, 626:7,
626:10, 626:14,
626:21, 627:1, 627:7,
627:13, 627:20,
628:2, 628:5, 628:9,
628:13, 628:20,
628:24, 629:6,
629:12, 629:22,
630:9, 630:15,
630:20, 631:1, 631:7,
631:10, 631:19,
631:23, 632:1, 632:5,
632:9, 632:12,
632:19, 632:21,
633:3, 633:5, 633:8,
633:11, 633:17,
633:25, 634:5, 634:7,
634:12, 634:15,
634:24, 635:10,
635:18, 635:25,
636:6, 636:12,
636:15, 641:1,
641:10, 641:16,
642:6, 642:14,
642:20, 643:5,
643:10, 644:2,
644:14, 644:17,
644:21, 645:6, 645:8,
645:16, 645:23,
646:4, 646:9, 646:13,
646:19, 646:25,
647:5, 647:12,
647:23, 648:4,
648:10, 648:17,
648:21, 648:25,
649:5, 649:7, 649:12,
649:17, 649:20,
649:23, 650:3,
650:10, 650:16,
650:20, 650:24,
651:8, 651:13,
651:17, 651:19,
651:22, 652:1,
652:12, 652:14,
652:22, 652:24,
653:6, 653:8, 653:17,
653:23, 654:5, 654:9,
654:12, 654:16,
654:23, 655:4,
655:10, 655:15,
655:21, 656:4, 656:9,
656:14, 656:21,
657:9, 657:13,
657:21, 657:25,
658:9, 658:18, 659:3,
659:7, 659:10,

659:12, 659:15,
659:18, 659:22,
659:24, 660:4,
660:10, 660:18,
660:21, 661:2,
661:12, 661:15,
661:21, 661:24,
662:3, 662:7, 662:11,
662:15, 662:19,
663:3, 663:8, 663:12,
663:17, 663:22,
664:2, 664:6, 664:11,
664:21, 665:2,
665:13, 665:17,
665:22, 665:25,
666:3, 666:5, 666:8,
666:14, 666:20,
666:24, 667:8,
667:18, 667:22,
668:3, 668:18,
668:20, 669:1, 669:5,
669:12, 669:16,
669:22, 670:7,
670:12, 670:19,
670:22, 671:3, 671:7,
671:11, 671:13,
671:18, 671:25,
672:5, 672:8, 672:11,
672:19, 673:4,
673:11, 673:16,
673:22, 674:4, 674:9,
674:11, 674:18,
674:21, 675:4,
675:15, 675:22,
676:6, 676:8, 676:18,
677:24, 678:5,
678:12, 678:15,
678:21, 679:8,
679:12, 679:18,
679:22, 680:5, 680:9,
680:11, 680:14,
680:23, 681:2, 681:8,
681:18, 682:5,
682:14, 682:18,
682:23, 683:4,
683:11, 683:15,
683:17, 683:20,
683:23, 684:4, 684:9,
684:12, 684:15,
684:19, 684:24,
685:6, 685:8, 685:15,
685:23, 686:2, 686:7,
686:10, 686:15,
686:19, 686:23,
687:7, 687:10,
687:16, 687:20,
687:23, 688:10,
688:15, 688:21,
688:24, 689:4, 689:9,
689:14, 689:19,
689:23, 690:2, 690:9,

690:13, 690:18,
690:23, 691:1, 691:6,
691:8, 691:16,
691:22, 692:2, 692:8,
692:14, 692:17,
692:23, 693:10,
693:15, 693:19,
693:22, 693:25,
694:5, 694:14,
694:22, 695:1, 695:6,
695:11, 695:13,
695:16, 695:20,
695:24, 696:3, 696:6,
696:12, 696:16,
696:25, 697:10,
697:19, 697:25,
698:3, 698:5, 698:7,
698:11, 698:14,
698:19, 698:22,
698:25, 699:9, 700:1,
700:4, 700:6, 700:8,
700:11, 700:16,
700:20, 700:25,
701:4, 701:8, 701:10,
701:19, 701:25,
702:2, 702:7, 702:10,
702:14, 702:18,
703:4, 703:11,
703:16, 703:19,
703:22, 704:4, 704:9,
704:14, 704:17,
704:20, 704:22,
704:24, 705:2, 705:7,
705:11, 705:15,
705:20, 705:23,
706:5, 706:8, 706:11,
706:14, 706:24,
707:4, 707:11,
708:19, 709:9,
709:20, 709:23,
710:1, 710:6, 710:12,
710:17, 710:22,
711:2, 711:7, 711:13,
711:19, 711:22,
712:3, 712:10,
712:15, 712:20,
712:25, 713:2,
713:10, 713:15,
713:21, 713:25,
714:5, 714:9, 714:12,
714:17, 714:20,
714:23, 715:14,
715:17, 715:22,
716:2, 716:7, 716:13,
716:16, 716:19,
716:22, 716:25,
717:3, 717:8, 717:12,
717:16, 717:20,
717:23, 718:2, 718:9,
718:17, 718:19,
718:22, 718:25,

719:5, 719:9, 719:12,
719:16, 719:20,
720:6, 720:15, 721:3,
721:6, 721:9, 721:14,
721:20, 721:23,
722:1, 722:8, 722:14,
722:18, 722:25,
723:7, 723:11,
723:15, 723:17,
723:20, 723:23,
724:3, 724:6, 724:10,
724:17, 724:24,
725:4, 725:10,
725:20, 726:7,
726:14, 726:24,
727:1, 727:4, 727:8,
727:11, 727:15,
727:20, 727:24,
728:4, 728:15,
728:21, 728:25,
729:5, 729:18,
729:22, 729:24,
730:11, 730:15,
730:22, 730:24,
731:8, 731:23, 732:3,
732:14, 732:17,
733:1, 733:6, 734:2,
734:18, 735:6,
735:17, 736:5,
736:20, 737:12,
737:18, 737:22,
738:5, 738:15,
738:19, 738:24,
739:4, 739:10,
739:15, 739:20,
740:5, 740:12,
740:20, 740:22
    **protect** [2] - 654:8,
654:17
    **protecting** [2] -
654:6, 654:8
    **protective** [1] -
655:22
    **protest** [4] - 584:8,
609:14, 646:6, 680:3
    **protesters** [1] -
638:10
    **protests** [6] - 609:18,
613:1, 613:4, 691:4,
712:22, 713:3
    **prove** [5] - 612:3,
619:3, 657:17, 670:15
    **provide** [20] -
573:22, 595:23,
603:5, 607:17,
620:15, 636:17,
644:19, 652:17,
658:7, 666:22,
672:17, 676:17,
685:14, 698:21,

