UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,            )
                                    )
                                    )
            v.                       )   Case No. 1:22-CR-00015-APM
                                    )
                                    )
JESSICA WATKINS,                     )
       Defendant.                    )
_____)

**DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL**

Defendant Jessica Watkins (hereinafter "Ms. Watkins") respectfully moves This Honorable Court for immediate release pending her appeal, pursuant to 18 U.S.C. §§3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1). Ms. Watkins satisfies the criteria for release, as she poses no flight or safety risk, her appeal is not for purposes of delay, and she raises a substantial question of law in light *of Fisher v. United States*, 603 U.S. _____, WL 8605748 (June 28, 2024) decided in her favor, and is respectfully submitted, likely result in a reduced imprisonment sentence that would expire before the appeal concludes. In particular, a substantial question exists as to whether the statute underlying two of the four counts in Ms. Watkins conviction, 18 U.S.C. §1512(c)(2) and (k), applies to her conduct on January 6, 2021; there is a substantial question of law due to the clarifying interpretation of this statute in the Supreme Court's recent decision in *Fischer v. United States*, 603 U.S.

1

\_\_\_\_, WL 8605748 (June 28, 2024), after Ms. Watkins was sentenced under the old interpretation.

## I. INTORDUCTION AND HISTORY

### Personal History

Ms. Watkins was born in 1982 to Stanley and Melinda Watkins in Rochester, New York. Ms. Watkins was born biologically male and given the name Jeremy David Watkins. Ms. Watkins initially grew up in Rochester, New York, until her family moved to Hilliard, Ohio. Ms. Watkins and her sister were provided with an exceedingly strict, religious upbringing. The family attended church five (5) days a week during her formative years. Ms. Watkins's family attended the Assembly of God church. Ms. Watkins's parents frequently utilized corporal punishment to discipline her and her sister. Ms. Watkins's parents were not supportive of her during her gender transition. As a result, she and her parents did not maintain communication for upwards of fifteen (15) years but are reconciled as of the date of this submission and they support her transition and her reintegration into society.

After graduating high school, Ms. Watkins enlisted in the United States Army in 2001. She completed basic training at Fort Benning, Georgia. Upon completion of basic training, Ms. Watkins was stationed in Savannah, Georgia, and Fort Bragg, North Carolina. Ms. Watkins's military career ended in late 2003 when she went

absent without leave (AWOL). Her AWOL status was resultant of the harassment she endured in the services because of her gender identity conflict. Ms. Watkins and was ultimately discharged from the Army in 2003 with a General Under Other than Honorable discharge because of her AWOL status. During her time in the military, Ms. Watkins was hazed and threatened. Ms. Watkins first sought mental health treatment during her time in the military. She received treatment at Fort Bragg up until her discharge. She does not recall a formal diagnosis being given, nor was she prescribed any medications. In the years following her discharge, Ms. Watkins continued her mental health treatment and was eventually diagnosed with Post Traumatic Stress Disorder (PTSD), depression, and anxiety. A few years later, in her thirties, Ms. Watkins fell into a major depression. This depressive episode led Ms. Watkins to engage in self-harm.

Ms. Watkins currently suffers from elevated cholesterol and edema in her legs. She is currently taking the medication Simvastatin. Ms. Watkins has also suffered severe weight gain since the commencement of her incarceration. Ms. Watkins underwent a bilateral orchiectomy (removal of the testes) prior to her incarceration. As a result of this procedure, she was initially prescribed the hormone replacement medication Premarin but since incarceration, she has been prescribed estrogen replacement medication Estradiol that is taken daily. Her medication regimen has

continued to be altered by prison doctors, which has caused additional issues such as liver and kidney damage.

## Procedural History

As This Honorable Court is aware, on January 27, 2021, a federal grand jury in the District of Columbia returned a four-count indictment; a series of superseding indictments followed that concluded with a 13-count indictment in which Ms. Watkins was named on six (6). On November 29, 2022, Ms. Watkins was found guilty of the following charges: Conspiracy to obstruct official proceedings in violation of 18 USC §1512(k) (count two); obstructing official proceedings in violation of 18 USC §1512(c)(2) (count three); conspiracy to prevent an officer from discharging any duties in violation of 18 USC §372 (count four); and civil disorder and aiding an abetting in violation of 18 USC §231(a)(3) (count 6).

The sentencing guidelines for violations under 18 USC §1512 are found in USSG 2J1.2 and Ms. Watkins was determined to have a base offense level of 14 as to that charge. This offense level was ultimately elevated to level 33 due to a number of aggravating factors, some of which included the following: her role as a leader of the Ohio group the Oath Keepers, her deletion of the messaging app called "Signal," and the nature of the offense being to affect governmental action through intimidation or coercion. However, in light of her many proffers to the government, voluntary surrender, expediency of turning over evidence in her possession, her

attempts to mitigate the damage caused by other offenders during the events of January 6, and her remorse and acceptance of responsibility expressed at trial, the Court found a significant downward variance was warranted. She was ultimately sentenced to 102 months out of the 168–210-month sentence recommended under USSG. To date she has served approximately 42 months of her sentence.

