# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 22-cr-15-4 (APM) |
| **JESSICA WATKINS,** | ) ) ) | |
| Defendant | ) ) | |

## ORDER

### I.

On May 26, 2023, the court sentenced Defendant Jessica Watkins to a 102-month term of imprisonment, following her conviction on four counts arising from the events of January 6, 2021. The jury found Defendant guilty of: (1) conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (Count Two); (2) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Three); (3) conspiracy to prevent an officer from discharging any duties, in violation of 18 U.S.C. § 372 (Count Four); and (4) civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Six). The jury acquitted defendant of seditious conspiracy (Count One) and destruction of government property (Count Five). Defendant has been detained since her arrest on January 18, 2021. She thus has served over 43 months, or 42%, of her full-term sentence.

Defendant now seeks release pending appeal pursuant to 18 U.S.C. § 3143(b). Def.'s Mot. for Release Pending Appeal, ECF No. 873 [hereinafter Def.'s Mot.]. The court denies the request because Defendant has not shown that favorable appellate review is "likely to result in" "a reduced

sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." § 3143(b)(1)(B)(iv).

## II.

Pursuant to 18 U.S.C. § 3143(b), a trial court "shall" order a person found guilty of an offense and sentenced to a term of imprisonment to be detained, unless it finds (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under [18 U.S.C. §] 3142(b) or (c)," and (2) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" favorable relief. *Id.* § 3143(b)(1). Such relief includes reversal, a new trial, a sentence that does not include a term of imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." *Id.* § 3143(b)(1)(B)(i)–(iv).

A "substantial question" is one that is "a close question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1988) (per curiam) (internal quotation marks omitted). A convicted defendant "cannot be released unless the appeal raises a substantial question likely to result in reversal of all counts on which imprisonment is imposed." *Id.* at 557. The court must undertake this inquiry bearing in mind that "[t]he law has shifted from a presumption of release to a presumption of valid conviction." *Id.* at 556.

Defendant correctly identifies as a "substantial question" whether her obstruction convictions under § 1512(k) and § 1512(c)(2) remain valid after the Supreme Court's decision in *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176 (2024). She does not, however, identify any substantial question as to her convictions for conspiracy to prevent an officer from discharging any duties (Count Four) and civil disorder (Count Six). The question therefore is whether Defendant

2

has established that a favorable result on the *Fischer* issue is "likely to result in" "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv).  She has not.[1]

### III.

The parties disagree on what Defendant's post-remand guidelines would be assuming success on appeal.[2]  According to Defendant, her post-remand guidelines would be 37 to 46 months.  Def.'s Mot. at 10.  The government believes they would be higher at 57 to 71 months.  Gov't Opp'n to Def.'s Mot., ECF No. 875 [hereinafter Gov't Opp'n], at 18.  The court thinks that the government is correct.  Counts Four and Six no longer would group because after *Brock* the conduct underlying Count Six no longer will be considered as a specific offense characteristic of Count Four under U.S.S.G. § 2J1.2(b)(1)(B) and (b)(2).  As a result, under § 3D1.4, two levels will be added to the highest offense level of 23[3] for a total offense level of 25.  The starting guideline range for re-sentencing likely will be 57 to 71 months.

But the final range is likely to be higher.  One of the key takeaways from *Brock* is that § 2J1.2 does not adequately account for the unique and serious events of January 6.  *Brock* made clear that § 2J1.2 reaches neither obstruction of the Electoral College vote nor the use of force to obstruct that proceeding.  To take account of these circumstances, at a resentencing, the court is likely to apply certain upward departures, such as § 5K2.7 (disruption of governmental function) and § 5K2.6 (weapons).  A variance (in addition to or in lieu of upward departure) also may be warranted because Defendant's conduct leading up to and on January 6, including her use of force,

---

[1] For this reason, the court does not reach the question of Defendant's dangerousness, if released.
[2] The parties' proposed post-remand calculations take account of the 11-level reduction required by the decision in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024).
[3] This calculation for Count Four reflects that the court once again would increase the base offense level of 14 under § 2J1.1 by (1) two levels for extensive scope, planning, or preparation under § 2J1.2(b)(3)(C); (2) four levels for aggravating role as an organizer or leader under § 3B1.1(a); (3) two levels for obstruction of justice under § 3C1.1; and (4) three levels for terrorism under § 3A1.4 note 4.

3

is not within the heartland of offenses covered by § 2J1.2. Defendant therefore has not shown that her original sentence will fall outside a post-remand guideline range or exceed a varied sentence.

Additionally, when it weighed the § 3553(a) factors for all Oath Keepers defendants, the court carefully calibrated individual sentences based on that particular defendant's role in the offense and the seriousness of their conduct. Organizers, planners, and those who used force received stiffer sentences. Those who were largely followers and did not use force received lesser ones. Defendant's conduct falls on the more serious end of the spectrum. She recruited a small, armed contingent of Ohio Oath Keepers to travel to Washington, D.C. to support Stewart Rhodes' stated goal of preventing the peaceful transfer of power, including the use of arms if called upon to do so. Once inside the Capitol, she led a group of Oath Keepers who used force to try to overcome police officers blocking the hallway to the Senate Chamber. And afterwards, she removed the Signal app from her phone to avoid handing her chat messages over to law enforcement. Given the seriousness of Defendant's conduct and her leadership role before and on January 6, a sentence reduction is far from assured.[4]

## IV.

For the foregoing reasons, Defendant's Motion for Conditional Release Pending Appeal, ECF No. 873, is denied.

Date: September 5, 2024

Amit P. Mehta
United States District Court Judge

---

[4] As the government's opposition notes, the court can make the sentences for Counts Four and Six run consecutively, in whole or in part, to achieve a total punishment of greater than five years, which is the statutory maximum penalty for each offense. Gov't Opp'n at 24–26.