707:20, 720:5,
725:19, 733:4, 736:3,
741:4
    **proximity** [1] -
570:13
    **pry** [1] - 704:18
    **public** [4] - 575:21,
576:10, 706:23,
707:13
    **pull** [1] - 721:11
    **punch** [1] - 685:25
    **purchased** [1] -
674:4
    **purportedly** [1] -
710:4
    **purposes** [2] -
714:16, 714:17
    **pushed** [2] - 597:3
    **pushing** [2] - 606:11,
607:2
    **put** [24] - 565:2,
566:20, 571:6,
571:14, 572:2,
582:15, 587:5,
589:17, 607:4,
616:10, 629:16,
643:1, 647:24,
648:13, 657:2, 668:1,
670:22, 675:1, 702:3,
703:14, 716:4,
732:11, 734:21,
742:15
    **putting** [2] - 597:13,
613:20
    **PUTZI** [1] - 561:12

**Q**

    **qualification** [2] -
742:1, 742:2
    **qualified** [8] -
597:12, 637:5,
741:11, 742:4,
742:17, 742:18,
742:25
    **qualify** [3] - 597:8,
708:8, 708:11
    **qualms** [1] - 708:1
    **quarters** [1] - 637:4
    **questionnaire** [52] -
563:19, 564:7,
565:12, 565:15,
567:13, 575:13,
575:16, 580:13,
588:3, 597:23, 598:3,
603:17, 603:20,
603:22, 608:6, 608:8,
621:7, 631:16, 641:4,
641:6, 641:9, 644:22,

645:12, 645:17,
650:12, 653:12,
653:14, 658:21,
658:25, 659:2,
667:12, 667:15,
673:8, 673:13,
676:19, 677:15,
679:25, 686:5, 686:6,
698:23, 699:14,
699:16, 708:25,
709:3, 720:21,
720:22, 726:11,
726:16, 734:7, 737:2,
737:3
    **questions** [58] -
565:12, 565:13,
566:3, 570:21,
572:20, 578:3,
588:16, 589:6,
591:12, 591:25,
595:1, 595:2, 595:17,
595:18, 598:20,
601:21, 602:3, 603:1,
608:7, 614:14,
615:23, 628:6,
628:14, 631:18,
635:5, 635:7, 638:18,
647:14, 652:7,
660:12, 664:4, 664:9,
665:6, 668:10,
670:20, 670:25,
672:13, 672:14,
684:25, 685:2,
695:25, 696:7, 698:2,
698:15, 703:6,
706:15, 707:16,
715:23, 718:15,
719:25, 722:3,
725:13, 725:15,
736:2, 737:5, 737:11
    **Questions** [8] -
586:13, 598:20,
624:17, 660:12,
681:25, 686:9, 695:8,
737:5
    **quickly** [3] - 640:6,
640:13, 644:5
    **quite** [6] - 613:6,
639:22, 671:19,
708:3, 730:22, 741:1
    **quote** [6] - 596:16,
604:8, 604:10,
612:19, 613:12, 670:4
    **quote-unquote** [2] -
613:12, 670:4

**R**

    **racist** [4] - 731:1,
731:2, 731:22, 733:12

766

**radar** [1] - 707:5
**raise** [2] - 574:7, 637:15
**RAKOCZY** [2] - 560:14, 676:25
**rallies** [3] - 680:12, 691:4, 712:22
**rally** [6] - 584:7, 604:21, 609:14, 617:20, 646:6, 680:3
**ran** [1] - 604:5
**rather** [3] - 597:1, 732:24, 743:7
**RDR** [3] - 561:14, 745:3, 745:12
**re** [1] - 741:10
**re-call** [1] - 741:10
**reach** [3] - 670:10, 672:3, 689:17
**read** [77] - 571:17, 580:14, 580:18, 580:22, 589:10, 589:15, 589:18, 590:6, 599:1, 599:14, 604:1, 604:2, 612:13, 612:15, 612:16, 613:5, 613:7, 613:11, 613:24, 613:25, 614:11, 615:24, 616:10, 625:6, 626:6, 638:20, 638:21, 641:12, 641:14, 641:24, 642:23, 642:25, 643:7, 647:20, 647:22, 648:6, 648:13, 648:15, 648:19, 653:19, 653:22, 654:3, 654:14, 656:16, 660:25, 665:4, 668:16, 669:7, 673:18, 673:20, 673:22, 674:13, 677:20, 677:22, 677:24, 682:11, 683:7, 683:8, 686:12, 686:13, 688:4, 688:6, 688:16, 694:19, 703:14, 703:24, 709:5, 709:7, 709:17, 722:19, 730:12, 737:19, 738:11, 738:14, 739:13, 739:25
**reader** [1] - 668:14
**reading** [2] - 567:8, 739:2
**realistic** [1] - 744:9
**really** [19] - 577:12, 581:4, 584:22, 586:5,

596:8, 600:7, 608:17, 608:18, 619:13, 619:25, 620:1, 636:8, 650:18, 666:18, 669:18, 679:9, 681:2, 709:10, 733:14
**realtime** [1] - 729:7
**reason** [2] - 568:25, 572:11, 572:12, 574:14, 586:16, 586:18, 592:25, 594:25, 602:4, 605:13, 609:9, 650:19, 651:23, 668:8, 671:16, 682:15, 690:21, 693:4, 715:3, 716:5, 721:19, 722:15
**reasonable** [8] - 583:5, 612:4, 619:4, 657:18, 670:16, 702:25, 703:2, 713:13
**reasons** [2] - 594:22, 596:18
**recalled** [1] - 727:16
**received** [3] - 564:9, 625:12, 737:13
**receiving** [1] - 657:6
**recent** [1] - 634:2
**recess** [1] - 637:9
**recitation** [1] - 638:12
**recognize** [7] - 621:14, 621:15, 627:19, 627:20, 668:5, 693:1, 738:13
**recognized** [4] - 588:19, 634:20, 681:20, 715:1
**recollection** [7] - 627:3, 655:3, 687:4, 727:17, 738:23, 739:12, 739:13
**recollections** [2] - 681:16, 692:12
**reconcile** [1] - 581:9
**record** [4] - 596:20, 644:10, 644:11, 677:4
**recreationally** [1] - 721:22
**refer** [1] - 603:21
**reference** [1] - 593:6
**references** [1] - 687:7
**referred** [1] - 693:5
**refused** [1] - 673:23
**regarding** [7] - 574:14, 592:20, 593:20, 618:14, 682:21, 688:4, 722:5

**regardless** [1] - 609:5
**registered** [1] - 734:14
**regular** [2] - 566:24, 634:1
**regularity** [1] - 730:3
**regularly** [3] - 625:18, 626:3, 626:5
**reiterate** [1] - 575:4
**related** [4] - 638:8, 669:14, 678:1, 734:23
**relates** [1] - 723:5
**relating** [3] - 715:24, 716:1, 722:7
**relationship** [15] - 569:12, 569:19, 591:4, 616:23, 627:18, 631:21, 633:22, 633:23, 639:11, 639:12, 640:3, 715:8, 715:21, 730:7, 730:8
**relationships** [2] - 640:10
**relative** [1] - 669:3
**release** [1] - 650:18
**relevant** [1] - 638:17
**relieve** [1] - 650:22
**reluctance** [1] - 572:8
**remained** [1] - 610:11
**remember** [27] - 575:2, 584:11, 605:17, 605:21, 606:11, 606:14, 607:1, 607:2, 607:8, 617:19, 624:10, 624:12, 627:3, 642:1, 642:7, 653:24, 654:22, 654:23, 665:5, 682:24, 686:19, 686:23, 722:25, 724:19, 728:6, 730:16, 730:17
**remembered** [1] - 642:15
**reminder** [1] - 563:4
**reminding** [1] - 730:5
**remotely** [2] - 578:13, 578:15
**remove** [13] - 563:18, 575:14, 597:23, 603:18, 608:4, 621:5, 658:23, 667:11, 677:16, 699:13, 720:17, 726:12, 734:6
**removed** [5] -