## II. LEGAL STANDARD

18 U.S.C. §3143(b)(1) states that a court "shall order the release" of an individual pending appeal if it finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released;

and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, … or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Ms. Watkins respectfully submits that this was an isolated event from which she has learned much; she now holds herself to a higher standard and wants nothing more than to return to serving her community. She is not likely to flee or pose a danger to the safety of others. She further submits that a motion made over 41 months into a prison sentence cannot serve "the purpose of delay;" the Supreme Court holding in <u>Fischer v United States</u> raises a substantial question of law pertaining to her case. Those questions will likely result in the reversal of her

convictions under §§1512(c) and (k) and result in her resentencing "to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Accordingly, Ms. Watkins's request for release satisfies the requirements of §3143, and her request for release pending her appeal should be granted.

### III.     ARGUMENT

#### §3143(b)(1)(A) – Fleeing or Endangering

Ms. Watkins is not likely to flee if released pending appeal. Prior to incarceration, Ms. Watkins was halfway through her gender reassignment; she was on an effective oral medication regimen and had the final appointment for her reassignment scheduled. Unfortunately, once incarcerated, her appointment was canceled and not rescheduled. She was then taken off her oral medication and placed on new injections that were twice as potent in dosage; she was given these injections every week instead of every other week, causing her to receive four (4) times the dosage she needed. This overmedication caused her to incur kidney damage before the dosage was ultimately lowered. Now that she is on a lower dosage, the prison doctor has informed her that her testosterone is too high, and she must either take testosterone blockers or be placed in a men's prison. While, from a moral standpoint, this treatment is appalling and should warrant her release in its own right, from a

legal standpoint, it serves as clear and convincing evidence that Ms. Watkins would not flee if released; her desire to reconnect with her primary physician, reestablish an effective medication regimen, complete her gender reassignment, and reconnect with her local community all serve as significant ties to her community and preclude flight.

Furthermore, Ms. Watkins is not likely to pose a danger to the safety of others if released pending appeal, either. As mentioned at trial, Ms. Watkins is a combat veteran who came forward early once she recognized her actions were wrong; she proffered to the government multiple times and provided evidence that put the government in an advantageous position. The Court recognized that she had been demonized throughout the proceedings and that the "corners of the internet [she] found [her]self" in had created a delusional perception of the risks she was taking. The Court further recognized her remorse and reflection throughout the trial and noted her apology to those she affected through her actions. Now, with an accurate assessment of these risks, two (2) more years into her period of incarceration and an understanding that her actions "were not just wrong, they were criminal," she has committed herself to not traveling the same path again. She previously served as a firefighter and a medic; she will continue serving her community and would not pose a risk to the safety of others if released.

After years of further reflection while incarcerated, Ms. Watkins has been thoroughly rehabilitated, looks forward to serving her community once again, and is not likely to flee or pose a safety risk to others. This Honorable Court should find these factors "clear and convincing" in satisfaction of §3143(b)(1)(A).

### §3143(b)(1)(B) – Question of Law

18 U.S.C. §3143(b)(1)(B) requires that

> the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, … or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

It is respectfully submitted that the recent Supreme Court holding, clarifying how 18 U.S.C. §1512(c), and by extension, (k), should be interpreted and has created substantial questions of law in Ms. Watkins's case; resolving those questions will have the requisite results under subsections (i) and (iv).

### Supreme Court Interpretation of §1512(c)(2)

On 28 June 2024, the Supreme Court of the United States clarified how §1512(c) of the 2002 Sarbanes Oxley Act should be interpreted. The court held, "To prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of *records, documents, objects, or as we earlier explained, other things used in the*

8

*proceeding*, or attempted to do so." *Fischer v. United States*, 603 U.S. \_\_\_\_, WL 3208034 (June 28, 2024). (Emphasis added).

It is respectfully submitted that under this clarified interpretation of §1512(c)(2), Ms. Watkins's conduct does not satisfy the requirement to establish guilt under that section, nor does the indictment even hint at such an interpretation. Furthermore, by failing to satisfy the requirements of this section, she cannot be found to have violated §1512(k) by "conspiring to violate §1512(c)(2)" or any other subsection under §1512. Accordingly, under this clarified standard, Ms. Watkins has not violated §1512(c)(2) or §1512(k) and will be resentenced on remand.