570:16, 575:22, 578:21, 596:22, 606:3
**removing** [3] - 641:5, 645:13, 673:9
**render** [1] - 595:6
**rented** [1] - 605:20
**repeat** [2] - 622:12, 705:15
**repeatedly** [1] - 639:18
**rephrase** [1] - 585:19
**report** [1] - 649:19
**REPORTED** [1] - 561:14
**reported** [2] - 717:18, 739:14
**reporter** [3] - 568:8, 608:13, 725:25
**Reporter** [2] - 561:15, 745:12
**REPORTER** [7] - 568:10, 631:8, 643:20, 644:8, 700:14, 706:19, 717:14
**reporting** [2] - 609:7, 743:19
**Representatives** [1] - 726:18, 726:22
**represented** [1] - 590:24
**reputation** [1] - 588:23
**requested** [1] - 741:9
**required** [3] - 571:6, 580:7, 689:7
**requirement** [1] - 657:22
**research** [3] - 581:14, 588:2, 629:24
**reservations** [3] - 627:24, 628:2, 628:4
**resident** [2] - 579:16, 740:7
**respect** [8] - 585:3, 585:4, 585:21, 618:25, 629:9, 648:8, 648:11, 674:22
**respectful** [3] - 696:14, 696:17, 696:19
**respecting** [1] - 585:5
**response** [3] - 591:24, 684:1, 702:5
**responsibilities** [1] - 576:7
**responsibility** [1] - 619:24
**restraining** [3] -

662:7, 662:9, 662:10
**restriction** [1] - 576:9
**result** [3] - 614:24, 649:22, 705:10
**results** [1] - 673:23
**retained** [1] - 612:23
**retired** [21] - 569:10, 573:23, 590:18, 596:1, 603:8, 607:19, 620:19, 636:18, 644:24, 652:15, 658:11, 667:1, 672:21, 676:21, 685:16, 699:1, 707:21, 720:8, 725:22, 733:7, 741:5
**return** [5] - 563:22, 565:2, 565:7, 712:19, 728:18
**review** [1] - 589:10
**revisit** [2] - 742:22, 742:25
**Revolution** [2] - 734:25, 735:2
**revolutionary** [1] - 735:15
**RHODES** [2] - 560:6, 560:22
**Rhodes** [7] - 687:24, 688:8, 688:12, 688:19, 688:20, 738:16, 738:18
**ride** [3] - 606:7, 606:8, 606:10
**riding** [2] - 605:17, 605:22
**rifles** [1] - 739:20
**right-wing** [3] - 581:1, 581:18, 612:25
**rights** [5] - 585:7, 711:8, 711:9, 711:16, 712:17
**riots** [1] - 673:24
**risk** [2] - 601:15, 601:18
**Ritchie** [1] - 561:12
**riveting** [1] - 617:10
**Road** [1] - 561:3
**road** [1] - 570:13
**Roger** [1] - 715:2
**Rogers** [1] - 716:23
**role** [5] - 638:7, 638:15, 639:1, 642:13, 730:7
**roles** [1] - 620:1
**room** [1] - 666:19
**Room** [1] - 561:17
**roughly** [1] - 580:23
**Route** [1] - 561:6

767

**rules** [1] - 586:7
**run** [1] - 649:13
**Russian** [1] - 735:2

# S

**safe** [1] - 610:18
**safety** [10] - 570:7,
586:16, 586:19,
586:24, 610:15,
627:14, 627:15,
714:22
**sat** [1] - 619:2
**Satan** [1] - 696:18
**save** [1] - 637:16
**saw** [9] - 588:4,
593:18, 606:23,
614:11, 617:16,
655:11, 675:25,
686:15, 686:18
**schedule** [3] -
701:11, 701:12, 743:3
**scheduled** [1] -
563:22
**scheduling** [3] -
637:6, 637:7, 640:19
**School** [1] - 687:24
**school** [22] - 575:22,
576:4, 576:10,
576:24, 577:25,
586:21, 597:11,
627:15, 635:11,
671:14, 671:20,
688:14, 695:2, 700:9,
702:2, 704:25,
706:23, 706:24,
721:24, 721:25
**schools** [2] - 707:8,
707:13
**scope** [1] - 633:21
**screaming** [1] -
606:25
**screen** [3] - 589:11,
647:21, 647:24
**scroller** [1] - 626:11
**seat** [4] - 563:11,
672:25, 735:19,
736:22
**seated** [7] - 563:1,
608:24, 635:14,
637:11, 637:12,
698:9, 732:6
**second** [2] - 677:3,
734:22
**security** [1] - 690:21
**seditious** [1] -
642:21
**see** [20] - 565:13,
573:9, 578:14,

584:10, 588:15,
589:10, 593:24,
597:8, 597:11,
652:22, 680:17,
697:10, 702:8,
702:10, 709:11,
710:22, 731:12,
735:13, 742:25, 743:2
**seeing** [4] - 611:6,
655:14, 660:20,
738:24
**seek** [2] - 682:5,
703:12
**seeking** [2] - 668:14,
682:4
**seeks** [5] - 589:8,
598:24, 703:8,
715:25, 722:7
**seem** [1] - 664:18
**sees** [1] - 619:23
**seldomly** [1] -
659:20
**Select** [1] - 728:24
**selected** [13] - 571:8,
577:10, 577:11,
607:5, 636:3, 637:1,
647:7, 663:25,
667:23, 675:10,
681:13, 732:5, 743:4
**selection** [1] - 574:7
**sense** [12] - 577:13,
578:3, 623:25, 654:7,
654:13, 654:14,
655:19, 656:6, 656:7,
668:11, 682:1, 701:6
**sentiment** [1] - 587:5
**separate** [1] - 694:6
**September** [3] -
560:6, 564:5, 745:10
**series** [2] - 647:13,
737:5
**seriously** [2] - 588:1,
620:1
**serve** [6] - 576:2,
578:25, 606:5,
699:20, 703:13, 706:1
**served** [4] - 577:10,
587:11, 692:16,
702:13
**serves** [1] - 597:11
**service** [22] - 575:13,
577:5, 579:17,
587:10, 597:22,
603:4, 607:15, 641:3,
645:11, 653:13,
658:20, 658:22,
664:8, 673:8, 676:15,
692:16, 708:24,
718:14, 720:21,
726:10, 741:2