## Disparity in Sentencing

If these offenses are considered during sentencing, then the United States Sentencing Guidelines (USSG) 2J1.2 permits a maximum term of imprisonment of 20 years; under these guidelines, the base offense level is 14, which was increased to level 33 during calculations; sentencing guidelines for offense level 33 are 168-210 months. This is significantly disproportionate to what her sentencing should be without the inclusion of these erroneous offenses. The sentencing guidelines for the remaining offenses, count four (4) and count six (6), for violations of 18 U.S.C §§372 and 231(a)(3), respectively, are found in USSG 2A2.4. Under these guidelines, the base offense level is 10; this offense level has "incorporate[d] the fact

that the victim was a government officer performing official duties." Note three (3) of these guidelines reference USSG §5K2.7, which states,

> Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

For re-sentencing calculation purposes and assuming *arguendo*, but not conceding their application, the enhancements that might still apply upon resentencing in Ms. Watkins's case are as follows: §2A2.4(b)(1), which provides a three (3) levels if the offense involves physical contact or the possession and threat of a dangerous weapon. And, offense level enhancements under USSG 3A1.4, 3B1.1, and 3C1.1 may still apply and provide offense level increases of three (3) levels due to the calculated efforts to affect government conduct by intimidation or coercion, a three (3) level increase due to her role as a leader, and two (2) levels for the destruction of evidence for deleting the Signal messaging app, respectively. Therefore, the proper level for Ms. Watkins's offense is 21; her base offense level is ten (10) and is elevated by eleven (11) levels. This final offense level of 21 calls for a sentence of 37-46 months of imprisonment.

## Calculating a Term of Imprisonment

For the purposes of calculating the duration of time served, federal statute 18 U.S.C. §3585 provides the following:

> A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Ms. Watkins was received in custody on 18 January 2021, and she has remained in uninterrupted custody since that date. Accordingly, as of the time of this request, she has served a total of 41 months and 29 days in custody.

## Downward Variance from Sentencing Guidelines

During her initial sentencing, a downward variance from the guidelines recommendation of 168-210 months was granted; Ms. Watkins was sentenced to 102 months of imprisonment, this represents a 40% downward variance for the reasons already stated on the record. A similar downward variance is warranted from the new sentencing guideline because, although the application of the law has changed, Ms. Watkins mitigating factors and circumstances have not. Her multiple proffers placed the government in a more advantageous position; she came forward early to accept responsibility, volunteered to serve her country in a combat environment, and served her community as a firefighter and medic; the trial court acknowledged that her deep desire to serve others was likely her original purpose in her role with the Ohio militia.

The trial court further considered her expression of "genuine remorse" in granting a downward variance from the sentencing guidelines.

These considerations should also apply to the new sentence and a downward variance from the recommended sentence of 37-46 months. Even without the appropriate downward variance, Ms. Watkins's 41 months of served incarceration falls within the recommended range and should be commuted to time served. Accordingly, Ms. Watkins requests immediate release pending her appeal for resentencing.

## IV.    CONCLUSION

Ms. Watkins has shown that she is not likely to flee or to pose a danger to the safety of others if she is released pending her appeal. On the contrary, she needs medical and psychological care that can be best provided by the civilian world (outside of prison); she has been restricted from accessing such care while incarcerated, causing kidney damage, among other setbacks in her transmogrification. Access to this care after release remains contingent on her repeatedly returning to the same physician and not fleeing. Her social desire to serve others, as exemplified by her work in the military, fire department, and as a medic, serves as further proof that she would not pose a danger to others if released.

Her appeal raises a substantial question of law and is likely to result in reversal and in a reduced sentence; specifically, her conviction on these two charges (§1512(c)(2) and (k)) will likely be reversed, and Ms. Watkins's sentence will likely be reduced to less than the 41 months that she has already served. 18 USC §3143(b) only requires that one of these be true; however, the satisfaction of more than one underscores the propriety of Ms. Watkins's release pending her appeal.

It is respectfully submitted that if Ms. Watkins had been sentenced properly, she may have, and likely would have, already completed her sentence. In light of the arguments presented herein, Appellant-Defendant Jessica Watkins respectfully requests that this Honorable Court order her release pending appeal.

Dated: July 15, 2024 	Respectfully submitted,

/s/ *Jonathan W. Crisp*

Jonathan W. Crisp, Esquire
4031 North Front St.
Harrisburg PA 17110
I.D. # 83505
(717) 412-4676
jcrisp@crisplegal.com

*Counsel for Jessica Watkins*

## **CERTIFICATE OF CONCURRENCE/NONCONCURRENCE**

I, Jonathan W. Crisp, Counsel for Defendant, Jessica Watkins, hereby certifies that Assistant United States Attorney, Kathryn Rackoczy, Esquire, does not concur in the foregoing Motion.


Date: 16 July 2024                                               /s/ Jonathan W. Crisp
                                                                 Jonathan W. Crisp, Esquire

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on 8 July 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ *Jonathan W. Crisp*

Jonathan W. Crisp, Esquire