**serving** [5] - 576:1,
576:11, 576:16,
577:7, 577:11
**SESSION** [1] - 560:5
**set** [24] - 571:19,
579:22, 587:13,
643:7, 647:10,
648:14, 656:18,
668:22, 679:4,
679:14, 681:15,
682:11, 682:16,
683:6, 683:7, 689:7,
692:11, 692:19,
694:19, 706:9,
722:10, 722:16,
725:8, 740:18
**setting** [5] - 649:11,
656:10, 661:19,
684:2, 730:4
**seven** [2] - 666:9,
741:13
**several** [6] - 609:17,
610:10, 706:22,
707:1, 739:8, 739:10
**share** [4] - 568:22,
590:2, 601:12, 704:11
**sheet** [1] - 741:20
**SHER** [1] - 560:18
**shields** [1] - 655:22
**shoes** [1] - 678:18
**short** [2] - 612:6,
670:17
**shoulders** [1] -
655:17
**show** [13] - 573:21,
595:21, 599:7,
602:13, 636:16,
644:18, 652:10,
658:7, 698:20,
707:19, 720:4,
725:18, 733:4
**showed** [2] - 634:8,
729:13
**shown** [2] - 611:17,
613:17
**shows** [1] - 693:20
**sibling** [2] - 564:25,
565:3
**sic** [1] - 630:16
**sick** [1] - 564:17
**side** [11] - 569:13,
572:2, 572:17,
597:13, 613:21,
660:5, 668:1, 684:17,
695:19, 711:17, 717:4
**sides** [6] - 580:3,
631:4, 662:14, 672:2,
698:10, 719:18
**sift** [1] - 592:5
**sign** [1] - 624:7

**significance** [2] -
577:17, 596:9
**significant** [11] -
565:21, 565:22,
566:7, 566:9, 566:11,
568:1, 568:12,
568:13, 596:13,
638:15, 639:1
**similar** [4] - 621:23,
655:17, 731:10,
734:15
**simply** [1] - 586:9
**singly** [1] - 701:2
**sister** [3] - 659:7,
660:3, 724:17
**sit** [2] - 699:21, 701:5
**sitting** [5] - 602:12,
618:20, 635:1,
693:11, 707:7
**situation** [4] - 592:7,
592:18, 592:19,
661:25
**six** [5] - 591:16,
611:10, 671:8,
671:15, 701:16,
706:4, 707:2, 707:25,
708:2, 732:19
**slots** [1] - 701:21
**small** [1] - 717:3
**so..** [5] - 583:6,
587:3, 590:4, 605:24,
740:15
**Social** [1] - 633:9
**social** [16] - 571:14,
587:20, 625:13,
625:15, 625:18,
626:11, 626:12,
632:12, 632:17,
632:18, 633:12,
633:20, 635:19,
640:8, 704:2, 722:24
**solid** [1] - 675:23
**someone** [11] -
578:7, 588:5, 598:25,
606:11, 616:1, 625:4,
660:3, 668:13,
675:24, 701:20, 714:5
**somewhat** [2] -
618:22, 650:13
**somewhere** [1] -
743:22
**son** [1] - 667:19
**soon** [1] - 565:9
**sorry** [30] - 564:1,
565:22, 567:8,
572:22, 575:5, 604:9,
622:12, 623:22,
625:23, 631:8,
631:10, 636:21,
643:20, 650:6, 653:3,

653:8, 666:20, 677:5,
705:15, 706:19,
712:25, 714:7,
717:14, 718:24,
721:5, 721:14, 724:4,
724:5, 724:6, 739:9
**sort** [30] - 570:15,
570:22, 571:1,
575:19, 585:5, 586:6,
587:5, 592:1, 592:19,
597:13, 598:24,
613:20, 617:2, 625:4,
640:9, 642:12,
654:14, 668:1,
668:10, 668:22,
682:3, 690:21,
690:24, 699:17,
703:9, 709:18, 716:4,
721:21, 722:10,
727:13
**sought** [5] - 570:24,
625:4, 625:8, 640:6,
647:20
**sounded** [1] - 642:2
**sounds** [4] - 607:5,
619:13, 625:15,
716:17
**source** [4] - 669:11,
704:2, 722:24, 730:21
**sources** [2] - 571:7,
737:20
**South** [1] - 561:6
**Southern** [1] -
632:25
**southerners** [1] -
632:25
**spare** [1] - 589:25
**speaker** [3] - 606:12,
607:2, 607:3
**speaking** [1] - 638:2
**specific** [18] -
629:15, 642:11,
642:12, 651:6,
653:24, 655:2, 674:2,
677:25, 678:10,
687:25, 688:2, 688:7,
689:1, 709:10, 723:8,
727:16, 739:12,
739:13
**specifically** [8] -
604:16, 607:1,
641:18, 656:24,
656:25, 669:13,
679:25, 723:1
**specifics** [4] - 604:4,
669:18, 709:18, 728:7
**spectrum** [1] -
654:15
**spelled** [1] - 632:24
**spending** [6] - 617:7,

768

628:11, 631:16, 664:7, 670:24, 696:4
**spent** [2] - 635:19, 721:22
**spill** [1] - 587:2
**spoken** [3] - 610:21, 693:22, 728:2
**spouse** [1] - 596:21
**SR** [1] - 561:11
**St** [1] - 735:20
**staff** [3] - 590:4, 727:17, 744:13
**staffer** [2] - 582:6, 582:9
**stage** [1] - 730:4
**stairs** [1] - 642:17
**stake** [1] - 594:20
**stand** [2] - 599:22, 622:25
**standard** [5] - 612:4, 612:6, 702:24, 703:3, 713:14
**stands** [1] - 723:9
**STANLEY** [1] - 561:2
**start** [17] - 563:5, 565:6, 598:6, 603:22, 645:17, 653:11, 699:15, 706:9, 711:4, 720:24, 737:9, 741:24, 743:10, 743:14, 744:4, 744:5, 744:9
**started** [2] - 636:22, 659:19
**state** [2] - 697:15, 697:16
**State** [6] - 583:14, 690:19, 690:25, 695:6, 721:4, 721:7
**statement** [3] - 591:24, 596:11, 596:15
**statements** [1] - 733:10
**States** [6] - 561:15, 593:17, 628:18, 629:18, 664:24, 745:13
**states** [1] - 671:15
**STATES** [4] - 560:1, 560:3, 560:11, 560:15
**Station** [2] - 605:18, 606:23
**status** [1] - 734:19
**staunch** [1] - 691:19
**staying** [1] - 673:6
**stenographic** [1] - 745:5
**step** [1] - 644:6
**STEWARD** [1] -

560:6
**Stewart** [3] - 687:23, 688:11, 738:16
**stick** [1] - 642:8
**sticking** [1] - 677:13
**still** [11] - 569:9, 570:16, 582:9, 582:18, 582:20, 610:11, 638:4, 646:23, 662:9, 662:10, 726:19
**stockpiling** [1] - 642:3
**stolen** [2] - 717:13, 717:16
**stone** [9] - 614:21, 614:23, 615:2, 715:8, 715:9, 715:10, 715:16, 715:18, 715:20
**Stone** [1] - 715:2
**stone's** [2] - 614:20, 715:6
**stop** [2] - 628:17, 725:25
**stories** [2] - 600:14, 616:2
**storming** [1] - 734:24
**street** [3] - 605:17, 606:10, 606:13
**Street** [3] - 560:16, 561:9, 737:15
**stricken** [6] - 637:2, 637:3, 676:23, 733:20, 736:8, 742:9
**strike** [10] - 573:25, 574:11, 574:12, 596:4, 596:19, 596:23, 596:24, 639:2, 640:12, 733:9
**strikes** [1] - 637:1
**striking** [1] - 733:18
**strong** [4] - 610:1, 629:8, 715:10, 728:20
**strongly** [1] - 740:8
**stuff** [2] - 630:13, 744:11
**subject** [1] - 730:13
**submarines** [1] - 645:25
**subsequent** [2] - 729:25, 730:6
**subsidiary** [1] - 619:16
**sued** [2] - 591:1, 651:9
**suicide** [4] - 578:18, 592:12, 593:1, 596:14
**Suite** [2] - 560:24,

561:6
**summer** [2] - 589:15, 589:25
**summons** [1] - 564:9
**Superior** [1] - 702:16
**superior** [1] - 702:18
**supervisor** [1] - 666:5
**support** [11] - 594:14, 594:16, 602:14, 604:25, 610:2, 629:5, 665:10, 691:22, 692:3, 692:4
**supported** [3] - 594:10, 594:17, 691:25
**supporter** [1] - 714:14
**supporters** [13] - 594:9, 604:18, 605:3, 605:6, 629:3, 629:19, 646:22, 661:8, 680:25, 681:3, 691:20, 696:10, 696:21
**surprised** [1] - 715:5
**surprising** [2] - 640:9, 678:24
**surprisingly** [1] - 577:12
**sway** [1] - 611:24
**sworn** [1] - 608:25
**system** [3] - 587:14, 618:25, 705:10

---

## T

**tally** [1] - 636:24
**target** [1] - 742:19
**TARPLEY** [1] - 560:22
**Tarrio** [3] - 614:16, 615:12, 693:6
**Tarrio's** [1] - 614:18
**task** [3] - 679:13, 682:10, 702:21
**tasked** [2] - 609:5, 609:6
**teacher** [2] - 656:14, 721:9
**team** [3] - 570:12, 577:2
**technical** [1] - 656:11
**teenager** [1] - 707:13
**televised** [1] - 614:8
**television** [1] - 625:15
**temporarily** [1] -

636:2
**ten** [2] - 610:12, 744:6
**tend** [2] - 648:1, 731:1
**Tennessee** [4] - 590:14, 594:2, 594:5, 616:18
**term** [4] - 581:12, 604:12, 604:14, 656:10
**terms** [7] - 612:17, 614:21, 674:7, 687:11, 699:24, 709:16, 743:12
**terribly** [2] - 586:22, 640:10
**terrific** [1] - 601:19
**testified** [1] - 627:5
**testifier** [1] - 623:1
**testify** [8] - 588:20, 588:22, 589:2, 623:12, 627:19, 627:23, 640:5, 693:2
**testifying** [6] - 573:11, 614:17, 668:8, 681:23, 715:4, 718:5
**testimony** [32] - 568:5, 569:17, 569:20, 569:21, 573:20, 589:4, 590:7, 614:12, 622:10, 622:15, 622:20, 622:24, 623:9, 630:4, 630:5, 639:22, 639:25, 640:1, 650:5, 650:6, 662:24, 683:2, 684:22, 687:5, 694:3, 694:11, 694:12, 694:13, 711:24, 712:5, 718:8, 729:20
**Texas** [1] - 560:24
**texted** [1] - 578:14
**texting** [1] - 586:24
**thankfully** [1] - 707:13
**THE** [740] - 560:1, 560:10, 560:14, 560:16, 560:21, 561:2, 561:5, 561:8, 561:11, 563:1, 563:3, 563:4, 563:7, 563:11, 563:13, 563:15, 563:18, 564:1, 564:3, 564:6, 564:9, 564:11, 564:15, 564:21, 564:25, 565:8, 565:11, 565:22, 566:5, 566:11,

566:14, 566:18, 566:23, 567:10, 567:14, 567:25, 568:10, 568:11, 568:16, 568:20, 568:25, 569:4, 569:6, 569:9, 569:11, 569:16, 569:23, 570:3, 570:5, 570:14, 570:20, 571:5, 571:10, 571:16, 571:24, 572:5, 572:11, 572:16, 572:20, 573:19, 573:25, 574:17, 574:21, 574:25, 575:1, 575:7, 575:9, 575:12, 575:16, 575:25, 576:8, 576:15, 577:4, 577:18, 578:8, 578:20, 578:24, 579:5, 579:15, 579:21, 580:1, 580:5, 580:10, 580:12, 581:2, 581:5, 581:20, 582:2, 582:9, 582:11, 582:14, 582:20, 582:24, 583:7, 583:11, 583:17, 583:20, 583:24, 584:2, 584:4, 584:16, 585:1, 585:8, 585:13, 585:20, 586:8, 586:13, 586:20, 587:4, 587:9, 587:13, 587:17, 588:8, 588:10, 588:14, 588:17, 589:2, 589:6, 589:17, 589:21, 590:5, 590:10, 590:16, 590:20, 590:23, 591:3, 591:7, 595:16, 595:20, 595:23, 596:20, 597:17, 597:19, 597:21, 598:1, 598:3, 598:6, 598:12, 598:19, 599:4, 599:6, 599:9, 599:12, 599:19, 599:22, 599:24, 600:4, 600:10, 600:13, 600:16, 600:22, 600:25, 601:3, 601:7, 601:11, 601:16, 601:19, 602:24, 603:3, 603:7, 603:12, 603:14, 603:16, 603:25, 604:6, 604:9, 604:13, 604:22,

769

605:8, 605:10,
605:25, 606:16,
607:4, 607:10,
607:14, 607:23,
607:25, 608:2, 608:4,
608:12, 608:15,
608:21, 608:24,
609:4, 609:9, 609:12,
609:19, 609:25,
610:5, 610:14,
610:21, 610:24,
611:8, 611:12,
611:14, 612:1, 612:9,
612:13, 612:20,
612:23, 613:2,
613:10, 613:17,
613:23, 614:2,
614:10, 614:14,
615:5, 615:9, 615:12,
615:23, 616:9,
616:13, 616:19,
616:22, 617:1, 617:4,
618:17, 620:11,
620:14, 620:17,
620:23, 620:25,
621:2, 621:5, 621:10,
621:13, 621:19,
621:21, 622:1, 622:6,
622:14, 622:18,
622:23, 623:4,
623:11, 623:18,
623:22, 623:25,
624:3, 624:5, 624:12,
624:16, 624:22,
625:2, 625:11,
625:14, 625:17,
625:23, 625:25,
626:3, 626:6, 626:8,
626:13, 626:15,
626:24, 627:2, 627:8,
627:17, 627:22,
628:4, 628:6, 630:24,
631:8, 631:12,
631:25, 632:16,
635:6, 636:1, 636:9,
636:14, 636:16,
636:20, 637:7,
637:11, 637:12,
637:13, 637:17,
637:20, 637:23,
639:3, 639:7, 640:16,
640:18, 640:23,
640:25, 641:2,
641:11, 642:8,
642:19, 642:23,
643:6, 643:11,
643:16, 643:19,
643:20, 643:24,
644:4, 644:8, 644:10,
644:13, 644:15,
644:18, 644:22,

645:3, 645:5, 645:7,
645:9, 645:17, 646:1,
646:5, 646:11,
646:14, 646:21,
647:1, 647:7, 647:13,
648:2, 648:5, 648:11,
648:18, 648:22,
649:3, 649:6, 649:8,
649:14, 649:19,
649:21, 649:24,
650:4, 650:11,
650:17, 650:21,
650:25, 652:5, 652:9,
652:13, 652:19,
652:21, 652:23,
652:25, 653:3, 653:7,
653:10, 653:18,
654:2, 654:7, 654:11,
654:13, 654:20,
655:2, 655:6, 655:13,
655:18, 655:25,
656:6, 656:13,
656:15, 656:24,
657:10, 657:15,
657:24, 658:2, 658:5,
658:10, 658:15,
658:17, 658:19,
659:4, 659:9, 659:11,
659:13, 659:16,
659:21, 659:23,
659:25, 660:7,
660:11, 660:19,
660:23, 661:4,
661:13, 661:16,
661:23, 662:1, 662:5,
662:10, 662:12,
662:16, 662:21,
663:4, 663:10,
663:14, 663:19,
663:23, 664:3, 666:1,
666:18, 666:21,
666:25, 667:5, 667:7,
667:9, 667:21,
667:23, 668:4,
668:19, 668:21,
669:2, 669:6, 669:14,
669:19, 669:24,
670:8, 670:13,
670:20, 672:13,
672:16, 672:20,
672:25, 673:3, 673:5,
673:12, 673:17,
674:1, 674:6, 674:10,
674:12, 674:20,
674:23, 675:8,
675:16, 675:19,
676:12, 676:14,
676:19, 676:23,
677:2, 677:6, 677:9,
677:12, 678:2, 678:9,
678:13, 678:20,

678:23, 679:11,
679:13, 679:19,
679:24, 680:8,
680:10, 680:12,
680:18, 680:24,
681:5, 681:13,
681:19, 682:8,
682:15, 682:19,
683:1, 683:5, 683:12,
683:16, 683:19,
683:21, 683:24,
684:7, 684:10,
684:13, 684:16,
684:20, 684:25,
685:3, 685:12,
685:20, 685:22,
685:25, 686:3, 686:8,
686:11, 686:17,
686:22, 687:3, 687:9,
687:11, 687:19,
687:21, 688:1,
688:13, 688:18,
688:23, 688:25,
689:6, 689:10,
689:15, 689:22,
689:24, 690:3,
690:12, 690:14,
690:20, 690:24,
691:2, 691:7, 691:11,
691:18, 691:24,
692:5, 692:11,
692:15, 692:18,
693:13, 693:21,
693:16, 693:21,
693:24, 694:1, 694:9,
694:16, 694:23,
695:5, 695:8, 695:12,
695:15, 695:17,
695:21, 695:25,
698:15, 698:17,
698:20, 698:24,
699:5, 699:7, 699:10,
700:3, 700:5, 700:7,
700:10, 700:13,
700:14, 700:17,
700:21, 701:1, 701:5,
701:9, 701:14,
701:23, 702:1, 702:4,
702:9, 702:12,
702:15, 702:20,
703:5, 703:13,
703:17, 703:20,
703:23, 704:5,
704:10, 704:16,
704:18, 704:21,
704:23, 705:1, 705:4,
705:8, 705:12,
705:17, 705:21,
705:24, 706:7,
706:10, 706:12,
706:15, 706:19,

707:7, 707:12,
707:18, 708:5,
708:16, 708:18,
708:21, 709:14,
709:22, 709:24,
710:3, 710:7, 710:13,
710:18, 711:1, 711:4,
711:11, 711:15,
711:20, 711:23,
712:4, 712:11,
712:16, 712:21,
713:1, 713:5, 713:11,
713:16, 713:24,
714:2, 714:7, 714:11,
714:13, 714:18,
714:21, 714:24,
715:15, 715:19,
715:23, 716:3, 716:8,
716:14, 716:17,
716:20, 716:24,
717:1, 717:6, 717:9,
717:14, 717:18,
717:21, 717:24,
718:3, 718:10,
719:23, 720:2, 720:7,
720:12, 720:14,
720:16, 721:5, 721:8,
721:11, 721:15,
721:21, 721:25,
722:2, 722:9, 722:15,
722:19, 723:3, 723:9,
723:12, 723:16,
723:18, 723:21,
723:24, 724:5, 724:7,
724:11, 724:22,
725:1, 725:5, 725:11,
725:14, 725:17,
725:21, 725:24,
726:4, 726:6, 726:8,
726:15, 726:25,
727:2, 727:5, 727:9,
727:12, 727:19,
727:23, 728:2, 728:9,
728:16, 728:22,
729:1, 729:17,
729:19, 729:23,
730:10, 730:12,
730:18, 730:23,
731:4, 731:14,
731:18, 733:3, 733:9,
733:24, 734:1, 734:3,
735:3, 735:12,
735:23, 735:25,
736:8, 736:10,
736:11, 736:12,
736:17, 736:19,
736:21, 737:16,
737:19, 738:2,
738:11, 738:17,
738:22, 739:1, 739:9,
739:11, 739:19,

739:24, 740:9,
740:16, 740:21,
740:23, 740:25,
741:7, 741:16,
741:22, 742:13,
742:16, 742:21,
742:24, 743:3, 743:8,
743:10, 743:19,
743:22, 743:25,
744:2, 744:3, 744:12
   **theft** [1] - 717:18
   **themselves** [2] -
604:17, 697:13
   **therefore** [1] - 580:7
   **Thereupon** [41] -
563:9, 573:23,
574:23, 596:1,
597:15, 603:8,
603:10, 607:19,
607:21, 620:19,
620:21, 636:18,
637:9, 640:21,
644:24, 645:1,
652:15, 652:17,
658:11, 658:13,
667:1, 667:3, 672:21,
672:23, 676:21,
677:7, 685:16,
685:18, 699:1, 699:3,
707:21, 708:14,
720:8, 720:10,
725:22, 726:2, 733:7,
733:22, 736:6,
736:15, 741:5
   **they've** [5] - 641:20,
642:20, 705:4,
727:12, 727:13
   **thinkers** [1] - 581:1
   **thinking** [2] - 582:15,
669:15
   **third** [1] - 640:19
   **thoughtful** [1] -
597:2
   **thread** [1] - 642:1
   **threat** [1] - 737:23
   **three** [7] - 577:10,
637:4, 692:16, 693:4,
718:23, 718:25,
725:24
   **three-quarters** [1] -
637:4
   **throughout** [1] -
733:16
   **Thursday** [2] -
699:22, 706:3
   **tinnitus** [1] - 607:7
   **today** [28] - 573:20,
591:11, 597:8,
601:25, 603:17,
641:2, 645:11,

652:10, 658:19,
658:22, 665:3, 667:9,
672:16, 685:13,
686:4, 698:18,
699:12, 699:21,
701:6, 706:5, 708:23,
720:3, 720:19, 726:9,
734:4, 741:1, 741:11,
743:23
  **together** [7] -
574:12, 577:14,
600:24, 621:23,
626:2, 632:13, 728:5
  **tomorrow** [6] -
741:10, 741:24,
742:8, 742:10, 743:5,
743:14
  **tone** [1] - 639:24
  **top** [2] - 632:23,
711:3
  **topic** [4] - 568:11,
572:14, 634:23,
729:24
  **total** [1] - 630:21
  **tour** [9] - 627:14,
627:16, 647:5,
647:11, 667:20,
681:16, 692:8,
692:12, 721:23
  **toured** [2] - 681:9,
681:10
  **tourist** [1] - 667:21
  **toward** [3] - 680:22,
713:9, 725:2
  **towards** [3] - 630:7,
630:10, 735:10
  **town** [1] - 680:6
  **train** [3] - 563:25,
564:2, 564:3
  **transcript** [2] -
745:5, 745:6
  **TRANSCRIPT** [1] -
560:10
  **transferred** [1] -
671:19
  **transition** [2] -
585:10, 585:24
  **Transparency** [1] -
717:5
  **treat** [3] - 679:20,
679:23, 681:3
  **treated** [3] - 662:17,
705:21, 712:5
  **trial** [28] - 574:5,
576:1, 576:16,
576:19, 576:22,
577:16, 588:10,
590:21, 591:14,
602:12, 609:20,
615:13, 615:15,

615:22, 643:12,
657:4, 657:15, 661:5,
664:14, 679:21,
694:7, 699:19,
702:24, 706:9,
724:18, 732:7,
733:11, 733:15
  **TRIAL** [1] - 560:10
  **trials** [2] - 692:16,
692:18
  **tried** [1] - 628:17
  **triggered** [1] - 606:7
  **trip** [7] - 564:12,
564:14, 564:15,
564:18, 564:19,
564:22
  **trouble** [8] - 569:25,
609:2, 643:14,
643:25, 644:2,
680:21, 710:16,
721:13
  **TROY** [1] - 560:14
  **true** [2] - 745:4,
745:5
  **truly** [2] - 589:24,
595:9
  **Trump** [28] - 580:24,
585:10, 590:3, 594:9,
594:10, 594:14,
594:16, 594:17,
602:14, 604:19,
605:7, 610:2, 615:3,
615:6, 629:4, 629:5,
629:19, 641:21,
661:9, 665:11,
680:25, 681:3,
691:20, 691:23,
692:3, 696:10,
696:20, 709:20
  **trust** [2] - 574:3,
594:24
  **truthful** [1] - 623:14
  **truthfully** [1] -
623:13
  **try** [9] - 593:5, 595:4,
596:7, 598:21,
641:16, 668:11,
681:25, 682:6, 719:18
  **trying** [8] - 584:11,
592:5, 596:8, 597:1,
654:17, 655:24,
656:5, 733:11
  **Tuesday** [1] - 563:22
  **tunnel** [1] - 633:19
  **turn** [37] - 565:11,
566:24, 570:20,
580:12, 582:2,
598:19, 599:12,
603:22, 608:9,
612:10, 621:11,

640:20, 641:8, 641:9,
653:15, 659:1, 659:2,
660:11, 667:14,
668:4, 673:14,
677:18, 679:25,
681:19, 686:9, 690:3,
702:4, 703:5, 709:4,
710:18, 714:24,
720:23, 722:2,
726:15, 726:16, 737:4
  **turned** [1] - 606:14
  **TV** [2] - 626:23,
729:7
  **tweet** [1] - 642:1
  **twenty** [1] - 570:12
  **twice** [1] - 619:17
  **Twitter** [3] - 729:16,
732:4, 732:8
  **two** [9] - 581:9,
589:15, 592:22,
609:18, 632:11,
654:24, 682:24,
691:9, 724:12
  **type** [8] - 590:23,
609:15, 630:13,
651:6, 655:22,
665:11, 719:10
  **types** [1] - 654:21

## U

  **U.S** [10] - 560:19,
582:4, 621:17, 659:6,
690:10, 711:21,
711:23, 712:1, 712:8,
712:18
  **ultimately** [7] -
596:23, 596:24,
596:25, 597:3,
670:14, 679:13,
712:11
  **unable** [1] - 742:7
  **unavailability** [1] -
742:10
  **unbiased** [5] - 595:6,
595:9, 595:10, 602:5,
697:9
  **uncertainty** [2] -
572:14, 574:1
  **uncle** [1] - 616:16
  **unclear** [1] - 587:1
  **uncles** [1] - 594:16
  **uncomfortable** [1] -
605:22
  **underlies** [1] -
642:22
  **understood** [10] -
567:12, 567:23,
591:22, 593:25,

597:14, 669:16,
676:10, 696:23,
697:24, 732:20
  **undertaken** [1] -
674:2
  **undoubtedly** [1] -
725:6
  **unfavorable** [4] -
678:14, 705:18,
717:25, 730:22
  **unfavorably** [1] -
688:19
  **unfortunate** [1] -
592:20
  **unfortunately** [2] -
650:22, 707:9
  **uniforms** [1] -
642:17
  **Union** [2] - 605:17,
606:23
  **United** [5] - 593:17,
628:18, 629:18,
664:24, 745:13
  **united** [1] - 561:15
  **UNITED** [4] - 560:1,
560:3, 560:11, 560:15
  **unlikely** [1] - 668:9
  **unquote** [2] - 613:12,
670:4
  **up** [40] - 590:14,
593:24, 604:19,
605:23, 614:14,
614:15, 614:19,
614:20, 624:7,
629:18, 633:11,
634:8, 636:24,
642:17, 644:4,
645:18, 660:21,
669:23, 682:6, 686:8,
699:19, 700:8,
700:18, 701:12,
701:18, 704:1, 706:3,
707:12, 708:7, 709:9,
709:12, 721:13,
722:22, 723:1, 728:7,
730:14, 733:15,
737:16, 741:8, 743:4
  **upset** [1] - 656:12
  **urban** [1] - 639:14
  **USAID** [1] - 690:10

## V

  **vague** [5] - 731:24,
732:2, 732:11,
732:15, 732:16
  **values** [4] - 584:22,
593:24, 594:20
  **variant** [1] - 572:6

  **varies** [1] - 735:17
  **various** [2] - 615:18,
711:9
  **verdict** [2] - 595:6,
728:18
  **versa** [1] - 678:22
  **Versailles** [1] -
735:19
  **versus..** [1] - 615:22
  **veteran** [1] - 598:10
  **veterans** [1] - 598:13
  **Vibes** [1] - 632:25
  **vice** [1] - 678:22
  **victim** [5] - 649:10,
661:17, 683:25,
684:17, 717:10
  **victims** [1] - 695:9
  **Victor** [1] - 633:4
  **video** [7] - 606:17,
606:18, 647:15,
660:13, 739:16,
739:19, 740:13
  **videos** [8] - 570:22,
589:7, 598:22,
647:17, 647:19,
660:16, 660:20,
694:17
  **view** [14] - 574:11,
581:24, 585:17,
586:3, 589:19, 597:1,
606:21, 622:10,
636:4, 639:24, 643:2,
654:6, 722:11, 735:13
  **viewed** [3] - 626:16,
682:11, 682:20
  **views** [27] - 577:19,
581:7, 581:22,
584:18, 584:22,
588:23, 609:21,
609:24, 610:1,
646:15, 661:10,
680:20, 691:13,
691:17, 691:21,
696:13, 705:13,
705:17, 713:7,
717:25, 728:20,
731:1, 731:3, 731:10,
731:22, 732:19
  **violation** [1] - 661:24
  **violence** [6] -
688:22, 688:25,
689:1, 689:3, 689:4,
740:11
  **violent** [5] - 674:22,
738:8, 739:5, 739:11,
740:5
  **Virginia** [9] - 601:2,
633:5, 663:13,
697:15, 697:16,
697:21, 697:22,

697:23
**virtue** [1] - 715:20
**vision** [2] - 633:19, 702:6
**visiting** [1] - 564:16
**vivid** [1] - 577:23
**voice** [2] - 721:12, 737:16
**Voir** [1] - 562:3
**voir** [1] - 637:3
**vote** [8] - 579:8, 580:8, 585:15, 597:4, 612:7, 712:13, 712:19, 713:12
**voted** [1] - 583:2
**votes** [1] - 727:18
**voting** [4] - 569:25, 572:8, 657:19, 670:18
**vs** [1] - 560:5

## W

**wait** [1] - 580:20
**waited** [1] - 741:1
**waiting** [1] - 653:11
**walk** [5] - 607:16, 620:14, 629:23, 680:15, 741:3
**walked** [2] - 667:18, 680:16
**walking** [1] - 655:15
**Wall** [1] - 737:14
**warranted** [1] - 657:12
**Washington** [14] - 560:6, 560:17, 560:20, 561:3, 561:17, 566:12, 576:21, 600:10, 600:25, 655:8, 718:16, 724:22, 737:14, 745:14
**watch** [8] - 599:3, 599:5, 599:11, 616:8, 660:22, 666:20, 682:25, 730:12
**watched** [17] - 589:23, 614:4, 614:7, 616:6, 676:9, 682:22, 694:17, 709:11, 728:4, 728:5, 728:22, 729:3, 729:4, 729:5, 729:7, 729:12
**watching** [3] - 599:9, 625:9, 683:2
**WATKINS** [1] - 561:9
**waver** [1] - 639:23
**ways** [3] - 580:25, 585:5, 639:21

**weapons** [2] - 638:8, 687:18
**weapons-related** [1] - 638:8
**wear** [1] - 702:7
**wearing** [2] - 588:5, 655:20
**website** [2] - 619:14, 620:3
**week** [1] - 701:2
**weeks** [9] - 591:16, 677:15, 701:16, 706:4, 706:13, 707:2, 707:25, 708:2, 708:3
**weigh** [1] - 571:20
**weight** [6] - 567:2, 567:16, 567:20, 650:6, 650:8, 662:25
**weird** [2] - 619:13, 619:18
**welcome** [7] - 575:12, 602:1, 603:16, 635:25, 665:25, 677:12, 698:14
**welfare** [1] - 610:18
**well-being** [1] - 610:15
**well-documented** [1] - 634:19
**well-spoken** [1] - 693:22
**Wharf** [1] - 570:11
**whatsoever** [2] - 602:4, 672:7
**White** [3] - 583:14, 583:21, 583:25
**whole** [2] - 667:19, 670:25
**wife** [3] - 600:21, 716:13, 716:14
**willing** [1] - 571:20
**window** [1] - 676:9
**wing** [5] - 581:1, 581:5, 581:18, 612:25, 613:12
**wish** [2] - 563:19, 645:18
**withdraw** [1] - 636:2
**witness** [18] - 567:17, 567:21, 589:4, 622:7, 622:9, 622:11, 622:15, 622:21, 622:25, 628:1, 638:5, 639:9, 650:8, 672:25, 693:7, 694:2, 714:10, 714:11
**witnesses** [10] - 566:6, 573:10, 598:13, 614:16,

621:16, 662:23, 668:6, 693:2, 693:5, 695:10
**Women's** [4] - 584:11, 680:7, 691:8, 713:4
**women's** [2] - 646:10, 691:9
**wondered** [1] - 707:3
**WOODWARD** [9] - 561:2, 561:2, 706:17, 706:21, 707:1, 707:5, 707:9, 707:23, 741:18
**Woodward** [1] - 706:21
**word** [7] - 577:6, 631:4, 642:10, 665:19, 672:2, 698:9, 719:18
**wordings** [1] - 739:23
**words** [5] - 567:20, 593:19, 654:19, 669:24, 696:10
**workers'** [1] - 683:23
**works** [13] - 578:7, 578:10, 582:20, 583:23, 583:25, 585:5, 586:15, 619:8, 619:15, 620:3, 645:24, 645:25, 733:18
**world** [2] - 679:3, 682:7
**worship** [1] - 696:18
**written** [1] - 687:18
**wrote** [1] - 580:15
**WYLD** [1] - 632:23
**Wyldfyre** [1] - 632:23

## Y

**Yale** [2] - 687:24, 688:8
**Yard** [1] - 610:11
**year** [11] - 576:25, 578:21, 584:12, 599:2, 599:4, 599:10, 606:2, 615:19, 662:9, 681:11, 692:9
**years** [29] - 570:15, 577:10, 584:8, 609:14, 609:17, 609:18, 610:10, 624:9, 627:14, 630:21, 630:22, 632:8, 646:7, 651:13, 651:19, 654:1, 654:24, 666:9, 671:8,

680:2, 680:6, 686:25, 687:1, 691:5, 697:1, 713:3, 718:23, 718:25, 732:19
**yesterday** [2] - 575:1, 575:2
**York** [2] - 718:19, 718:20
**young** [1] - 623:21
**young..** [1] - 623:22
**yourself** [14] - 570:7, 589:8, 598:23, 616:1, 646:12, 648:23, 649:6, 668:13, 682:3, 695:9, 712:22, 715:25, 722:6, 724:1
**YouTube** [1] - 604:5

## Z

**zone** [1] - 633:20
**Zoom** [1] - 728:1